John Doe
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN DOE, individually and in his official capacity as Councilmember of the City of West Covina, | Case No. 2:26-cv-03659-MEMF-MBKx |
| Plaintiff, | PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION [DKT. 32] AND NOTICE OF CORRECTION REGARDING VIDEO DATES, PUBLIC COUNCIL CHAMBER CCTV, ADA ACCESS DENIAL, FIRST AMENDMENT RETALIATION, NEW MATERIAL FACTS, AND COUNSEL'S DEMEANING LANGUAGE |
| v. | |
| CITY OF WEST COVINA, | |
| Defendant. | |

**I. INTRODUCTION**

Plaintiff John Doe respectfully submits this Reply to Defendant City of West Covina's Opposition [Dkt. 32] and the Declaration of Acting City Manager Milan Mrakich [Dkt. 32-1]. Plaintiff files this Reply because Defendant's opposition mischaracterizes the record, accuses Plaintiff of misleading the Court based on Dropbox file names, minimizes new post-order evidence, and asks the Court to treat Plaintiff's emergency ADA filings as abusive while Plaintiff's accommodations remain unresolved.

Plaintiff corrects any confusion caused by video file names referencing May 4, 2026. Plaintiff did not intend to mislead the Court. The underlying seating/accommodation videos concern December 2025 Council meeting events. The May 4 references came from file/export labels, not from an intent to represent that those underlying events occurred on May 4, 2026.

But the date correction does not eliminate the material ADA evidence. Mr. Mrakich's own declaration confirms the key fact: he was urging Plaintiff to move to a new seating location so the meeting could proceed. That confirms the ADA seating/accommodation dispute was real, official, and directly tied to Plaintiff's live Council participation.

Plaintiff also submits new CCTV context showing the interaction occurred in the public Council Chamber environment, before or around a public Council meeting, with numerous persons present or nearby. It was not a private personal conversation. It concerned official City business: Plaintiff's ADA seating/lighting accommodation and whether Plaintiff would be pressured to move from his accommodation-supported location.

Plaintiff further responds to Defendant's procedural attack. Plaintiff did not file to offend the Court or to reargue for the sake of rearguing. Plaintiff filed to provide the specific material facts the Court identified as missing, to present post-order facts that did not exist when the Court ruled, and to present newly received medical evidence that arrived by mail after Plaintiff's prior filings.

Finally, Plaintiff asks the Court to consider counsel's demeaning litigation conduct only for context. In the March 23, 2026 state-court hearing, Defendant's counsel referred to LCW being retained to deal with 'Mr.

1

Doe's nonsense' and compared Plaintiff's conduct to 'what my children do.' Plaintiff immediately objected that counsel was mocking and speaking to Plaintiff in a demeaning way, and that Plaintiff had asked counsel to stop because, as a person with a disability, the conduct was offensive. Ex. J at 12:7-25, 13:13-20. Plaintiff also testifies that outside court Mr. Scott told Plaintiff words to the effect of 'stop using your disability as an excuse.' Plaintiff submits this not to seek sanctions in this Reply, but to show why Defendant's current effort to label Plaintiff's ADA filings 'abusive' is chilling and disability-related in context.

**II. PLAINTIFF CORRECTS THE VIDEO-DATE CONFUSION AND DID NOT INTEND TO MISLEAD THE COURT**

Defendant argues that Plaintiff attempted to mislead the Court because two Dropbox video files had May 4, 2026 in the file names even though the underlying events occurred in December 2025. Plaintiff corrects the record. The May 4 references came from file/export labels and not from an intent to represent that the underlying incidents occurred on May 4, 2026.

To avoid any misunderstanding, Plaintiff clarifies: (1) the seating/lighting/removal-related videos concern December 2025 Council meeting events; (2) the public questioning/disability-verification video also concerns a December 2025 Council meeting event; (3) Plaintiff did not intend to mislead the Court; and (4) Plaintiff apologizes for any confusion caused by file names, Dropbox labels, export dates, or imprecise wording.

Plaintiff's separate May 2026 evidence is different. That evidence concerns events that occurred after the TRO Order, including the City press release, the City Manager Report, the continued lack of a GoPro/360-degree camera, the May 5 speaking/voting interference, and public disability-related mocking during a Council meeting.

**III. DEFENDANT'S OWN DECLARATION CONFIRMS THE MATERIAL ADA SEATING DISPUTE**

Although Defendant focuses on the video-date issue, Mr. Mrakich's declaration confirms the material fact Plaintiff offered the evidence to prove. Mr. Mrakich declares that the audio involved a conversation between Plaintiff and Mr. Mrakich during a Council meeting, and that Mr. Mrakich was 'urging Mr. Doe to sit in his new seating location, so that the meeting can proceed.' Dkt. 32-1, para. 6.

That admission matters. It confirms that Plaintiff was being pressured by the Acting City Manager to move to a different seating location during a live Council meeting setting so the meeting could proceed. That is the ADA seating/access dispute Plaintiff was identifying. The dispute was not invented. It concerned whether Plaintiff would be forced or pressured to surrender the seating/lighting position Plaintiff contends was medically supported and accommodation-supported.

This directly relates to the Court's prior concern that Plaintiff had not shown how the seating issue denied access to specific Council functions. The affected functions were immediate and concrete: remaining at the dais, reading materials, processing discussion, participating in the meeting, speaking, deliberating, and voting.

**IV. THE AUDIO WAS NOT A PRIVATE CONFIDENTIAL COMMUNICATION; THE CCTV SHOWS A PUBLIC COUNCIL CHAMBER SETTING**

Defendant also suggests that the audio was improper because Mr. Mrakich states he did not consent to being recorded. That argument is misleading because consent is not the threshold issue under California Penal Code section 632. Section 632 applies only to a 'confidential communication.' Section 632(c) excludes communications made in a public gathering, in a legislative, judicial, executive, or administrative proceeding open to the public, or in circumstances where the parties may reasonably expect the

communication may be overheard or recorded.

California Government Code section 54953.5 separately provides that any person attending an open and public meeting of a local legislative body has the right to record the proceedings unless the body makes a reasonable finding that recording would cause a persistent disruption. No such disruption finding was made as to Plaintiff.

The California Supreme Court has explained that the key question under Penal Code section 632 is whether there was an objectively reasonable expectation that the conversation was not being overheard or recorded. Flanagan v. Flanagan, 27 Cal. 4th 766 (2002).

Plaintiff now submits CCTV footage and still images showing that the interaction occurred in the public Council Chamber environment before or around the start of a public Council meeting. Numerous members of the public, City officials, staff, and other persons were present or nearby. Plaintiff estimates that approximately 60 or more persons were present in the broader Council Chamber environment, including upstairs, downstairs, staff, officials, and public seating areas. Other persons and background conversations were audible. The room itself was equipped with City cameras. Ex. I.

This was not a private personal conversation in a private office. It was an official ADA/access dispute in the public Council Chamber environment concerning whether Plaintiff would be pressured to move from his accommodation-supported seating/lighting location.

Even if the Court elects not to consider the audio itself, Defendant's own declaration confirms the material fact: Mr. Mrakich urged Plaintiff to move to a new seating location so the meeting could proceed. That admission supports Plaintiff's ADA theory because it confirms pressure on Plaintiff to surrender accommodation-supported seating during live Council participation.

## V. DEFENDANT IGNORES GENUINELY NEW POST-ORDER EVIDENCE

Defendant's opposition mischaracterizes Plaintiff's supplemental filings as if all evidence were old. That is incorrect. The following evidence either occurred after the Court's TRO Order or was received after Plaintiff's prior filings: (1) the City's May 5, 2026 public press release; (2) Roxanne Lerma's May 5, 2026 email stating the press release was posted to the City website and distributed to the press; (3) the May 5, 2026 City Manager Report broadcast during an official Council meeting; (4) the City's continued failure, as of May 6, 2026, to provide the GoPro/360-degree camera or equivalent 360-degree visual-spatial recording accommodation; (5) the May 5, 2026 live Council meeting incident where Plaintiff was unable to speak before voting or use a voting-related accommodation; (6) disability-related mocking/laughter concerning Plaintiff's manner of speaking during live Council proceedings; and (7) the newly received QME/workers' compensation medical report mailed to Plaintiff after prior filings.

This post-order evidence directly addresses the Court's prior concern that Plaintiff had not shown ongoing, worsening harm. The harm is ongoing because Plaintiff continues to attend Council meetings without full accommodations while the City publicly weaponizes the non-final TRO ruling and continues to interfere with live Council participation.

## VI. THE QME REPORT IS NEWLY RECEIVED MEDICAL EVIDENCE THAT DIRECTLY ANSWERS THE COURT'S QUESTIONS

Plaintiff received the QME/workers' compensation report by mail after his prior filings. The report is dated April 24, 2026, signed April 27, 2026, and mailed to Plaintiff. It was not available to Plaintiff when he filed the earlier application.

3

The report is material because it is not merely Plaintiff's own statement. It is a medical evaluation that describes Plaintiff's Council duties, disability-related functional limitations, seating/lighting dispute, police-removal threat, computer/monitor interference, pain, anxiety, stress, and accommodations.

The report identifies Plaintiff's Councilmember job duties as including reading documents, researching, voting, debating issues, writing rebuttals, typing, attending public events, and using computer equipment. Those are the exact Council functions Plaintiff has been trying to explain to the Court.

The report also describes Plaintiff's accommodation history, including autism spectrum disorder, photophobia, chronic low back pain, seating/lighting accommodation, special monitor/computer needs, sensitivity to light, visual accommodations, assistive recording device, ergonomic seating, advance access to materials, and processing time during meetings. The report further states that failure to implement accommodations creates foreseeable medical harm. Ex. G.

This is exactly the type of evidence the Court said was missing. It identifies specific equipment, specific accommodations, specific Council functions, and foreseeable medical harm.

**VII. PLAINTIFF'S FILING IS PROPER UNDER LOCAL RULE 7-18 BECAUSE IT IS BASED ON NEW MATERIAL FACTS, MATERIAL FACTS THE COURT DID NOT CONSIDER, AND NEWLY RECEIVED EVIDENCE**

Defendant argues that Plaintiff's filing is an improper reconsideration motion and an abusive ex parte filing. Plaintiff respectfully disagrees.

Local Rule 7-18 permits reconsideration where there is a material difference in fact or law that could not, with reasonable diligence, have been known earlier, where new material facts or a change in law occurs after the order, or where there is a manifest showing that the Court did not consider material facts presented before the order. Plaintiff's filing is directed to those categories, not to rearguing for the sake of rearguing.

Plaintiff did not file to offend the Court or accuse the Court of wrongdoing. Plaintiff titled the filing as one for clarification or limited reconsideration because the Court's Order identified specific missing showings: how accommodation denials affected specific Council functions, what equipment was withheld, how the ADA coordination change and Communication Protocol interfered with official participation, and whether ongoing harm existed.

Some evidence existed in the broader record or sealing-related filings, but it was not clearly presented in the TRO merits record in the function-by-function format the Court needed. The earlier filings were also affected by sealing and privacy concerns. In state court, Plaintiff attempted to protect sensitive medical/disability information, and after sealing was denied, the state court permitted Plaintiff to withdraw documents rather than have them filed publicly. Ex. K at 20:25-28, 21:1-14. Plaintiff therefore reasonably struggled with how to present private medical/ADA evidence without endangering his privacy and safety.

Given the urgency, Defendant's repeated claim that Plaintiff lacked evidence, and the City's public statements portraying Plaintiff's ADA claims as rejected, Plaintiff made the difficult decision to file sensitive medical and disability evidence publicly. Plaintiff should not have to choose between privacy and judicial protection, but under the circumstances Plaintiff chose to place the evidence before the Court so the City could not continue to mischaracterize the record.

This is not a prohibited second bite at the apple. Plaintiff is not merely repeating prior argument. Plaintiff is doing what the Court's Order indicated was missing: identifying specific Council functions, identifying specific equipment, explaining how accommodation denials prevented access, explaining how the Communication Protocol interfered with official participation, and presenting new/post-order evidence of

ongoing harm.

## VIII. THE ADA VIOLATION IS SPECIFIC: ACCOMMODATIONS WERE DENIED OR INTERFERED WITH DURING LIVE COUNCIL FUNCTIONS

Plaintiff engaged in protected ADA activity by requesting accommodations, submitting medical documentation, complaining of disability discrimination, opposing disability-based mocking, asserting ADA confidentiality concerns, seeking ADA implementation, filing civil-rights complaints, and seeking federal ADA protection.

The City then interfered with Plaintiff's ADA rights by failing to provide the GoPro/360-degree camera accommodation; pressuring Plaintiff to surrender accommodation-supported seating/lighting; interfering with Plaintiff's monitor/computer setup; denying or failing to implement live-meeting processing accommodations; denying or failing to implement voting-order accommodations; preventing Plaintiff from speaking before voting; allowing yelling, interruption, and criticism while Plaintiff attempted to raise points of order; allowing public mocking/laughter regarding Plaintiff's disability-related communication style; issuing a public press release portraying Plaintiff's ADA claims as fully rejected while the case remains pending; and broadcasting a City Manager Report portraying Plaintiff's ADA and retaliation claims as rejected.

The specific Council functions affected are remaining at the dais; reading agenda materials; reviewing documents; processing live multi-speaker discussion; raising points of order; speaking before voting; voting in roll call with accommodation; debating issues; researching and writing rebuttals; reviewing budget, HCD/SLA, public funds, legal billing, and City Yard materials; communicating regarding official oversight; and participating in live Council proceedings on equal terms.

## IX. RETALIATION AND INTERFERENCE ARE SHOWN BY PROTECTED ACTIVITY, ADVERSE ACTION, AND CAUSAL LINK

The Court's Order stated that Plaintiff satisfied the protected-activity prong because pursuing ADA rights is protected activity. The remaining issues are adverse action and causal link.

The adverse actions include the public press release attacking Plaintiff's ADA/TRO claims; City website publication; distribution to the press; City Manager Report broadcast during an official meeting; continued failure to provide the 360-degree camera; live-meeting denial of speaking/voting accommodation; disability-related mocking/laughter during Council proceedings; pressure to move from accommodation-supported seating; staff-access and City Hall restrictions through the Communication Protocol; and Buchalter's opposition characterizing Plaintiff's ADA emergency filings as 'abusive' and something that 'must stop.'

These acts are reasonably likely to deter a person from continuing to assert ADA rights. A disabled elected official seeing the City publicly portray his ADA claims as fully rejected, distribute that message to the press, broadcast it during a Council meeting, and continue withholding accommodations would reasonably be chilled from continuing to assert ADA rights.

The causal link is immediate and direct. These actions occurred after Plaintiff requested accommodations, complained of ADA violations, filed civil-rights complaints, sought federal ADA protection, and continued public-fund oversight. City officials and counsel knew about Plaintiff's ADA activity before the adverse actions occurred.

## X. THE FIRST AMENDMENT VIOLATION IS SPECIFIC AND AS-APPLIED

5

Defendant and Buchalter reduce Plaintiff's First Amendment claim to a neutral council-manager rule. That is not Plaintiff's claim. Plaintiff is not asking for power to give staff administrative orders. Plaintiff is challenging the Communication Protocol and related restrictions as applied to Plaintiff after he engaged in protected oversight speech, ADA complaints, public-fund objections, law-enforcement complaints, and federal litigation.

Plaintiff's speech concerns matters of public concern, including City budget, Police and Fire overtime, Health Department spending, HCD/Surplus Land Act compliance, City Yard sale, public funds, legal billing, audit delay, City credit-card records, ADA compliance, retaliation, CPRA litigation, and alleged public-fund misuse.

The City burdened that speech by making the Acting City Manager the gatekeeper of staff communication; restricting Plaintiff's ability to ask staff questions necessary for oversight; restricting City Hall access; blocking or chilling records access; refusing or delaying accommodations needed for live meeting participation; interrupting, yelling at, and cutting off Plaintiff during live Council discussion; refusing to allow Plaintiff to speak before voting; refusing to allow Plaintiff to use voting-order accommodation; publicly laughing at or mocking Plaintiff's disability-related speech; and issuing official City statements portraying Plaintiff's federal claims as rejected while litigation remains pending.

This is not merely political criticism. This is not just a censure. This is not only a chain-of-command rule. This is an as-applied burden on Plaintiff's ability to ask questions, seek information, communicate with staff, participate in meetings, speak before voting, and perform elected oversight.

## XI. DEFENDANT'S COUNSEL'S DEMEANING LANGUAGE IS RELEVANT TO CHILLING AND ADA INTERFERENCE

Plaintiff respectfully submits that Defendant's counsel's current accusation that Plaintiff's emergency ADA filings are 'abusive' must be viewed in context. This is not the first time counsel has used demeaning language toward Plaintiff's ADA-related complaints and disability-related conduct.

At the March 23, 2026 state-court hearing, Mr. Scott referred to LCW being retained to deal with 'Mr. Doe's nonsense.' Ex. J at 12:6-10. In the same hearing, Mr. Scott compared Plaintiff's conduct to 'what my children do,' stating that children go to one parent and then another when they do not get the answer they want. Ex. J at 12:12-25.

Plaintiff immediately objected on the record: 'You just -- the Court just heard how Defendant's counsel, Buchalter, mocks me...' and explained that he had asked counsel to stop speaking to him in that demeaning way because, as a person with a disability, it was offensive. Ex. J at 13:13-20.

In addition, Plaintiff testifies that outside court Mr. Scott told Plaintiff words to the effect of: 'stop using your disability as an excuse.' Plaintiff understood that statement as directed at Plaintiff's autism, ADA accommodation requests, ADA complaints, and disability-related filings.

Plaintiff does not request sanctions in this Reply. Plaintiff asks only that the Court consider this context when evaluating Defendant's accusation that Plaintiff is abusing the process. Plaintiff is autistic, pro se, and seeking access to public meetings, accommodations, staff communication, and voting functions. Counsel's repeated demeaning framing would reasonably chill a person from continuing to assert ADA rights and First Amendment oversight rights.

## XII. BUCHALTER'S OPPOSITION MISCHARACTERIZES THE RECORD AND CHILLS ADA-PROTECTED ACTIVITY

Buchalter's opposition states that Plaintiff's filings are 'abusive and must stop.' Buchalter accuses Plaintiff of attempting to mislead the Court. Buchalter focuses on file-name confusion while minimizing the material facts: the ADA seating dispute occurred, the Acting City Manager pressured Plaintiff to move so the meeting could proceed, the City issued a public post-order press release, the City publicly broadcast the ruling during a Council meeting, and Plaintiff still lacked the 360-degree camera accommodation.

Plaintiff does not ask the Court in this Reply to sanction Buchalter. Plaintiff asks the Court not to accept Buchalter's bad-faith framing. Treating Plaintiff's emergency ADA filings as abusive and accusing him of bad faith based on a file-label error would chill Plaintiff from continuing to seek judicial protection.

## XIII. RELIEF REQUESTED

Plaintiff respectfully requests that the Court: (1) reject Defendant's accusation that Plaintiff intended to mislead the Court; (2) accept Plaintiff's clarification that the December 2025 videos concern December 2025 events and that any May 4 wording came from file/export labels; (3) consider Defendant's own declaration as confirming the material ADA fact that Mr. Mrakich urged Plaintiff to move to a new seating location so the meeting could proceed; (4) consider the CCTV/still-image evidence showing the interaction occurred in the public Council Chamber environment; (5) reject Defendant's framing that the audio was a private confidential communication; (6) consider the May 2026 post-order evidence as new evidence of ongoing retaliation, ongoing ADA access denial, and ongoing irreparable harm; (7) consider the newly received QME report as new medical evidence tying the City's conduct to specific Council functions, specific equipment/accommodations, and medical harm; (8) consider counsel's demeaning language as relevant context for Plaintiff's chilling and ADA interference argument; and (9) allow Plaintiff's supplemental evidence to be considered on the merits rather than denied based on file-name confusion or technical filing issues.

In the alternative, if the Court determines that ex parte procedure is not appropriate, Plaintiff respectfully requests that the Court treat the filing as a request for leave to submit supplemental evidence, or set a prompt noticed-motion briefing schedule. Plaintiff does not object to the City receiving a fair opportunity to respond. Plaintiff only asks that the new, newly received, and clarified evidence not be disregarded because of pro se filing-label confusion.

Dated: May 7, 2026

Respectfully submitted,

/s/ John Doe
John Doe
Plaintiff, Pro Se

7