**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN DOE,<br>Plaintiff,<br><br>v.<br><br>CITY OF WEST COVINA,<br>Defendant. | Case No. 2:26-cv-03659-MEMF-MBK<br>District Judge: Hon. Maame Ewusi-Mensah Frimpong<br>Magistrate Judge: Hon. Michael B. Kim<br><br>**PLAINTIFF JOHN DOE'S NOTICE OF ADDITIONAL SUPPLEMENTAL EVIDENCE REGARDING ADA COORDINATOR FAILURE, CITY MANAGER'S OFFICE DISCLOSURE OF CONFIDENTIAL ADA/MEDICAL-ACCOMMODATION INFORMATION, NON-REQUESTER DISCLOSURE, EEOC CONTRADICTIONS, AND RENEWED REQUEST FOR TEMPORARY RESTRAINING ORDER**<br><br>In Further Support of Pending Ex Parte / TRO Relief and Previously Filed Supplemental Evidence |

**PLAINTIFF JOHN DOE'S NOTICE OF ADDITIONAL SUPPLEMENTAL EVIDENCE REGARDING ADA COORDINATOR FAILURE, CITY MANAGER'S OFFICE DISCLOSURE OF CONFIDENTIAL ADA/MEDICAL-ACCOMMODATION INFORMATION, NON-REQUESTER DISCLOSURE, EEOC CONTRADICTIONS, AND RENEWED REQUEST FOR TEMPORARY RESTRAINING ORDER**

**In Further Support of Pending Ex Parte / TRO Relief and Previously Filed Supplemental Evidence**

Plaintiff John Doe respectfully submits this additional supplemental notice because the record now shows a narrower and more serious civil-rights problem than an expense-document dispute. The evidence shows the City disclosed or permitted disclosure of Plaintiff's confidential ADA/medical-accommodation information through a non-Finance, non-requester channel, and that the City's new ADA Coordinator has failed to protect confidentiality, failed to engage in a meaningful interactive process, failed to investigate ADA/HR complaints, and allowed the accommodation process to deteriorate after she took over.

This filing is made to answer the Court's concern regarding concrete harm: who had access, what changed after the ADA Coordinator transition, how the disclosure deprived Plaintiff of equal access, why the harm is ongoing, and why money damages or after-the-fact promises do not restore lost confidentiality, independence, meeting access, or safety.

**I. The Known Access Universe Was Narrow**

The universe of persons and entities known to Plaintiff to have authorized access to his confidential ADA/medical-accommodation information was narrow: Acting City Manager Milan Mrakich; Assistant City Manager/ADA Coordinator Roxanne Lerma; Human Resources Director Carmelita Underwood; outside ADA/labor counsel LCW; and litigation counsel Buchalter. To the extent the City contends that other staff, such as Eric Venegas in the City Manager's Office, had access to accommodation-related purchasing, equipment, Council-allocation coding, or medical-accommodation records, the City must identify how that access was authorized, who directed it, and why safeguards failed.

That narrow access universe matters because the disclosed information was not merely public spending data. The disclosed items identified disability-accommodation equipment and medically supported access tools, including the GoPro/360-degree recording accommodation, ADA-related equipment, USB/physical-storage accommodation, and related meeting-access accommodations. The City had actual notice that these items were tied to Plaintiff's medical documentation and ADA accommodation file.

## II. Since Roxanne Lerma Became ADA Coordinator, the ADA Process Has Worsened

The Court asked Plaintiff to show how the City's conduct specifically deprives him of access. Plaintiff does so here: after Roxanne Lerma took over ADA coordination, the City did not improve ADA compliance; it worsened. Plaintiff still has no written individualized accommodation decision, no functioning GoPro/360-degree accommodation, no reliable USB/physical-storage agenda-material accommodation, no completed teleconferencing accommodation under SB 707, no neutral grievance investigation, and no meaningful confidentiality protection for his ADA/medical-accommodation information.

Title II requires public entities with 50 or more employees to designate at least one employee to coordinate ADA compliance, including investigation of complaints alleging noncompliance, and to adopt and publish grievance procedures providing prompt and equitable resolution of complaints. 28 C.F.R. § 35.107(a)-(b). Ms. Lerma's role is therefore not symbolic. The ADA Coordinator is responsible for coordinating compliance, processing complaints, protecting disability-related information, and ensuring that the City provides meaningful access.

Instead, Plaintiff has been routed away from Human Resources and toward Ms. Lerma without any meaningful complaint status or investigation. On May 14, 2026, HR Director Carmelita Underwood responded to Plaintiff's request for status of discrimination complaints by stating: 'I was informed to refer you to Roxanne today.' Ex. HH. That response is important because it shows Plaintiff's complaints were not being answered through a prompt and equitable grievance process; they were diverted to the very new ADA Coordinator whose handling of the accommodation process Plaintiff was challenging.

Plaintiff is also aware of at least two community residents whose Title II accommodation requests were ignored or not processed in a meaningful way during the same period. Plaintiff does not assert their claims here. He offers that fact for a limited purpose: it corroborates that the City has not implemented a reliable ADA procedure for receiving, processing, and promptly resolving disability-accommodation requests, as required by Title II and SB 707.

Plaintiff is informed and believes Ms. Lerma previously worked as a parks manager for the City of La Puente and has a longstanding working/personal relationship with Acting City Manager Milan Mrakich. Plaintiff does not offer this to attack her personally. Plaintiff offers it because the ADA Coordinator must be neutral, independent of the disclosure path, and able to investigate complaints involving the City Manager's Office. Here, the City Manager's Office is directly implicated in the alleged disclosure, and Ms. Lerma's role has not provided independence, confidentiality, or access.

## III. The City Manager's Office Disclosure and the Communication Protocol Show Selective Enforcement

Plaintiff is informed and believes Mr. Mrakich identified Eric Venegas, City Manager's Assistant, as the person who released the information. If accurate, the source was within the same City Manager's Office that created and enforced the Communication Protocol limiting Plaintiff's direct communications with staff. The City used that protocol to restrict Plaintiff's oversight communications and ADA-related staff access. Yet the same office allegedly released Plaintiff's confidential ADA/medical-accommodation information to non-requesters and

politically aligned private actors.

This is evidence of selective enforcement and pretext. The City restricted Plaintiff's ability to communicate with staff in his official and ADA-related capacity, but City Manager's Office staff allegedly transmitted his confidential accommodation information outside the ordinary CPRA process. A policy cannot be used as a sword against a disabled elected official while the same administration facilitates or permits disclosure of his ADA information.

## IV. The Disclosure Was ADA/Medical-Accommodation Information, Not Ordinary Expenses

The City may call the information financial. That is incomplete and misleading. The information identified equipment and access tools that the City knew were ADA accommodations supported by medical documentation. Once the City linked the GoPro/360-degree device, ADA equipment, USB/physical-storage access, and other items to Plaintiff's disability and medical-accommodation requests, public disclosure of those items revealed disability-accommodation information.

Under Title II, a public entity may not provide unequal access, provide aids or services that are not equally effective, use methods of administration that defeat access, refuse reasonable modifications needed to avoid disability discrimination, or impose disability-related surcharges. 28 C.F.R. § 35.130(b)(1), (b)(3), (b)(7), (f). Publicly framing disability-accommodation equipment as ordinary Council allocation spending creates a disability-specific penalty that non-disabled Councilmembers do not face.

Title II also requires auxiliary aids and services to be provided in a timely manner and in a way that protects the privacy and independence of the individual with a disability. 28 C.F.R. § 35.160(b)(2). The City did the opposite: it exposed ADA-related equipment, allowed or failed to prevent public amplification, and made Plaintiff's accommodation needs subject to public ridicule.

## V. The Disclosure Is Retaliation and Interference

The ADA prohibits retaliation, coercion, intimidation, threats, and interference. 42 U.S.C. § 12203; 28 C.F.R. § 35.134. A disabled elected official cannot freely request and use accommodations if each request creates the risk that the City Manager's Office, ADA Coordinator, HR, outside counsel, or politically aligned actors will disclose and weaponize medical-accommodation information.

This is not a minor inconvenience. Plaintiff is required to continue attending meetings, reviewing materials, deliberating, asking questions, voting, and performing oversight. Without confidentiality, every accommodation request carries a threat of public exposure. That chills the exercise of ADA rights and deprives Plaintiff of equal access to Council functions.

## VI. The City Has Failed to Investigate and Failed to Maintain a Neutral ADA Process

The ADA Coordinator should have immediately investigated how ADA/medical-accommodation information left the City's control, who had access, who transmitted it, who received it, and why the information reached non-requesters. Instead, the record shows delay, deflection, no written accommodation decision, no neutral grievance response, and no explanation of the disclosure path. Ex. HH.

The City cannot rely on Ms. Lerma as an adequate ADA Coordinator while she is simultaneously implicated in the narrow access universe, has ignored or failed to process accommodation requests, and has permitted HR complaints to be routed away from Human Resources to her without investigation. The Court should order the City to designate a neutral ADA decisionmaker not involved in the disclosure path or litigation defense to process

Plaintiff's pending accommodations and grievances.

## VII. California Medical-Information Confidentiality Confirms the Seriousness of the Harm

California's Confidentiality of Medical Information Act ('CMIA') reinforces the confidentiality harm. Civil Code § 56.20(a) requires an employer receiving medical information to establish procedures ensuring confidentiality and protection from unauthorized use and disclosure; § 56.20(c) prohibits unauthorized use or disclosure of medical information possessed by the employer except in limited circumstances. Civil Code § 56.36 provides remedies and civil penalties for negligent, knowing, or willful disclosure or use of medical information.

The City possessed Plaintiff's medical/accommodation information through Dr. Chang's letters and Plaintiff's ADA requests. The disclosed items were linked to that medical-accommodation process. Once ADA/medical-accommodation information is publicly disclosed, confidentiality cannot be restored. Money damages do not repair that loss, erase the social-media circulation, or remove the chilling effect.

## VIII. SB 707 Confirms the City's Refusal to Implement Remote Participation Is an Ongoing Emergency

SB 707 amended the Brown Act to make clear that nothing prohibits a legislative-body member with a disability from participating remotely as a reasonable accommodation, and such remote participation is treated as in-person attendance for quorum/location purposes. The law also requires legislative bodies to have and implement procedures for receiving and swiftly resolving disability-accommodation requests, consistent with the ADA, and to resolve doubt in favor of accessibility. Gov. Code §§ 54953(c), 54953.8(b)(8).

The City has refused to implement this framework for Plaintiff. Since January 2026, Plaintiff has requested teleconferencing/remote participation when medically necessary. The City has not provided a written ADA/Brown Act decision, has not implemented a confidential procedure, and has not resolved doubt in favor of accessibility. Each meeting without a lawful remote-participation accommodation is a separate denial of equal access.

## IX. EEOC Contradictions Are Submitted Under Seal

Plaintiff concurrently seeks leave to file the full EEOC position statement under seal as Exhibit AA. The public filing does not quote that document. The unredacted version is submitted to the Court with highlighted sections identifying the City/LCW contradictions regarding ongoing accommodations, while the public version redacts the EEOC material in full.

The sealed EEOC evidence is relevant because the City has characterized Plaintiff's evidence in federal court as repetitive or non-emergent while telling the EEOC that the accommodation process and the same meeting-access issues remained ongoing. That contradiction bears directly on ongoing harm and deliberate indifference.

## X. Irreparable Harm

The harm is concrete and ongoing. Plaintiff's ADA/medical-accommodation information was disclosed outside the official process, reached non-requesters, and was publicly amplified. The disclosure chilled Plaintiff's use of accommodations, exposed his medical-access needs, and created safety-related harm when the information reached or was amplified by a person subject to a restraining order. Once confidentiality is lost, it cannot be restored.

The harm also affects Plaintiff's performance of elected duties. Plaintiff has experienced inability to concentrate, inability to sleep, teeth grinding, emotional distress, and fear that future accommodation requests will be leaked or

weaponized. These harms impair his ability to deliberate, review agenda materials, ask questions, vote, and perform oversight. Money damages cannot restore missed deliberation, lost privacy, chilled accommodations, or access to past meetings.

In Chalk v. United States District Court, 840 F.2d 701 (9th Cir. 1988), the Ninth Circuit recognized that disability-related exclusion from professional work can cause irreparable non-monetary harm. The same principle applies where a disabled elected official is chilled, burdened, or excluded from equal participation in public office.

## XI. Requested Relief

Plaintiff respectfully requests that the Court issue a TRO requiring Defendant to: (1) stop disclosing, transmitting, circulating, publishing, discussing, or characterizing Plaintiff's ADA/medical-accommodation information as ordinary discretionary Council spending; (2) preserve and identify the disclosure path; (3) identify all persons who accessed, exported, transmitted, received, or discussed the unofficial document; (4) designate a neutral ADA decisionmaker not implicated in the disclosure path or litigation defense; (5) provide a written ADA decision identifying approved/denied accommodations, medical evidence considered, and any claimed undue burden or equally effective alternative; (6) implement remote participation under SB 707 when medically necessary; and (7) provide the medically supported GoPro/360, USB/physical-storage, ergonomic seating, agenda-access, and teleconferencing accommodations.

Respectfully submitted,

John Doe

Plaintiff, in pro per