# EXHIBIT A

**Federal Order dated May 4, 2026 (Dkt. 26)**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, an individual,<br><br>Plaintiff/ Petitioner,<br><br>v.<br><br>CITY OF WEST COVINA,<br><br>Defendant/ Respondent. | Case No.: 2:26-cv-03659-MEMF-MBK<br><br>**ORDER DENYING PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION [DKT. NO. 12], AND ORDER GRANTING PETITIONER'S APPLICATION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION [DKT. NO. 21]** |

Before the Court is Petitioner's Ex Parte Application for Temporary Restraining Order and Order to show Cause re Preliminary Injunction, Dkt. No. 12 ("Application"), and his Application for Leave to File a Supplemental Declaration, Dkt. No. 21. For the reasons stated herein, the Application is DENIED, and the Application for Leave to File a Supplemental Declaration is GRANTED.

/ / /

/ / /

/ / /

1

**SUMMARY OF ORDER FOR PRO SE PLAINTIFF**

You filed a first amended petition and complaint on March 24, 2026, against the Defendant/Respondent City of West Covina, alleging a violation of Title II of the ADA, declaratory and injunctive relief, and a petition for mandate. Dkt. No. 1-1. You then filed an Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, Dkt. No. 12, arguing that you are likely to succeed on your claims of disability discrimination, retaliation, and a free speech violation, and face irreparable harm without immediate interim injunctive relief. This Order will explain why this Court finds that you have not shown a likelihood of success on the merits of any of your claims and how you have not suffered irreparable harm for immediate interim relief, so the Court declines the Ex Parte Application for Temporary Restraining Order.

Although you are a *pro se* litigant (meaning you do not have an attorney), you still have to follow Court orders, the Local Rules, and the Federal Rules of Civil Procedure. *See* C.D. Cal. L.R. 83-2.2.3. The Local Rules are available on the Court's website, http://www.cacd.uscourts.gov/court-procedures/local-rules.

The Court cannot provide legal advice to any party, including you. There is a free "*Pro Se* Clinic" that can provide information and guidance about bringing a lawsuit in this Court.

- Public Counsel runs a free Federal *Pro Se* Clinic where *pro se* litigants can get information and guidance. The Clinic is located at the Roybal Federal Building and Courthouse, 255 East Temple Street, Los Angeles, CA 90012. *Pro se* litigants must call or submit an on-line application to request services as follows: on-line applications can be submitted at http://prose.cacd.uscourts.gov/los-angeles, or call (213) 385-2977, ext. 270.

- Public Counsel also has extensive resources for *pro se* litigants at its website located at https://publiccounsel.org/services/federal-court/.

- The Court is also informed that the LA Law Library, located across the street from the First Street Courthouse at 301 W. First Street, Los Angeles, CA 90012, also has extensive resources for *pro se* litigants—including those in federal court. The LA Law Library offers legal research classes, assistance from reference librarians, and free public computers with

Internet access. The LA Law Library can be reached via email at reference@lalawlibrary.org, or via telephone at (213) 785-2513.

///

///

///

## I.    Background

### A.  Factual Background

Unless otherwise indicated, the following factual background is derived from Doe's First Amended Complaint, Dkt, No. 1-1 ("1AC"), and Doe's Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, Dkt. No. 12 ("Application"). ***This Court is not, at this time, making a determination as to the veracity of the facts stated therein.***

Petitioner John Doe is an elected Councilmember of the City of West Covina. *See* 1AC ¶ 2. Respondent City of West Covina ("the City") is a California municipality and public entity. *Id.* ¶ 14. Petitioner engages in oversight regarding the City. *Id.* ¶ 19. On May 13, 2025, the City "approved [Doe's disability] accommodations in writing, including structured and direct communication, additional time to review and respond, the right to an advocate or legal representative in formal matters, and the ability to briefly provide context before questions during council meetings," *see* Application at 3, and the City also approved more equipment-related accommodations on January 6, 2026, like a Dell laptop and home-office accessibility items, *see id.* at 4. But Doe contends that he still has not received all his requested accommodations and thus does not have meaningful access to the City's services, programs, and activities. *See* 1AC ¶ 106-08, 128.[1]

Moreover, in October 2025, the City hired a neutral, third-party investigator to investigate Doe regarding workplace concerns. *Id.* ¶ 22. Also, Doe made disability-related complaints, and he was treated differently because he was an elected official, where in December 2025, "he was threatened with arrest and physical force if he did not surrender his approved ADA accommodation

---

[1] The Court uses the phrase "reasonable modification" in the Discussion section below to align with the language of Title II of the Americans with Disabilities Act, but it notes that in the context of this Order, Doe's use of the phrase "reasonable accommodation" is interchangeable with "reasonable modification."

seating during a public meeting." *See id.*; Application at 6. And on April 15, 2026, the City issued a Policy Memorandum to instate a new City Communication Protocol that states in part: "The City Council shall deal with the administrative services of the City only through the City Manager and cannot give orders, instructions, or directions to any subordinates of the City Manager." *See* Application at 6; Ex. 2, Dkt. No. 15-1.

### B. Procedural History

On March 10, 2026, Petitioner Doe, individually and in his official capacity as Councilmember of the City of West Covina, filed a Petition for Writ of Mandate and Complaint against Defendant City of West Covina in Los Angeles County Superior Court. *See* Dkt. No. 1. On March 24, 2026, Doe filed an Amended Petition for Writ of Mandate and Complaint in Los Angeles County Superior Court, alleging claims of: (1) Petition for Writ of Mandate, Cal. Code Civ. Proc. § 1085; (2) Declaratory Relief; (3) Violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and (4) Injunctive Relief. *See generally* 1AC. On April 6, 2026, the City removed this action to federal court. Dkt. No. 1. On April 16, 2026, Doe filed this instant Application. *See* Application. On April 17, 2026, the Court issued an Order setting a briefing schedule. Dkt. No. 14. On April 24, 2026, the City filed an Opposition to the Application. Dkt. No. 15 ("Opposition"). On April 25, 2026, Doe filed a Reply to the Opposition. Dkt. No. 17 ("Reply"). And on that same day, Doe filed an application for leave to file a third amended complaint and multiple applications to seal. Dkt. Nos. 16, 18. On April 27, 2026, Doe filed an application for leave to file a supplemental declaration in support of this Application.[2] Dkt. No. 21.

### II. Applicable Law

#### A. Preliminary Injunctions

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary

---

[2] The Court has considered the arguments made in the supplemental declaration and GRANTS the application.

remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

## B. Title II of the ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prove that a public entity violated Title II of the ADA, a plaintiff must show:

> (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (quoting *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)). "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the

public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

Moreover, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 12203(a). And it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, . . . any right granted or protected by this chapter." *Id.* § 12203(b). "Courts that have had occasion to apply [Section 12203(a)] of the ADA have almost uniformly adopted the burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*." *Brown v. City of Tucson*, 336 F.3d 1181, 1186 (9th Cir. 2003).

### C.  First Amendment and Legislators

Under the First Amendment, legislators are "'given the widest latitude to express their views' and there are no 'stricter 'free speech' standards on [them] than on the general public.'" *Levy v. City of Santa Monica*, 8 Cal. Rptr. 3d 507, 514 (Cal. Ct. App. 2004) (quoting *Eller Outdoor Advert. Co. v. Bd. of Supervisors*, 152 Cal. Rptr. 358, 360 (Cal. Ct. App. 1979)); *see also Bond v. Floyd*, 385 U.S. 116, 136 (1966). "Laws that restrict that freedom must be narrowly construed." *Levy*, 8 Cal. Rptr. 3d at 514.

### III.  Discussion

#### A.  Doe has not demonstrated that he is entitled to a temporary restraining order pursuant to the *Winter* factors.

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Petitioner is entitled to a temporary restraining order.

Doe argues three grounds upon which a temporary restraining order should be granted. First, he argues that he has been unlawfully denied reasonable modifications and thus meaningful access to the City's programs, services, and activities under Title II of the ADA. Second, he argues he was unlawfully threatened and retaliated against under the ADA for requesting such reasonable

modifications. And third, he argues that the City's new Communication Protocol burdens speech and violates his First Amendment and ADA rights. *See* Application at 7-8; Reply at 3-5, 6.

The Court applies the *Winter* factors to Doe's claims below.

i.  The first *Winter* factor, likelihood of success on the merits, is not met.

1. *Doe is unlikely to succeed on his Title II discrimination claim.*

Doe contends that the City delayed the implementation of his approved accommodations and "imposed new communication restrictions that interfere[s] with [his] official participation." Application at 7. He specifically contends that the City still has not provided "current live-meeting processing accommodations, flash-drive agenda materials, 360-degree camera access, . . . or ergonomic support," which prevents him from having meaningful access to the City's services, programs, and activities. *See* Reply at 5. The parties do not dispute that Doe is a qualified individual with a disability under the ADA. *See* Application at 7; Opposition at 15-16. The issue is whether Doe was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities," and whether such "exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall*, 260 F.3d at 1135 (quoting *Weinreich*, 114 F.3d at 978).

For the reasons discussed below, the Court finds that Doe has not shown there is a likelihood of success on the merits of his Title II discrimination claim.

In his Application, Doe does not contend how the denial of his requested reasonable modifications prevent the participation in or the denial of the City's services, programs, or activities. *See* Application at 7-8. In Reply, he contends that he is not being provided with his requested "live-meeting processing accommodations, flash-drive agenda materials, 360-degree camera access, . . . or ergonomic support," and that these requested accommodations are "necessary and effective." Reply at 5-6. But the City provided Doe with a 360-degree camera "for use in public meetings," and Doe does not contest how that is insufficient to provide access to the City's services, programs, or activities. *See* Ex. 18 at 3, Dkt. No. 15-1; Ex. H at 4, Dkt. No. 17-1. And the City denied Doe's requests for an ergonomic chair and to receive agenda material via a flash drive because "a chair for home use [did] not serve to alter or improve [Doe's] meaningful access to City Council meetings," and "it [did] not appear the flash drive will improve [Doe's] meaningful access." Ex. 18 at 3. Doe

does not rebut these contentions in his Reply, nor does he provide evidence to show how these denials prevent access to specific "Council functions." *See* Ex. H at 4-5; *see also* Reply at 5-6. Finally, in regard to Doe's "live-meeting processing accommodation[]," the City denied the request as "duplicative," *see* Ex. 18 at 3, and while Doe does explain how this is different from his written review request, *see* Ex. H at 5, he does not explain how this denial impacts his participation in or denies the benefits of the City's services, programs, or activities, *id.*

Moreover, Doe does not explain how the change in "the ADA coordination structure midstream," and the imposition of a "new communication restriction" with the City's new Communication Protocol "interfere[s]" with his "official participation" and denies him participation in the City's services, programs, or activities. *See* Application at 7; Opposition at 16; Reply at 3, 6.

Accordingly, the Court finds that Doe has not satisfied the second prong of a Title II discrimination claim and thus is not likely to succeed on the merits of his Title II discrimination claim. *See* Opposition at 15-16.

### 2. Doe is unlikely to succeed on his Title II retaliation claim.

Doe presents three different theories for how he is likely to succeed on a Title II retaliation claim under Sections 12203(a) and (b). *See* Application at 8. First, he contends that the City altered the chain of command for ADA requests in retaliation for his invoking his ADA rights, making ADA-related complaints, and requesting ADA implementation. *Id.* at 8. Second, he contends that after he invoked his ADA rights, made ADA-related complaints, and requested ADA implementation, the City interfered with or withheld accessibility-related equipment. *Id.* Third, he contends that he was threatened with arrest if he did not surrender his "approved accommodation seating." *Id.*

A prima facie "case of [disability] retaliation requires a plaintiff to show: (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two."[3]

---

[3] The City contends that regardless of Doe's Title II claims for discrimination, retaliation, and interference, he "was not excluded from participation in or denied access to any of the City's services, programs, or activities, or otherwise discriminated against." *See* Opposition at 15-16. To the extent that the City's position is that this forecloses a retaliation claim, this is incorrect given the legal framework under which this Court is to consider retaliation claims under Section 12203(a) and interference claims under Section 12203(b).

*Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Coons v. Sec'y of U.S. Dep't. of Treasury,* 383 F.3d 879, 887 (9th Cir. 2004)). Here, the Court finds that Doe is unlikely to succeed on his retaliation and interference claim.

### a. The City's Alteration of the Chain of Command.

First, "[p]ursuing one's rights under the ADA constitutes a protected activity." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004). Doe was pursuing his rights when he invoked his ADA rights, made ADA-related complaints, and requested ADA implementation.  Thus, the Court finds that Doe has satisfied the first prong of a retaliation claim.

Second, "[a]n adverse employment action is any action 'reasonably likely to deter employees from engaging in protected activity.'" *Pardi*, 389 F.3d at 850 (quoting *Ray v. Henderson,* 217 F.3d 1234, 1243 (9th Cir. 2000)). For purposes of this analysis, the Court will assume that altering the chain of command constitutes an adverse action. If so, the second prong of a retaliation claim is met.

But Doe's claim under this theory is unlikely to succeed because there is no causal link. Although "[w]hen adverse employment decisions closely follow complaints of discrimination, retaliatory intent may be inferred," *Pardi*, 389 F.3d at 850, the City is likely to succeed in demonstrating that it was required to change the chain of command once Doe named the prior ADA official as a defendant in a lawsuit—eliminating the causal link Doe must show. *See* Opposition at 11.

### b. The City's Alleged Interference with Accessibility Equipment.

Neither party addresses what the elements of an interference claim are, but the Court is satisfied that to succeed on such a claim, Doe must show interference as well as a causal link between the interference and his exercise of his rights. *See Brown v. City of Tucson*, 336 F.3d 1181, 1193 (9th Cir. 2003). Doe's TRO contains a conclusory assertion that his equipment was withheld or interfered with and does not specify what equipment he is referring to. Under the circumstances, he has failed to show that he is likely to succeed in demonstrating interference or the required causal link.

### c. The City's Threat of Arrest.

Doe is unlikely to succeed on this theory as its factual predicate—that he had ADA-approved seating—appears unsupported. Although Doe states that he was threatened with arrest if he did not surrender his "approved accommodation seating," *see* Application at 8, the record indicates that at the time of the threat of arrest, the seating he declined to surrender was not an approved accommodation, *see* Ex. 18, Dkt. No. 15-1; *see also* Mrakich Decl. ¶¶ 21-22, Dkt. No. 15-1. And the material Doe cites in support of this are merely his statements to this effect, but not a memorandum approving an accommodation request as exists for his other claimed accommodations. *See* Ex. A, Dkt. No. 12. Rather, it appears that the City is likely to succeed in showing that the accommodation requested concerning his seating in the Council chamber was made the same day as the alleged threat of arrest and not resolved until later.

In sum, Doe has failed to satisfy the requirements for a retaliation claim under Section 12203(a) and an interference claim for Section 12203(b). Accordingly, the Court finds there is not a likelihood of success on Doe's retaliation and interference claim under Sections 12203(a) and (b).

### 3. Doe is not likely to succeed on his challenge to the City's Communication Protocol.

Doe contends that the City's new Communication Protocol "imposes operational restrictions on how [he] may communicate with staff, access City Hall, and perform oversight functions," and imposes "an added barrier to participation and to the effective use of accommodations," so it violates the ADA and the Constitution. *See* Application at 8. Here, the Court finds that Doe is not likely to succeed on this claim.

First, as discussed above, the City's Communication Protocol does not violate Title II because Doe has not alleged how the Communication Protocol denies participation in or access to the City's services, programs, or activities and that such denial was because of his disability.

Second, the Communication Protocol is consistent with the First Amendment. In *Levy*, the California Court of Appeals held a city ordinance that stated: "Except for the purpose of inquiry, the City Council and its members shall deal with the administrative service under the City Manager solely through the City Manager and neither the City Council nor any member shall give orders to any subordinates of the City Manager, either publicly or privately" did not violate the First

10

Amendment. *See Levy*, 8 Cal. Rptr. 3d at 510-11, 515-16. The California Court of Appeals held that the purpose of the ordinance was "to define the lines of authority within City government, not to prohibit protected speech. Interpreting this section to prohibit 'orders' to City staff is a bright line consistent with the purpose of [the ordinance] and the First Amendment." *Id.* at 515.

Here, the Court finds that the City's new Communication Protocol is permissible under the First Amendment. The Communication Protocol states:

> The City Council shall deal with the administrative services of the City only through the City Manager and cannot give orders, instructions, or directions to any subordinates of the City Manager. City Staff are not required to conduct research, generate new analysis or reports, reprioritize assigned work, or take action at the direction of, or in response to an inquiry from, individual councilmembers without authorization from the City Manager.
> . . .
> City Staff may exercise professional judgment in determining how to respond to individual Councilmember inquiries, consistent with administrative direction and workload considerations.
> . . .
> All City Councilmembers should direct all inquiries and all other communications of any kind with City Staff members through the City Manager's office. . . .
>
> [And] All City Councilmembers should contact the City Manager's office prior to coming to City Hall for any reason.

*See* Ex. 2 at 1-2, Dkt. No. 15-1. Like the ordinance in *Levy*, the City's Communication Protocol does not violate Doe's First Amendment rights because it only "define[s] the lines of authority within City government." *Levy*, 8 Cal. Rptr. 3d at 515. Doe even admits that "[i]n a council-manager system, a rule may prevent Councilmembers from giving orders to staff." Reply at 4. To that end, Doe is not likely to succeed on the merits of his claim regarding the Communication Protocol.

Doe's arguments in Reply are unavailing. First, Doe does not explain how making "the City Manager the gatekeeper of elected-official inquiry" is unconstitutional. *See* Reply at 3. And second, Doe contends that this ordinance prohibits his "right to ask questions, seek information, communicate regarding oversight, and obtain records necessary to perform legislative and fiduciary duties," and it is "read so broadly that virtually all inquiries become suspect." Reply at 4. But this ordinance does not limit Doe's speech or have any of his "inquiries become suspect," rather, it only

11

"define[s] the lines of authority within City government." *Levy*, 8 Cal. Rptr. 3d at 515. Doe is still permitted to speak, ask questions, seek information, and communicate, and the only change is that his administrative "orders, instructions, or directions to any subordinates" must go to the City Manager instead of City Staff. *See* Ex. 2 at 1-2. Thus, the Court finds the ordinance is constitutional and Doe has not shown a likelihood of success on this claim.

Because Doe has not shown a likelihood of success on any of his claims, the first *Winter* factor is not met.

> ii. The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is not met.

To establish the second *Winter* factor, Doe must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. This Court finds that the second *Winter* factor is not met.

A "'long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm,' but '[d]elay by itself is not a determinative factor in whether the grant of interim relief is just and proper.'" *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (first quoting *Oakland Trib., Inc. v. Chron. Publishing Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985); and then quoting *Aguayo for & on Behalf of N.L.R.B. v. Tomco Carburetor Co.*, 853 F.2d 744, 750 (9th Cir. 1988), *overruled on other grounds by Miller for & on Behalf of N.L.R.B. v. Cal. Pac. Med. Ctr.*, 19 F.3d 449 (9th Cir. 1994)). Moreover, "[u]sually, delay is but a single factor to consider in evaluating irreparable injury; courts are 'loath to withhold relief solely on that ground.'" *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (quoting *Lydo Enters., Inc. v. City of Las Vegas,* 745 F.2d 1211, 1214 (9th Cir. 1984)).

Doe contends that he faces immediate and irreparable harm because he "has already attended multiple Council meetings without all medically supported accommodations in place." Application at 9. And the City's threat to arrest him "amplifies the immediacy of the harm." *Id.* But his "accommodation issues . . . have been ongoing for months," where the "purported threat of arrest . . . occurred in December 2025." Opposition at 12; *see also* Ex. F, Dkt. No. 12 (noting alleged accommodation delay since February 2026); Ex. I, Dkt. No. 12 (noting the threatened arrest

happened in December 2025). Doe does not rebut this argument in his Reply. *See generally* Reply. Moreover, even if this Court does not consider the delay in its irreparable harm analysis and is "generous in the assumptions we draw about [Doe's] litigation of the case" because Doe is pro se, *see Cuviello*, 944 F.3d at 833, there are no "ongoing, worsening injuries" to warrant immediate interim relief, *id.* The Court found there is no likelihood of success on any of Doe's claims, and Doe has not alleged any facts to show that there is an ongoing risk of an arrest or any other retaliation or interference. *Arc of Cal.*, 757 F.3d at 990; *see also* Application at 9; Reply at 6.

Finally, the case Doe cites for irreparable harm is distinguishable. *See* Application at 9 (citing *Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*, 840 F.2d 701, 709-10 (9th Cir. 1988)). In *Chalk*, the petitioner was reassigned from his teaching job to a more "distasteful" administrative position because of his disability, and the Ninth Circuit held that he faced immediate and irreparable emotional and psychological harm, because he could not have the "tremendous personal satisfaction and joy" he had while teaching, and his injury was similar to the injuries that involved a "'reduced sense of well-being'" and "'discrimination based on the irrational fear that [he] might be contagious [due to his disability].'" *See id.* at 703, 709-10 (first quoting *E. E. O. C. v. Chrysler Corp.*, 546 F. Supp. 54, 70 (E.D. Mich. 1982), *opinion modified and reinstated*, No. 81-72347, 1982 WL 406 (E.D. Mich. Sept. 3, 1982), *and aff'd*, 733 F.2d 1183 (6th Cir. 1984); and then quoting *Sch. Bd. of Nassau Cnty., Fla. v. Arline*, 480 U.S. 273, 284 (1987)). Also, the petitioner had a virus "fatal in all recorded cases," where "[a] delay, even if only a few months, . . . represent[ed] precious, productive time irretrievably lost to him." *See id.* at 10.

Unlike the petitioner in *Chalk*, Doe does not have a fatal disease, where he would lose out on time while waiting for the resolution of his ADA claims. *See* Opposition at 17. And although Doe contends that he has suffered emotional "severe stress, anxiety, humiliation, and emotional pain" from this Application, *see* Reply at 8, Doe does not allege the type of injury stemming from a "'reduced sense of well-being'" or "'discrimination based on the irrational fear that [he] might be contagious'" that warrants immediate and irreparable emotional and psychological harm. *Chalk*, 840 F.2d at 709-10. Doe's emotional harm from "the use and disclosure of his disability-related

information" can be addressed with a proper sealing of such documents. *See* Reply at 6.[4]

Accordingly, the Court finds that Doe has not met his burden to establish irreparable harm. Thus, the Application is denied.

Because the Court finds Doe cannot satisfy the first and second *Winter* factors, the Court need not address the third and fourth *Winter* factors.

## IV.    Conclusion

For the foregoing reasons, the Application, Dkt. No. 12, is DENIED, and the Application for Leave to file a Supplemental Declaration, Dkt. No. 21, is GRANTED.

IT IS SO ORDERED.

Dated: May 4, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[4] To properly seal a document, Doe must comply with Local Civil Rule 79.5.2.2, which requires that a party seeking to file such an application must file an unredacted version of the document to be sealed "with any proposed redactions highlighted." The Court will separately issue an Order regarding Doe's applications to seal. *See* Dkt. Nos. 16, 18, 21.

# EXHIBIT B

## PROPOSED UNDER SEAL - PUBLIC PLACEHOLDER

May 13, 2025 Dell Laptop ADA accommodation letter

**REDACTED / PROPOSED UNDER SEAL**

Public placeholder filed to avoid disclosing sensitive ADA/medical/safety information.

# EXHIBIT C

## PROPOSED UNDER SEAL - PUBLIC PLACEHOLDER

Dell laptop/monitor implementation email thread

**REDACTED / PROPOSED UNDER SEAL**

Public placeholder filed to avoid disclosing sensitive ADA/medical/safety information.

# EXHIBIT D

## PROPOSED UNDER SEAL - PUBLIC PLACEHOLDER

May 13, 2025 structured communication / additional time accommodation letter

REDACTED / PROPOSED UNDER SEAL

Public placeholder filed to avoid disclosing sensitive ADA/medical/safety information.

# EXHIBIT E

## PROPOSED UNDER SEAL - PUBLIC PLACEHOLDER

May 13, 2025 meal and reserved seating accommodation letter

**REDACTED / PROPOSED UNDER SEAL**

Public placeholder filed to avoid disclosing sensitive ADA/medical/safety information.

# EXHIBIT F

## PROPOSED UNDER SEAL - PUBLIC PLACEHOLDER

December 3, 2025 medical documentation review and Dr. Chang materials

**REDACTED / PROPOSED UNDER SEAL**

Public placeholder filed to avoid disclosing sensitive ADA/medical/safety information.

# EXHIBIT G

## PROPOSED UNDER SEAL - PUBLIC PLACEHOLDER

January 6, 2026 ADA/FEHA home-office equipment approval

**REDACTED / PROPOSED UNDER SEAL**

Public placeholder filed to avoid disclosing sensitive ADA/medical/safety information.

# EXHIBIT H

## PROPOSED UNDER SEAL - PUBLIC PLACEHOLDER

October 22, 2025 direct communication / Department Head accommodation
response

**REDACTED / PROPOSED UNDER SEAL**

Public placeholder filed to avoid disclosing sensitive ADA/medical/safety information.

# EXHIBIT I

## PROPOSED UNDER SEAL - PUBLIC PLACEHOLDER

April 23, 2026 City accommodation response / contradiction letter

**REDACTED / PROPOSED UNDER SEAL**

Public placeholder filed to avoid disclosing sensitive ADA/medical/safety information.

# EXHIBIT J

## GoPro MAX2 SD-card capacity chart

Q    **Sign in**

OTHER MODELS
(/S/TOPIC/0TO3B000000GYVUGA…

# MAX2: SD card capacity in each video setting

September 23, 2025  **Knowledge**

The recording time that fits on the SD card depends on the resolution, frame rate, bit rate, and the capacity of the SD card. Compared to low bitrate videos, high bitrate videos collect more data from the scene, which increases the storage space required. In conventional GoPro cameras, the bit rate was constant when "High" or "Standard" was selected. The bit rate of MAX2 fluctuates greatly depending on the complexity of the scene being recorded. By improving the camera's encoder, we are reducing the file size without compromising the image quality when possible.

For recommended SD cards, please see this article (https://community.gopro.com/s/article/microSD-Card-Considerations?language=en_US).

**The table below shows an example of the recording storage time when using a 128GB SD card on the MAX2.**

- You can calculate the time by multiplying (or diating) the ratio according to the size of the SD card.
- These are not estimates of battery life, but estimates of SD card storage capacity.
- The following is an estimate for a static environment, which may fluctuate significantly.

| Shooting mode | Video profile | Resolution | Frame rate | High bit rate (time: minute) | Standard bit rate (time: minute) |
|---|---|---|---|---|---|
| 360 degrees | Standard / Log | 8K | 30 | 1:54 | 2:44 |
| 360 degrees | Standard / Log | 8K | 24 | 1:55 | 3:07 |
| 360 degrees | Standard | 5.6K | 60 | 1:51 | 2:22 |
| 360 degrees | Standard | 5.6K | 30 | 1:54 | 4:02 |
| 360 degrees | Standard | 4K | 90 | 1:51 | 2:22 |
| 360 degrees | Standard | 4K | 60 | 1:51 | 2:55 |
| Single lens | Standard / Log | 4K | 60 | 2:03 | 4:19 |
| Single lens | Standard / Log | 4K | 30 | 2:44 | 5:20 |
| Single lens | Standard / Log | 4K | 24 | 3:16 | 7:47 |
| Single lens | Standard | 1080p | 60 | 3:42 | 7:34 |
| Single lens | Standard | 1080p | 30 | 2:44 | 5:20 |
| Single lens | Standard | 1080p | 24 | 3:16 | 7:47 |

**CAMERA** (/S/TOPIC/0TO3B000000GYV3GAM/…)

**OTHER MODELS** (/S/TOPIC/0TO3B000000GYVUGAM/…)

**MAX2** (/S/TOPIC/0TOUO0000008ZCBOAA/…)

## Leave feedback on this article

○ Answered my question.
○ Answered my question, but I still need to contact support.

○ Answered my question, but I don't like the resolution or policy.
○ Didn't answer my question.
○ Has incorrect information.
○ Troubleshooting steps didn't solve the problem.

Software update (**https://gopro.com/jp/us/update**)

Product manual (**https://jp.gopro.com/help/productmanuals**)

Video tutorial (**https://www.youtube.com/user/GoProTutorials**)

Order status (**https://gopro.com/jp/us/order-status**)

Delivery policy (**https://community.gopro.com/t5/jp/GoPro-Shipping-Policy/ta-p/394279**)

Regulatory information (**/s/article/Regulatory-Information**)

Safety + Guarantee (**/s/article/Important-Product-Safety-Instructions**)

Sign in (**https://community.gopro.com/s/login**)

Inquiries (**https://jp.gopro.com/help/ContactUs**)

GoPro Lab (**/s/gopro-labs**)

Open GoPro (**/s/article/Welcome-to-Open-GoPro**)

Shop (**https://gopro.com/jp/us/store-locator**)

(**https://instagram.com/GoPro**)        (**https://www.facebook.com/gopro**)        (**https://twitter.com/gopro**)        (**https://www.pinterest.com/GoPro**)        (**https**

**Privacy Policy (https://gopro.com/jp/us/legal/privacy-policy)**   |   **Terms of Use (https://gopro.com/jp/us/legal/terms)**   |   **Cookie Notice (https://gopro.com/en/us/legal/cookies)**   |   **Your Privacy Choices**

© 2024 GoPro, Inc. All rights reserved.
GoPro, HERO and their respective logos are GoPro, Inc. in the United States and other countries. It is a trademark or registered trademark of. All other trademarks belong to each owner.

# EXHIBIT K

**June 3, 2026 Roger Scott/Buchalter pseudonym meet-and-confer email**

From: **John Doe** johndoeca2025@gmail.com
Subject: **Re: Doe v City of West Covina--Meet and confer regarding motion [IMAN-BUCHALTER.FID6453193]**
Date: **Jun 3, 2026 at 12:06:09 PM**
To: **Roger L. Scott** rscott@buchalter.com
Cc: **Claire Katz** ckatz@buchalter.com

**Roger,**

**Am free Tuesday June 9th anytime at or after 1pm.**

On Jun 3, 2026, at 11:52 AM, Scott, Roger L. <rscott@buchalter.com> wrote:

Brian-

The City intends to file a motion to require you to proceed in this action under your own name rather than "John Doe." Please let me know when you are available for a telephonic or Zoom meet and confer to see if this issue can be resolved without motion practice.

Sincerely,
Roger

Buchalter

**Roger L. Scott** he/him/his
Partner
**T** (949) 224-6265
**C** (805) 708-3936
rscott@buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

# EXHIBIT L

## PROPOSED UNDER SEAL - PUBLIC PLACEHOLDER

Volokh amicus correspondence screenshots

**REDACTED / PROPOSED UNDER SEAL**

Public placeholder filed to avoid disclosing sensitive ADA/medical/safety information.