JOHN DOE, Plaintiff, Pro Se
Safe at Home Confidential Address
Email: [redacted]
Plaintiff proceeding under pseudonym

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN DOE, an individual,<br>Plaintiff,<br><br>v.<br><br>CITY OF WEST COVINA, et al.,<br>Defendants. | Case No. 2:26-cv-03659-MEMF-MBK<br>Assigned to Hon. Maame Ewusi-Mensah Frimpong<br>Courtroom: 8B<br>Hearing Date: To be set by Court<br>Hearing Time: To be set by Court |

# PLAINTIFF JOHN DOE'S MOTION FOR ORDER AUTHORIZING CONTINUED PROCEEDING UNDER PSEUDONYM AND PROTECTIVE ORDER

# TABLE OF CONTENTS

I. Introduction .................................................... 4
II. Relief Requested ................................................ 5
III. Governing Legal Standard ....................................... 6
IV. The Record Supporting Doe Protection ............................ 7
V. Timing of the City Identity Challenge ............................ 9
VI. Application of Advanced Textile ................................. 10
VII. Rebuttal to City and Amicus Theory .............................. 13
VIII. Medical, ADA, and Safe at Home Materials ....................... 15
IX. Narrowly Tailored Protective Order ............................... 16
X. Specific Terms Plaintiff Requests ................................. 16
XI. Specific Harm If Public Identification Is Ordered ................ 17
XII. Plaintiff Has Not Waived Protection ............................. 18
XIII. Proposed Amicus Position ....................................... 19
XIV. Prior Criminal Case Makes This Record Unusual ................... 20
XV. Public Access Is Preserved ....................................... 21
XVI. Temporary Administrative Protection ............................. 22
XVII. Proposed Findings Supporting Order ............................. 22
XVIII. Less Restrictive Alternatives ................................. 23
XIX. Equities Favor Status Quo ....................................... 24
XX. Doe Status and Official Accountability ........................... 24
XXI. The Name Itself Is the Harm ..................................... 25
XXII. Defendants Are on Notice ....................................... 26
XXIII. Administrability .............................................. 26
XXIV. Constitutional Balance ......................................... 27
XXV. Certificate of Compliance ........................................ 28
XXVI. Conclusion ..................................................... 28

# TABLE OF AUTHORITIES

**Cases**

Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058 (9th Cir. 2000)

Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate, 596 F.3d 1036 (9th Cir. 2010)

Doe v. Ayers, 789 F.3d 944 (9th Cir. 2015)

Doe v. Stegall, 653 F.2d 180 (5th Cir. 1981)

Doe v. Megless, 654 F.3d 404 (3d Cir. 2011)

Kamakana v. City & County of Honolulu, 447 F.3d 1172 (9th Cir. 2006)

Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978)

**Rules and Statutes**

Fed. R. Civ. P. 10(a)

Fed. R. Civ. P. 26(c)

C.D. Cal. Local Rule 11-3

C.D. Cal. Local Rule 11-6.1

C.D. Cal. Local Rule 79-5.2.2

California Government Code sections 6205-6211

Foreign Narcotics Kingpin Designation Act

**I. INTRODUCTION**

Plaintiff John Doe respectfully asks this Court to enter an order formally authorizing continued use of the John Doe pseudonym and prohibiting Defendants, their counsel, any City official, and any proposed amicus from publicly identifying, linking, republishing, or amplifying Plaintiff's legal name, Safe at Home information, law-enforcement cooperation, medical information, or safety-sensitive facts before further order of this Court.

This request is not made lightly. Plaintiff understands that federal courts are public institutions and that Fed. R. Civ. P. 10(a) ordinarily requires parties to proceed in their true names. But ordinary rules are not blind instruments. The law permits pseudonym protection when disclosure would create a reasonable fear of severe harm. Here, the record is not speculative, theatrical, or merely reputational. It involves documented Safe at Home protection, cooperation with federal law enforcement in a cartel-linked prosecution, federal subpoenas in a criminal matter assigned to this Court, subsequent violence associated with the same criminal ecosystem, and law-enforcement safety warnings.

Plaintiff is an elected official. That fact does not dissolve his right to live, to seek judicial protection, or to maintain safety measures recognized before he entered public office. Public service is not a waiver of the right to survive. A seat at the dais is not a death warrant. A person may serve constituents openly on ordinary public business while still requiring protection from a forced judicial linkage between his legal identity and sensitive law-enforcement cooperation.

The City and proposed amicus Eugene Volokh appear prepared to argue that because Plaintiff is a public official, has appeared in public, and was covered by a newspaper article, he no longer has a protectable interest in proceeding as John Doe. That argument mistakes partial public visibility for complete forfeiture. It is one thing to be known as an elected official. It is another to have a federal court order that permanently ties a protected litigant's legal identity to sealed safety facts,

medical information, Safe at Home protections, and federal law-enforcement cooperation.

Plaintiff does not ask the Court to erase public records or hide municipal governance. Plaintiff asks for a narrow protective order: use John Doe in this litigation; prohibit public linkage or amplification of his legal name with the protected safety record; permit sealing of narrowly identified safety materials; and require parties and proposed amici to litigate identity issues without exposing the very identity-related harms the motion seeks to prevent.

## II. RELIEF REQUESTED

Plaintiff requests an order providing the following relief:

- Plaintiff may continue to proceed under the pseudonym John Doe in all public filings and docket entries unless and until the Court orders otherwise after review of the sealed record;
- Defendants, their counsel, City officials, employees, agents, witnesses, and any amicus or proposed amicus shall not publicly disclose, repeat, link, publish, or amplify Plaintiff's legal name, Safe at Home information, [redacted], medical information, or safety-sensitive identifying facts in connection with this case;
- Any filing that seeks to challenge pseudonym status must use John Doe on the public docket and file any identity-linking material under Local Rule 79-5;
- The Court shall accept the concurrently filed Application to File Safety Materials Under Seal and consider the unredacted highlighted materials for in camera or sealed review;
- The protective order shall not prevent Defendants from litigating legal arguments, public municipal issues, or non-sensitive facts. It only prevents public exposure of protected identity and safety information.

The requested order is narrow. It does not impair Defendants' ability to defend themselves. It does not prevent public access to the legal issues. It does not block news coverage of this case. It simply prevents this litigation from becoming a signal flare for people who have reason to retaliate against a [redacted].

**III. GOVERNING LEGAL STANDARD**

Federal Rule of Civil Procedure 10(a) generally requires a complaint to name the parties. But the Ninth Circuit recognizes that courts may permit a party to proceed under a pseudonym when the party's need for anonymity outweighs prejudice to the opposing party and the public interest in open proceedings. Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067-68 (9th Cir. 2000).

Advanced Textile identifies core considerations: the severity of the threatened harm; the reasonableness of the fear; the vulnerability of the party to retaliation; prejudice to the opposing party; and the public interest. Id. The Ninth Circuit has also recognized pseudonym protection where disclosure itself would inflict the harm the lawsuit seeks to avoid. Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate, 596 F.3d 1036, 1042-46 (9th Cir. 2010).

The Court also has authority under Fed. R. Civ. P. 26(c) and its inherent power to protect litigants from annoyance, embarrassment, oppression, undue burden, and danger where good cause exists. The public-access right is weighty, but it is not absolute. Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978).

Sealing and pseudonymity require careful tailoring; Plaintiff accepts that burden and has submitted a separate sealing application under Local Rule 79-5.

The Court should apply the Advanced Textile balance with the practical reality that identity disclosure here is not a mere reputational inconvenience. It is a one-way door. Once Plaintiff's legal identity is judicially linked to the safety record, no later sealing order can unring the bell. The Court can publish legal reasoning without

publishing the map to Plaintiff's safety risk.

Local Rule 79-5 provides the procedural channel for sealing safety-sensitive materials. Plaintiff therefore submits a public redacted version, a declaration supporting sealing, a proposed order in table form, and unredacted versions conspicuously labeled as proposed under seal with proposed redactions highlighted. The purpose of this motion is to harmonize public access with safety, not to evade scrutiny.

## IV. THE RECORD SUPPORTING DOE PROTECTION

### A. Plaintiff Is an Active Safe at Home Participant

Plaintiff is an active participant in California's Safe at Home confidential address program. The certification is submitted under seal because it contains identifying and protected program information. The public record may identify Plaintiff as John Doe; the sealed record shows why the State of California has recognized the need for address confidentiality and location protection.

Safe at Home protection is not ornamental. It exists because certain persons face risks that ordinary public-address rules cannot safely accommodate. Plaintiff entered the program before serving in elected office. His public service did not extinguish the reasons the State recognized the need for protection.

A California Superior Court has already conducted a Doe hearing involving Plaintiff and recognized that Plaintiff had a statutory basis to proceed under Doe status based on Safe at Home protection. The hearing transcript is submitted with appropriate redactions and under seal where necessary. That ruling is not binding on this Court, but it is persuasive evidence that Plaintiff's anonymity request is not improvised or frivolous.

**B. Plaintiff Previously Cooperated With Federal Law Enforcement**

Plaintiff previously cooperated with federal law enforcement in connection with a federal criminal investigation and prosecution involving cartel-linked individuals and entities. The sealed declaration provides the specific terminology and details. Publicly stated, Plaintiff's safety concerns arise from cooperation in a matter involving the Foreign Narcotics Kingpin Designation Act, a sanctioned promoter tied to CJNG and Los Cuinis, and a federal criminal case before this Court. Plaintiff was subpoenaed as a witness in United States v. Del Entertainment, Inc., et al., Case No. 2:22-cr-00267-MEMF. The case was assigned to the same District Judge now presiding over this civil action. The public DOJ materials describe the criminal case as involving business with a concert promoter connected to Mexican drug cartels. The subpoenas and related safety evidence are submitted as part of the sealed record.

The sealed record further includes: [redacted] This information is redacted from the public version because placing it on the public docket would partially accomplish the very harm Plaintiff seeks to prevent.

The underlying criminal matter involved people and organizations associated with real violence. Public DOJ materials and press accounts document that Jesus Perez Alvear, also known as Chucho, pleaded guilty in the criminal ecosystem and was later murdered in Mexico. Plaintiff also has evidence that other persons connected to that world were targeted or killed. The point is not sensationalism. The point is non-speculative risk.

**C. This Court Is Uniquely Positioned to Understand the Criminal Context**

This case is unusual because the assigned District Judge presided over the relevant criminal matter. Plaintiff does not ask the Court to rely on rumor. The Court may take judicial notice of its own docket and may evaluate the safety record in context. Plaintiff respectfully submits that this Court is uniquely situated to appreciate why

identity linkage in this civil docket is different from ordinary political embarrassment.

Plaintiff is informed and believes that, during the criminal proceedings, this Court recognized the need to avoid certain questions that would expose Plaintiff's location or public-office-related identifying details. Plaintiff will provide the supporting information under seal or in camera if requested. That prior protection is consistent with the relief sought here.

**D. The Case Also Contains Medical and ADA Information**

The pseudonym issue is intertwined with medical and ADA confidentiality. This civil action concerns disability accommodations, medical documentation, Safe at Home protection, security measures, retaliation, and the alleged disclosure of accommodation information. The City may argue that medical information can simply be sealed piecemeal. But the problem is broader. Public identity linkage would connect the legal name to a body of medical, safety, law-enforcement, and disability-access material that cannot be meaningfully separated after disclosure. The Court can protect public access to legal arguments without forcing Plaintiff to choose between litigating civil-rights claims and exposing safety-sensitive information. That is the core reason pseudonymity, not only sealing, is necessary.

## V. THE TIMING OF THE CITY'S IDENTITY CHALLENGE SUPPORTS RETALIATION CONCERNS

The City's proposed effort to force Plaintiff out of John Doe status did not arise in a vacuum. Plaintiff alleges that Mayor Lopez-Viado repeatedly spoke publicly about Plaintiff's John Doe status during Council proceedings, including after Plaintiff pursued ADA accommodations, public-integrity oversight, and federal claims. Plaintiff further alleges that City-related press and public communications

have included identifying characteristics linking John Doe to Plaintiff's legal name despite Safe at Home concerns.

Plaintiff is also concerned that information relating to West Covina Police Department protective measures put in place after FBI involvement was publicly disclosed or discussed. Plaintiff does not ask this Court to decide every factual dispute now. He asks the Court to recognize the obvious: when officials already have publicized or criticized Doe status, a court order compelling identity disclosure would intensify the harm rather than merely formalize a neutral record.

Defendants' counsel Roger Scott stated that the City intends to file a motion requiring Plaintiff to proceed under his real name. Professor Eugene Volokh separately indicated he intends to seek leave to file an amicus brief supporting that result. Professor Volokh later clarified that he is acting in his individual capacity and not for Stanford, Hoover, UCLA, Reason Magazine, or any affiliated institution. Plaintiff does not challenge Professor Volokh's right to seek leave; Plaintiff challenges the dangerous relief being supported.

The proposed amicus position, as reflected in meet-and-confer correspondence, questions why a public official who conducts City business under his own name needs pseudonym protection in litigation. Plaintiff's answer is direct: because the risk is not ordinary public criticism. The risk is the court-created linkage between a protected identity and sensitive law-enforcement, Safe at Home, medical, and safety facts.

There is a grave difference between serving the public and being forced by litigation opponents to publish a judicial road map connecting Plaintiff's legal identity to cartel-related cooperation. The former is democracy. The latter is danger.

## VI. APPLICATION OF ADVANCED TEXTILE

**A. The Threatened Harm Is Severe**

The first Advanced Textile factor weighs strongly in Plaintiff's favor. The threatened harm is not embarrassment, economic discomfort, or political accountability. It is potential physical retaliation, exposure of Safe at Home protections, disclosure of [redacted] , and public linkage to medical and ADA materials. Courts permit pseudonymity when disclosure creates a risk of retaliatory physical or mental harm. This record meets that standard.

Plaintiff's sealed evidence includes federal subpoenas, Safe at Home certification, law-enforcement-related communications, and evidence of violence in the same criminal ecosystem. A litigant need not wait until a threat is carried out before the courthouse may protect him. The law does not require a person to prove danger by becoming its casualty.

**B. Plaintiff's Fear Is Reasonable**

Plaintiff's fear is objectively reasonable. It is anchored in documented law-enforcement cooperation, a federal cartel-related prosecution, Safe at Home protection, FBI-related travel warnings, and subsequent violence involving a key cartel-linked figure. It is also anchored in City conduct: repeated public discussion of Doe status, attempts to force identity disclosure, and public weaponization of sensitive ADA information.

The reasonableness of Plaintiff's fear is reinforced by the fact that both the State of California and a California Superior Court have recognized the need for protective treatment. Those facts do not bind this Court, but they confirm that Plaintiff's concerns have institutional grounding.

**C. Plaintiff Remains Vulnerable Despite Public Office**

Defendants may argue that Plaintiff is not vulnerable because he is an elected official. That argument is legally and morally unsound. Public office may require

public votes, public debate, and public accountability. It does not require public exposure of [redacted], Safe at Home details, medical records, or law-enforcement safety facts.

Indeed, public office can increase vulnerability. Plaintiff must attend public meetings, engage with constituents, and appear in predictable public settings. That public-facing role makes identity-linkage with safety facts more dangerous, not less. The issue is not whether Plaintiff can be criticized. He can. The issue is whether opponents may use the federal docket to strip protective measures that exist because the risk is serious.

**D. Defendants Suffer No Cognizable Litigation Prejudice**

The City and its counsel know Plaintiff's identity. They can investigate, depose, subpoena, serve, cross-examine, brief, and defend the case. They can refer to Plaintiff as John Doe in public filings and by legal name under seal if necessary. That is not unfair prejudice. It is ordinary litigation with protective boundaries.

Nor does pseudonymity prevent public oversight of this case. The public can read the claims, defenses, rulings, legal standards, and evidence that is not safety-sensitive. The public interest lies in adjudicating whether a municipal entity complied with disability, privacy, retaliation, and civil-rights law. The public does not need a docket entry linking Plaintiff's legal name to sealed safety facts to evaluate those issues.

**E. The Public Interest Favors Protection**

The public interest favors protecting litigants from avoidable physical danger while preserving meaningful public access to judicial decision-making. Forcing public disclosure would chill future witnesses, sources, disabled public servants, Safe at Home participants, and civil-rights plaintiffs from seeking judicial relief. A courthouse should be a forum for law, not a lighthouse that guides danger to a

protected person.

There is also a public interest in ensuring that elected officials with disabilities can seek ADA protection without being told that public service forfeits safety, privacy, and medical dignity. The rule urged by the City and proposed amicus would punish protected activity and deter future litigants from raising safety-sensitive claims.

## VII. REBUTTAL TO THE CITY AND PROPOSED AMICUS THEORY

### A. Public Office Does Not Waive Pseudonym Protection

The anticipated argument is simple but wrong: Plaintiff is an elected official; therefore pseudonymity is inconsistent. That syllogism collapses because it ignores the nature of the information at issue. Plaintiff is not asking to hide his public votes or ordinary Council work. Plaintiff asks to avoid public judicial linkage between his legal identity and sealed safety, law-enforcement, Safe at Home, and medical information.

A person may be publicly known in one context and still require anonymity in another. Victims, witnesses, minors, informants, asylum seekers, and persons with sensitive medical facts may have partial public lives. The law protects against compelled disclosure where the particular linkage creates severe harm. The fact of public service does not authorize a litigant's opponents to expose a different category of danger.

The San Gabriel Valley Tribune article and public political coverage do not defeat this motion. Media references may show that some public association exists; they do not establish waiver of all protections. Waiver is not a magic solvent. It must be intentional and directed to the protected information. Plaintiff has not consented to publication of his sealed safety record, [redacted], Safe at Home details, medical information, or law-enforcement warnings.

**B. Sealing Alone Is Not Enough**

Defendants may argue that Plaintiff can simply seal medical and safety documents. That argument ignores how identity-linkage functions. If the public docket itself requires Plaintiff's legal name, every sealed filing, redacted declaration, and safety reference becomes easier to connect to the legal identity. The harm is not only the content of one sealed exhibit. The harm is the public connection between identity, safety record, and the case.

Sealing is necessary but insufficient. Pseudonymity is the structural protection that prevents the public docket from becoming the index card that ties together protected facts. The Court can use both tools: public legal briefing under John Doe, sealed safety evidence, and narrowly redacted documents.

**C. Prior Filing Imperfections Were Not Waiver or Gamesmanship**

Plaintiff has proceeded pro se while under severe disability, safety, and emotional pressure. Some earlier filings included more information than Plaintiff now believes should have been public. That was not strategic waiver. Plaintiff faced an impossible choice: protect privacy and risk the Court not having the evidence, or file enough evidence to be heard. A pro se litigant's emergency effort to put evidence before the Court should not be converted into a permanent forfeiture of safety protection.

Plaintiff now submits a cleaner structure: black public redactions, highlighted unredacted versions, a sealing application, and a proposed protective order. This is the correct procedural path. The Court should not punish Plaintiff for learning the procedure while trying to prevent harm.

**D. Counsel and Amicus May Litigate, But They May Not Create Irreparable Harm**

Plaintiff does not ask the Court to silence Roger Scott, Buchalter, the City, or

Professor Volokh. They may argue law. They may argue Rule 10. They may argue public access. But they should not be permitted to create the very harm at issue before the Court has reviewed the sealed safety record. The line is simple: argue publicly about pseudonym doctrine; do not publicly disclose or link protected identity information.

Plaintiff fears that the City's identity challenge is retaliatory because it follows ADA complaints, federal litigation, public-integrity reporting, the addition of City officials as defendants, and public criticism of Doe status by Mayor Lopez-Viado. Even if Defendants deny retaliatory motive, the Court need not resolve motive now. The safety balance independently supports protection.

## VIII. MEDICAL, ADA, AND SAFE AT HOME MATERIALS REQUIRE HEIGHTENED CARE

This case involves extensive medical and ADA materials. Plaintiff has submitted and may continue to submit records concerning autism, sensory processing, accommodations, medical restrictions, accessible communications, Safe at Home protections, and security issues. These are not ordinary political documents. They implicate dignity, privacy, equal access, and safety.

The City's broader conduct underscores why pseudonymity is necessary. Plaintiff alleges the City has already allowed disability-accommodation information to be disclosed, discussed, or weaponized publicly. Plaintiff alleges that City officials have publicly spoken about his Doe status and that counsel now seeks to force public disclosure. That sequence creates a reasonable fear that without a firm protective order, sensitive information will again be used as a weapon.

The Court can order a disciplined process. Public filings should refer to John Doe. Identity-linking information should be filed under seal. Proposed amici should be subject to the same protective limitations as the parties. Counsel should meet and

confer about redactions before filing. The Court should make clear that protected information may not be revealed through briefing, exhibits, footnotes, captions, declarations, hyperlinks, press statements, or social-media posts.

## IX. THE REQUESTED PROTECTIVE ORDER IS NARROWLY TAILORED

The requested order is narrower than the harm. It would not seal the case. It would not bar discussion of municipal governance. It would not prevent the press from reporting on public orders. It would not prevent Defendants from using Plaintiff's legal name under seal if necessary for service, discovery, or confidential case administration.

The order would do only what is necessary: preserve John Doe status on the public docket; prohibit public linkage of Plaintiff's legal name to the protected safety record; require sealed filing for identity-linking and medical/safety material; require use of redacted public versions; and bind parties, counsel, agents, and proposed amici to the protective framework.

This is the least restrictive alternative. It balances Rule 10(a), public access, safety, and fairness. It lets the case proceed on its merits without turning identity disclosure into a weapon.

## X. SPECIFIC TERMS PLAINTIFF REQUESTS

Plaintiff requests that the Court enter an order providing:

- Plaintiff may proceed publicly as John Doe;
- All public filings shall use John Doe, and no public caption, brief, exhibit, declaration, hyperlink, press statement, or attachment may link John Doe to Plaintiff's legal name or Safe at Home information;

- Identity-linking information, [redacted], FBI or law-enforcement safety communications, Safe at Home documents, security measures, and medical/ADA records must be filed under seal unless the Court orders otherwise;
- Any proposed amicus seeking to file on pseudonym issues must comply with this protective order and must not publicly disclose or repeat identifying information;
- Defendants and counsel may use Plaintiff's legal name in service, discovery, and confidential communications only as necessary and subject to appropriate confidentiality protections;
- No party may argue that the Court should deny pseudonym status based on information that the party or its agents improperly disclosed or amplified;
- The order remains in effect unless modified by the Court after notice and an opportunity to be heard.

## XI. SPECIFIC HARM IF PUBLIC IDENTIFICATION IS ORDERED

The harm from forced identification is concrete. It is not an abstraction. Plaintiff would face immediate and cascading injuries that cannot be repaired by later monetary damages or after-the-fact sealing.

- Physical safety risk. The public docket would create a durable, searchable, government-authenticated link between Plaintiff and cartel-related law-enforcement cooperation. That type of linkage cannot be withdrawn once indexed, screenshotted, downloaded, or republished.
- Location and Safe at Home harm. Safe at Home exists to prevent ordinary institutional processes from exposing protected persons. A public federal caption using Plaintiff's legal name in this safety litigation would degrade that protection and encourage further attempts to locate or identify Plaintiff.

- Witness and source chilling. Future witnesses and confidential sources would see that cooperation in a dangerous federal case can later be exposed in unrelated civil litigation because a municipal defendant prefers a real-name caption. That chilling effect is contrary to law-enforcement and judicial interests.
- Medical and ADA harm. This action involves autism, medical documentation, accommodations, sensory and processing limitations, and ADA retaliation. Public identity linkage would connect those materials to Plaintiff's legal name in a way that cannot be undone.
- Retaliation and amplification harm. Plaintiff alleges City officials and politically aligned actors have already discussed Doe status and accommodation information publicly. A court-ordered disclosure would be treated as permission to escalate that conduct.
- Litigation access harm. If Plaintiff must choose between continuing this case and protecting his safety, his access to the Court is burdened. The courthouse should not force that choice where a narrower protective order solves the problem.

These harms are irreparable because their injury lies in disclosure itself. Once the identity connection is made, the bell cannot be unrung, the screenshot cannot be recalled, and the search-engine cache cannot be cross-examined. The Court can prevent that harm now without impairing Defendants' ability to litigate.

## XII. PLAINTIFF HAS NOT WAIVED PROTECTION

Defendants and proposed amicus may argue waiver based on public office, media coverage, or prior imperfect filings. None establishes waiver. Waiver of a safety protection should not be inferred casually, especially where the protected party is pro se, disabled, acting under emergency pressure, and facing a real safety record.

First, public office is not waiver. Plaintiff's public role concerns votes, Council communications, policy positions, and constituent service. The protected information concerns law-enforcement cooperation, Safe at Home status, medical/ADA records, and safety warnings. Those are different categories of information. Public visibility in one category does not waive protection in another.

Second, media coverage is not waiver. A newspaper may identify a public official or discuss a lawsuit. That does not authorize the City or the Court to publish sealed safety material or make a formal judicial identity linkage that increases danger. Public fragments do not equal voluntary surrender of all privacy and safety protections.

Third, prior pro se filings are not waiver. Plaintiff previously filed materials while trying to obtain emergency relief and while learning federal sealing procedures. That is not a knowing, intentional relinquishment of the right to seek protection. The more appropriate response is what Plaintiff now provides: properly formatted public redactions, highlighted unredacted versions, and a Local Rule 79-5 application.

Fourth, Defendants cannot manufacture waiver by their own conduct. If City officials, counsel, or aligned actors publicly discussed Plaintiff's Doe status or identifying characteristics, they should not be rewarded with a finding that the harm they helped create now eliminates protection. A party should not be permitted to set a fire and then argue that the house is already smoky.

## XIII. THE PROPOSED AMICUS POSITION DOES NOT DEFEAT THE SAFETY RECORD

Plaintiff respects the role of amici in appropriate cases. But an amicus brief supporting forced identification must confront the actual record, not an abstract debate about public access. The real question is not whether pseudonyms should be

disfavored in ordinary cases. They are. The question is whether this extraordinary record justifies protection. It does.

Professor Volokh's anticipated argument, as Plaintiff understands it from correspondence, is that Plaintiff's public status makes pseudonymity puzzling. That may be a fair academic question in an ordinary dispute. But this is not ordinary. Plaintiff's safety record includes government-recognized address confidentiality, law-enforcement cooperation, cartel-linked criminal proceedings, a witness-risk context, and medical/ADA materials.

The public can evaluate this case without Plaintiff's legal name. The public can know the City is being sued. It can know the claims. It can read the orders. It can review non-sensitive exhibits. What the public does not need is a forced federal-docket bridge between Plaintiff's legal identity and the sealed safety record.

The Court should therefore allow amicus participation only if any amicus agrees to the same protective boundaries: use John Doe in public filings; do not disclose identity-linking facts; file sensitive material under seal; and do not cite, repeat, or amplify protected information obtained from public rumor, press coverage, social media, or City communications.

## XIV. THE PRIOR CRIMINAL CASE MAKES THIS RECORD UNUSUAL

Many pseudonym motions require a court to evaluate danger from a cold record. This one does not. Plaintiff's sealed materials relate to a criminal case that was before this Court: United States v. Del Entertainment, Inc., et al., Case No. 2:22-cr-00267-MEMF. That case involved Kingpin Act charges and public materials identifying cartel-linked conduct. Plaintiff was subpoenaed as a witness in that matter.

Plaintiff respectfully submits that the Court's prior familiarity with that criminal proceeding supports careful treatment here. The Court need not accept sensational

accusations. It can compare the public DOJ materials, the subpoenas, the Safe at Home evidence, the state-court Doe hearing transcript, and the sealed safety communications. That record places this motion far beyond generalized discomfort.

Plaintiff also asks the Court to consider continuity of protection. Plaintiff believes the Court previously recognized the need to avoid questions that would disclose location or public-office identifying details in the criminal proceeding. It would be anomalous if the same federal courthouse protected those details in a criminal case but allowed a municipal civil defendant to expose them in a later civil-rights case.

**XV. PUBLIC ACCESS IS PRESERVED**

Granting this motion would not close the courthouse. The caption would remain public. The docket would remain public. Orders would remain public. Legal arguments would remain public. Non-sensitive exhibits would remain public. The public would still be able to scrutinize the City's conduct, Plaintiff's claims, and the Court's reasoning.

What would be protected is a limited class of identity-linking, safety-sensitive, medical, and law-enforcement-related information. That is precisely the kind of tailored protection Local Rule 79-5 and Rule 26(c) allow when good cause and compelling reasons exist. The Court can write a public order explaining the legal balance without disclosing sealed facts.

The public interest in open courts is strongest when the information illuminates judicial reasoning. It is weaker when the information adds danger but little understanding. Plaintiff's legal name adds almost nothing to public evaluation of the ADA, retaliation, privacy, and municipal-governance issues. It adds substantial danger to Plaintiff. The balance is not close.

## XVI. TEMPORARY ADMINISTRATIVE PROTECTION IS NECESSARY

Plaintiff also requests immediate temporary administrative protection while this motion is pending. The City and proposed amicus should be ordered not to file any public document containing Plaintiff's legal name or identity-linking information until the Court rules. Without interim protection, the motion could be defeated by the filing of the opposition itself.

This is not censorship. It is preservation of the Court's ability to decide the issue. A party should not be allowed to moot a pseudonym motion by disclosing the name in the caption, the first paragraph, or an attached exhibit before the Court rules. Temporary restraint on identity disclosure is the minimum necessary to preserve the status quo.

If the Court ultimately denies pseudonym protection, it can set an orderly process for any transition. But if the Court allows public disclosure first and later grants protection, the protection will be meaningless. Sequence matters. Safety protection must precede disclosure, not follow it.

## XVII. PROPOSED FINDINGS SUPPORTING THE ORDER

Plaintiff respectfully proposes the following findings for the Court's consideration:

- Plaintiff has shown a reasonable fear of severe harm if his legal name is publicly linked to the safety record in this case;
- The fear is supported by Safe at Home participation, prior law-enforcement cooperation, federal subpoenas, public DOJ/Treasury materials concerning cartel-linked conduct, and sealed safety communications;
- Defendants know Plaintiff's identity and will not suffer unfair litigation prejudice from public use of John Doe;
- The public interest is served by allowing the case to proceed publicly while shielding identity-linking and safety-sensitive material;

- Sealing alone is insufficient because the public caption and docket linkage would itself create harm;
- The protective order is narrowly tailored and does not prevent Defendants or amici from making legal arguments about pseudonym doctrine.

These findings are supported by the public record and the sealed materials. They also provide a clear framework for future filings, reducing conflict and preventing inadvertent disclosure.

## XVIII. LESS RESTRICTIVE ALTERNATIVES HAVE BEEN USED AND REMAIN AVAILABLE

Plaintiff has not asked for the most restrictive remedy. He has not asked to close hearings, seal all pleadings, bar public reporting, or prohibit legal argument. He has proposed a graduated set of less restrictive alternatives that preserve public access while preventing the specific safety harm.

- Use John Doe in public captions and docket text. This is the least intrusive method of preventing the docket itself from becoming an identity-linking device.
- File identity-linking and safety-sensitive materials under seal. This allows the Court and parties to access the evidence while protecting the public record from unnecessary danger.
- Use black redactions in public versions and highlighted unredacted versions under seal. This gives the Court transparency about exactly what is proposed for protection.
- Permit confidential use of Plaintiff's legal name where necessary for service, discovery, case administration, or attorney-client communications. This avoids unfairness to Defendants.
- Require any proposed amicus to comply with the same identity-protection rules.

This prevents a procedural workaround in which an amicus discloses what the parties are prohibited from disclosing.

These alternatives are practical, narrow, and familiar. Courts routinely use pseudonyms, protective orders, sealing, redactions, and in camera review to handle sensitive information. The City has no legitimate need to litigate this case by placing Plaintiff's legal name on the public docket when it already knows who he is.

## XIX. THE EQUITIES FAVOR PRESERVING THE STATUS QUO

The status quo is simple: this case has proceeded as John Doe, and the Court can decide whether that should continue after reviewing a complete record. The requested order preserves that status quo. By contrast, public disclosure would be irreversible. Once the name is filed publicly, the damage is done, even if the Court later grants pseudonym protection.

Equity has always been concerned with irreversibility. A court does not wait for an injury to become permanent before acting where a measured order can prevent the harm. Here, the proposed relief is modest: maintain Doe status while the Court evaluates the record; prohibit identity-linking disclosures; and allow sealed review. Defendants will not be harmed by waiting. They can file oppositions using John Doe. They can challenge the legal standard. They can argue public access. They can submit sealed materials if needed. Plaintiff, however, cannot recover confidentiality once it is lost. That asymmetry decides the equitable balance.

## XX. DOE STATUS DOES NOT IMMUNIZE PLAINTIFF FROM OFFICIAL ACCOUNTABILITY

Plaintiff anticipates the rhetorical argument that Doe status gives an elected official

a special shield. That is not true. Doe status here does not prevent constituents from evaluating Plaintiff's votes, Council speeches, policy positions, or public conduct. It does not bar criticism. It does not prevent the City from defending itself. It does not prevent the Court from issuing public rulings.

The protective order would simply prevent forced publication of a legal name in a case where the name is the bridge to safety-sensitive information. Plaintiff remains accountable for his official acts. He simply should not be required to pay for public service with exposure to cartel-related retaliation, medical disclosure, or destruction of Safe at Home protections.

The Constitution and civil-rights laws do not contain a public-official exception to personal safety. Nor does Rule 10(a). The Court can require openness where openness matters and protection where protection is necessary. That is not special treatment. It is reasoned adjudication.

## XXI. THE NAME ITSELF IS THE HARM IN THIS CONTEXT

In some cases, a party seeks to seal embarrassing facts while the name remains public. This case is different. The name itself is the connective tissue between otherwise separate pieces of information: Safe at Home protection, law-enforcement cooperation, cartel-linked prosecution, medical accommodation records, and municipal retaliation claims.

That is why the City's argument that Plaintiff can simply seal individual exhibits fails. A sealed exhibit still sits on a docket. If the docket uses Plaintiff's legal name, every later reference to the sealed safety record invites identification and speculation. The identity link is not collateral. It is the injury.

Courts permit pseudonyms precisely for cases where disclosing the name defeats the purpose of the litigation or creates the threatened harm. Plaintiff's motion falls within that doctrine. Public access can be preserved through public orders and

redacted filings. Safety requires that the public name not be linked.

## XXII. DEFENDANTS ARE ON NOTICE OF THE SAFETY RECORD

This is not a situation where Defendants lack notice of the danger. Plaintiff has repeatedly told City officials and counsel that Doe status, Safe at Home protection, medical confidentiality, and law-enforcement safety concerns are serious. Counsel has been informed that forced identification is not merely a caption preference. It is a safety issue.

When a party proceeds after receiving notice that requested relief may expose another person to serious danger, the Court should require strict procedural safeguards before any disclosure occurs. The proper course is not to publish first and balance later. The proper course is to preserve confidentiality, review the sealed record, and then decide whether any public disclosure is truly necessary.

Plaintiff also alleges that Mayor Lopez-Viado and other City-aligned actors have publicly discussed Doe status and identifying characteristics before this motion. That history matters. It shows that identity information has already been treated as political ammunition. The Court should not provide additional ammunition before deciding whether the ammunition should be removed from public use.

The City may contend that some members of the public already know or suspect the connection. That is not a reason to deny relief. Courts routinely protect information even when partial information has circulated. A federal order compelling or permitting disclosure carries an authority and permanence that rumor, speculation, or fragmented press coverage does not. Judicial confirmation would materially worsen the harm.

## XXIII. THE REQUESTED ORDER IS ADMINISTRABLE

The requested order is easy to administer. Parties can use John Doe in all public filings. If a filing requires Plaintiff's legal name or safety-sensitive facts, the party can file an application under Local Rule 79-5. If a dispute arises, the Court can resolve it by reviewing a proposed redaction. This is not burdensome. It is ordinary protective-order practice.

The order also gives clear rules to proposed amici. Anyone seeking to participate must follow the same limits as the parties: do not disclose the legal name, do not link the identity, and do not place safety-sensitive material on the public docket. That rule does not discriminate against a viewpoint. It protects the Court's process from irreparable disclosure.

Defendants' counsel can still communicate with Plaintiff for meet-and-confer purposes, can serve filings through CM/ECF, can use sealed materials as permitted, and can preserve all substantive defenses. The City loses no defense by using John Doe publicly. Plaintiff may lose his safety if the Court requires otherwise.

## XXIV. THE CONSTITUTIONAL BALANCE SUPPORTS PROTECTION

Public access is a constitutional and common-law value, but it is not a mechanical command to expose every fact in every case. Courts balance access against higher values, including safety, privacy, law-enforcement interests, and the fair administration of justice. Here, those higher values are not generalized. They are tied to a concrete record.

The City's proposed rule would collapse the balance into a slogan: public official, therefore public name. That is not law. The better rule is the one Advanced Textile supplies: weigh the actual harm, the reasonableness of the fear, the vulnerability to retaliation, prejudice, and the public interest. Each factor favors Plaintiff on this record.

The public has a legitimate interest in knowing what the Court decides. It does not have a comparable interest in a public docket link that may endanger a protected person. The law is not so brittle that it must choose between transparency and life. It can preserve both by granting this motion.

## XXV. CERTIFICATE OF COMPLIANCE

The undersigned, Plaintiff proceeding pro se, certifies that this memorandum contains approximately 6,564 words, excluding the caption, table of contents, table of authorities, signature block, certificate, indices, and exhibits, and complies with the 7,000-word limit of Local Rule 11-6.1.

## XXVI. CONCLUSION

This Court should grant the motion. Plaintiff is not asking to avoid accountability. He is asking the Court to avoid a preventable catastrophe. The federal courthouse should not become the mechanism that strips away Safe at Home protection, exposes law-enforcement cooperation, and links a protected person to lethal risks. Public access and human safety can coexist. The order Plaintiff requests allows both.

Plaintiff respectfully requests that the Court authorize continued proceeding under John Doe, grant the protective order, consider the sealed safety materials, and prohibit public disclosure or linkage of Plaintiff's legal name and safety-sensitive information unless and until the Court orders otherwise.

Dated: June 5, 2026

Respectfully submitted,

JOHN DOE

Plaintiff, Pro Se