John Doe
Address Confidential - Safe at Home Program
Email: JohnDoeCA2025@gmail.com

Plaintiff in Pro Per

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, an individual, | Case No. 2:26-cv-03659-MEMF-MBK |
| Plaintiff, | Assigned to Hon. Maame Ewusi-Mensah Frimpong |
| v. | Magistrate Judge Michael B. Kim |
| CITY OF WEST COVINA, | **NOTICE OF MOTION AND MOTION TO DISQUALIFY BUCHALTER LLP, ROGER L. SCOTT, CLAIRE L. KATZ, THOMAS M. O'CONNELL, KATHRYN B. FOX, AND ALL BUCHALTER ATTORNEYS FROM REPRESENTING DEFENDANT; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR EVIDENTIARY HEARING AND IN CAMERA REVIEW** |
| Defendant. | |

**TO DEFENDANT CITY OF WEST COVINA AND ITS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on the date and time to be reserved with the Court, or as otherwise ordered, Plaintiff John Doe will and does move for an order disqualifying Buchalter LLP, Roger L. Scott, Claire L. Katz, Thomas M. O'Connell, Kathryn B. Fox, Jennifer Misetich, and all Buchalter attorneys and personnel from representing Defendant City of West Covina in this action.

This motion is made under Federal Rules of Civil Procedure 7(b) and 83, the Court's inherent authority to supervise attorney conduct, Central District of California Local Rules including Local Rules 7-3, 7-4, 11-3, and 83-3.1.2, California Rules of Professional Conduct 1.7, 1.10, 1.13, 3.7, 4.1, and 8.4, the Ralph M. Brown Act as evidence of municipal authorization and lack of informed entity consent, and the authorities cited below.

Plaintiff requests: (1) disqualification of Buchalter and its attorneys from representing the City in this federal case; (2) an evidentiary hearing; (3) in camera review of all engagement letters, conflict waivers, indemnity/defense authorizations, scope-of-retention documents, and communications showing who authorized Buchalter to represent the City, Milan Mrakich, or any individual official; (4) an order requiring the City to obtain conflict-free counsel; (5) a temporary stay of any disputed filings signed by Buchalter pending resolution of this motion; and (6) preservation of all evidence relating to Buchalter's role, conflicts, billing, ADA advice, Gemelli investigation involvement, JPIA/CJPIA communications, Safe at Home/Doe-status challenges, and individual-official representation.

**Local Rule 7-3 Notice.** Because this motion directly concerns counsel's authority and conflicts, Plaintiff will serve this motion and request an immediate Local Rule 7-3 conference before filing it as a noticed motion unless the Court permits earlier filing. Plaintiff has repeatedly raised the conflict issues in writing with Buchalter and Mr. Scott, including the correspondence attached as exhibits. If the Court finds additional conference efforts necessary, Plaintiff requests leave to supplement the Local Rule 7-3 statement after the conference rather than denial on a procedural ground because the challenged counsel's continued participation is itself the issue.

Dated: June 10, 2026

Respectfully submitted,

**/s/ John Doe**
JOHN DOE
Plaintiff in Pro Per

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I. Introduction

II. Factual Record

III. Governing Law

IV. Argument

A. The Court should disqualify Buchalter because the firm is a participant, witness, and likely Doe defendant, not merely defense counsel.

B. Buchalter's representation of the municipal entity is materially limited by its own interests and its protection of individual actors.

C. Buchalter's personal representation of Milan Mrakich creates an unwaived, unauthorized conflict with the City as entity.

D. The alleged conflict waiver cannot be accepted without in camera review and proof of lawful entity authorization.

E. The Gemelli investigation and Capelle/JPIA records independently show that Buchalter's credibility, retention, and neutrality are disputed facts.

F. Buchalter's ADA advice, sealing opposition, Safe at Home/Doe-status conduct, and related retaliation evidence make the firm a central witness.

G. Lesser remedies are inadequate.

V. Conclusion

## TABLE OF AUTHORITIES

In re County of Los Angeles, 223 F.3d 990 (9th Cir. 2000)

United States v. Wunsch, 84 F.3d 1110 (9th Cir. 1996)

Colyer v. Smith, 50 F. Supp. 2d 966 (C.D. Cal. 1999)

People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., 20 Cal.4th 1135 (1999)

Flatt v. Superior Court, 9 Cal.4th 275 (1994)

City & County of San Francisco v. Cobra Solutions, Inc., 38 Cal.4th 839 (2006)

People ex rel. Clancy v. Superior Court, 39 Cal.3d 740 (1985)

County of Santa Clara v. Superior Court, 50 Cal.4th 35 (2010)

Forrest v. Baeza, 58 Cal.App.4th 65 (1997)

Comden v. Superior Court, 20 Cal.3d 906 (1978)

Smith, Smith & Kring v. Superior Court, 60 Cal.App.4th 573 (1997)

Kennedy v. Eldridge, 201 Cal.App.4th 1197 (2011)

Oaks Management Corp. v. Superior Court, 145 Cal.App.4th 453 (2006)

Kirk v. First American Title Ins. Co., 183 Cal.App.4th 776 (2010)

California Rules of Professional Conduct, rules 1.7, 1.10, 1.13, 3.7, 4.1, 8.4

Government Code sections 54950, 54952.2, 54954.2, 54956.9, 54957.1, 995, 995.2

Federal Rules of Civil Procedure 7(b), 11, and 83; C.D. Cal. Local Rules 7-3, 7-4, 11-3, 83-3.1.2

# I. INTRODUCTION

This motion presents an ethics problem that goes to the integrity of this federal civil-rights case. Buchalter is not a neutral outside defense firm whose only role is to defend a public entity after a lawsuit was filed. The record shows that Buchalter attorneys participated in the challenged events, advised on the disputed ADA/confidentiality issues, coordinated or structured the Gemelli investigation, represented individual City actors, asserted a secret conflict waiver, challenged sealing of medical and accommodation materials, and now seeks to continue representing the City in the very case where Buchalter's conduct is part of the evidence.

The City of West Covina is the client, not Milan Mrakich, not Mayor Lopez-Viado, not Tony Wu, not Thomas Duarte, not Buchalter, and not any individual official whose conduct may expose the City to liability. Plaintiff is a member of the governing body. A lawyer for a municipal entity cannot simultaneously protect the entity, protect individual actors from oversight, protect its own conduct, and attack a disabled elected official's ADA rights and Doe status where those same issues form the claims and defenses.

Buchalter has crossed the line from advocate to participant and witness. Roger Scott has appeared in the Shewmaker case as personal counsel for City Manager Milan Mrakich. Kathryn Fox and Thomas O'Connell participated in communications concerning the Gemelli investigation and disputed ADA/Safe at Home disclosures. Jennifer Misetich and Buchalter are implicated in the Capelle/JPIA public-records evidence, including disputed statements that Buchalter was appointed by JPIA. Buchalter has taken litigation positions that protect its own advice and its own billing, not only the City's entity interests.

Plaintiff does not seek disqualification because Buchalter is aggressive. Plaintiff seeks disqualification because Buchalter's loyalty is divided, its authority is disputed, its own lawyers are witnesses, and the City may have claims or defenses adverse to Buchalter and individual actors. The Court should disqualify Buchalter or, at minimum, order immediate in camera review and an evidentiary hearing before permitting Buchalter to continue litigating this case.

# II. FACTUAL RECORD

A. Buchalter is counsel of record for the City in this federal action and has filed merits-related positions on sealing, ADA information, and public access. In Respondent's opposition to Plaintiff's sealing application, Mr. Scott and Ms. Katz argued that disability and accommodation records do not automatically support sealing and urged the Court to deny sealing of records that include disability/accommodation materials. That filing puts Buchalter directly into the disputed ADA confidentiality and retaliation issues because Plaintiff alleges that City officials and counsel disclosed, minimized, and weaponized his disability accommodations. See Ex. A.

B. Mr. Scott also appears in a different case as personal counsel for Milan Mrakich. In John Doe v. John Shewmaker, LASC Case No. 25PSRO01328, Mr. Scott signed and filed a reply as attorney for Third Party Milan Mrakich. See Ex. B. That filing sought to quash a subpoena directed to Mr. Mrakich concerning meeting logistics, staff/security instructions, and ADA/safety accommodation records. The subpoena expressly sought communications about the restraining order, City Hall logistics, WCPD/security coordination, and ADA/safety accommodation implementation. See Ex. D. These are not merely private facts; they overlap with this federal case's issues concerning ADA access, retaliation, meeting access, public safety, and City conduct.

C. Buchalter's own service email in the Shewmaker matter triggered a response from Mr. Shewmaker referring to Plaintiff's identity, security detail, and restraining-order allegations. See Ex. C. The point is not that Buchalter wrote Mr. Shewmaker's email. The point is that Buchalter's parallel representation and filings have become part of the factual record surrounding attempts to minimize safety issues, undermine

Doe status, and oppose discovery into City conduct.

D. Buchalter's Capelle memorandum creates a separate credibility and conflict problem. The redacted public excerpt shows Buchalter represented to the City Council that Buchalter had been appointed by the Joint Powers Insurance Authority (JPIA) in Vincent Capelle v. City of West Covina. See Ex. E. But the public CPRA email chain shows CJPIA/Athens had assigned Konrad Rasmussen, questioned who authorized Jennifer Misetich/Buchalter, requested proof of the alleged agreement, and confirmed that the City would pay the delta above what the panel paid if Jennifer Misetich/Buchalter handled the case. See Ex. F. This creates a serious factual dispute about whether Buchalter accurately described its retention and whether City management, not JPIA, selected Buchalter at premium taxpayer expense.

E. Buchalter's role in the Gemelli investigation also creates conflict. Thomas O'Connell wrote that Buchalter was coordinating outside counsel and that the City Attorney's Office remained responsible for coordinating outside counsel and protecting City legal interests. The same email chain shows Buchalter copied Kelly Gemelli and discussed the investigation process. See Ex. G. Kathryn Fox later responded to Plaintiff's demands concerning the workplace investigation report and stated Buchalter had reviewed the demands, found them without merit, and believed claims concerning medical diagnosis or disability accommodations were unsupported because Plaintiff had publicly disclosed some information. See Ex. H. Those statements are direct evidence of Buchalter's advice on disputed ADA confidentiality and publication issues.

F. The Gemelli conflict evidence is not speculative. Public LinkedIn screenshots show Kelly Gemelli worked at Jackson Lewis as Principal from September 2011 to April 2021, while Kathryn Fox worked at Jackson Lewis as an employment litigation attorney from October 2014 to May 2018. See Exs. I-J. Plaintiff alleges that Buchalter and/or City representatives publicly presented Gemelli as neutral and as if there were no prior relationship or business issue. Whether that representation was accurate is a factual issue. Buchalter attorneys cannot be both witnesses to and defenders of that issue.

G. Plaintiff has repeatedly complained that City counsel and Buchalter interfered with ADA accommodations and turned disability-related processing issues, AI/assistive-technology issues, and CPRA compliance into retaliation. The record includes Plaintiff's written ADA/CPRA clarification emails, the signed accommodation agreement requiring structured communication and additional time, and Buchalter's own AI-preservation and report-publication response. See Exs. H, K. Plaintiff reasonably anticipates seeking leave to add Doe defendants based on evidence developed through discovery, including Buchalter attorneys or employees if the evidence confirms that they directed or participated in the retaliation, ADA interference, disclosure, or obstruction alleged in this federal action.

H. Plaintiff is also a Safe at Home participant and litigates under Doe status because of documented safety concerns. Buchalter and Mr. Scott have known that Plaintiff's identity and safety are legally sensitive. Yet Buchalter has litigated in ways that push disclosure, oppose sealing, and minimize safety and ADA privacy concerns. The Court need not decide Doe status on this motion; the point is that Buchalter's own conduct concerning identity, sealing, ADA confidentiality, and safety has become disputed evidence.

## III. GOVERNING LAW

Federal courts have inherent authority to regulate attorney conduct and disqualify counsel to protect the integrity of proceedings. In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000); United States v. Wunsch, 84 F.3d 1110, 1114 (9th Cir. 1996). This District's Local Rules require attorneys to comply with California professional-conduct standards. C.D. Cal. L.R. 83-3.1.2. Motions must identify grounds and relief with particularity. Fed. R. Civ. P. 7(b).

The Court should scrutinize disqualification motions carefully because they can be used tactically. But the central concern is public trust in the administration of justice and the integrity of the attorney-client

relationship. People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., 20 Cal.4th 1135, 1145 (1999). A nonclient may seek disqualification where counsel's conflict so infects the litigation that it affects the moving party's right to a just and lawful determination. Colyer v. Smith, 50 F. Supp. 2d 966, 971-72 (C.D. Cal. 1999).

Rule 1.13(a) provides that an attorney retained by an organization represents the organization acting through its authorized constituents. The client is the entity. Rule 1.7 prohibits representation if there is a significant risk the lawyer's representation will be materially limited by responsibilities to another client, a former client, a third person, or the lawyer's own interests, unless the lawyer obtains informed written consent where permitted. Rule 1.10 imputes conflicts to the firm. Rule 3.7 addresses the advocate-witness problem. Rule 8.4 prohibits dishonesty, misrepresentation, and conduct prejudicial to the administration of justice.

California courts treat the duty of loyalty as fundamental. Flatt v. Superior Court, 9 Cal.4th 275, 284 (1994). Public entity representation requires special concern for the appearance and reality of loyalty, neutrality, and public trust. See City & County of San Francisco v. Cobra Solutions, Inc., 38 Cal.4th 839, 853-54 (2006); People ex rel. Clancy v. Superior Court, 39 Cal.3d 740, 746-47 (1985); County of Santa Clara v. Superior Court, 50 Cal.4th 35, 55-57 (2010). In organizational settings, counsel may not simply treat officers, managers, or officials as the client where their interests diverge from the entity. See Forrest v. Baeza, 58 Cal.App.4th 65, 74-75 (1997).

The advocate-witness rule prevents a lawyer from using argument as testimony, vouching for facts, or placing the factfinder in the position of judging the credibility of counsel. Comden v. Superior Court, 20 Cal.3d 906, 912-13 (1978); Smith, Smith & Kring v. Superior Court, 60 Cal.App.4th 573, 580-82 (1997); Kennedy v. Eldridge, 201 Cal.App.4th 1197, 1209 (2011); Oaks Management Corp. v. Superior Court, 145 Cal.App.4th 453, 464 (2006).

The Brown Act evidence is relevant because Buchalter claims authorization, waiver, or consent by a public entity. If a public body took action to authorize conflicted representation, premium-rate payment, waiver of conflicts, or taxpayer-funded defense of an individual official, the City should be able to identify the agenda item, closed-session authority, minutes, report-out, and decisionmaker. Gov. Code §§ 54950, 54954.2, 54956.9, 54957.1. Plaintiff does not ask the Court to adjudicate a standalone Brown Act claim here; he asks the Court not to accept a secret waiver or vague authorization as proof of valid informed entity consent.

## IV. ARGUMENT

### A. Buchalter is not merely counsel; it is a participant, witness, and likely subject of proof.

The central problem is not simply that Plaintiff dislikes Buchalter. The problem is that Buchalter's own conduct is part of the case. Plaintiff's federal claims involve ADA accommodations, effective communication, retaliation, selective enforcement, disability-confidentiality violations, Doe/safety issues, public-records retaliation, and municipal liability. Buchalter has advised on, participated in, or litigated those very issues.

Buchalter attorneys are likely witnesses concerning: (1) who authorized the Gemelli investigation; (2) what relationship existed between Buchalter/Fox and Kelly Gemelli; (3) whether City officials were told that disability information could be published; (4) whether Buchalter approved or advised on press releases, report publication, or disability disclosures; (5) what role Buchalter had in LCW/LCW-related accommodation advice; (6) why Mr. Scott opposed sealing and Doe-status protections; (7) why Buchalter represented Milan Mrakich personally; and (8) who authorized any conflict waiver.

Those are not collateral issues. They go to deliberate indifference, retaliatory motive, causation, Monell policy/custom, credibility, privilege, admissibility, and remedy. If the City is represented by counsel whose own advice and conduct are disputed, the City cannot independently evaluate whether the proper defense is

to defend the entity by distancing itself from unauthorized or conflicted actors, including Buchalter itself.

## B. Buchalter's own interests materially limit its representation of the City.

The City has at least two potential defenses that conflict with Buchalter's interests. First, the City may argue that any unlawful retaliation, ADA interference, disclosure, or public-records misuse was caused by individual officials, management, outside counsel, or investigators acting outside lawful authority. Second, the City may need to evaluate whether it has claims against Buchalter, Gemelli, or others for negligent, unauthorized, conflicted, or misleading advice. Buchalter cannot reasonably provide independent advice on those defenses because they point at Buchalter.

The Capelle/JPIA evidence makes the conflict concrete. Buchalter's memo to the Council stated Buchalter was appointed by JPIA. The CPRA chain shows CJPIA/Athens had assigned another lawyer, asked who made the alleged agreement with Buchalter, and discussed the City's obligation to pay a delta above panel rates. Exs. E-F. A conflict-free City lawyer might investigate whether the City was misled, whether public money was improperly committed, whether Council approval was required, and whether the entity should seek reimbursement or corrective action. Buchalter cannot investigate itself or advise the City whether to sue Buchalter to recoup public funds.

Likewise, the Gemelli/Fox/O'Connell record creates a self-interest problem. If the Gemelli investigation was not neutral, if prior professional relationships were not disclosed, if ADA confidentiality was mishandled, or if the report was used as a retaliatory tool, Buchalter has a direct interest in defending its own role. That interest materially limits its ability to provide undivided loyalty to the City.

## C. Mr. Scott's representation of Milan Mrakich personally is materially adverse to the City and unauthorized on this record.

Mr. Scott signed a state-court filing as attorney for Third Party Milan Mrakich. Ex. B. Mr. Mrakich is not the City. He is a City Manager, witness, actor, and potential source of liability. His interests may diverge sharply from the City: Mr. Mrakich may wish to justify restrictions, hide communications, avoid subpoenas, protect personal credibility, shift blame to the City, or claim that the City should indemnify him. The City may have the opposite interest: obtaining the truth, preserving evidence, identifying unauthorized conduct, and avoiding entity liability for personal acts.

In the Shewmaker reply, Mr. Scott argued that Plaintiff had no entitlement to Mr. Mrakich's communications and no basis to seek ADA/safety records in connection with restraining-order enforcement. Ex. B. But those records concern City Hall safety, meeting access, ADA accommodations, staff instructions, and official conduct. Ex. D. The same categories are relevant to Plaintiff's federal ADA and retaliation claims. Thus, Buchalter has already taken a position for Mr. Mrakich personally that tends to limit discovery into City conduct and ADA/safety implementation.

If the City is paying or permitting Buchalter to defend Mr. Mrakich personally, the City must identify lawful authority. For a municipal entity, that authority should be traceable to the governing body or lawful indemnification process. If Buchalter relies on a closed-session or confidential waiver, the Court should review it in camera. A public entity cannot cure a conflict through a hidden waiver that the governing body member most affected says he never saw, never voted on, and never had placed on a proper agenda.

## D. The alleged conflict waiver cannot cure the conflict without proof of valid entity consent.

Buchalter has previously claimed that an informed written consent or conflict waiver exists, but it has not produced the waiver for review. A court cannot accept the phrase "conflict waiver" as a talisman. The Court must know who signed it, who the client was, what conflicts were disclosed, whether individual representation was included, whether Buchalter's self-interest was disclosed, whether the City Council approved it, and whether the waiver covered the federal case, the Shewmaker case, the Capelle/JPIA issue, and the Gemelli investigation.

For a private corporation, authority and informed consent can be difficult enough. For a public entity, the problem is greater because the City's client decisions must be made through lawful municipal processes. If a lawyer claims consent by a municipal entity to conflicted representation, the Court should require the agenda description, closed-session authority, minutes/report-out where applicable, and the decisionmaker. Without that evidence, the waiver does not demonstrate informed written consent by the entity.

The Court should order Buchalter to lodge all conflict waivers and engagement documents in camera. If Buchalter refuses, the Court should infer that Buchalter cannot establish valid informed consent and should disqualify the firm.

### E. The Gemelli investigation conflicts make Buchalter a witness and undermine neutrality.

Plaintiff alleges that the Gemelli investigation and report were used to retaliate against him for protected oversight, ADA activity, and reports to law enforcement. Buchalter's attorneys were not bystanders. O'Connell's emails show Buchalter coordinating investigation communications, copying Kelly Gemelli, and describing Buchalter's role in protecting City legal interests. Ex. G. Fox later responded to Plaintiff's objections to the report and disability-disclosure issues. Ex. H.

The LinkedIn exhibits show an undisclosed professional overlap between Kathryn Fox and Kelly Gemelli at Jackson Lewis from 2014 to 2018. Exs. I-J. Plaintiff alleges that the Council was led to believe the investigator was independent and that there had been no prior relationship or business connection. Whether that representation was true is an evidentiary issue. Buchalter cannot cross-examine or defend that issue while its own partner may be the witness whose credibility is at stake.

The Court need not decide the merits of the Gemelli report now. It need only decide whether Buchalter can ethically defend the City when Buchalter's own role in creating, structuring, defending, and publishing the report is part of the case. The answer is no.

### F. Buchalter's ADA, sealing, Safe at Home, and Doe-status conduct makes the conflict severe.

Plaintiff's ADA case is not only about ramps or equipment. It is about effective communication, confidentiality, retaliation, and deliberate indifference. Buchalter's Katie Fox email asserted that Plaintiff's demands to remove disability-related information from the report were meritless and that the report did not disclose information not already public. Ex. H. Buchalter's sealing opposition took the position that disability and accommodation materials should not be sealed merely because they involve disability or accommodations. Ex. A. Those positions are evidence of the exact deliberate-indifference and confidentiality issues Plaintiff asserts.

Plaintiff also litigates as John Doe and is a Safe at Home participant because of serious safety concerns. Mr. Scott has opposed Doe-status protections and has taken positions that Plaintiff contends place him at risk. Plaintiff further believes Buchalter and the City have aligned with or encouraged efforts by third parties to challenge Doe status. Whether or not Buchalter disputes that, counsel's own conduct concerning identity, sealing, and safety will be evidence. Counsel cannot defend the City on issues where counsel's own acts and motives are disputed.

Buchalter's likely-witness problem is not cured by assigning another lawyer in the same firm. Rule 1.10 imputes conflicts within the firm, and the firm's institutional interest in avoiding liability, discipline, fee scrutiny, and adverse findings affects all Buchalter attorneys. See Kirk v. First American Title Ins. Co., 183 Cal.App.4th 776, 800-01 (2010).

### G. Lesser remedies are inadequate.

A protective order or instruction will not cure the conflict. The issue is not merely confidentiality of discovery. The issue is loyalty, independent judgment, witness testimony, and the City's ability to evaluate claims against its own counsel. Nor is screening adequate where the entire firm's institutional conduct, billing, and advice are at issue.

At minimum, the Court should order: (1) in camera review of all waivers and engagement letters; (2) evidentiary hearing with testimony from Roger Scott, Thomas O'Connell, Kathryn Fox, Jennifer Misetich, Milan Mrakich, Thomas Duarte, and relevant City/JPIA personnel; (3) a stay on Buchalter-filed merits/sealing/Doe-status filings pending resolution; and (4) appointment or retention of independent conflict-free counsel for the City before further substantive litigation proceeds.

## V. CONCLUSION

Buchalter's continued appearance threatens the integrity of this case. The firm cannot simultaneously defend the City, defend individual actors, defend its own advice, oppose discovery into its own conduct, seek to maintain sealed conflict waivers, and litigate ADA/Doe/sealing issues where its own attorneys are witnesses. Plaintiff respectfully requests that the Court grant this motion, disqualify Buchalter and its attorneys from representing the City, order conflict-free counsel to appear, and conduct in camera review and an evidentiary hearing as necessary.

Dated: June 10, 2026

Respectfully submitted,

**/s/ John Doe**
JOHN DOE
Plaintiff in Pro Per

NOTICE OF MOTION AND MOTION TO DISQUALIFY BUCHALTER LLP AND ROGER L. SCOTT