**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN DOE,<br>Plaintiff,<br><br>vs.<br><br>CITY OF WEST COVINA, et al.,<br>Defendants. | Case No. 2:26-cv-03659-MEMF-MBK<br><br>PLAINTIFF JOHN DOE'S SUPPLEMENTAL EX PARTE APPLICATION RE NEW EVIDENCE OF ADA INTERFERENCE, MEDICAL-CONFIDENTIALITY BREACH, AND REQUEST FOR EMERGENCY STATUS CONFERENCE |

**PLAINTIFF JOHN DOE'S SUPPLEMENTAL EX PARTE APPLICATION RE NEW EVIDENCE OF ADA INTERFERENCE, MEDICAL-CONFIDENTIALITY BREACH, AND REQUEST FOR EMERGENCY STATUS CONFERENCE**

**Plaintiff submits this focused supplemental ex parte application to address new evidence arising after his pending emergency ADA filing. This supplement concerns only the City's continuing ADA Title II noncompliance, the handling of Plaintiff's confidential medical accommodation letter, and litigation counsel's alleged interference with the accommodation process while this Court is being asked to intervene on an emergency basis.**

**I. RELIEF REQUESTED**

Plaintiff requests a narrow emergency order protecting the ADA process and medical confidentiality while the Court considers the pending emergency application and any reconsideration motion concerning ADA access. Specifically, Plaintiff requests that the Court:

• Order Defendants and their counsel not to publicly disclose, quote, summarize, publish, circulate, or use Plaintiff's confidential medical/ADA accommodation materials except for legitimate ADA accommodation review, litigation filings under seal, or further order of the Court;

• Order the City to identify, under seal if necessary, every person and entity who received Dr. Chang's June 2026 medical letter, the date of receipt, the source of receipt, and the stated purpose for receipt;

• Order the City to identify whether Roger L. Scott, Buchalter LLP, or any litigation counsel requested, reviewed, transmitted, directed, commented on, or influenced LCW / Liebert Cassidy Whitmore's handling of Dr. Chang's letter or Plaintiff's accommodation request;

• Order Defendants to preserve all communications, texts, emails, notes, metadata, Teams messages, calendar entries, and billing records concerning Dr. Chang's letter, LCW, Roxanne Lerma, Roger Scott, Buchalter, Milan Mrakich, and any City official's decision to grant, deny, delay, narrow, or modify Plaintiff's accommodation request;

• Set an emergency status conference regarding ongoing ADA accommodation implementation, confidentiality of medical information, and alleged retaliation/interference by conflicted litigation counsel; and

• Confirm that the City may not treat any prior ruling or pending reconsideration process as permission to disregard new medical evidence or refuse the ADA interactive accommodation process.

**II. NEW FACTS REQUIRING EMERGENCY REVIEW**

On June 8, 2026, Plaintiff transmitted Dr. Chang's updated medical accommodation letter to Roxanne Lerma, the City's ADA Coordinator, with the subject line 'CONFIDENTIAL ADA LETTER.' Plaintiff did

not submit that medical letter to the public record in this supplement. The public exhibit shows only the transmission proof and attachment name, not the medical content. (Exhibit A.)

Plaintiff separately texted Ms. Lerma that the letter contained medical information and specifically asked that it not be leaked or forwarded outside the ADA process. Plaintiff wrote that he wanted to make sure his medical information was not leaked and asked that it not be forwarded to anyone else because Ms. Lerma is the ADA Coordinator. Ms. Lerma responded that she would review and provide the letter to Brittany, Joung, and Corrigan from LCW. (Exhibit B.)

On June 10, 2026, Plaintiff had a 22-minute call with Ms. Lerma. The call log corroborates that the call occurred. (Exhibit C.) Plaintiff states in his declaration that, during that call, Ms. Lerma told him that Roger Scott had been involved and had asked LCW for a copy of the same doctor letter, even though Plaintiff understood Mr. Scott already had access to the letter through proposed sealed litigation materials. Plaintiff submits this evidence not to ask the Court to decide the ultimate merits today, but to show why immediate preservation, confidentiality controls, and a status conference are necessary.

This is occurring while the City's June 16, 2026 closed-session agenda identifies this federal case as a pending litigation item. (Exhibit E.) Plaintiff is concerned that the City's litigation counsel and City officials will use the closed-session process to coordinate litigation strategy, ADA strategy, and medical-document handling in a way that protects individual actors and counsel rather than ensuring compliance with the ADA.

## III. THE CITY'S ADA PROBLEM IS NOT ISOLATED TO PLAINTIFF

The new public record also shows a broader pattern of ADA noncompliance. Resident Vivian Meleka requested disability accommodation regarding the City's street-sweeping enforcement. On June 12, 2026, Plaintiff asked whether the City ever conducted an interactive ADA accommodation meeting or got back to her regarding her accommodation request. Ms. Meleka answered: 'no, they didn't.' (Exhibit D.)

This occurred after Plaintiff expressly warned City officials that Ms. Meleka's request was an official ADA reasonable-accommodation request and that a generic response did not satisfy the ADA. Mayor Pro Tem Cantos also warned the City that a tailored interactive approach based on individual circumstances was required. Acting City Manager Milan Mrakich stated that staff, assisted by legal counsel, would review and provide a substantive reply, yet Ms. Meleka later confirmed that the interactive process did not occur. (Exhibit D.)

That evidence is relevant because the same City actors and counsel are now handling Plaintiff's accommodations. Plaintiff is not asking the Court to adjudicate Ms. Meleka's rights in this case. Plaintiff submits the record to show that the City's failure to provide a meaningful ADA process is ongoing and systemic, not an isolated misunderstanding.

## IV. LEGAL STANDARD

Title II of the ADA prohibits a public entity from excluding a qualified individual with a disability from participation in, denying that person the benefits of, or subjecting that person to discrimination in public services, programs, or activities. 42 U.S.C. section 12132; 28 C.F.R. section 35.130(a). A public entity may not provide a service or benefit that is not equal to, or not as effective as, that provided to others, and it must make reasonable modifications to policies, practices, or procedures when necessary to avoid disability discrimination unless the entity can show a fundamental alteration. 28 C.F.R. section 35.130(b)(1), (b)(7).

The ADA also prohibits retaliation, coercion, intimidation, threats, or interference against a person because that person exercised ADA rights or aided others in exercising ADA rights. 42 U.S.C. section 12203(a)-(b). A public entity's failure to act after being placed on notice of a need for accommodation may

support deliberate indifference. See Duvall v. County of Kitsap, 260 F.3d 1124, 1138-39 (9th Cir. 2001).

Emergency relief is appropriate where the moving party shows a likelihood of success, irreparable harm, a balance of equities favoring relief, and that relief serves the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). When government action is involved, the public interest and balance of equities factors merge. Nken v. Holder, 556 U.S. 418, 435 (2009). Federal Rule of Civil Procedure 65 recognizes emergency temporary relief when specific facts show immediate and irreparable injury before the adverse party can be heard; Plaintiff is serving this application and requests prompt emergency review, not a secret order.

## V. ARGUMENT

### A. Plaintiff faces immediate, irreparable harm because ADA accommodations must be timely to be meaningful.

The City Council process, agenda review, closed sessions, written communications, and disability-access arrangements occur in real time. If Plaintiff is denied effective accommodation before a meeting, before a deadline, or before medical information is circulated, the harm cannot be fully repaired months later. A later damages remedy cannot restore equal participation in governmental proceedings already concluded.

Plaintiff respectfully contends that the Court's prior accommodation-related ruling rested on an incomplete evidentiary record and is now being used by the City and its counsel to disregard Dr. Chang's updated letter. Plaintiff has filed or is filing reconsideration because the City is treating the prior ruling as permission to continue noncompliance. The emergency is not abstract; the City is acting now, counsel is involved now, and a City closed-session litigation item is scheduled for June 16, 2026.

### B. Litigation counsel's involvement in the ADA process requires immediate court supervision.

Plaintiff does not object to appropriate ADA review by the City's ADA Coordinator or properly designated accommodation counsel. Plaintiff objects to conflicted litigation counsel obtaining, directing, minimizing, or weaponizing confidential medical accommodation evidence while simultaneously defending the City and opposing Plaintiff's claims.

Roger Scott and Buchalter are not neutral ADA facilitators. Plaintiff has moved to disqualify them and has alleged that Buchalter attorneys participated in the same conduct at issue in this litigation. If Mr. Scott is requesting Plaintiff's treating-physician letter from LCW or directing LCW's accommodation analysis, the Court should require immediate disclosure of who received the letter, who requested it, and what role litigation counsel is playing.

This request is narrow. Plaintiff is not asking the Court to decide the ultimate disqualification issue in this application. Plaintiff asks only that medical confidentiality be protected, that records be preserved, and that the Court hold a status conference before the accommodation process is further contaminated by litigation strategy.

### C. The broader ADA record supports emergency action.

The Meleka correspondence shows that the City was warned that an ADA accommodation request required an individualized process and that a generic response would not satisfy the ADA. Yet the resident later confirmed that no interactive ADA meeting or accommodation response occurred. That pattern matters here because Plaintiff's accommodation requests are being handled by the same City administration and legal structure. The City's problem is not lack of notice. The problem is refusal, delay, and routing disability access through litigation positions.

### D. The requested order is narrowly tailored and protects the public interest.

The requested order does not prevent the City from defending itself. It does not prevent appropriate ADA review. It does not require public disclosure of medical information. It simply requires the City to preserve records, identify who received Plaintiff's confidential medical letter, stop public or political use of medical information, and participate in an emergency status conference so the Court can prevent further harm.

## VI. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court grant the focused emergency relief requested, protect Plaintiff's medical information, require preservation and identification of recipients, and set an emergency status conference regarding ADA interference, retaliation, and accommodation implementation.

Dated: June 13, 2026

Respectfully submitted,

/s/ John Doe
Plaintiff, Pro Se