# EXHIBIT A

**June 8, 2026 email transmission of confidential ADA medical letter to ADA Coordinator Roxanne Lerma**

**PUBLIC EXHIBIT - DOES NOT INCLUDE UNREDACTED MEDICAL CONTENT**

Exhibit A - Confidential ADA Letter Transmission Screenshot



🖅 **Found in iCloud Sent Mailbox**

**From: Brian Gutierrez** >
**To: Roxanne E. Lerma** >
June 8, 2026 at 3:04 PM

# CONFIDENTIAL ADA LETTER



**DrChang June letter.pdf**
233 KB

   

# EXHIBIT B

**Text messages with ADA Coordinator concerning confidentiality and transmission to LCW**

**PUBLIC EXHIBIT - DOES NOT INCLUDE UNREDACTED MEDICAL CONTENT**

Exhibit B - Text Messages with ADA Coordinator (1 of 2)



**Roxanne Lerma WEST...** 〉

Monday 2:51PM

Hi Councilmember Gutierrez
I am home sick today. I am trying to limit my talking because it triggers my coughing.  Would you like to send me a text?

Hi Roxanne am going to send you a new letter from my Doctor, please send to Britnay joung and other lcw lawyer. Please tell them to update you this week.

I want to make sure my medical information is not leak so please do not forward to anyone else since your the ADA Coordinator.

Subject

  iMessage

Exhibit B - Text Messages with ADA Coordinator (2 of 2)



**Roxanne Lerma WEST...** ⟩

I want to make sure my medical information is not leak so please do not forward to anyone else since your the ADA Coordinator.

I also included you in the email to Lisa, that is an official request for a extension because of my disability

**2 Replies**



Good Afternoon.
Thank you for the text. I will review and provide to Brittany, Joung, and Corrigan from LCW.

Subject

iMessage

2 Replies

# EXHIBIT C

**June 10, 2026 call log showing 22-minute call with ADA Coordinator Roxanne Lerma**

**PUBLIC EXHIBIT - DOES NOT INCLUDE UNREDACTED MEDICAL CONTENT**

EXHIBIT C

**Exhibit C - June 10 Call Log**



# EXHIBIT D

**ADA public violations email chain concerning City failure to conduct interactive ADA process**

**PUBLIC EXHIBIT - DOES NOT INCLUDE UNREDACTED MEDICAL CONTENT**

From: **Vivian Meleka** vivianmeleka@yahoo.com
Subject: **Re: West Covina - street sweeping**
Date: **Jun 12, 2026 at 2:00:12 AM**
To: **Brian Gutierrez** Brian.Gutierrez@westcovina.org

---

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

**Hi Brian, no, they didn't.**

Sent from Yahoo Mail for iPhone

> On Friday, June 12, 2026, 1:12 AM, Brian Gutierrez <Brian.Gutierrez@westcovina.org> wrote:
>
> Hi Ms.Melaka, did the city ever do an interactive ADA accommodation meeting with you? Did they ever get back to you regarding your accommodation?
>
> Sincerely,
> *Brian Gutierrez*
> Councilmember, 1st District
> City of West Covina
>
>

---

**From:** Olegario D. Cantos VII <ollie.cantos@westcovina.org>
**Sent:** Wednesday, 20 May 2026 14:09:23
**To:** Milan Mrakich <MMrakich@westcovina.org>
**Cc:** Brian Gutierrez <Brian.Gutierrez@westcovina.org>; Vivian Meleka <vivianmeleka@yahoo.com>; Roxanne E. Lerma <RLerma@westcovina.org>; Matthew Araiza <MAraiza@westcovina.org>; Brian Cervantes <BCervantes@westcovina.org>; Roberto Ortega Jr <ROrtega@westcovina.org>; PlanningDivision <planningdivision@westcovina.org>; Permits <Permits@westcovina.org>; Building <building@westcovina.org>; Thomas P. Duarte <tpd@jones-mayer.com>; Milan Mrakich <MMrakich@westcovina.org>
**Subject:** Re: West Covina - street sweeping

Thanks so much, Milan, for responding so quickly. With whomever you designate on staff, I look forward to their providing an update to this thread as this process continues to be worked through. Beyond this individual situation, efforts must commence to address the needs of others who are either similarly situated or whose disabilities warrant appropriate modifications. Putting a system into place that also entails a tailored interactive approach, based on individual circumstances, would be most ideal.

--Ollie

**Olegario "Ollie" D. Cantos VII, Esq.**
Mayor Pro Tem
City of West Covina
1444 W. Garvey Avenue South
West Covina, CA   91790
Mobile:  (626) 926-9627
Email: Ollie.Cantos@westcovina.org

> On May 20, 2026, at 1:51PM, Milan Mrakich <MMrakich@westcovina.org> wrote:
>
> Good afternoon, Mayor Pro Tem Cantos, Councilmember Gutierrez, and Ms. Meleka:
>
> Thank you for your follow-up emails, concerns, and information. It is clear through your writings that you all have vast knowledge in your field of expertise, and that is not being taken lightly by my staff or me. As I stated last night, we are working hard to respond to all requests and concerns as we implement a program approved by the majority of the council. As I also stated last night, I have addressed this type of request in other cities and through the court multiple times, but I remain committed to revisiting the issue, as rulings from years past may no longer be applicable.
>
> Accordingly, I will assign this matter to a member of my staff, who will be assisted by legal counsel to review and provide a substantive reply.
>
> Ms. Meleka, please feel free to reach out to me anytime you have a question or concern. I, along with my staff, are committed to

serving our residents with the highest level of professionalism and responsiveness.

**Milan M. Mrakich | Acting City Manager**
City Manager's Office **|** City of West Covina
1444 W. Garvey Avenue South | West Covina, CA 91790
Office (626) 939-8401 | Direct (626) 939-8402
Email: mmrakich@westcovina.org
City Website: www.westcovina.org

<image001.png>
@WestCovinaCity

**Confidentiality Notice**
*This e-mail, including all attachments, may contain CONFIDENTIAL information and is meant solely for the intended recipient. It may contain controlled, privileged, or proprietary information that is protected under applicable law and shall not be disclosed to any unauthorized third party. If you are not the intended recipient, you are hereby notified that any unauthorized review, action, disclosure, distribution, or reproduction of any information contained in this e-mail and any attachments is strictly PROHIBITED. If you received this e-mail in error, please reply to the sender immediately stating that this transmission was misdirected, and delete all electronic and paper copies of this e-mail and attachments without disclosing the contents.*

**From:** Brian Gutierrez <Brian.Gutierrez@westcovina.org>
**Sent:** Wednesday, May 20, 2026 11:01 AM
**To:** Olegario D. Cantos VII <ollie.cantos@westcovina.org>; Vivian Meleka <vivianmeleka@yahoo.com>; Milan Mrakich <MMrakich@westcovina.org>
**Cc:** Roxanne E. Lerma <RLerma@westcovina.org>; Matthew Araiza <MAraiza@westcovina.org>; Brian Cervantes <BCervantes@westcovina.org>; Roberto Ortega Jr <ROrtega@westcovina.org>; PlanningDivision <planningdivision@westcovina.org>; Permits <Permits@westcovina.org>; Building <building@westcovina.org>; Thomas P. Duarte <tpd@jones-mayer.com>
**Subject:** Re: West Covina - street sweeping
**Importance:** High

I absolutely agree with Mayor Pro Tem Cantos, and 2nd this is an official ADA request for a reasonable accommodation by a resident, this is now the 2nd request you get Milan. Tell the ADA Coordinator to do her job in accordance with federal law. Engage in an interactive process, responding generic to a email does not satisfy the ADA.

Sincerely,

*Brian Gutierrez*
Councilmember, 1st District
City of West Covina
<image002.jpg>

---

**From:** Olegario D. Cantos VII <ollie.cantos@westcovina.org>
**Sent:** Wednesday, May 20, 2026 10:45:22 AM
**To:** Vivian Meleka <vivianmeleka@yahoo.com>; Milan Mrakich <MMrakich@westcovina.org>
**Cc:** Brian Gutierrez <Brian.Gutierrez@westcovina.org>; Roxanne E. Lerma <RLerma@westcovina.org>; Matthew Araiza <MAraiza@westcovina.org>; Brian Cervantes <BCervantes@westcovina.org>; Roberto Ortega Jr <ROrtega@westcovina.org>; PlanningDivision <planningdivision@westcovina.org>; Permits <Permits@westcovina.org>; Building <building@westcovina.org>; letty_lopez_viado@westcovina.org <letty_lopez_viado@westcovina.org>; Thomas P. Duarte <tpd@jones-mayer.com>
**Subject:** Re: West Covina - street sweeping

Vivian, good morning, and thank you for the CC. You may note for your records that I am in full agreement. In fact, in advancement of support for residents with disabilities, I brought up this issue at last night's City Council meeting. This is in addition to an attempt on my part in the past to secure Council support not to burden people with disabilities, an effort that the majority soundly rejected.

Milan, I recognize and genuinely appreciate that you are working to address individual concerns as you outlined last night. It is that openness to flexibility that underscores precisely why implementation of our street-sweeping program must be undertaken with precision so as to balance the commitment to cleanliness with the needs of residents with disabilities who, through the point of the inauguration of this new effort IN JANUARY 2025, were not adversely impacted due to the prior program having already been administered effectively and without issue. It must be noted, though, that there are overarching federal and state legal considerations here that are strongly at play. If the concerns of residents with disabilities are not meaningfully addressed and their ends up being placed on them a series of discriminatory barriers (however unintentionally) that adversely impact disabled members of our community, we as a city would be placing ourselves in legal peril unnecessarily. That would entail increasing litigation risk to us as a city, which would also have an negative impact on the high premiums that we already have to pay  the California Joint Powers Insurance Authority (JPIA) as the result of previous lawsuits that have literally cost our treasury millions upon millions of taxpayer dollars. In the instant

case, if a court of law finds that we as a city have discriminated against individuals with disabilities, besides injunctive relief that would be required of us, we would yet again be placing ourselves at heightened risk for our premiums being increased even further, especially if litigation results in findings against us, findings that in this case would be justified. We must stave off these possibilities by taking appropriate actions now through formulating a policy at the staff level that reflects ADA compliance through making reasonable modifications to existing policies, practices, and procedures, efforts that are fully in line with what federal and state law both allow. Before this situation escalates, including through the possibility of adversely-impacted residents with disabilities banding together to file a class action lawsuit against us because of a common harm that they are all facing, we must de-escalate this immediately. It is frankly not the Wright of this Council to refuse to follow what the law requires even if that refusal occurs as the result of a majority vote.

Vivian, I myself am taking the liberty of looping in our City Attorney, Tom Duarte, so that he may become involved with this matter directly and may address the broader policy and programmatic implementation issues that you have outlined. In doing so, at this juncture, rather than placing the city in an adversarial position against one of its residents within a litigation context, my purpose in doing this here is actually to de-escalate this entire situation, which I believe will escalate out of control if we do not fix these issues now. Because Tom's obligation as our City Attorney is to safeguard the legal interests of this City, collaborating with him to ensure literal compliance with state and federal law is actually in advancement of that very obligation that he has to us. That commitment must necessarily override any internal disagreements among Council with regard to appropriate implementation. Whatever the Council majority feels is an appropriate response here does not negate his obligation to advise the entire Council on how to comply with the law. Stated another way, if any governmental body either takes action or refrains from taking action that facilitates our city's legal compliance, it would be his responsibility to advise us accordingly. This appears to be a clear-cut situation in which his involvement should result in remedying this entire matter before things spiral out of control. It is a matter of litigation risk mitigation, meeting the justified needs of residents, and --most importantly of all-- doing the right thing.

--Ollie

**Olegario "Ollie" D. Cantos VII, Esq.**
Mayor Pro Tem
City of West Covina
1444 W. Garvey Avenue South
West Covina, CA   91790
Mobile:  (626) 926-9627
Email: Ollie.Cantos@westcovina.org


On May 20, 2026, at 3:00 AM, Vivian Meleka <vivianmeleka@yahoo.com> wrote:

**CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.**

Dear City Council and City Staff,

Thank you for your response. However, your reply fails to address the core issue raised in my original correspondence: the City's obligation under federal disability law to provide reasonable accommodations to residents who are disproportionately burdened by the this NEW street sweeping enforcement scheme you like to start. Further, my email correspondence was NOT feedback, my email is a demand for a resolution.

Your response repeatedly discusses operational efficiency, consistency, cost minimization, and implementation logistics. None of those considerations override the requirements of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

The issue is not whether the City has authority to conduct street sweeping or post parking restrictions under the California Vehicle Code. The issue is whether the City is implementing those restrictions in a manner that unlawfully burdens disabled residents without providing reasonable accommodation.


Your citation to California Vehicle Code sections regarding street sweeping authority and disabled placards is misplaced and does not resolve the ADA issue. I never claimed disabled placards exempt residents from street sweeping laws. Rather, I asserted that the City has an independent legal duty under federal law to reasonably accommodate disabled residents where a government policy or enforcement scheme creates a disproportionate burden.

The City's response also confirms that the sweeping routes were intentionally designed for operational efficiency and cost reduction. However, administrative convenience and cost savings do not excuse noncompliance with federal disability protections. The fact remains that residents located centrally within these sweeping zones are required to traverse excessive distances—often crossing six or more streets—to locate legal parking. For residents with mobility impairments, chronic pain, physical disabilities, elderly residents, or households with multiple vehicles and limited parking access, this creates an unreasonable and discriminatory burden.

Additionally, your own response acknowledges that the City is actively reviewing signage placement, relocations, removals, and modifications due to widespread community complaints and neighborhood-specific hardships. This directly undermines any assertion that the current system is reasonable, finalized, or fully functional. Most importantly, your response still fails to answer the central question:

### What reasonable accommodation will the City provide to disabled residents who physically cannot comply with the current parking relocation requirements?

Directing disabled residents to "use driveways, garages, or other approved parking areas" is not a legally sufficient answer where many residents do not have available driveway capacity, garage access, or alternative nearby parking, as I mentioned they would have to walk 6 streets away to find this "legal parking areas you speak about".

Likewise, directing residents to an online map identifying unrestricted streets does not eliminate the physical burden imposed by the City's current zone design. (**I have attached a photo for a visual representation**).

At this point, the City has been placed on formal notice that the current implementation may violate federal disability law. Continued enforcement without addressing these concerns will expose the City to liability under the ADA and related civil rights statutes. Accordingly, I again request the following:

1. Clarification regarding what reasonable accommodations will be provided to disabled residents affected by the current sweeping zones;

2. Whether the City intends to modify sweeping schedules or stagger signage to reduce excessive walking distances;

3. Whether the City intends to suspend enforcement in affected areas pending ADA review;

4. Confirmation that this matter has been referred to the City Attorney and ADA Coordinator for review.

I highly recommend you contact your legal team for a consultation as soon as possible before you start "implementing and handing out tickets," and please be prepared to directly address these questions publicly and substantively. General statements regarding "ongoing review" are no longer sufficient given that enforcement is proceeding despite the unresolved ADA concerns previously raised.

I have lived in this home for 21 years, and during that time there has never been a significant street sweeping, trash, or sanitation issue warranting such extreme enforcement measures. Residents have long relied on the limited street parking available on these narrow residential streets, and the City's sudden aggressive enforcement effort appears less related to legitimate public necessity and more focused on generating revenue through citations.

If the City intends to justify these burdensome policies, particularly those disproportionately affecting disabled residents and individuals with limited mobility, then it should be prepared to demonstrate in court that such measures are truly necessary and legally compliant.

I want to formally inform you that I have collected substantial evidence, including before-and-after photographs and documentation thru the years of street conditions, which clearly show that there has been no significant improvement to justify the current enforcement.

Lastly, No one is preventing the City from conducting street sweeping; however, by rigidly enforcing these restrictions and denying residents the flexibility to park across the street or alternate schedules, the City has escalated what was once a manageable situation into a major burden. I am prepared to present this evidence in court to demonstrate that the City's approach is arbitrary and discriminatory. The moment I receive a citation, I will have "standing" to bring this matter before a judge, and the City should expect formal legal action and service of process as a result.

Please forward this email to the City's Attorney - Thomas P Duarte (626-939-8401), and Deputy city attorney- Brittany E. Roberto.

Thank you
Vivian Meleka

Sent from Yahoo Mail for iPhone

On Tuesday, May 19, 2026, 2:50 PM, Milan Mrakich <MMrakich@westcovina.org> wrote:

Good afternoon, Ms. Meleka,

Thank you for taking the time to provide feedback regarding the City of West Covina's Street sweeping program. We understand that changes to parking restrictions can be inconvenient for residents, and we sincerely appreciate the community sharing their concerns and experiences as the program is implemented.

We have logged your comments for further review and have included additional information below for your immediate reference while the city continues its citywide review of signage and sweeping routes.

The city is implementing the City Council-approved initiative to increase street-sweeping frequency from biweekly to weekly to improve neighborhood cleanliness, reduce pollutants in stormwater runoff, and better maintain our streets citywide. Prior to implementation, the city held community meetings, shared information on social media and the city website, and discussed the initiative at multiple City Council meetings. Community input remains very important to us, and we are continuing to evaluate resident feedback as the program moves forward.

The approved street-sweeping routes were designed to enable sweepers to cover large areas systematically and efficiently while minimizing operational costs. We recognize that in some neighborhoods, including yours, both sides of the street may be posted for sweeping on the same day. While we understand this may be challenging for some residents, the schedule was developed to provide a consistent and effective citywide sweeping program. The sweeping schedule also follows residential trash collection days to maintain consistency throughout the city.

On posted street-sweeping days and times, residents are asked to park vehicles in driveways, garages, or other approved parking areas. To assist residents in identifying alternative parking locations, the city has created an interactive street sweeping map available at the link below: **https://city-of-west-covina-gis-hub-westcovina.hub.arcgis.com/apps/df6659102f9c498bbbe4962716c912d3/ explore**

The map allows residents to view sweeping days and times across the city and identify nearby streets that may not be restricted during the same timeframe as their residence. Please note that vehicles may not be parked on lawns, as this is prohibited under the City's Municipal Code.

Currently, the city is in a transitional implementation phase, with multiple departments coordinating to fully roll out the updated street-

sweeping program. As part of this transition, the Public Safety Department is issuing warning notices for approximately five (5) weeks before full enforcement begins. During this warning period, enforcement staff will follow behind the street sweeper each week and issue warnings to vehicles parked within posted restricted areas. This process is intended to help residents become familiar with the sweeper's schedule on their street. Residents may move their vehicles once the sweeper and enforcement officer have passed and may then legally repark without penalty.

Additionally, the Engineering Division is conducting a citywide inventory and review of street sweeping and parking restriction signage. This review is intended to minimize excessive signage where possible by consolidating signs onto single poles, evaluating placement between properties, and ensuring signage remains visible and compliant while also being mindful of neighborhood aesthetics and residents' views.

Since the installation of the new street sweeping signs, the city has received significant community feedback. City staff is actively reviewing concerns and evaluating areas with limited parking, higher-density housing, and other unique neighborhood conditions. The City's project management and engineering teams will continue assessing whether signage adjustments, relocations, removals, or additional signage may be appropriate to improve clarity and awareness.

Additionally, the City will not enforce street-sweeping restrictions during school drop-off and pick-up times along school frontages. Existing signage near schools will be updated to reflect this modification once the citywide signage inventory process is complete.

For parking enforcement-related questions, residents may contact the Public Safety Department at (626) 939-8426. For signage-related questions, residents may contact the Engineering Division at (626) 939-8733 or by email at **Permits@westcovina.org**.

The City also encourages residents to continue submitting feedback through the City's Report an Issue portal link: **https://www.westcovina.gov/336/Report-an-Issue.** This tool may also be used to report concerns such as overgrown vegetation, graffiti, sidewalk damage, or other City-related issues.

To answer your specific question, under State Law, California Vehicle Code Section 22511.5(3), disabled persons, or disabled veteran license plates, are not exempt from Street Sweeping.  The applicable laws are highlighted below.

CVC Section 22507.6 Local authorities may, by ordinance or resolution, prohibit or restrict the parking or standing of vehicles on designated streets or highways, or portions thereof, for the purpose of street sweeping. No ordinance or resolution relating to the parking or standing of commercial vehicles in a residential district shall be effective with respect to any commercial vehicle making pickups or deliveries of goods, wares, or merchandise from or to any building or structure located on the restricted street or highway, or for the purpose of delivering materials to be used in the repair, alteration, remodeling, or reconstruction of any building or structure for which a building permit has previously been obtained. No such ordinance or resolution shall be effective until the street or highway, or portion thereof, has been sign-posted in accordance with the uniform standards and specifications of the Department of Transportation, or local authorities have caused to be posted in a conspicuous place at each entrance to the street a notice not less than 17 inches by 22 inches in size, with lettering not less than one inch in height, setting forth the day or days and hours parking is prohibited. As used in this section, "entrance" means the intersection of any street or streets comprising an area of restricted parking for street-sweeping purposes on the same day or days and hours with another street or highway not subject to such a parking restriction, or subject to parking restrictions on different days and hours.

CVC Section 22511.5 (3) This subdivision does not apply to a zone for which state law or ordinance absolutely prohibits stopping, parking, or standing of all vehicles, or which the law or ordinance reserves for special types of vehicles, or to the parking of a vehicle that is involved in the operation of a street vending business.

Again, thank you for taking the time to share your feedback. The city understands that this transition requires adjustment, and we appreciate the community's patience as we continue refining and implementing the program. Resident concerns are being carefully reviewed to ensure the program is both effective and responsive to community needs. Should you wish to follow up on the status of the review for your concern, you can contact the City's Engineering Division at (626) 939-8733 or via email at

[Permits@westcovina.org](mailto:Permits@westcovina.org).

Sincerely,

**Milan M. Mrakich | Acting City Manager**

City Manager's Office | City of West Covina

1444 W. Garvey Avenue South | West Covina, CA 91790

Office (626) 939-8401 | Direct (626) 939-8402

Email: [mmrakich@westcovina.org](mailto:mmrakich@westcovina.org)

City Website: [www.westcovina.org](http://www.westcovina.org)

**<image001.png>**

@WestCovinaCity

**Confidentiality Notice**

*This e-mail, including all attachments, may contain CONFIDENTIAL information and is meant solely for the intended recipient. It may contain controlled, privileged, or proprietary information that is protected under applicable law and shall not be disclosed to any unauthorized third party. If you are not the intended recipient, you are hereby notified that any unauthorized review, action, disclosure, distribution, or reproduction of any information contained in this e-mail and any attachments is strictly PROHIBITED. If you received this e-mail in error, please reply to the sender immediately stating that this transmission was misdirected, and delete all electronic and paper copies of this e-mail and attachments without disclosing the contents.*

---

**From:** Brian Gutierrez <[Brian.Gutierrez@westcovina.org](mailto:Brian.Gutierrez@westcovina.org)>
**Sent:** Tuesday, May 19, 2026 2:29 PM
**To:** Vivian Meleka <[vivianmeleka@yahoo.com](mailto:vivianmeleka@yahoo.com)>; Milan Mrakich <[MMrakich@westcovina.org](mailto:MMrakich@westcovina.org)>; Roxanne E. Lerma <[RLerma@westcovina.org](mailto:RLerma@westcovina.org)>
**Cc:** Olegario D. Cantos VII <[ollie.cantos@westcovina.org](mailto:ollie.cantos@westcovina.org)>
**Subject:** Re: West Covina NO PARKING SIGNS
**Importance:** High

Thank you Vivian, for your email the City is obligated to respond to you within 10 days in accordance with our ADA Policy. Milan, Acting City Manager and ADA Coordinator Roxane please follow the policy and federal law and address Vivian's concerns.

Sincerely,
*Brian Gutierrez*
Councilmember, 1st District
City of West Covina
<image002.jpg>

---

**From:** Vivian Meleka <[vivianmeleka@yahoo.com](mailto:vivianmeleka@yahoo.com)>
**Sent:** Tuesday, May 19, 2026 11:32 AM
**To:** Letty Lopez-Viado <[LLopez-Viado@westcovina.org](mailto:LLopez-Viado@westcovina.org)>; Brian Gutierrez <[Brian.Gutierrez@westcovina.org](mailto:Brian.Gutierrez@westcovina.org)>; Tony Wu

<Tony.Wu@westcovina.org>; Rosario Diaz <Rosario.Diaz@westcovina.org>; Olegario D. Cantos VII <ollie.cantos@westcovina.org>; Vivian Meleka <vivianmeleka@yahoo.com>
**Subject:** Re: West Covina NO PARKING SIGNS

**CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.**

Dear City Council,

I am writing to follow up on my correspondence dated March 26, 2025, to which I have yet to receive a response or a resolution on the issue.

I have not followed up sooner because I was informed that the signs would be changed to address the issue and better accommodate residents. I observed that all the signs on Workman were removed, presumably in anticipation of different timing, so we could alternate parking between streets and avoid the excessive walk. However, I have today learned from Code Enforcement that all signage will remain as is, with the original zones still in place—effectively reverting to the previous, unworkable plan.

The street sweeping signage currently posted is and will be creating substantial hardship for residents. If the enforcement plan is to proceed as posted, I request clarification on how the City intends to accommodate individuals who are adversely affected.

Due to our disabilities, we are unable to comply with the current street sweeping plan. We demand a reasonable accommodation as required by the Americans with Disabilities Act. If the City fails to provide this, we will have no choice but to pursue legal action.

The zones delineated online are not operationally feasible. Residents located centrally within these zones would be required to traverse more than six streets merely to relocate their vehicle, which is an undue burden. This is particularly problematic for residents with limited mobility or disabilities or those with multiple cars.

Under the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.), this constitutes a failure to provide reasonable accommodation, a clear violation of federal law.

**Proposed Solution**: I urge the City to install differentiated signage (e.g., varied hours or dates) on alternate sides of the same street or across streets. This modification would allow for effective street cleaning without imposing an unreasonable hardship on residents. Please note that not all households have garages or driveways; residents have access to garages or driveways, and many households own multiple vehicles.

Thus, it is unreasonable to expect residents, particularly those with mobility limitations, to repeatedly cross multiple streets every week. Furthermore, I have made multiple attempts to contact Paulina, the City Manager, via phone and email, all of which have been disregarded. I require prompt clarification on how the City will adjust the enforcement zones to ensure full compliance with ADA standards. Please be prepared to answer these questions at the meeting tonight.

Thank you!

Vivian Meleka
626-347-3122
300 N Maplewood Ave. West Covina

Sent from Yahoo Mail for iPhone

On Wednesday, April 16, 2025, 1:14 PM, Vivian Meleka <vivianmeleka@yahoo.com> wrote:

Good morning,

I sent an email to all of you on March 26, 2025, and have not heard back from anyone!

The street sweeping signs you guys have posted are creating significant challenges for us, if you guys will be enforcing this, I want to know how you plan to accommodate those who are affected??

The zones you have posted online are not feasible whatsoever! If someone is in the dead center of the zone they have to walk over 6 streets just to park their vehicle and return back home, only to walk back to get their vehicle when street sweeping is done.

Please tell me how this is feasible for someone who has limited mobility or a disability which prevents them from walking? --> This is a clear violation of the ADA.

**Proposed Solution:**

You could easily place different signs (hours or dates)  on each side of the same street. OR across the streets. This way you could have your streets swept without burdening your residence.

Please keep in mind that NOT everybody has Garages, not everyone has driveways. lastly. many people have multiple cars, nobody's walking over six streets just to park their vehicles back-and-forth for street sweeping, especially those will have to do it multiple times for their cars. EACH WEEK!

Paulina/ city manager, is not answering her phone, directing her secretary not to answer either. I've left her a couple of voice messages and an email and have yet to receive a response about what changes will occur to solve this issue.

## QUESTION:

## What is going to happen regarding the zones to accommodate those who need it?

Thank you.

Vivian Meleka

626-347-3122

Sent from Yahoo Mail for iPhone

On Wednesday, March 26, 2025, 11:20 AM, Vivian Meleka <vivianmeleka@yahoo.com> wrote:

Good Morning,

My name is Vivian Meleka, I am resident in West Covina, I have lived in my current home for quite some time (21 years at 300 N MAPLEWOOD AVE) my father became disabled here and I work from home and take care of him and my 2 children.

I have turned my home into a multifamily home by converting my garage into a JADU and added a ADU which means 3 families live here and we have 7 cars. I also don't have a driveway.

As you can see on google maps when you look at the house, the side street is also prohibited from parking on tuesday due to the all day streets weeping. NOW, we cant even park on our residential street either? I'm sorry?

Where do you propose we park?? 7 cars 1 house? Plus all the neighbors ?  My father Is disabled and handicapped he can't have his car parked far away for any reason. This is a terrible mistake. I urge you to please reconsider and remove the signs immediately.

Your decision of placing the signs and residential home place is a huge burden on the residence of West Covina. Every other week I will be violating the ordinance that you have passed and will be going to court every single week to appeal this decision 7 people total. All the neighbors are currently feeling the same way we will fight every step of the way and tell you guys changed his decision. Even if it means going straight to the United States Supreme Court.

It is very unnecessary and very unconscionable for you guys to be placing such heavy burdens and asking residence to go out of their ways and for what?

You're essentially asking residence to leave the neighborhood because I noticed that you're placing the signs all over our area now.

7 people and 7 cars here will not be moving during this "street sweeping days" and if tickets are given. we will be going before a judge every-time to appeal them. I just confirmed with several of my neighbors and they have said they will be doing the same thing. And I'm sure as soon as they come back from work and realize what you guys have done today. more people will be doing the same thing.

I urge you  to please remove the signs immediately. So many residents will be very upset when they see the signs today and we talk and we will call/petition for your resignations.

Thank you.



<image002.jpg>
<image001.png>

# EXHIBIT E

**June 16, 2026 West Covina closed-session agenda listing this federal case**

**PUBLIC EXHIBIT - DOES NOT INCLUDE UNREDACTED MEDICAL CONTENT**



# CITY OF WEST COVINA

# CITY COUNCIL/SUCCESSOR AGENCY

JUNE 16, 2026, 6:00 PM
REGULAR MEETING - CLOSED SESSION

MANAGEMENT RESOURCE CENTER 3RD FLOOR
1444 W. GARVEY AVENUE SOUTH
WEST COVINA, CALIFORNIA 91790

**Mayor Letty Lopez-Viado**
**Mayor Pro Tem Ollie Cantos**
**Councilwoman Rosario Diaz**
**Councilmember Brian Gutierrez**
**Councilman Tony Wu**

The City complies with the Americans with Disabilities Act (ADA). If you will need special assistance at Council meetings, please call (626) 939-8433 (voice) or (626) 960-4422 (TTY) from 8 to 5 Monday through Thursday. Do call at least one day prior to the meeting date to inform us of your particular needs and to determine if accommodation is possible. For sign language interpreter services at Council meetings, please request no less than four working days prior to the meeting.

# AGENDA

**ROLL CALL**

**PUBLIC COMMENTS ON ITEMS ON THE AGENDA**

**CLOSED SESSION**

1. CONFERENCE WITH LEGAL COUNSEL - EXISTING LITIGATION - Pursuant to Government Code § 54956.9(d)(1)
   1. Guillermina Buenrostro v. City of West Covina (LA Superior Court, Case No 23PSCV02465)
   2. John Doe v. City of West Covina, et al, (United States District Court for the Central District of California Case No. 2:26-cv-03659-MEMF-MBK).

2. CONFERENCE WITH LABOR NEGOTIATORS
   Pursuant to Government Code § 54957.6
   City Negotiators:  Mrakich, Duarte
   Employee Organizations
   - Confidential Employees
   - Maintenance & Crafts Employees
   - Non-Sworn
   - W.C. Police Officers' Association
   - W.C. Firefighters' Management Assoc.
   - W.C. Firefighters' Association, I.A.F.F., Local 3226
   - General Employees
   - Mid-Management Employees
   - W.C. Police Management Association

   Unrepresented Employee Group
   - Department Heads

## ADJOURNMENT

---

**RULES OF DECORUM**

---

*The following are excerpts from the West Covina Municipal Code:*

*Section 2-47. - Addressing the council.*

*Pursuant to the California Government Code, any person wishing to address the city council on any matter on the agenda or on any other matter within their jurisdiction, excluding any matter set for a public hearing, may do so upon first securing the recognition of the presiding officer during the time designated as "Oral Communications" on the agenda. The city council may not act on any item unless it is listed on the agenda.*

*Section 2-48. - Manner of addressing city council; time limit; persons addressing may be sworn.*

*(a)    Each person wishing to address the city council shall submit a speaker card to the city clerk prior to the commencement of the time designated for oral communications. No speaker cards will be accepted after the commencement of oral communications, except at the discretion of the presiding officer.*
*(b)    When called forward by the presiding officer or the city clerk, each person addressing the city council shall step up to the podium and give his or her name and city of residence in an audible tone of voice for the record.*
*(c)    Each person addressing the city council during oral communications shall limit his or*

*her comments to three (3) minutes, unless the time limit is modified by the presiding officer or the city council. In order to provide all speakers the opportunity to participate in oral communications, the presiding officer or the city council may reduce the time limit to allow reasonable time for all speakers to address the city council.*

*(d)    All remarks shall be addressed to the city council as a body and not to any member thereof. No person, other than the city council and the person having the floor, shall be permitted to enter into any discussion, either directly or through a member of the city council, without the permission of the presiding officer. No question shall be asked of a council member except through the presiding officer.*

*(e)    The presiding officer may require any person to be sworn as a witness before addressing the city council on any subject. Any such person who, having taken an oath that he or she will testify truthfully, willfully and contrary to such oath states as true any material matter which he knows to be false may be held to answer criminally and subject to the penalty prescribed for perjury by the provisions of the California Penal Code.*

*Section 2-50. - Decorum–Required.*

*(a)    While the city council is in session, council members shall preserve order and decorum, and a council member shall neither, by conversation or otherwise, delay or disrupt the proceedings or the peace of the council nor interrupt any council member while speaking or refuse to obey the orders of the council or its presiding officer, except as otherwise herein provided.*

*(b)    Members of the public shall not willfully disrupt the meeting or act in a manner that actually disrupts, disturbs, impedes, impairs, or renders infeasible the orderly conduct of the meeting. For the purposes of this Code, "willfully disrupt" includes, but is not limited to, continuing to do any of the following after being warned by the presiding officer that the behavior is disrupting the meeting and failure to cease the behavior may result in removal from the meeting:*

*(1)    Addressing the mayor or city council without first being recognized.*

*(2)    Persisting in addressing a subject or subjects, other than that before the mayor and city council.*

*(3)    Repetitiously addressing the same subject.*

*(4)    Failing to relinquish the podium when directed to do so.*

*(5)    From the audience, interrupting or attempting to interrupt, a speaker, the presiding officer, a council member, or a staff member, or shouting or attempting to shout over a speaker, the presiding officer, a council member or a staff member.*

*(6)    From the audience, engaging in disorderly, disruptive, or boisterous conduct, including, but not limited to, handclapping, stomping of feet, whistling, making noise, use of abusive, threatening or profane language or obscene gestures, yelling, obstructing the view of other audience members, or similar conduct which disrupts, disturbs, impedes, or renders infeasible the orderly conduct of the meeting.*

*(7)    As a speaker, making slanderous or profane remarks or using loud, threatening, or abusive language which disrupts, disturbs, impedes, or renders infeasible the orderly conduct of the meeting; interrupting or attempting to interrupt the presiding officer, a council member, or a staff member; shouting over or attempting to shout over the presiding officer, a council member, or a staff member; or engaging in any other disorderly conduct which disrupts, disturbs, impedes, or renders infeasible the orderly conduct of the meeting.*

*Nothing in this section or any rules of the city council shall be construed to prohibit public criticism of the policies, procedures, programs, or services of the city or of the acts or omissions of the city council.*

*(8)    Engaging in behavior that constitutes use of force or a true threat of force.*

*(c)    It shall be unlawful to violate the provisions of this section. A person violating this section may be removed and barred from further participation at the meeting at which the violation occurs.*

*(d)    If any subsection, sentence, clause, or phrase or word of this section 2-50 is for any reason held to be invalid or unconstitutional, such decision shall not affect the validity of the remaining portions of this section. The city council hereby declares that it would have passed this section and each subsection, sentence, clause and phrase thereof, irrespective of the fact that any one or more subsections, sentences, clauses, phrases or words had been declared invalid or unconstitutional.*

*Section 2-51. - Enforcement of decorum.*

*The chief of police or any member or members of the police department or other members of the city staff may be designated by the council to be sergeant-at-arms when, in the opinion of the presiding officer, the services of a sergeant-at-arms is necessary, and the sergeant-at-arms shall carry out all orders and instructions given by the presiding officer for the purpose of maintaining order and decorum in accordance with section 2-50 at the council meeting, including, but not limited to, removing and barring from further participation at the meeting any person who is willfully disrupting the orderly conduct of the meeting.*

*Section 2-52. Persons authorized to be within council area.*

*No person, except city officials, their representatives and members of the news media shall be permitted within the rail in front of the council chamber without the express consent of the council.*

*The following are excerpts from the Penal Code:*

*Section 148. Resisting public or peace officers or emergency medical technicians in discharge of their duties; Removal of weapon from person or presence of public or peace officer.*

*(a) (1) Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.*

*Section 403. Disturbance of assembly or meeting other than religious or political.*

*Every person who, without authority of law, willfully disturbs or breaks up any assembly or meeting that is not unlawful in its character, other than an assembly or meeting referred to in Section 302 of the Penal Code or Section 18340 of the Elections Code, is guilty of a misdemeanor.*