JOHN DOE
Plaintiff/Petitioner, Pro Se
Safe at Home Confidential Address
Email: JohnDoeCA2025@gmail.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| JOHN DOE, an individual, <br><br> Plaintiff/Petitioner, <br><br> v. <br><br> CITY OF WEST COVINA, <br><br> Defendant/Respondent. | Case No. 2:26-cv-03659-MEMF-MBK <br><br> District Judge: Hon. Maame Ewusi-Mensah Frimpong <br> Magistrate Judge: Hon. Michael B. Kim <br><br> **PLAINTIFF JOHN DOE'S REPLY IN SUPPORT OF APPLICATION TO FILE EXHIBITS X AND Y UNDER SEAL AND RESPONSE TO RESPONDENT CITY OF WEST COVINA'S OPPOSITION [ECF NO. 72]** |

**REPLY**

Respondent's opposition should be rejected. The opposition is not a neutral sealing objection. It is a continuation of the retaliation pattern alleged in this case: conflicted, taxpayer-funded counsel asks the Court to leave safety-sensitive, ADA-related, Safe at Home-related, and conflict evidence exposed on the public docket after a disabled, self-represented litigant attempted to use sealing and redaction procedures under emergency conditions.

The City's argument rests on three misleading premises. First, the City asserts that because Plaintiff later filed overlapping materials publicly, the Court is powerless to restrict access or require redacted versions. That is incorrect. Prior public availability may affect the tailoring analysis, but it does not deprive this Court of authority to restrict further public docket exposure, require redacted versions, review unredacted materials in camera, or prevent the public docket from becoming an instrument of retaliation.

Second, the City asserts that Exhibits X and Y contain no protected information because they do not display a home address or a line-item diagnosis. That is an unduly cramped view of privacy and safety. Exhibit Y, by the City's own description, concerns Buchalter/Katie Fox's March 3, 2026 response regarding Safe at Home.

1

ECF No. 72 at 1-2. The Safe at Home context, the ADA/confidentiality context, the identity and safety context, and the retaliation/conflict context are precisely why unrestricted public access is harmful.

Third, the City asks the Court to accept Roger Scott and Buchalter's framing as if they were ordinary outside counsel with no interest in the dispute. They are not. A public state-court filing shows Mr. Scott appeared as 'Attorney for Third Party Milan Mrakich' and declared under penalty of perjury that he is 'counsel of record for Third Party Milan Mrakich' while also acting as litigation counsel for the City in matters filed by Plaintiff against the City and Mr. Mrakich. See RJN Ex. A. That dual role is directly relevant to why the Court should not accept counsel's assertions that the exhibits are harmless, non-sensitive, and suitable for public exposure.

Plaintiff does not ask the Court to hide the existence of his claims. Plaintiff asks the Court to protect specific documents that contain, reveal, or contextualize Safe at Home information, disability-accommodation information, law-enforcement/safety concerns, attorney-conflict evidence, and retaliation evidence. If the Court concludes that full sealing is too broad, the correct remedy is targeted redaction, administrative restriction of unredacted docket copies, and in camera review - not denial of protection altogether.

## I. THE CITY'S OPPOSITION MISSTATES WHAT THIS SEALING APPLICATION IS ABOUT.

The City attempts to reduce this dispute to a simplistic waiver argument: Plaintiff filed documents publicly, therefore the Court should deny sealing forever. That framing misses the actual harm. This application concerns documents connected to an investigation-preservation/conflict-objection record and a Buchalter/Katie Fox Safe at Home response. Those records sit inside the factual architecture of Plaintiff's ADA retaliation, medical-confidentiality, Safe at Home, and counsel-conflict claims.

The public may have a legitimate interest in the existence of the dispute, the fact that Plaintiff alleges ADA discrimination, and the fact that Plaintiff challenges the City and Buchalter's conduct. But public access does not require unrestricted display of every line of correspondence that reveals safety pathways, protected disclosure context, disability-accommodation details, and conflict communications. The Ninth Circuit does not treat the public-access presumption as an order to expose sensitive material without redaction. It requires a case-by-case balancing and a narrowly

tailored remedy.

The City's own opposition proves the point. It describes Exhibit X as the October 7, 2025 Investigation Preservation / Conflict Objections and Exhibit Y as Buchalter / Katie Fox's March 3, 2026 response regarding Safe at Home. ECF No. 72 at 1. These are not random emails. They are documents about the very subjects that make this case dangerous: the investigation process, Buchalter's role, the Safe at Home context, the City's retaliation machinery, and Plaintiff's efforts to preserve evidence while protecting safety.

The City then says Exhibit X is merely an email chain with counsel and Exhibit Y merely references Safe at Home without an address. ECF No. 72 at 6. That is not the correct test. Protected information is not limited to an address line. The law protects privacy, safety, disability accommodation information, and the context that can expose or amplify risk. A document can create harm by linking a pseudonym, Safe at Home status, law-enforcement/safety concerns, disability accommodation disputes, and retaliatory actors even when it does not print a street address.

## II. THE CITY'S "ALREADY PUBLIC" ARGUMENT IS LEGALLY AND EQUITABLY OVERSTATED.

The City's strongest rhetorical point is that Plaintiff later filed overlapping materials publicly. But the conclusion the City draws from that fact is wrong. A prior public filing does not compel the Court to keep every later or existing copy available on the public docket. It does not eliminate the Court's power to restrict further access. It does not convert safety-sensitive information into public property. It does not waive ADA confidentiality. And it does not give a public entity license to use a disabled litigant's procedural confusion as a weapon.

The Supreme Court and Ninth Circuit recognize that courts have supervisory authority over their records. Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978), recognizes the common-law access right but also recognizes that court files are not open for every purpose, including improper uses. Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1179 (9th Cir. 2006), recognizes compelling reasons to seal where court records might be used to gratify private spite, promote public scandal, circulate libelous statements, or cause other improper harm. The City quotes pieces of this standard but ignores the part that applies here: Plaintiff alleges the public docket is being used as a mechanism of retaliation and public exposure.

The Court can acknowledge that some material was temporarily or mistakenly public and still conclude that continued docket access should be restricted. Continued publication is continuing harm. Searchable federal dockets, downloadable PDFs, and republished exhibits create recurring exposure. A single procedural mistake by a self-represented autistic litigant should not become a permanent waiver of safety, medical, disability, and Safe at Home protections.

The City's use of the word 'deliberate' is especially unfair. ECF No. 72 at 2. Plaintiff sought sealing first. Plaintiff repeatedly tried to use redaction, sealing, and in camera procedures. Plaintiff has autism-related processing limitations and has been litigating under severe time pressure while also seeking ADA accommodations from the City and courts. The record does not support the City's punitive inference that Plaintiff intentionally waived protection. At most, the record shows overlapping pro se emergency filings in a complex case involving sensitive documents. Equity favors correction, not punishment.

If the Court accepts the City's position, it will create a dangerous rule for disabled pro se litigants: one imperfect filing under emergency conditions forfeits medical privacy, ADA confidentiality, and safety protections forever. That is not required by Local Rule 79-5, Civil Beat, or any public-access doctrine. The proper remedy is to direct redacted public versions and restricted unredacted access.

## III. THE PUBLIC-ACCESS CASES CITED BY THE CITY SUPPORT REDACTION, NOT BLANKET DENIAL.

Plaintiff does not dispute that judicial records are presumptively open. Plaintiff also does not seek blanket secrecy over the fact of his disability or the existence of his ADA claims. The cases cited by the City stand for the unremarkable proposition that medical or disability information is not automatically sealed in full whenever a disability claim is filed. They do not stand for the proposition that a public entity may expose all disability-related and safety-sensitive records simply because disability is at issue.

Civil Beat Law Center for Public Interest, Inc. v. Maile, 117 F.4th 1200, 1211 (9th Cir. 2024), is a case-by-case decision. The Ninth Circuit's point is that the district court must examine the specific record and privacy interest, not deny sealing based on slogans. Bride v. Snap Inc. and Langworthy likewise do not say that a disabled litigant forfeits all medical or accommodation privacy. They say the public may need

enough information to understand the judicial process. Here, that interest can be satisfied through public descriptions, public briefing, and redacted versions.

The public can understand that Plaintiff is autistic, that he seeks ADA accommodations, that he alleges retaliation, that he challenges the City's investigation and Buchalter's conduct, and that Safe at Home issues are present. The public does not need unrestricted access to every sentence that links Safe at Home context, conflict objections, counsel roles, law-enforcement/safety concerns, and disability-accommodation disputes. The City's position erases the difference between public understanding and public exposure.

Local Rule 79-5.2.2 requires narrow tailoring. Plaintiff accepts that obligation. If the Court finds the present request too broad, Plaintiff asks for a narrower order: seal or restrict only the safety-sensitive, Safe at Home, medical, ADA-accommodation, and conflict-sensitive portions; allow redacted public versions; and review unredacted versions in camera. The City offers only an all-or-nothing denial. That is not narrow tailoring.

## IV. EXHIBIT Y'S SAFE AT HOME CONTEXT IS ITSELF A COMPELLING REASON FOR PROTECTION.

The City attempts to dismiss Exhibit Y because it 'references' Safe at Home but allegedly contains no address. ECF No. 72 at 6. That argument misunderstands safety. Safe at Home protection is not limited to a street-address line. The risk can arise from linking identity, litigation posture, protected status, disclosure pathways, names of actors, timing, related proceedings, law-enforcement context, and the public narrative that invites hostile persons to dig further.

Plaintiff has represented that he has safety concerns connected to prior law-enforcement cooperation, restraining-order issues, and Safe at Home protections. Plaintiff should not be forced to publicly prove the very facts that require protection. The Court can evaluate those facts in camera if necessary. If the City doubts the safety showing, the answer is sealed review, not public exposure.

The City also says Exhibit Y references Plaintiff's own public statements. Even assuming some public statements exist, a party's public advocacy about disability or safety does not waive every related protection. A person may publicly identify as disabled while still protecting medical details. A Safe at Home participant may litigate publicly while still protecting information that links the participant to specific

safety risks. An ADA plaintiff may describe an accommodation without consenting to public exposure of internal retaliation communications.

The City's position would make Safe at Home and ADA rights unusable. It would tell disabled or threatened litigants: speak publicly about your rights and you lose protection, or stay silent and lose the ability to prove your case. The law does not force that choice.

## V. EXHIBIT X IS NOT A HARMLESS COUNSEL EMAIL; IT IS CONFLICT AND RETALIATION EVIDENCE.

The City calls Exhibit X simply an email chain between Plaintiff and counsel. That label hides why the document matters. Exhibit X concerns investigation preservation and conflict objections. Those issues are central to Plaintiff's claims that the City, Milan Mrakich, Roger Scott, Buchalter, and others turned a supposedly neutral investigation and legal process into a retaliatory apparatus.

A public-access analysis must ask what harm public exposure will cause, not only whether the document contains a diagnosis. Exhibit X reveals the structure of objections, preservation demands, counsel roles, and internal conflict concerns. Public exposure allows the same actors Plaintiff accuses of retaliation to study, attack, ridicule, and preempt the evidence paths Plaintiff is attempting to preserve.

The City insists no ADA or medical information appears in Exhibit X. But the ADA harm is contextual. Plaintiff's ADA claims allege that his autism-related written communication, need for clarification, insistence on documentation, and preservation objections were rebranded as harassment or obstruction. A document showing those objections is not neutral when the City uses it publicly to reinforce the same narrative. The Court should not allow the public docket to become a second censure report.

## VI. ROGER SCOTT AND BUCHALTER'S DUAL ROLE UNDERMINES THE CITY'S NEUTRALITY ARGUMENT.

The Court should view the City's opposition through the lens of counsel's public dual role. In a separate state-court filing, Mr. Scott appeared as 'Attorney for Third Party Milan Mrakich.' In the accompanying declaration, he stated: 'I am ... counsel of record for Third Party Milan Mrakich. I am also litigation counsel for the City of West Covina in other pending matters filed by "John Doe" against the City and Mr.

Mrakich.' RJN Ex. A.

That statement is not Plaintiff's characterization. It is Mr. Scott's sworn statement. It confirms that the same lawyer opposing sealing for the City also appeared for Milan Mrakich personally, while Mr. Mrakich is a central actor, individual defendant, witness, and alleged retaliating official in this federal case. That dual role creates at least a serious appearance that the opposition is not motivated solely by public access. It also supports Plaintiff's position that Buchalter's role is part of the dispute.

Mr. Scott's state-court declaration went beyond narrow subpoena logistics. It described Plaintiff's prior litigation, accused Plaintiff of false claims, and framed Plaintiff as harassing Mr. Mrakich. RJN Ex. A. Those statements demonstrate why public exposure of safety and ADA materials is dangerous in this case: the City's counsel is simultaneously defending the entity, defending an individual actor, and defending the law firm's own role.

California Rule of Professional Conduct 1.13 recognizes that organizational counsel represents the organization acting through its authorized constituents, not automatically every officer personally. Rule 1.7 addresses material-limitation conflicts. The Court need not decide disqualification on this sealing application. But it should not ignore that the opposition is filed by counsel whose own conduct and dual role are relevant evidence.

## VII. MILAN MRAKICH'S ROLE MAKES PUBLIC EXPOSURE MORE DANGEROUS, NOT LESS.

The City asks the Court to separate the sealing issue from the retaliation context. It cannot be separated. Plaintiff alleges that Milan Mrakich threatened him, controlled the City Manager's Office, imposed or enforced communication restrictions, influenced ADA handling, and allowed or failed to prevent disclosure of accommodation information. The Second Amended Complaint pleads that Mr. Mrakich told Plaintiff he was in a 'world of hurt,' had 'ended' his career, should never come to his office again, and was 'dead' to him. Dkt. 45 at paragraphs 41-45.

Those allegations matter because the City Manager's Office became the access gatekeeper. If the City Manager who made those statements controls communications, staff access, ADA implementation, and records pathways, public exposure of ADA and Safe at Home materials creates a predictable retaliation risk. The City should be required to protect those materials, not amplify them.

The City may disagree with Plaintiff's allegations. That is not a reason to deny sealing. It is a reason for the Court to preserve the evidence and decide the merits later without allowing the public docket to become a tool for the alleged retaliators. The question now is not whether Plaintiff will ultimately prove every allegation. The question is whether compelling reasons exist to protect the materials while the Court evaluates them. They do.

## VIII. ROXANNE LERMA'S ADA COORDINATION ROLE CONFIRMS THE NEED FOR CONFIDENTIALITY.

Plaintiff also alleges that ADA Coordinator Roxanne Lerma has not functioned as an independent, effective ADA decisionmaker. Plaintiff's filings allege that she routes decisions through counsel, including LCW and City litigation counsel, while Milan Mrakich retains practical control. The Court need not decide that issue now. But the allegation matters to sealing because it shows why disclosure and public access are not abstract concerns.

ADA accommodation information should be handled through a need-to-know process. When the ADA Coordinator's process is allegedly controlled by the City Manager and litigation counsel, documents revealing Safe at Home, ADA, and retaliation details are not safe on the public docket. They become usable by the same officials and counsel whose conduct is challenged.

Title II's effective-communication regulation requires auxiliary aids and services to be provided in a timely manner and in a way that protects the privacy and independence of the individual with a disability. 28 C.F.R. section 35.160(b)(2). That principle is directly relevant. Public docket exposure of ADA and safety materials destroys privacy and independence. It tells Plaintiff that every accommodation request, every safety objection, and every preservation notice may be displayed publicly and used against him.

## IX. THE ADA PROHIBITS RETALIATION AND INTERFERENCE; PUBLIC EXPOSURE CHILLS ADA RIGHTS.

The City's opposition treats ADA information as ordinary litigation material. But the ADA contains an anti-retaliation and anti-interference provision. 42 U.S.C. section 12203 prohibits discrimination because an individual opposed an ADA violation or participated in ADA proceedings, and it prohibits coercion, intimidation, threats, or interference with the exercise or enjoyment of ADA rights. The Title II regulation,

28 C.F.R. section 35.134, likewise prohibits interference and intimidation.

Public exposure of accommodation, Safe at Home, and retaliation documents can itself chill ADA rights. A disabled elected official cannot freely use accommodations if every request creates a risk that the City and its conflicted counsel will display accommodation-related evidence to the public and then argue that any attempt to restrict it is futile. That chilling effect is not speculative. Plaintiff alleges that his ADA equipment and accommodation costs were already publicly weaponized. Dkt. 45 at paragraphs 24-27, 40.

The sealing application therefore protects more than privacy. It protects continued access. Without confidentiality, Plaintiff must choose between using accommodations and risking public ridicule or safety exposure. Non-disabled councilmembers do not face that choice. Title II does not permit a public entity to administer its programs in a way that substantially impairs access or uses methods of administration that defeat equal participation. 28 C.F.R. section 35.130.

## X. THE CITY'S POSITION WOULD MAKE MEDICAL AND ADA PRIVACY MEANINGLESS.

The City states that Exhibit Y mentions disability only in the context of Plaintiff's own public statements. ECF No. 72 at 6. That is an overbroad waiver theory. A plaintiff does not waive all medical, disability, accommodation, and safety privacy by acknowledging disability. ADA plaintiffs routinely must identify disability to prove access claims. That necessary disclosure does not place every accommodation document into unrestricted public circulation.

California's Confidentiality of Medical Information Act further illustrates the policy problem. Civil Code section 56.20 requires employers who receive medical information to establish procedures to ensure confidentiality and protection from unauthorized use and disclosure. Plaintiff recognizes the City may dispute CMIA's application to a councilmember in this exact posture. But the confidentiality principle is powerful and consistent with federal ADA regulations: disability and medical-access information require careful handling, not public weaponization.

The public has an interest in understanding the case; it does not have an interest in making Plaintiff's Safe at Home and ADA materials searchable, downloadable, and usable by hostile actors. The Court can protect both interests by accepting redacted public versions and reviewing unredacted versions in camera.

## XI. THE CITY'S FUTILITY ARGUMENT IGNORES PRACTICAL COURT CONTROL OVER THE DOCKET.

The City says sealing would serve no legitimate purpose because the materials have appeared publicly. ECF No. 72 at 1-2. That is practically wrong. Administrative restriction of docket entries reduces continuing access. Redacted replacements reduce republication. In camera review prevents further public explanation of safety-sensitive details. Protective language limits future use of the same materials. Those remedies do not erase the past, but they prevent the Court's own docket from continuing the injury.

Courts routinely issue practical remedies that mitigate ongoing harm even when complete restoration is impossible. An injunction may not undo an initial disclosure, but it can prevent continued dissemination. A redaction may not retrieve downloads, but it can stop future court-facilitated access. The City's all-or-nothing position is not equity. It is opportunism.

Nor should the Court credit the suggestion that Plaintiff sought wholesale sealing without alternatives. Plaintiff expressly requests, in the alternative, targeted redaction, restriction of prior public versions, and in camera review. If the Court wants a line-by-line redaction process, Plaintiff will comply. The City should be ordered to meet and confer on specific redactions rather than demand blanket denial.

## XII. THE CITY'S ARGUMENT THAT EXHIBITS CONTAIN "NO PROTECTABLE INFORMATION" IS FACTUALLY UNSAFE.

The City's assertion that Exhibits X and Y contain no protectable information is counsel's conclusion, not a finding. The Court should review the documents itself. A document may reveal protected information through context, not only through a direct diagnosis or address. Here, the context includes Safe at Home, disability-accommodation disputes, counsel conflicts, retaliation evidence, law-enforcement/safety concerns, and the identities of actors involved in disclosure or obstruction.

This is especially true because Exhibit Y concerns a Buchalter response regarding Safe at Home. A document that discusses Safe at Home issues in the middle of a federal retaliation case involving alleged safety risk and public disclosure should not be treated as harmless merely because a street address is absent. The City applies the wrong level of abstraction.

Plaintiff asks the Court to reject the City's invitation to decide sensitivity based on counsel's assurances. The Court should either grant sealing or conduct in camera review and order targeted redactions.

## XIII. THE CITY'S OPPOSITION SHOULD BE VIEWED AS PART OF THE CONFLICT AND RETALIATION RECORD.

Plaintiff is not asking the Court to rule on every conflict allegation in this reply. But the Court should understand why Plaintiff distrusts the City's sealing opposition. Buchalter is not merely arguing public access. Buchalter is opposing protection for documents that bear on Buchalter's own role, Katie Fox's role, the Gemelli investigation, Mr. Scott's dual representation, and Mr. Mrakich's conduct.

That matters because a party may not use the access presumption to make the Court an instrument of strategic harm. The public-access doctrine promotes transparency and public understanding of the judicial process. It is not designed to help conflicted counsel expose safety-sensitive documents to defeat a pro se disabled litigant's ability to proceed safely.

The City's opposition also ignores the asymmetry. The City and Buchalter possess institutional resources, counsel, insurance channels, and staff. Plaintiff is autistic, self-represented, and seeking accommodations while litigating against the public entity that controls his Council access. The Court's procedural protections exist precisely to keep that imbalance from becoming a denial of access.

## XIV. THE OPPOSITION CONTAINS MATERIAL OMISSIONS THAT MAKE ITS REQUEST INEQUITABLE.

The opposition omits the most important point: Plaintiff sought protection before the City filed this objection. The City tells the Court that Plaintiff's later filings defeat sealing, but it does not address the reality that Plaintiff has been trying to protect sensitive materials through sealing, redaction, and in camera review while litigating without counsel. The City's opposition transforms Plaintiff's request for protection into an accusation of waiver. That is inequitable.

The opposition also omits the disability-access context. Plaintiff's need for written, structured, and repeated filings is not ordinary litigation excess; it is tied to autism-related processing, working-memory, and communication limitations. The City cannot ignore Plaintiff's disability context in the ADA case itself and then use

11

the volume or timing of pro se filings to argue that Plaintiff acted strategically or deliberately.

The opposition further omits counsel's own interest in the documents. Exhibits X and Y concern the investigation, Buchalter, Safe at Home, and conflict objections. Buchalter's attorneys are not bystanders. They are named throughout the operative complaint as actors, witnesses, and potential subjects of disqualification. A sealing opposition filed by such counsel should be scrutinized carefully, especially where public exposure benefits counsel's defensive narrative.

Finally, the opposition omits the ongoing nature of the harm. The question is not whether a past disclosure occurred. The question is whether this Court's docket will continue to host unredacted materials that Plaintiff alleges are being used for retaliation, public humiliation, safety exposure, and ADA interference. Continuing harm justifies continuing protection.

## XV. A LINE-BY-LINE RESPONSE TO THE CITY'S CORE CLAIMS SHOWS WHY RELIEF IS REQUIRED.

The City says Plaintiff's request is 'inequitable and futile.' ECF No. 72 at 1. It is neither. Equity favors protecting safety-sensitive and disability-sensitive materials, particularly where a self-represented disabled litigant has repeatedly attempted to use proper sealing procedures. Futility is wrong because docket restriction, redacted replacements, and in camera review still reduce continuing harm.

The City says Exhibit X contains no ADA, medical, or protected information. ECF No. 72 at 6. That statement is too narrow. Exhibit X is conflict and preservation evidence in an ADA retaliation case. Its public use reveals the structure of Plaintiff's objections, his safety posture, and the counsel/conflict pathway surrounding the investigation. Context is part of sensitivity.

The City says Exhibit Y merely references Safe at Home and contains no address. ECF No. 72 at 6. That is not enough. Safe at Home protection is not limited to an address field. The protected interest includes avoiding public linkage and amplification of information that may reveal identity, location pathways, safety context, and legal strategies connected to protected status.

The City says Plaintiff's disability is public because he has publicly discussed being disabled. ECF No. 72 at 6. That is a dangerous waiver theory. A disabled litigant can

publicly identify as disabled while maintaining privacy in medical records, accommodation details, safety information, and internal ADA communications. The law does not require silence as the price of privacy.

The City says Plaintiff failed to tailor. ECF No. 72 at 4. Plaintiff now expressly seeks the narrowest effective relief: seal or restrict the unredacted versions; allow public redacted versions; conduct in camera review if necessary; and order a meet-and-confer for specific redactions if the Court wants line-level precision. The City's answer is still blanket denial.

## XVI. THE COURT SHOULD NOT LET A PUBLIC ENTITY PROFIT FROM ITS OWN ALLEGED ADA FAILURES.

The City is the defendant public entity accused of denying accommodations, disclosing accommodation information, and retaliating against Plaintiff for asserting ADA rights. It should not be permitted to use those same ADA failures as litigation leverage. A public entity cannot first fail to provide effective, confidential accommodation handling and then argue that the resulting public confusion eliminates privacy.

Plaintiff alleges that Milan Mrakich, Roxanne Lerma, LCW, Buchalter, and other City-side actors failed to provide a prompt, independent, and confidential ADA process. That allegation matters here. The City now asks the Court to treat sensitive ADA/Safe at Home materials as ordinary public filings while the ADA process itself remains disputed. The Court should preserve confidentiality until the merits can be adjudicated.

The City controls the records, staff pathways, counsel, and public messaging. Plaintiff does not. Denying sealing would magnify the power imbalance by allowing the public entity and its conflicted counsel to make Plaintiff's safety and disability materials permanently available to the public while Plaintiff is still trying to establish equal access.

No public-access principle requires that result. Public access promotes accountability; it does not require exposing a disabled litigant's safety and medical-access materials in a way that chills participation in government and court.

## XVII. THE COURT HAS A PRACTICAL PATH THAT PROTECTS BOTH ACCESS AND SAFETY.

13

The Court can grant relief without impairing the public's ability to understand this case. First, the Court can restrict unredacted copies and permit redacted public versions. Second, the Court can require Plaintiff to lodge unredacted copies for in camera review. Third, the Court can require the parties to meet and confer about line-level redactions. Fourth, the Court can state that prior public filing does not constitute a merits waiver of ADA, Safe at Home, medical, or safety protections.

That approach is consistent with the Ninth Circuit's public-access cases and Local Rule 79-5.2.2. It is narrow. It is practical. It protects the judicial process from becoming a retaliation tool. And it allows the City to litigate the merits without unnecessary public exposure of sensitive information.

If the Court denies full sealing, Plaintiff respectfully requests that the Court at least restrict public access temporarily and order a prompt redaction procedure. Temporary restriction would preserve the status quo while the Court decides what portions, if any, must remain public. Without temporary restriction, the harm continues while the parties debate the remedy.

## XIV. REQUESTED RELIEF.

Plaintiff respectfully requests that the Court grant the application to file Exhibits X and Y under seal.

Alternatively, Plaintiff requests that the Court: (1) restrict public access to any unredacted versions of Exhibits X and Y currently on the docket; (2) permit or require Plaintiff to file redacted public versions; (3) review unredacted versions in camera; (4) seal or redact Safe at Home, ADA-accommodation, medical, law-enforcement, safety-sensitive, and conflict-sensitive material; (5) direct the parties to meet and confer on specific redactions if the Court requires line-level tailoring; and (6) preserve Plaintiff's right to seek disqualification, sanctions, or other relief in a properly noticed motion.

Plaintiff further requests that the Court reject the City's contention that prior public filing permanently waived protection. Any such ruling would punish a self-represented disabled litigant for procedural confusion and would chill future disability and safety claims.

The Court can protect the public's right to understand this case without allowing the public docket to become the vehicle for ADA retaliation, Safe at Home exposure,

and conflict-driven litigation tactics.

Dated: June 16, 2026

Respectfully submitted,

/s/ John Doe
John Doe
Plaintiff/Petitioner, Pro Se