John Doe

Plaintiff/Petitioner in Pro Per

Safe at Home Confidential Address

P.O. Box 1679, MS 5892

Sacramento, California 95812

Email: JohnDoeCA2025@gmail.com

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JOHN DOE, an individual,<br><br>Petitioner,<br><br>v.<br><br>CITY OF WEST COVINA,<br><br>Respondent. | Case No. 2:26-cv-03659-MEMF-MBK<br><br>Assigned to District Judge<br>Hon. Maame Ewusi-Mensah Frimpong<br><br>Magistrate Judge<br>Hon. Michael B. Kim |

**PLAINTIFF JOHN DOE'S REPLY IN SUPPORT OF APPLICATION TO FILE EXHIBITS B-H AND L UNDER SEAL; RESPONSE TO RESPONDENT CITY OF WEST COVINA'S OPPOSITION [ECF No. 76]; AND SUPPLEMENTAL NOTICE OF ONGOING RETALIATION AND NEW EEOC DEVELOPMENTS**

### I. INTRODUCTION

The City's opposition should be rejected. It asks the Court to punish a disabled, autistic, self-represented litigant for procedural sealing mistakes made during emergency litigation while the City simultaneously uses the earlier emergency record as a weapon to reduce, chill, and retaliate against his ADA accommodations.

Plaintiff is not asking to hide the existence of this case or the fact that disability access is central to the dispute. Plaintiff asks for a narrow and practical remedy: protect ADA accommodation records, medical-support records, Safe at Home/pseudonym-related materials, and related retaliation evidence from unrestricted public use; permit redacted public versions; and review sensitive materials in camera when necessary.

Respondent's opposition is also internally inconsistent. When Plaintiff first sought protection, the City and its counsel argued that sealing was the proper procedural

channel. Now, after Plaintiff attempted to use that channel, the same counsel argues that Plaintiff is not entitled to sealing because he previously filed materials publicly while proceeding pro se, autistic, and without meaningful sealed-filing guidance. That position is not equity. It is exploitation of disability-related and pro se procedural vulnerability.

Since the earlier TRO ruling, the harm has worsened. The City has treated the prior ruling as permission to reduce Plaintiff's accommodations, restrict meaningful participation, limit him to an inadequate one-minute pre-vote accommodation, threaten removal/arrest when he objects or uses accommodation-related rights, and permit public meeting tactics that identify, shame, and intimidate Plaintiff. Plaintiff has also received EEOC correspondence reopening his EEOC charges, which reinforces that the discrimination record is not closed and that additional investigation is underway. The EEOC materials are submitted separately under seal because they are confidential agency documents.

## II. THE COURT HAS POWER TO PROTECT RECORDS FROM IMPROPER USE EVEN WHEN PUBLIC ACCESS IS IMPORTANT

Plaintiff does not dispute the strong presumption of public access. See Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1178-79 (9th Cir. 2006); Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003). But the presumption is not absolute. Courts may seal or redact records where compelling reasons outweigh access, including where court files may become a vehicle for improper purposes, private spite, public scandal, or other concrete harm. Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978); Kamakana, 447 F.3d at 1179.

The City relies heavily on public-access cases while ignoring their limiting principle: the Court must balance access against harm and tailor the remedy. Center for Auto Safety v. Chrysler Group, LLC, 809 F.3d 1092, 1096-1102 (9th Cir. 2016), asks which standard applies. It does not command disclosure of medical/accommodation records. Civil Beat Law Center for Public Interest, Inc. v. Maile, 117 F.4th 1200, 1211 (9th Cir. 2024), rejects automatic blanket sealing of medical records, but it also confirms case-by-case review. Case-by-case review supports Plaintiff, because each document

relates to ADA accommodation, medical support, disability-access equipment, interactive-process materials, pseudonym/safety concerns, or retaliation context.

The public can understand this case from redacted exhibits, public briefing, and the Court's orders. The public does not need unrestricted access to private accommodation records, medical-support materials, Safe at Home/pseudonym correspondence, or the details of disability-access equipment that the City has already allowed to be weaponized publicly.

## III. THE CITY'S "ALREADY PUBLIC" ARGUMENT DOES NOT DEFEAT PROTECTION

The City's central argument is that several exhibits were previously filed publicly with Plaintiff's TRO application, so later sealing is supposedly impossible or useless. That is wrong as a categorical rule. Prior public filing may affect the scope of relief, but it does not strip the Court of authority to restrict future public access, require redacted replacements, seal duplicate unredacted copies, or prevent further use of the docket as an instrument of retaliation.

The prior filing occurred while Plaintiff was pro se, autistic, under emergency pressure, and seeking urgent protection. Plaintiff did not understand the sealed-filing procedure until the Court later explained the procedure. The City now asks the Court to transform that mistake into permanent waiver. That would create a dangerous rule for disabled pro se litigants: one procedural mistake means permanent loss of medical, ADA, accommodation, and safety confidentiality.

Courts should not reward that tactic. The appropriate remedy is not total denial; it is correction: narrowly tailored redactions, sealed unredacted versions, in camera review, and clear filing instructions going forward.

## IV. EXHIBITS B-H ARE NOT ORDINARY PUBLIC RECORDS; THEY ARE ADA ACCOMMODATION AND MEDICAL-ACCESS RECORDS

The City attempts to divide the exhibits into administrative categories - laptop, monitor, communication, seating, interactive process, home-office equipment, and accommodation clarification. That framing minimizes the actual record. These

documents are ADA accommodation records. They identify disability-related tools, interactive-process positions, medical-support references, implementation issues, communication modifications, and accommodation history.

The fact that one exhibit concerns a monitor or equipment does not make it ordinary procurement. Disability-access equipment can reveal medical need, functional limitation, accommodation strategy, and the scope of a disabled person's access barriers. In this case, equipment and accommodation costs have already been used publicly to portray Plaintiff's accommodations as wasteful or abusive. The risk is not hypothetical; it is the very retaliation alleged in this case.

Exhibit F, involving medical documentation review and physician materials, presents the clearest example. But the same logic applies to the other exhibits because they form the accommodation matrix the City later reduced, criticized, and used to justify limiting Plaintiff's participation. The Court should reject the City's attempt to treat ADA records as ordinary public paperwork.

## V. EXHIBIT L IMPLICATES PSEUDONYMITY, SAFETY, AND RETALIATION

The City says Exhibit L is ordinary correspondence about anticipated motion practice and possible amicus participation. That understates the issue. Plaintiff's pseudonym and Safe at Home concerns exist because disclosure and linkage of his identity to sensitive matters can cause safety risks. Pseudonym disputes often must be litigated publicly in part, but that does not require unrestricted disclosure of screenshots, communications, identifiers, strategy, third-party pressures, or materials that increase safety risk.

The Ninth Circuit recognizes that anonymity may be appropriate where a party faces a reasonable fear of severe harm and the need for anonymity outweighs prejudice and public interest. Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067-69 (9th Cir. 2000). Plaintiff does not seek to litigate in total secrecy. He seeks to prevent the docket from becoming a roadmap for retaliation, identification, and harassment.

## VI. NEW DEVELOPMENTS CONFIRM THE NEED FOR PROTECTION

Plaintiff provides supplemental notice of new developments not to relitigate the TRO, but to show that the sealing issue is not abstract. On June 18, 2026, EEOC correspondence granted reconsideration and stated the charges against the City would be reopened for additional investigation. The Notice of Intent to Reconsider states that the prior dismissal is being reconsidered and the investigation will resume. Those documents are submitted under seal because EEOC charge materials are sensitive and because public filing would unnecessarily disclose agency-charge information.

On June 16, 2026, during a City Council meeting, a public commenter identified herself as there to serve "John Doe" and repeatedly asked who John Doe was. Mayor Leticia Lopez-Viado then engaged with the request, treated the service issue as part of public comment, and called a recess so the document could be served. The public transcript attached as Exhibit 2 reflects that the speaker stated: "Can someone please tell me who council member John Doe is?" and that the Mayor discussed whether the person could come into the well area to serve. City Attorney Thomas Duarte stated that speakers are typically not allowed in the well area. Exhibit 2 also ties to West Covina Code section 2-52, which restricts who may be within the rail in front of the council chamber without the express consent of the Council.

Plaintiff contends this episode was retaliatory and orchestrated after he asserted ADA rights, pseudonym rights, and claims against City officials. The Court does not need to decide every underlying fact on this sealing motion. The point is narrower: Plaintiff's safety, pseudonym, and ADA-related information are being used in public settings to identify, shame, pressure, and silence him. That supplies compelling reasons for protection.

## VII. THE CITY IS USING THE PRIOR TRO RULING AGAINST PLAINTIFF'S ACCOMMODATIONS

The City relies on the prior TRO ruling as though it conclusively resolved the ADA facts. It did not. The TRO ruling was interlocutory, issued on an emergency record, and before the sealed and supplemental materials now at issue could be properly presented. Plaintiff contends the City has since weaponized that ruling to cut accommodations, limit Plaintiff's ability to speak before voting, and threaten removal

or arrest when Plaintiff objects to meeting procedures that interfere with his disability access.

This is exactly why sealing matters. If the City can force every ADA accommodation record into the public docket, then cite the public disclosure back against Plaintiff, a disabled litigant is trapped. He must either withhold evidence and lose on the record, or disclose sensitive information and suffer retaliation for disclosing it. The Court should not permit that trap.

## VIII. BUCHALTER AND ROGER SCOTT'S ROLE REQUIRES INDEPENDENT REVIEW

The opposition is signed by Roger Scott and Buchalter on behalf of the City. Plaintiff contends Mr. Scott and Buchalter are not neutral public-access advocates. Plaintiff alleges that Buchalter is deeply involved in the underlying ADA, investigation, retaliation, and conflict record; that Mr. Scott has represented or acted for individual officials whose interests are not identical to the municipal entity; and that counsel has made public statements or appearances concerning this litigation in ways Plaintiff believes waived strategic restraint and escalated retaliation.

Plaintiff also contends that Mr. Scott has publicly discussed aspects of Plaintiff's case, strategy, and dispute in a public City meeting while billing or acting as taxpayer-funded counsel. If the City's counsel may discuss the case publicly when it benefits the City narrative, the Court should be especially cautious before allowing the same counsel to force Plaintiff's medical and accommodation materials into the public docket.

The Court need not decide disqualification in this reply. But it should independently review Exhibits B-H and L, and it should not accept counsel's characterization that these are harmless administrative records.

## IX. THE CITY'S PUBLIC-ACCESS THEORY WOULD CHILL TITLE II ENFORCEMENT

Title II of the ADA protects access to public services, programs, and activities. 42 U.S.C. section 12132. Title II regulations also require public entities to provide

effective communication and auxiliary aids in a manner that protects the privacy and independence of the individual with a disability. 28 C.F.R. section 35.160(b)(2). It would defeat that principle if a public entity could demand public disclosure of accommodation files whenever a disabled person sues to enforce accommodation rights.

The City's theory would chill enforcement. Disabled litigants would know that if they sue, their accommodation records, equipment requests, medical-support communications, and interactive-process history may become public exhibits for hostile political use. That is not transparency. It is deterrence.

## X. A NARROWER REMEDY IS AVAILABLE AND SHOULD BE ORDERED

If the Court finds that full sealing of every page is too broad, Plaintiff requests narrower relief instead of denial. The Court should: (1) temporarily restrict unredacted versions; (2) require redacted public versions; (3) permit unredacted versions under seal; (4) review disputed pages in camera; and (5) prohibit use of the public docket to expose medical, ADA, accommodation, Safe at Home, pseudonym, and security-related details not necessary to public understanding.

This remedy is narrower than either party's extreme. It honors public access while preventing the City and third parties from using court filings as a retaliation tool.

## XI. RESPONDENT'S RELIANCE ON BRIDE AND LANGWORTHY IS MISPLACED

Respondent relies on Bride v. Snap Inc. and Langworthy to argue that when disability is central to a claim, the public has a substantial interest in disability-related facts. Plaintiff does not dispute that the public may understand the nature of the ADA claim. But those cases do not hold that every medical-support record, every accommodation implementation detail, every interactive-process communication, and every pseudonym/safety communication must be publicly exposed without redaction. They require individualized balancing.

Here, individualized balancing favors protection. The Court can state in a public order that Plaintiff alleges autism, ADA accommodation denials, accommodation

retaliation, meeting-access restrictions, and pseudonym/safety harms. The Court can also discuss the legal standards publicly. What the public does not need is unrestricted access to the underlying accommodation record that has already been used in City politics to shame, minimize, and restrict Plaintiff's disability access.

## XII. THE COURT SHOULD NOT ALLOW A PUBLIC ENTITY TO BENEFIT FROM ITS OWN DISCLOSURE-BASED HARM

A public entity should not be permitted to argue that because sensitive accommodation records were once exposed, the Court should now deny all protection going forward. That rule would reward the very harm Plaintiff is asking the Court to stop. It would also create an incentive for defendants in ADA cases to amplify sensitive materials and then argue that protection is futile.

The better rule is practical and fair: prior exposure may affect the remedy, but it does not eliminate the Court's ability to reduce ongoing harm. Courts routinely order redactions, seal duplicate docket entries, restrict future access, and require corrected public versions when sensitive information appears on the docket. This Court should do the same here.

## XIII. THE SUPPLEMENTAL FACTS ARE RELEVANT TO HARM, NOT TO RELITIGATE THE ENTIRE CASE

Plaintiff anticipates the City may argue that the June 16 Council incident, the EEOC reopening documents, and counsel's public conduct are outside the narrow sealing question. They are relevant for one limited purpose: they show that harm is ongoing and that the public docket is being used in the real world, in public meetings, to pressure and retaliate against Plaintiff. That is the precise type of harm the sealing and protective-order process is designed to prevent.

The Court does not need to decide whether Mayor Lopez-Viado, Mr. Scott, Mr. Mrakich, or any other actor is liable on these facts today. The Court only needs to recognize that Plaintiff's fear of further misuse is concrete and grounded in recent events, not speculation.

## XIV. PLAINTIFF REQUESTS A PROTECTIVE FILING PROTOCOL GOING FORWARD

Plaintiff also requests a simple protocol going forward: any filing containing ADA accommodation records, medical support, interactive-process communications, Safe at Home/pseudonym information, EEOC charge material, disability-access equipment details, or security-related information should be filed in redacted public form with unredacted versions submitted under seal or for in camera review. The protocol should apply equally to both sides.

Such a protocol will not burden the City. It will reduce emergency motion practice, prevent unnecessary public exposure, and allow the merits to be litigated without turning disability and safety information into public ammunition.

## XV. REQUESTED RELIEF

Plaintiff respectfully requests that the Court grant the application to file Exhibits B-H and L under seal. In the alternative, Plaintiff requests partial sealing and public redacted versions. Plaintiff also requests that the Court accept the supplemental declaration, take judicial notice of the public ordinance and transcript exhibits, allow the EEOC materials and confidential ADA notice to be submitted under seal, and issue a protective order governing future medical, ADA, accommodation, Safe at Home, and pseudonym-related filings.

## XVI. CONCLUSION

This is not a case where a litigant seeks secrecy over public business. This is a case where an autistic pro se plaintiff is trying to stop a public entity from turning ADA accommodation records, medical-support materials, and pseudonym/safety correspondence into public weapons. The City's opposition should be denied.

Dated: June 19, 2026

Respectfully submitted,

/s/ John Doe

John Doe

Plaintiff/Petitioner in Pro Per

REPLY TO DKT 76 OPPOSITION