**JOHN DOE, Plaintiff in Pro Per**

johndoeca2025@gmail.com

Safe at Home Confidential Address on File

Plaintiff John Doe

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| **JOHN DOE,** | **Case No. 2:26-cv-03659-MEMF-MBK** |
| Plaintiff, | |
| v. | **PLAINTIFF JOHN DOE'S NOTICE OF** |
| **CITY OF WEST COVINA,** | **NEWLY OCCURRING MATERIAL EVIDENCE** |
| et al., | **AND REQUEST FOR LEAVE TO SUPPLEMENT** |
| Defendants. | **PENDING EX PARTE APPLICATION FOR** |
| | **RECONSIDERATION [DKT. 79];** |
| | **SUPPLEMENTAL MEMORANDUM OF** |
| | **POINTS AND AUTHORITIES** |
| | [Related to Dkt. 79] |
| | Courtroom: 8B |
| | Judge: Hon. Maame Ewusi-Mensah Frimpong |

**TO THE COURT AND ALL PARTIES:**

Plaintiff John Doe requests leave to file the accompanying Supplemental Declaration
and Exhibits A-H in further support of the pending application at Dkt. 79.

1

This is a focused request for procedural leave, not a second motion for reconsideration and not a new request for a temporary restraining order. The Court has not yet ruled on Dkt. 79. Plaintiff asks only that the Court accept and consider evidence that arose on June 23 and June 24, 2026 and could not have been presented when Dkt. 79 was filed.

The most recent evidence is a written response from GoPro Support, received June 24, 2026, addressing the exact storage-capacity issue used in the City's June 23 accommodation determination. The manufacturer-support response states that a 128 GB card records approximately 1.5 to 3 hours of 360-degree 4K video, while a 512 GB card records approximately 6 to 12 hours, depending on bitrate and compression. The City's letter states that its 128 GB card records approximately 7.5 hours and that a 512 GB card would provide approximately 8 hours even at the highest bitrate and 8K settings. Exs. A-B.

Those statements may rest on different modes and settings. That is precisely why the new evidence matters. The City's final decision does not identify the camera model, firmware, recording mode, resolution, frame rate, codec, bitrate, continuous-recording test, raw results, or the employee who performed the analysis. The decision nevertheless treated Plaintiff's technical objection as a refusal. The GoPro response materially undermines that characterization and confirms that the omitted technical assumptions determine whether the offered device will function through an entire proceeding.

Plaintiff immediately sent the GoPro response to City Manager Milan Mrakich and ADA Coordinator Roxanne Lerma, asked them to comply with the ADA and Section 504, and requested a good-faith process based on accurate, individualized information. Ex. C. The remaining exhibits document the final determination, the request for independent review, the City's same-day treatment of another disability request, and communications using crisis work product to discount Plaintiff's need for processing time. Exs. D-H.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. LEAVE IS WARRANTED BECAUSE THE EVIDENCE DID NOT EXIST WHEN DKT. 79 WAS FILED

Federal Rule of Civil Procedure 54(b) permits revision of an interlocutory order before entry of final judgment. Local Rule 7-18(b) expressly recognizes the emergence of new material facts after an order. This request does not repeat the earlier briefing; it presents a final June 23 decision and a June 24 manufacturer response that did not exist earlier.

The Court also has discretion to consider declarations and evidence at the preliminary-injunction stage even when the material might not be presented in the same form at trial. Johnson v. Couturier, 572 F.3d 1067, 1083 (9th Cir. 2009). The GoPro response is not offered as a retained-expert opinion or as conclusive proof of a product specification. It is offered for the narrower and immediately relevant proposition that the manufacturer's written estimate conflicts materially with the City's unexplained estimate and establishes a genuine need for transparent, fact-specific technical investigation.

There is no unfair prejudice. Defendants authored, sent, or received nearly every exhibit. The only outside document is one page from GoPro Support. If the Court wishes, it may permit Defendants a short response. Refusing to consider the evidence, by contrast, would leave the pending emergency request to be decided on a factual premise that the manufacturer has now called into serious question.

## II. THE NEW GOPRO RESPONSE EXPOSES AN UNRESOLVED TECHNICAL CONTRADICTION AT THE CENTER OF THE FINAL DECISION

### A. The City relied on an undisclosed comparison of unlike settings.

The June 23 letter states that the City's 128 GB card can record approximately 7.5 hours and is sufficient. In the same paragraph, the City states that a 512 GB card will provide approximately 8 hours at the highest bitrate and 8K settings. Ex. A at 1. A fourfold increase in storage paired with only one-half hour of additional recording

strongly suggests that the two estimates use different resolutions, bitrates, compression settings, recording modes, or other assumptions.

GoPro Support supplied an apples-to-apples estimate for 360-degree 4K recording: approximately 1.5 to 3 hours for 128 GB; 6 to 12 hours for 512 GB; and 12 to 24 hours for 1 TB, depending on bitrate and compression. Ex. B. The response does not prove the exact runtime of every configuration. It does prove that runtime changes dramatically with settings and that the City cannot establish equal effectiveness by citing an unexplained number.

**B. The accommodation must reliably perform the disability-related function.**

The 360-degree camera is requested to preserve whole-room visual and spatial information that selected public-broadcast angles do not capture. That context assists Plaintiff with auditory processing, working memory, sensory integration, and later reconstruction of multi-speaker deliberation. A device that may stop recording before the proceeding ends is not a reliable auxiliary aid. A missing latter portion cannot be recreated after the vote, discussion, or interruption has occurred.

Title II requires aids, benefits, and services that are as effective in affording equal opportunity, and it requires reasonable modifications unless the public entity proves fundamental alteration. 28 C.F.R. section 35.130(b)(1)(iii), (b)(7)(i). Effective communication depends on the nature, length, complexity, and context of the communication and must be provided timely and in a manner that protects privacy and independence. 28 C.F.R. section 35.160.

**C. Requesting technical verification is not refusal.**

Plaintiff did not reject the camera. He asked whether the storage, mode, power, and transfer configuration would actually complete the task for which the aid was requested. The City's letter characterized that objection as refusing to use the device and summarily asserting insufficiency. Ex. A at 1. The June 24 response shows that the concern was objectively reasonable. A disabled person does not forfeit protection by identifying that a proposed substitute may fail.

## III. CURRENT NINTH CIRCUIT LAW REQUIRES A FACT-SPECIFIC INVESTIGATION, NOT A CONCLUSORY SUBSTITUTE

The Ninth Circuit recently reaffirmed that after receiving an accommodation request, a public entity must undertake a fact-specific investigation to determine what constitutes a reasonable accommodation. Weldeyohannes v. State of Washington, No. 24-3821, slip op. at 9-10 (9th Cir. Dec. 19, 2025) (quoting Duvall v. County of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001)). Weldeyohannes further explains that a denial without investigation can support deliberate indifference and that repeated notice followed by failure to act creates a triable issue. Id.; Updike v. Multnomah County, 870 F.3d 939, 954-57 (9th Cir. 2017).

Here, the final letter does not disclose any actual continuous-recording test, test date, test duration, raw output, settings, or technical witness. Plaintiff requested those details before and after the determination. Ex. D. The manufacturer response now confirms that those details are outcome-determinative. On this record, a conclusory statement that IT confirmed 7.5 hours cannot resolve whether the offered configuration is effective for the actual 360-degree function.

The same principle applies to the other requests. The City need not purchase every preferred item, and Plaintiff does not ask it to do so. But the substitute must address the identified barrier in the real setting. An adjustable chair, Plaintiff's own suitable chair, position changes, or brief disability-related breaks may address prolonged sitting. Stable offline agenda files may address cloud-navigation burdens. Short processing pauses, one principal question at a time, and rephrasing may address compound verbal demands. A medically triggered remote option may address episodic flares. The inquiry is functional, individualized, and fact specific.

## IV. THE NEW RECORD SHOWS CONCRETE AND WORSENING PHYSICAL, COGNITIVE, AND PSYCHOLOGICAL HARM

**A. Back pain directly impairs Council participation.**

Plaintiff experiences chronic back pain that increases with prolonged standard seating during Council meetings and extended agenda review. As pain escalates, it consumes attention needed to listen, read, organize information, formulate questions, deliberate, and vote. Plaintiff must shift position, stand, or briefly move to reduce symptoms. Continuing to sit through increasing pain is not equal access merely because Plaintiff remains physically present.

The City denied the requested chairs while emphasizing price and preference. Ex. A at 3-4. Plaintiff seeks no luxury entitlement. He seeks a workable method of reducing pain enough to preserve concentration and endurance. A less costly adjustable chair, a rental, use of his own suitable chair, position changes, and brief breaks are all available interim options.

**B. Repeated denials and compressed demands aggravate mental-health symptoms and cognitive fatigue.**

Plaintiff declares that the continuing dispute has produced anxiety, dread, sleep disruption, emotional exhaustion, and difficulty concentrating. After the June 18 state-court hearing, he required emergency medical care. Ex. H. Lack of sleep and sustained stress worsen working memory, sequencing, sensory regulation, and the ability to process fast-moving oral information. Pain and anxiety compound one another: pain consumes attention; anxiety accelerates processing pressure; sleep loss reduces resilience at the next meeting.

The ability to produce an emergency filing through extraordinary effort does not establish sustainable capacity. The June 22 default threat and June 23 sanctions letter expressly relied on Plaintiff's rapid filings, discovery, and writ petition to discount his request for additional time. Exs. F-G. Plaintiff does not contend that every deadline or discovery objection is retaliation. The narrower point is that crisis output completed through pain, distress, and lost sleep is repeatedly treated as proof that disability-related limitations do not exist.

**C. Federal law does not require collapse before protection attaches.**

6

The relevant question is not how much pain Plaintiff can endure before he becomes unable to function. The question is whether reasonable, modest measures can prevent predictable deterioration while preserving equal participation. The ADA does not require another emergency-room visit, incapacitating pain, or total exclusion before the Court may protect meaningful access.

**D. Council proceedings create irreparable, non-replicable injury.**

A Council meeting cannot be replayed as a legal remedy. Once debate closes, a vote is cast, a question goes unanswered, or a concise statement is cut off, the representative function is lost. Money cannot restore the exact deliberation, constituent representation, or public record. Nor can damages restore the privacy and independence lost when a person must publicly fight for each accommodation or risk being characterized as refusing help.

Each recurring meeting therefore presents a coercive choice: participate without effective measures and accept worsening pain and cognitive impairment, or reduce participation in the office to which constituents elected Plaintiff. Disability-related loss of professional and public functions can be irreparable. Enyart v. National Conference of Bar Examiners, 630 F.3d 1153, 1165-67 (9th Cir. 2011); Chalk v. U.S. District Court, 840 F.2d 701, 709-10 (9th Cir. 1988).

**V. THE SAME-DAY COMPARATOR AND DECISION STRUCTURE SUPPORT THE NEED FOR COURT REVIEW**

On June 23, resident Vivian Meleka renewed a disability-related request concerning street-sweeping enforcement. The City stated that enforcement would not begin until the request was investigated, assigned HR/Risk Management Director Carmelita Underwood, and scheduled an interactive-process meeting for the next morning. Ex. E. Plaintiff recognizes that the programs and applicants differ, so the comparison is not conclusive proof of discrimination.

The comparison is nevertheless probative of process. It shows the City can pause an adverse consequence, use HR/Risk directly, and convene a prompt meeting. Plaintiff

instead received an adversarial six-page determination on City Manager letterhead signed by Milan Mrakich, an individual defendant whose conduct is challenged in this case, and transmitted by Roxanne Lerma. Ex. A. That structure does not itself establish illegality, but it strengthens the need for neutral judicial review of whether the process was fact specific and effective.

## VI. THE REQUEST IS NARROW AND IMPOSES NO UNFAIR PREJUDICE

Plaintiff asks the Court to accept the declaration and Exhibits A-H and consider them when deciding Dkt. 79. He does not ask through this filing to alter any state-court deadline, discovery obligation, sanctions question, or proceeding. He does not ask the Court to find that anyone lied, to resolve technical fact disputes without testing, or to compel a particular commercial product.

The requested procedural order preserves both sides. Defendants may explain the mode, settings, calculations, or testing underlying the City's estimate. The Court may then evaluate the evidence on a complete record. The public interest favors decisions based on accurate technical information, compliance with disability law, and meaningful participation by an elected representative.

## VII. REQUESTED RELIEF

Plaintiff respectfully requests an order: (1) granting leave to file the Supplemental Declaration and Exhibits A-H; (2) deeming those materials filed as of June 24, 2026; (3) considering them together with Dkt. 79 before ruling; (4) permitting Defendants a short response if the Court finds one necessary; and (5) granting no other relief through this procedural request.

## VIII. CONCLUSION

The June 24 manufacturer response did not exist when Dkt. 79 was filed. It directly concerns the factual premise used to characterize Plaintiff's objection as refusal and to

8

declare the offered camera configuration sufficient. Together with the final denial, immediate notice, comparator, pressure communications, and detailed harm declaration, it should be accepted and considered before the Court resolves the pending emergency application.

Dated: June 24, 2026

Respectfully submitted,

/s/ John Doe

**JOHN DOE, Plaintiff in Pro Per**

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, Plaintiff in Pro Per, certifies that this memorandum contains 1,818 words and complies with Local Rule 11-6.1.

June 24, 2026                  /s/ John Doe