# EXHIBIT 1

BRIAN GUTIERREZ

Respondent in Pro Per

P.O. Box 1679, MS 5892

Sacramento, California 95812

Email: JohnDoeCA2025@gmail.com

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| CITY OF WEST COVINA,<br>Petitioner,<br><br>v.<br><br>BRIAN GUTIERREZ, an individual,<br>Respondent. | Case No. 26STCP00678<br>NOTICE OF MOTION AND MOTION TO DISQUALIFY BUCHALTER LLP; OR, IN THE<br>ALTERNATIVE, TO DISQUALIFY THOMAS M.<br>O'CONNELL AND ROGER L. SCOTT;<br>MEMORANDUM OF POINTS AND AUTHORITIES;<br>DECLARATION OF BRIAN GUTIERREZ;<br>EXHIBITS<br><br>Hearing Date: June 18, 2026<br>Time: 1:30 p.m.<br>Dept.: 86<br>Judge: Hon. Curtis A. Kin<br>Reservation No.: Reserved Directly with Court |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 18, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard in Department 86 of the above-entitled Court, Respondent Brian Gutierrez will and hereby does move for an order disqualifying Buchalter LLP from any further representation of Petitioner City of West Covina in this action. In the alternative, Respondent moves at minimum to disqualify Thomas M. O'Connell and Roger L. Scott and to stay proceedings briefly for substitution of new counsel.

This motion is made under Code of Civil Procedure section 128, subdivision (a)(5), Rules of Professional Conduct 1.7, 1.13, and 3.7, and the Court's inherent authority to protect the integrity of its proceedings. The motion is grounded in documentary evidence showing that Buchalter was broadly retained for employment advice and litigation services; that Buchalter attorneys directly participated in the complaint, interim restriction, censure, investigation, report-defense, and litigation processes now under challenge; that Kelly Gemelli's September 19, 2025 retainer ran directly through Buchalter attorney Kathryn B. Fox; that Kathryn Fox later defended the resulting report and demanded

preservation of AI prompts and chats; and that Roger L. Scott's April 16, 2026 email proves he is personally speaking for the City on ADA administration, staff-access restrictions, communication protocols, the supposed "independent investigation," and the March 17, 2026 censure. Those facts create a significant risk of material limitation under Rule 1.7, a public-entity neutrality problem under Clancy and Cobra Solutions, and an advocate-witness problem under Rule 3.7 as to O'Connell and Scott.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Brian Gutierrez, the attached exhibits and attachments, the files and records of this action, and any further evidence or argument the Court may receive.

Dated: April 17, 2026

_____

BRIAN GUTIERREZ

Respondent in Pro Per

**TABLE OF AUTHORITIES**

**Cases**

City and County of San Francisco v. Cobra Solutions, Inc. (2006) 38 Cal.4th 839

Clancy v. Superior Court (1985) 39 Cal.3d 740

Comden v. Superior Court (1978) 20 Cal.3d 906

Gregori v. Bank of America (1989) 207 Cal.App.3d 291

Great Lakes Construction, Inc. v. Burman (2010) 186 Cal.App.4th 1347

Kennedy v. Eldridge (2011) 201 Cal.App.4th 1197

People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc. (1999) 20 Cal.4th 1135

Smith, Smith & Kring v. Superior Court (1997) 60 Cal.App.4th 573

**Statutes and Rules**

Code Civ. Proc., § 128, subd. (a)(5)

Cal. Rules Prof. Conduct, rules 1.7, 1.13, 3.7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This is not a tactical motion. It is a conflict motion compelled by Buchalter's own documents and by Buchalter's current conduct in this very case. The central problem is not simply that Buchalter advocates for the City. The problem is that Buchalter's own lawyers helped create, transmit, structure, defend, and now litigate the very processes and factual narratives that are disputed on the merits. In a case like this, where a public entity seeks coercive relief against an elected official, the Court is entitled to counsel whose loyalty is to the entity as an organization and whose courtroom advocacy is not materially limited by the firm's need to justify its own prior conduct.

The record shows the following. Buchalter's September 9, 2022 engagement agreement retained the firm for "employment advice and litigation services" and expressly extended to future matters as well. Thomas M. O'Connell then personally launched the September 2025 complaint-response process, directed interim communication restrictions, announced Buchalter's court appearance and censure coordination, and transmitted the October 2025 investigation protocol. Kelly Gemelli's September 19, 2025 retainer letter was addressed directly to Buchalter attorney Kathryn B. Fox and states that the investigation would be performed as legal services to facilitate the rendering of legal advice by the City's counsel. Fox later defended the resulting report, declared Respondent's objections "without merit," and demanded preservation of AI prompts, searches, and chats. Roger L. Scott then filed this writ petition, received the April 2, 2026 clarification chain broadening the City's litigation position, propounded sweeping discovery on April 10, and on April 16 personally responded to Respondent's ADA and governance emails by invoking Underwood's declaration, LCW's role, the April 15 communication protocols, Levy, the Gemelli investigation, and the March 17 censure.

That is not detached representation. It is witness-entangled, materially limited, and incompatible with the neutrality expected of lawyers acting for a public entity. At minimum, O'Connell and Scott must be disqualified now. On this record, firmwide disqualification is warranted.

### II. LEGAL STANDARD

California trial courts possess both inherent authority and express statutory authority to control proceedings and disqualify counsel in furtherance of justice. (Code Civ. Proc., § 128, subd. (a)(5).) Disqualification motions implicate competing interests, but the "paramount concern" remains preservation of public trust in the scrupulous administration of justice and the integrity of the bar. (People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc. (1999) 20 Cal.4th 1135, 1144-1145; Gregori v. Bank of America (1989) 207 Cal.App.3d 291, 300.)

Where the target is counsel for a public entity, those concerns carry special force. In Clancy v. Superior Court (1985) 39 Cal.3d 740, 746-748, the Supreme Court emphasized that lawyers wielding governmental power in civil litigation must act with a degree of neutrality that is not expected of ordinary private counsel. In City and County of San Francisco v. Cobra Solutions, Inc. (2006) 38 Cal.4th 839, 852-854, the Court again recognized that actual and apparent conflicts in public-law representation undermine public confidence and warrant disqualification.

Rule 1.7, subdivision (b), prohibits representation if there is a significant risk that the lawyer's representation will be materially limited by responsibilities to a third person or by the lawyer's own interests. Rule 1.13 confirms that the client is the organization itself, not the constituent officials through whom the organization acts. Rule 3.7 bars a lawyer from acting as an advocate at trial if the lawyer is likely to be a witness, and California courts recognize that when counsel's testimony is likely to be necessary and not merely cumulative, disqualification may be required. (Comden v. Superior Court (1978) 20 Cal.3d 906, 915; Smith, Smith & Kring v. Superior Court (1997) 60 Cal.App.4th 573, 580-581; Kennedy v. Eldridge (2011) 201 Cal.App.4th 1197, 1209-1211.)

Respondent is not asking the Court to disqualify counsel based on abstract appearance alone. Respondent points to a concrete, document-backed set of circumstances showing that Buchalter's own conduct, credibility, and internal communications are intertwined with the merits. That is an actual material-limitation problem, not a hypothetical one.

### III. BUCHALTER WAS BROADLY RETAINED AND THEN MOVED FROM ADVISER TO ACTIVE PARTICIPANT IN THE CHALLENGED PROCESS

The starting point is Buchalter's own retainer. The September 9, 2022 engagement agreement retained Buchalter to act for the City of West Covina in connection with "employment advice and litigation services," and it expressly provides that the agreement would apply not only to the present matter but also to future matters. Thomas M. O'Connell signed that agreement for Buchalter. That broad engagement matters because the present writ/discovery dispute did not arise in isolation. It arose after Buchalter had already become deeply involved in the City's complaint, censure, investigation, and report-handling machinery.

On September 9, 2025, O'Connell wrote directly to Respondent that Mayor Pro Tem Lopez-Viado had submitted a complaint, that the City would move forward with an "independent third-party investigation," and that Respondent was immediately directed to cease communications with Lopez-Viado outside Council meetings as an interim protective measure. On September 12, 2025, O'Connell informed City leadership and councilmembers that Buchalter attorney Jennifer Misetich had appeared in court for the City, summarized the result, and stated that he would discuss the matter further with the Council in closed session and under the censure item. On October 7 and October 9, 2025, O'Connell remained in the center of the investigation protocol and communication stream, copying Acting City Manager Mrakich, City Attorney Duarte, Kelly Gemelli, Carmelita Underwood, and Buchalter's Assistant General Counsel Amber Bevacqua-Lynott.

These are not ministerial acts. They are first-hand communications and directives central to Respondent's contention that the process was structurally conflicted from inception. Buchalter cannot now litigate from the posture of detached outside counsel while its own shareholder authored the interim restrictions, coordinated the investigation architecture, inserted the firm into the censure pipeline, and took positions on recusal, Rule 1.13, and governance handling.

### IV. THE GEMELLI-FOX RECORD SHOWS THAT BUCHALTER WAS INSIDE THE SO-CALLED INDEPENDENT INVESTIGATION AND LATER DEFENDED THE RESULTING REPORT

The conflict is sharpened by the Gemelli/Fox documents. On September 19, 2025, Kelly Gemelli sent her engagement letter not to the City generally, but to Kathryn B. Fox at Buchalter. That letter states that Gemelli Employment Law was retained to conduct a personnel investigation "as an attorney for the purpose of facilitating the rendering of legal advice to the Client by its counsel," and that the work would be protected by attorney-client privilege and work product. The same retainer states that the City would look to its regular outside counsel regarding privilege, waiver, data access, document retention, litigation holds, confidentiality admonitions, and interim employment measures.

That retainer is incompatible with any suggestion that Buchalter was merely downstream defense counsel uninvolved in the investigation. It places Fox and Buchalter at the center of the supposed independent process. Fox's later March 3, 2026 email confirms the point. Responding to Respondent's demands concerning the workplace investigation report, Fox stated that Buchalter had reviewed the demands, found them "without merit," and, before addressing substance, instructed Respondent to preserve all records of any AI prompts, searches, or chats used to generate his emails and notices. Fox then defended the public version of the report and the disclosures it contained. Thus, Fox was not an unrelated Buchalter lawyer appearing later on a separate issue. She was defending the very report and publication process that Respondent contends were conflict-tainted and false.

For purposes of this motion, the Court need not decide whether Respondent is correct about the report's ultimate accuracy. The point is narrower and dispositive: Buchalter, through Fox, took substantive positions defending the Gemelli report and preserving an AI narrative tied to that report. That makes the firm a fact witness to how the report was handled, defended, and operationalized. It also gives the firm a direct interest in justifying the report and the process through which it was released.

## V. ROGER L. SCOTT'S APRIL 16, 2026 EMAIL IS DIRECT EVIDENCE OF CURRENT OVERSTEPPING, MATERIAL LIMITATION, AND WITNESS ENTANGLEMENT

The new April 16, 2026 Scott email is a particularly strong example of why the current packet must be redone and why Buchalter cannot remain in this case. Scott did not confine himself to defending the writ petition. He announced that because Respondent's April 15 emails threatened legal action or litigation conduct, they had been directed to him for response. He then responded not only on litigation, but on ADA administration, LCW's role, Ms. Lerma's role, Ms. Underwood's discomfort, staff-safety rationale, the legal validity of the April 15 communication protocols, Levy v. City of Santa Monica, the supposed findings of the "independent investigation," and the significance of the March 17, 2026 censure.

Specifically, Scott stated that ADA matters were being addressed through the City's designated ADA coordinator in consultation with outside counsel Liebert Cassidy Whitmore; that the City would not require staff to engage in interactions they reasonably perceived as unsafe or intimidating; that the communication protocols were grounded in the municipal code and governance framework; that Levy did not give councilmembers unfettered access to staff; and that the City's independent investigation had found Respondent engaged in conduct reasonably perceived as "intimidating" and "retaliatory." He then used those supposed findings to justify the City's continued management of Respondent's communications.

That email proves at least three things. First, Scott has personal knowledge of the City's asserted basis for the protocol, ADA-handling chain, staff-interaction restrictions, and the use of the Gemelli investigation/censure as justification. Second, Scott is not acting as neutral record-collecting counsel in a narrow CPRA matter; he is acting as policy enforcer and factual spokesperson for the City on a much larger retaliation-and-report dispute. Third, because Scott chose to embed himself in those facts, he is now a likely percipient witness to whether the litigation, the April 15 protocol, and the City's use of the Gemelli/Fox report are truly about records compliance or instead about protecting particular officials and suppressing Respondent.

The Court need not accept Respondent's merits view to recognize the conflict. Once Scott personally defends the report, the protocol, the ADA chain, and the City's use of censure findings in direct communications with Respondent, his factual role is too intertwined with the merits for him to remain detached trial counsel.

## VI. THE CURRENT WRIT PETITION AND APRIL 10 DISCOVERY SHOW THAT SCOTT IS ALSO A WITNESS TO THE DISPUTED SCOPE AND OPERATIONALIZATION OF THE CITY'S REQUEST

The current case itself supplies additional proof. The original January 20, 2026 Tabatabai request was narrow: it sought electronic documents, records, files, or digital content used, displayed, accessed, opened, viewed, or otherwise present on Respondent's computer screen during public meetings, and expressly stated that it applied only to materials used during public meetings and only to City business. After the City filed suit, however, Assistant City Clerk Lisa Sherrick sent the April 2, 2026 clarification request to Tabatabai using the formulation, "The City understands" the request to include AI prompts and outputs used to generate content later viewed during a meeting, even if the AI was not directly used during the meeting. Tabatabai then adopted that broader wording in response, and the chain was forwarded to Scott.

Eight days later, Scott and Reem Dabbous propounded sweeping discovery. The April 10 requests for production demand all documents and communications relating to City business from November 1, 2024 to the date of response, all AI-generated materials, all prompts, inputs, outputs, all devices, all personal email and messaging accounts, all cloud storage, all recordings, all complaints alleging failure to perform duties, and all recording devices worn or brought into the Council chamber or City Hall. The RFAs and special interrogatories mirror the same breadth and seek admissions and narrative detail concerning personal devices, personal accounts, AI use, preservation efforts, all persons with whom Respondent communicated about the petition allegations, and more.

Whether that discovery genuinely corresponds to the original January 20 request, or instead reflects a post hoc litigation expansion constructed after suit, is a central factual dispute. Scott is a percipient witness to that dispute because the April 2 clarification chain was forwarded to him and because he then signed the April 10 discovery that operationalized the broader interpretation. That alone supports at minimum his removal as counsel of record.

## VII. CONTINUED REPRESENTATION IS MATERIALLY LIMITED AND INCOMPATIBLE WITH THE DUTY OWED TO A PUBLIC ENTITY

Rules 1.7 and 1.13 are implicated because Buchalter's representation is materially limited by the firm's own interests and by its responsibilities to the City officials and processes it has already defended. When a lawyer represents an organization, the client is the organization, not the individual constituents. Yet the documents here show Buchalter repeatedly acting to defend or justify the conduct of specific officials and a specific report-producing process, rather than maintaining detached organizational neutrality.

The problem is not solved by repeating that the "client is the City." That phrase is what makes the conflict more serious, not less. If the entity's interests could diverge from the interests of particular officials, or from the interests of counsel in defending the investigation/report process counsel itself helped structure and later defended, Rule 1.7 requires the Court to examine the material limitation directly. Here, the conflict is visible on the face of the documents. Buchalter helped create the process. Buchalter lawyer Fox defended the resulting report. Scott invoked that report and the censure based on it as current justification for staff and protocol restrictions. O'Connell transmitted the very steps Respondent challenges. At that point, Buchalter is no longer simply giving detached legal advice to the organization. It is defending its own pipeline and its own conduct.

Clancy and Cobra teach that public-law representation requires a level of neutrality and public confidence not demanded of purely private counsel. That standard is not met where the same firm that helped structure and defend the challenged process now asks the Court to trust it as the entity's impartial advocate against the official targeted by that process.

**VIII. AT MINIMUM, O'CONNELL AND SCOTT MUST BE DISQUALIFIED NOW; ON THIS RECORD, FIRMWIDE DISQUALIFICATION IS WARRANTED**

O'Connell is a likely witness because he launched the complaint-response process, imposed interim restrictions, transmitted the investigation protocol, and took positions on recusal and governance handling. Scott is a likely witness because he signed the writ petition, received the April 2 clarification chain, signed the April 10 discovery, and on April 16 personally acted as ADA/protocol/report/censure spokesperson for the City. Their testimony would not be collateral. It goes to the structure, scope, neutrality, and purpose of the very conduct now disputed.

Under Rule 3.7 and the California cases applying the advocate-witness rule, that is enough to require at least their personal disqualification. (Comden, supra, 20 Cal.3d at p. 915; Smith, Smith & Kring, supra, 60 Cal.App.4th at pp. 580-581; Kennedy, supra, 201 Cal.App.4th at pp. 1209-1211.)

Firmwide disqualification is also warranted. Fox's central role in the Gemelli retainer and later report defense, coupled with O'Connell's and Scott's direct factual involvement, shows that the conflict is not isolated to one lawyer. It is institutional. Even if the Court concludes that a narrower remedy is appropriate at this stage, it should at minimum disqualify O'Connell and Scott immediately and set an evidentiary hearing on whether Buchalter's broader involvement requires firmwide disqualification.

**IX. BUCHALTER'S PRIOR SANCTIONS HISTORY IS NOT THE GROUND FOR THIS MOTION, BUT IT CONFIRMS RESPONDENT'S CONCERN IS NOT SPECULATIVE**

Respondent does not contend that Buchalter must be disqualified merely because another court previously sanctioned the firm or because another Buchalter lawyer elsewhere misused AI. Those

materials are not the legal ground for the motion. They are relevant as corroborative context showing that Respondent's concern about overreaching litigation conduct and discovery abuse by this firm is not speculative.

In 2023, a federal court in the Western District of Washington found that Buchalter had "unreasonably and vexatiously multiplied the proceedings" and acted with "reckless and knowing disregard of their discovery obligations," and awarded $147,279.80 in fees against the firm. In November 2025, Buchalter itself filed a response to an Oregon order to show cause admitting that a Buchalter attorney inserted hallucinated citations after using Microsoft Copilot for "wordsmithing," that the attorney violated Buchalter's AI policy, and that the firm was seeking to avoid broader sanctions. Again, those materials do not themselves disqualify Buchalter here. They do, however, underscore why the Court should take seriously a record showing that Scott expanded a narrow request into broad litigation and discovery while simultaneously acting as the defender of the City's challenged protocol, report, and censure machinery.

## X. CONCLUSION

Buchalter's own documents establish a broad, continuing engagement with the City; direct participation in the complaint, interim restriction, censure, investigation, report-defense, and litigation processes now under challenge; and present, ongoing witness entanglement by O'Connell and Scott. Fox's defense of the Gemelli report, Scott's April 16 ADA/protocol/censure email, the April 2 clarification chain, and the April 10 discovery prove that this is not hypothetical. Buchalter's loyalty is materially limited by its own conduct and by its ongoing defense of the very officials and processes Respondent challenges.

The motion should be granted. Buchalter LLP should be disqualified from further representation of Petitioner in this action. At minimum, Thomas M. O'Connell and Roger L. Scott should be disqualified immediately, and proceedings should be stayed briefly to allow substitution of independent counsel.

**DECLARATION OF BRIAN GUTIERREZ IN SUPPORT OF MOTION TO DISQUALIFY**

1. I am the Respondent in this action. I have personal knowledge of the facts stated in this declaration and, if called as a witness, could and would testify competently thereto.

2. I have reviewed Buchalter's September 9, 2022 engagement agreement with the City of West Covina. It states that Buchalter was retained for employment advice and litigation services and that the agreement applies to future matters as well. (Exhibit A.)

3. On September 9, 2025, Thomas M. O'Connell informed me in writing that Mayor Pro Tem Lopez-Viado had filed a complaint, that the City would proceed with an independent third-party investigation, and that I was directed to cease communications with her outside Council meetings as an interim protective measure. (Exhibit B.)

4. On September 12, 2025, O'Connell informed City leadership and councilmembers that Buchalter attorney Jennifer Misetich had appeared in court for the City and that he would discuss the matter with the Council in closed session and under the censure item. (Exhibit C.)

5. I have reviewed the October 2025 investigation communications showing O'Connell, Kelly Gemelli, Buchalter attorney Kathryn B. Fox, Acting City Manager Milan Mrakich, and City Attorney Thomas Duarte in the same process stream. (Exhibits D and E.)

6. I have reviewed Kathryn Fox's March 3, 2026 email defending the workplace investigation report, rejecting my objections as "without merit," and demanding preservation of AI prompts, searches, and chats. (Exhibit F.)

7. I have reviewed Roger Scott's April 16, 2026 email responding to my April 15 emails. In that email Scott personally addressed ADA administration, LCW and Ms. Lerma's role, Ms. Underwood's declaration and discomfort, the April 15 communication protocols, Levy v. City of Santa Monica, the supposed findings of the City's independent investigation, and the March 17, 2026 censure. (Exhibit G.)

8. I have reviewed the original January 20, 2026 Tabatabai request, the April 2, 2026 clarification chain, and the April 10, 2026 discovery propounded by Scott and Dabbous. (Exhibits H through L.)

9. Based on these facts, I believe Buchalter is not neutral outside counsel in this matter but a participant in the challenged process, and that Thomas M. O'Connell and Roger L. Scott are likely witnesses to disputed material facts concerning the scope, neutrality, purpose, and implementation of the complaint, investigation, report, protocol, and current litigation.

10. I also believe firmwide disqualification is required because Buchalter attorney Kathryn B. Fox was part of the Gemelli engagement structure and later defended the report, while O'Connell and Scott separately embedded themselves in the complaint, censure, and current-writ phases of the same dispute.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 17, 2026, at Los Angeles County, California.

_____

BRIAN GUTIERREZ

**EXHIBIT LIST**

| Exhibit | Description |
| --- | --- |
| Exhibit A | September 9, 2022 Buchalter engagement agreement. |
| Exhibit B | September 9, 2025 O'Connell complaint / interim restriction letter. |
| Exhibit C | September 12, 2025 O'Connell email re court appearance and censure item. |
| Exhibit D | October 2025 investigation communications / protocol. |
| Exhibit E | September 19, 2025 Gemelli retainer letter to Kathryn B. Fox. |
| Exhibit F | March 3, 2026 Kathryn B. Fox response defending report and demanding preservation of AI prompts/chats |
| Exhibit G | April 16, 2026 Roger L. Scott email responding on ADA, protocol, Levy, investigation findings, and censu |
| Exhibit H | Original January 20, 2026 Tabatabai request. |
| Exhibit I | April 2, 2026 clarification chain forwarded to Roger Scott. |
| Exhibit J | April 10, 2026 Requests for Production, Set One. |
| Exhibit K | April 10, 2026 Requests for Admission, Set One. |
| Exhibit L | April 10, 2026 Special Interrogatories, Set One. |
| Exhibit M | September 25, 2023 order awarding fees against Buchalter for discovery misconduct. |
| Exhibit N | November 10, 2025 Buchalter response to OSC re AI-generated hallucinated citations. |