**BRIAN GUTIERREZ**
Safe at Home Confidential Mailing Address
P.O. Box 1679, MS 5892
Sacramento, California 95812
Email: johndoeca2025@gmail.com
Respondent in Pro Per

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES - STANLEY MOSK COURTHOUSE

| | |
|---|---|
| **CITY OF WEST COVINA,**<br><br>Petitioner,<br><br>v.<br><br>**BRIAN GUTIERREZ,**<br>Respondent. | **CASE NO. 26STCP00678**<br><br>**RESPONDENT BRIAN GUTIERREZ'S VERIFIED ANSWER AND RETURN TO PETITION FOR WRIT OF MANDATE AND DECLARATORY RELIEF; AFFIRMATIVE DEFENSES**<br><br>Petition Filed: February 17, 2026<br>Answer Date: June 26, 2026 |

### VERIFIED ANSWER AND RETURN

1. Respondent Brian Gutierrez ("Respondent"), appearing in propria persona, answers and returns to the Petition for Writ of Mandate and Declaratory Relief ("Petition") filed by Petitioner City of West Covina ("City") as follows. This Answer is made under Code of Civil Procedure sections 431.30, 446, and 1089. Except as expressly admitted, every allegation and requested remedy is denied.

2. Respondent does not dispute the California Public Records Act ("CPRA") or his obligation to preserve and provide identifiable, nonexempt public records that actually exist and are within his possession, custody, or control. He denies that he refused to comply, intentionally withheld responsive public records, destroyed evidence, or asserted a categorical exemption for artificial-intelligence-related writings.

3. The central premise of the Petition is false. Respondent did not use a generative artificial-intelligence chatbot to draft or generate the substantive Council questions, policy arguments, meeting statements, or legal objections that the Petition attributes to artificial intelligence. Detail, legal citations, or polished language do not establish AI authorship.

4. Respondent has used and discussed ordinary digital, research, accessibility, and supportive technologies. He has also discussed generative AI as a general technology and as a subject of proposed City regulation. Any quoted reference to "generative AI and other digital tools" was taken out of its broader accessibility and policy context and was not an admission that the specific questions, emails, or Council content alleged in the Petition were generated by an AI chatbot or that responsive retained prompts or chats existed.

5. Respondent produced the responsive records he could identify after reasonable search and repeatedly requested clarification when the City demanded vague categories such as every "prompt," "input," "related input," "output," thought process, and item merely viewed during dozens of public meetings. A request for clarification is not a refusal. Nor does the CPRA require a person to create, reconstruct, or recreate records that do not exist or were not retained.

6. Whether any particular AI-related writing is a public record depends on the statutory elements for that writing: whether it contains information relating to the conduct of the public's business and was prepared, owned, used, or retained by a state or local agency. (Gov. Code, § 7920.530.) The City seeks an overbroad, advisory declaration treating entire technological categories as public records without a record-by-record and fact-specific inquiry.

7. Respondent further alleges, solely as defenses and not as a request for affirmative relief, that this proceeding was filed and has been prosecuted for a retaliatory and improper purpose after Respondent reported suspected public corruption, conflicts of interest, misuse of public resources, and concealment concerns to the Federal Bureau of Investigation, the Los Angeles County District Attorney, the Fair Political Practices Commission, and other oversight authorities. Respondent does not allege that any criminal charge or adjudication has established those underlying concerns; he alleges that the reports were made in good faith and are protected petitioning and oversight activity.

8. Respondent is informed and believes that City Attorney Thomas P. Duarte and outside counsel Buchalter LLP, including Roger L. Scott and Thomas M. O'Connell, advised, shaped, authorized, or

prosecuted interrelated City actions that recast Respondent's protected oversight and disability-related communications as misconduct. Those actions include the Kelly Gemelli investigation and report, the proposed Code of Conduct and Ordinance No. 2537, communication restrictions, public censure-related activity, CPRA demands, and this litigation. The precise roles of each person and firm are matters for discovery. Respondent does not plead attorney misconduct or criminal corruption as an adjudicated fact; he pleads a good-faith defense of retaliatory motive, selective enforcement, unclean hands, and misuse of equitable process.

9. The Petition relies on words from Respondent's February 3, 2026 objection to proposed Ordinance No. 2537. That communication opposed a broad and allegedly unconstitutional Council rule that, on information and belief, was drafted, advised upon, or defended by Thomas M. O'Connell and other City counsel. The communication raised First Amendment, due process, Brown Act, disability-access, and privacy objections. It was not an admission that an AI system authored Respondent's words or that responsive AI prompts and chats existed.

10. Respondent also preserves his rights under Title II of the Americans with Disabilities Act, section 504 of the Rehabilitation Act, California Rule of Court 1.100, and other applicable law. Respondent has documented disabilities affecting processing speed, concentration, executive functioning, communication, and the ability to perform complex work under compressed and repetitive deadlines. The City and its counsel knew of those limitations but repeatedly treated emergency output produced through extraordinary effort, pain, sleep loss, and distress as proof that no accommodation was needed.

11. The delay in filing this Answer was not willful. Respondent requested disability-related additional time and structured communication. The requested accommodation was not afforded as an accommodation under Title II and Rule 1.100. Respondent respectfully preserves that objection and files this detailed Answer at the earliest practicable time after medical care, overlapping emergency filings, and counsel's compressed demands.

## SPECIFIC RESPONSES TO THE PETITION

13. Response to Paragraph 1: Respondent admits that the City of West Covina is a California municipal corporation. Respondent denies any remaining allegation or legal conclusion inconsistent with this Answer.

14. Response to Paragraph 2: Respondent admits that the City is generally subject to the CPRA. Respondent denies that this general status establishes the specific duty, refusal, or entitlement alleged in the Petition.

15. Response to Paragraph 3: Respondent admits that he is a duly elected member of the West Covina City Council and an elected official. Respondent denies any characterization suggesting that elected status eliminates his constitutional, statutory, or disability rights.

16. Response to Paragraph 4: Respondent admits that the Petition purports to sue him solely in his official capacity. Respondent denies that the conduct alleged creates the liability or remedies requested.

17. Response to Paragraph 5: Respondent admits that, like other Councilmembers, he may possess writings relating to City business. Respondent denies possessing, withholding, or controlling the AI prompts, chats, or generated records alleged by Petitioner and denies that every item viewed, thought, typed, searched, or transiently displayed is necessarily a retained public record.

18. Response to Paragraph 6: Respondent does not contest that the Superior Court generally has subject-matter jurisdiction over properly pleaded mandate and declaratory-relief claims. Respondent denies that Petitioner has pleaded or can prove entitlement to relief here.

19. Response to Paragraph 7: Respondent does not contest venue in Los Angeles County. All remaining allegations are denied.

20. Response to Paragraph 8: Respondent lacks sufficient information to admit the City's allegation concerning every potentially applicable limitations period and therefore denies it on that ground.

21. Response to Paragraph 9: Respondent admits only that generative AI systems and chatbots exist and can generate text in response to user inputs. The balance is a generalized description, not a material allegation about Respondent, and is denied to the extent it implies otherwise.

22. Response to Paragraph 10: Respondent admits only that some software may preserve user sessions. He denies that all systems do so, that he maintained the alleged sessions, or that any such retained session existed and was withheld.

23. Response to Paragraph 11: Respondent admits the election and commencement of his Council service. The balance is denied to the extent it implies wrongdoing.

24. Response to Paragraph 12: Respondent denies the allegation that his communications were generated by or with the assistance of AI as alleged. Respondent further denies that volume, tone, legal sophistication, or formatting is evidence of AI authorship. He admits that he is self-represented in some matters and uses ordinary research and accessibility tools.

25. Response to Paragraph 13: Respondent admits that he has discussed the use of supportive digital tools and generative AI in broad terms. He denies that he intended to use AI to generate all official content, denies that he made the specific admission alleged, and denies that the allegation establishes the existence of responsive retained prompts or chats.

26. Response to Paragraph 14: Respondent admits that he used a laptop and a City-provided external monitor at Council meetings and that the monitor was part of a disability accommodation. Respondent denies that this fact establishes AI use or possession of responsive AI records.

27. Response to Paragraph 15: Respondent admits that he may review notes, source materials, public records, websites, draft text, and research during meetings. He denies that the material was AI-generated as alleged and denies that every transitory display was a retained public record.

28. Response to Paragraph 16: Respondent admits that City officials could see him reading from a monitor or device. He denies that they could know the authorship, source, retention status, or public-record character of every item displayed.

29. Response to Paragraph 17: Respondent admits that he asked detailed questions at the January 20, 2026 Council meeting concerning Athens Services. He denies that AI generated those questions or that the presence of citations proves AI use.

30. Response to Paragraph 18: Respondent admits that he asked questions involving legal authority and contracts. He denies that the questions were generated by AI or that Petitioner has competent evidence establishing AI authorship.

31. Response to Paragraph 19: Respondent admits that Brian Calderon Tabatabai submitted a public-records request on or about January 20, 2026. The request speaks for itself. Respondent denies any inaccurate characterization.

32. Response to Paragraph 20: Respondent admits that the request sought broad categories of electronic material. The document speaks for itself. Respondent denies that its language automatically makes every demanded category a public record or that it was sufficiently definite as to all transient, unretained, or nonexistent material.

33. Response to Paragraph 21: Respondent lacks sufficient information to admit the exact number of meetings within the asserted period and denies the remainder, including any inference that records necessarily existed because meetings occurred.

34. Response to Paragraph 22: Respondent denies that the City could reasonably infer that he possessed the broad universe of records alleged merely because he used electronic devices. He admits only the obligation to search reasonably for identifiable responsive public records actually in his possession, custody, or control.

35. Response to Paragraph 23: Respondent admits that City IT communicated that the external monitor was not connected to a City computer and that any personal-device records would have to be obtained from Respondent. He denies that the communication proves responsive AI records existed or were retained.

36. Response to Paragraph 24: Respondent admits that City staff asked him to provide responsive records. The communication speaks for itself. He denies any refusal or obstruction.

37. Response to Paragraph 25: Respondent admits that he transmitted documents responsive to the request. He denies that the documents were merely copied from another program, denies that he concealed prompts or chats, and denies that any omitted prompt or chat existed and was required to be produced.

38. Response to Paragraph 26: Respondent admits that City staff followed up concerning the production. He denies all argumentative characterizations and legal conclusions.

39. Response to Paragraph 27: Respondent admits sending a communication that used broad language concerning "generative AI and other digital tools" as supportive tools. He denies Petitioner's interpretation. The statement did not admit that AI generated the specific Council questions or official content at issue, did not identify a responsive retained prompt or chat, and arose in the context of disability support, research tools, and opposition to overbroad City regulation.

40. Response to Paragraph 28: Respondent admits that Valley Light representatives spoke at a public meeting. He lacks sufficient information to admit their internal motives or every characterization attributed to them and otherwise denies the allegations.

41. Response to Paragraph 29: Respondent denies that he falsely claimed Valley Light's contract had been cancelled. He admits that a dispute existed and denies that the allegation is material to CPRA compliance.

42. Response to Paragraph 30: Respondent admits that a Valley Light representative made critical public comments. He denies the truth of the representative's accusations and denies that the comments establish AI use or possession of responsive records.

43. Response to Paragraph 31: Respondent admits that he spoke during the February 3, 2026 meeting and discussed supportive technology, accessibility, and AI-related policy issues. He denies admitting that AI authored the City-business content alleged in the Petition. Any statement that he did not use AI

to create content was directed to the substantive authorship of his official words and is consistent with this Answer.

44. Response to Paragraph 32: Respondent admits that the City Clerk circulated a preservation notice on or about February 3, 2026. The notice speaks for itself. Respondent denies that it lawfully required preservation of thoughts, nonexistent records, or unretained transient material beyond applicable law.

45. Response to Paragraph 33: Respondent admits that City staff followed up on February 6, 2026. He denies that he refused to comply and denies that the City's unilateral clarification cured all ambiguity.

46. Response to Paragraph 34: Respondent admits sending a forceful communication defending his constitutional rights and opposing what he understood to be an overbroad demand. He denies that rhetorical language constituted refusal, spoliation, or evidence that responsive records existed. The communication must be read in full and in the context of the proposed Code of Conduct, disability concerns, and protected oversight.

47. Response to Paragraph 35: Respondent admits that additional follow-up communications occurred. He denies that he could access or produce records that did not exist, were not retained, or were not within his possession, custody, or control.

48. Response to Paragraph 36: Respondent admits producing documents on or about February 12, 2026. He denies that the production contained only AI-generated questions, denies that any responsive prompt or chat was withheld, and denies the City's characterization of the production as deficient.

49. Response to Paragraph 37: Respondent denies that the number of produced documents proves insufficiency. The breadth of a request and the number of meetings do not establish the number of responsive records that actually exist.

50. Response to Paragraph 38: Respondent admits receiving a preservation notice and admits stating that he would preserve records to the extent legally required. He denies refusing to preserve public records. He further denies that a lawful limitation to identifiable writings can be converted into an

**VERIFIED ANSWER AND RETURN**            8

obligation to preserve internal thought processes, nonexistent records, or every unretained interaction with technology.

51. Response to Paragraph 39: Respondent incorporates the preceding responses. To the extent paragraph 39 purports to incorporate allegations, Respondent denies all allegations not expressly admitted.

52. Response to Paragraph 40: Respondent admits only that Code of Civil Procedure section 1085 contains the language quoted or paraphrased. He denies that the statute authorizes relief on the facts alleged.

53. Response to Paragraph 41: Respondent admits that mandate generally requires a clear, present, ministerial duty and a corresponding beneficial right. He denies that the City has established those elements.

54. Response to Paragraph 42: Respondent denies that he has a ministerial duty to produce every category demanded regardless of existence, retention, relationship to public business, possession, privilege, privacy, or statutory exemption.

55. Response to Paragraph 43: Respondent admits that the CPRA imposes duties concerning nonexempt public records. He denies that it imposes the categorical and technologically unlimited duty alleged.

56. Response to Paragraph 44: Respondent admits that elected officials may have obligations concerning public records in their possession or control. He denies that the allegation establishes a refusal or that it eliminates the need for an identifiable record-by-record inquiry.

57. Response to Paragraph 45: Respondent admits a duty to conduct a reasonable search for identifiable responsive public records actually within his possession, custody, or control. He denies that the duty is purely mechanical where the request is ambiguous, overbroad, technologically undefined, or implicates nonexistent or unretained material.

58. Response to Paragraph 46: Respondent denies that he failed or refused to perform a ministerial duty. He denies withholding AI prompts, queries, inputs, outputs, or generated records as alleged.

59. Response to Paragraph 47: Respondent denies that the City has a clear beneficial right to the sweeping relief requested. He further denies that any speculative exposure to fees or liability establishes a right to mandate against him.

60. Response to Paragraph 48: Respondent denies that judicial intervention is necessary to compel conduct he has not refused to perform. The City had and has less restrictive means to clarify the request and address any specific, identifiable record.

61. Response to Paragraph 49: Respondent incorporates the preceding responses and denies all allegations not expressly admitted.

62. Response to Paragraph 50: Respondent denies that an actual controversy exists in the categorical form alleged. He does not dispute that an existing writing related to public business may be a public record; he disputes the City's assertion that all prompts, inputs, outputs, related inputs, or transitory technology interactions are automatically public records and that he possessed or withheld them.

63. Response to Paragraph 51: Respondent denies the City's proposed legal conclusions. Public-record status depends on whether a particular writing relates to public business and was prepared, owned, used, or retained by a public agency. Respondent denies that the Court should issue an abstract declaration untethered to specific identified records.

64. Response to Paragraph 52: Respondent denies that declaratory relief is necessary or proper. The requested declaration would be advisory, overbroad, and incapable of resolving the fact-specific issues presented by different technologies and records.

## ADDITIONAL DEFENSIVE ALLEGATIONS

65. These allegations are stated solely as defenses, context, and grounds to deny equitable and declaratory relief. Respondent seeks no affirmative relief in this Answer. (Code Civ. Proc., § 431.30, subd. (c).)

66. Before the Petition was filed, Respondent engaged in protected elected-official oversight and petitioning activity. He reported suspected misconduct, public-resource misuse, nonprofit-event financial irregularities, conflicts of interest, contracting concerns, and concealment issues to the FBI, the Los Angeles County District Attorney's Public Integrity Division, the FPPC, and other authorities.

67. Respondent's reports were supported by records and good-faith concerns. Respondent does not ask this Court in this CPRA proceeding to decide whether the reported conduct constituted a crime. The relevance is motive: shortly after and during those reports, City officials and counsel intensified investigations, restrictions, public accusations, disability-related interference, and litigation directed at Respondent.

68. Respondent is informed and believes that City Attorney Thomas P. Duarte and outside counsel Buchalter LLP, including Roger L. Scott and Thomas M. O'Connell, were not neutral bystanders. They advised or participated in the City's governance, investigation, public-records, censure-related, and litigation responses while the conduct of City officials and counsel was itself questioned in Respondent's reports and federal action.

69. Respondent is informed and believes that Thomas M. O'Connell participated in drafting, revising, advising upon, or defending Ordinance No. 2537 and related Councilmember restrictions. Respondent's February 3, 2026 communication challenged those rules as vague, retaliatory, disability-insensitive, and unconstitutional. Petitioner now lifts words from that protected objection and presents them as an admission that AI generated Respondent's official work.

70. Buchalter also participated in structuring or advising concerning the Kelly Gemelli investigation, which expanded beyond narrow workplace issues into Respondent's complaints, service of process, reports to law enforcement and regulators, and conflicts with officials. The City later used the resulting report and related narrative to discredit Respondent's protected oversight. The relationship among that process, the Code of Conduct, and this Petition is relevant to retaliatory purpose and unclean hands.

71. Roger L. Scott and Buchalter have repeatedly cited Respondent's emergency filings and other legal work as supposed proof that he does not require disability-related processing time. That inference is medically and factually unsound. Completing one task under crisis conditions through extraordinary effort, pain, sleep deprivation, and distress does not prove the ability to satisfy every unrelated deadline without accommodation.

72. On June 22, 2026, Respondent requested until June 29, 2026 to file his Answer because he had a medical appointment. Counsel threatened default and demanded an earlier date. On June 23, 2026, counsel separately threatened monetary sanctions and demanded withdrawal of broad categories of discovery by June 26, again relying on Respondent's litigation output to challenge his disability-related limitations.

73. After the June 18, 2026 hearing, Respondent required emergency medical care and experienced increased back pain, anxiety, sleep disruption, impaired concentration, and mental-health symptoms. These facts further impaired his ability to meet compressed and overlapping deadlines.

74. Respondent requested disability accommodation from the Court under Title II and California Rule of Court 1.100. The requested accommodation was not afforded as an accommodation. Respondent respectfully states this only to explain the timing of this Answer, preserve his rights, and request adjudication on the merits - not to disparage the Court.

75. The City selectively characterizes Respondent's detailed oversight questions as AI-generated or harassing while treating comparable detailed work by counsel and other officials as ordinary. That selective inference is not a neutral CPRA standard and cannot establish authorship, possession, refusal, or spoliation.

76. The City cannot obtain extraordinary equitable relief through a record built on context-stripping, retaliatory motive, selective enforcement, and refusal to provide reasonable disability access. Equity requires clean hands and a genuine need for judicial compulsion. Those elements are absent.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE - FAILURE TO STATE A CLAIM**

The Petition fails to state facts sufficient to establish entitlement to mandate or declaratory relief.

**SECOND AFFIRMATIVE DEFENSE - NO CLEAR, PRESENT MINISTERIAL DUTY**

The City cannot identify a clear, present, ministerial duty requiring Respondent to produce or recreate nonexistent, unretained, technologically undefined, privileged, exempt, or nonpublic material.

**THIRD AFFIRMATIVE DEFENSE - NO REFUSAL; GOOD-FAITH COMPLIANCE**

Respondent did not refuse CPRA compliance. He searched, produced identified records, preserved records as legally required, and sought clarification concerning ambiguous demands.

**FOURTH AFFIRMATIVE DEFENSE - NO DUTY TO CREATE OR RECONSTRUCT RECORDS**

The CPRA requires disclosure of existing public records; it does not require creation, recreation, reconstruction, or generation of a record that does not exist or was not retained.

**FIFTH AFFIRMATIVE DEFENSE - LACK OF POSSESSION, CUSTODY, OR CONTROL**

Respondent did not possess, retain, or control the prompts, chats, or generated records alleged and cannot be compelled to produce what he does not possess.

**SIXTH AFFIRMATIVE DEFENSE - OVERBREADTH, VAGUENESS, AND IMPOSSIBILITY**

The demand and requested judgment sweep beyond identifiable writings into transitory displays, generalized categories, and internal thought processes, making compliance and enforcement uncertain and overbroad.

**SEVENTH AFFIRMATIVE DEFENSE - NO ACTUAL CONTROVERSY; ADVISORY RELIEF**

The declaratory claim seeks an abstract technological rule rather than resolution of a concrete dispute over specifically identified records. Any actual controversy is narrower than the relief requested.

**EIGHTH AFFIRMATIVE DEFENSE - MOOTNESS AND SUBSTANTIAL COMPLIANCE**

To the extent responsive nonexempt records existed and were identified, Respondent produced them. The Petition is moot or substantially satisfied to that extent.

**NINTH AFFIRMATIVE DEFENSE - RETALIATION AND IMPROPER PURPOSE**

The Petition was authorized, shaped, or prosecuted at least in substantial part to burden and chill Respondent's protected speech, petitioning, oversight, regulatory reports, and opposition to City policies.

**TENTH AFFIRMATIVE DEFENSE - SELECTIVE ENFORCEMENT AND EQUAL PROTECTION**

The City selectively targeted Respondent's devices, research, drafting, communications, and records while failing to apply an equivalent standard to similarly situated officials and counsel.

**ELEVENTH AFFIRMATIVE DEFENSE - UNCLEAN HANDS AND MISUSE OF EQUITABLE PROCESS**

Mandate is equitable. Petitioner is barred or limited by retaliatory motive, context-stripping, selective enforcement, failure to accommodate, and use of litigation to obtain political or disciplinary leverage.

**TWELFTH AFFIRMATIVE DEFENSE - WAIVER, ESTOPPEL, AND FAILURE TO CLARIFY**

The City accepted productions, failed to identify specific missing records with reasonable precision, and cannot convert its own ambiguity or shifting demands into refusal by Respondent.

**THIRTEENTH AFFIRMATIVE DEFENSE - PRIVACY, PRIVILEGE, AND PROTECTED DELIBERATION**

Any disclosure obligation remains subject to constitutional privacy, applicable privileges, exemptions, deliberative protections, and the rights of constituents and third parties.

**FOURTEENTH AFFIRMATIVE DEFENSE - FIRST AMENDMENT AND LEGISLATIVE ACTIVITY**

The Petition may not be used to punish or chill protected legislative inquiry, political speech, petitioning, criticism of counsel, or official oversight. Detailed speech and research are not evidence of AI authorship.

**FIFTEENTH AFFIRMATIVE DEFENSE - ADA TITLE II, SECTION 504, AND RULE 1.100**

The City's methods of administration and litigation tactics denied or interfered with reasonable disability access, including structured communication and processing time, and may not be used to manufacture default, waiver, or adverse inference.

**SIXTEENTH AFFIRMATIVE DEFENSE - FAILURE TO MITIGATE AND USE LESS RESTRICTIVE MEANS**

The City failed to resolve any concrete records question through clarification, targeted follow-up, neutral review, or accommodation-consistent process before seeking extraordinary relief.

**SEVENTEENTH AFFIRMATIVE DEFENSE - NO CAUSATION OR ENTITLEMENT TO FEES**

Any alleged exposure to CPRA liability or fees was not caused by a refusal by Respondent, and the City is not entitled to fees, costs, or other relief based on its own overbroad theory.

**EIGHTEENTH AFFIRMATIVE DEFENSE - RESERVATION**

Respondent reserves the right to amend this Answer to assert additional defenses revealed through discovery, court orders, or further investigation.

**PRAYER**

• That the Petition for Writ of Mandate be denied;

• That the request for declaratory relief be denied or limited to a concrete, record-specific

controversy;

• That the Court decline to enter any categorical declaration that all AI prompts, inputs, outputs, or

related technological interactions are public records without a writing-specific statutory analysis;

• That the Court find no willful refusal, spoliation, or intentional withholding by Respondent;

• That Petitioner take nothing by the Petition;

• That Respondent recover allowable costs to the extent permitted by law; and

• That the Court grant such other defensive or procedural relief as is just and proper, without

awarding affirmative relief through this Answer.

DATED: June 26, 2026

_____

**Brian Gutierrez**
Respondent in Pro Per

**VERIFICATION**

I, Brian Gutierrez, am the Respondent in this proceeding. I have read the foregoing Respondent Brian

Gutierrez's Verified Answer and Return to Petition for Writ of Mandate and Declaratory Relief;

Affirmative Defenses, and know its contents. The matters stated in it are true of my own knowledge,

except as to those matters stated on information and belief, and as to those matters I believe them to be

true. I declare under penalty of perjury under the laws of the State of California that the foregoing is

true and correct. Executed on June 26, 2026, at West Covina, California.

DATED: June 26, 2026

_____

**Brian Gutierrez**
Respondent in Pro Per