# EXHIBIT A

June 22, 2026 email asking Roger Scott whether Plaintiff's mediation/ADR proposal was transmitted to authorized City decision-makers.

From: **Brian Gutierrez** councildistrict1@icloud.com
Subject: **City of West Covina**
Date: **Jun 22, 2026 at 8:59:56 PM**
To: **Claire Katz** ckatz@buchalter.com, **Roger L. Scott** rscott@buchalter.com, **Reem Dabbous** rdabbous@buchalter.com
Cc: **Kelly Gerner** Kelly.Gerner@calbar.ca.gov, **Lakshmi Jagannath State Bar** Lakshmi.Jagannath@calbar.ca.gov, **rob.bonta@doj.ca.gov**, **Charles.Ragland@doj.ca.gov**, **Chun Hoon** HChun@da.lacounty.gov, **Maria Ramirez** maramire@da.lacounty.gov

Roger,

I will file my Answer by Thursday, consistent with your confirmation.

Your characterization of my litigation activity as "frivolous" is rejected. The cases concern ADA access, retaliation, public records, conflicts, and use of taxpayer-funded counsel. Disagreement with my claims does not make them frivolous.

You also have not answered my neutral mediation/ADR proposal. Please confirm whether you transmitted that proposal to the City's authorized decision-makers, when it was transmitted, and whether it will be presented to the City Council for consideration. Continuing to generate taxpayer-funded motion practice while refusing to report a mediation proposal to the client is not responsible stewardship of public funds.

Your blanket assertion of attorney-client privilege does not answer the threshold governance questions I raised. I am not requesting privileged legal advice. I am asking:

1. Whether Buchalter represents Milan Mrakich individually in the *John Doe v. John Shewmaker* matter;
2. Who is paying for that representation;
3. The legal authority relied upon for that representation;
4. Whether the City Council authorized or ratified it;
5. The date and substance of any required open-session report-out;
6. Whether the City and Mr. Mrakich were jointly represented and whether the appropriate municipal decision-maker approved any required conflict arrangement.

Government Code section 995 may require a public entity to provide a defense to an employee sued in an official or individual capacity for conduct within the

scope of employment. But that statute does not establish, by itself, that every representation, funding decision, conflict arrangement, or appearance in a separate proceeding was lawfully authorized.

Government Code section 54957.1 requires a legislative body to publicly report closed-session action and each member's vote or abstention, including approval given to legal counsel to defend litigation.

I have not located any Council action or report-out specifically authorizing Buchalter to represent Milan Mrakich individually in the Shewmaker subpoena and motion-to-quash matter. If such authorization exists, identify the meeting date and public report-out. If you contend no Council authorization was required, identify the statutory and contractual basis for that position.

Your own public filing identified you as counsel for "Third Party Milan Mrakich" while you simultaneously represent the City in related litigation. The public has a legitimate interest in knowing whether taxpayers are funding an individual defense, who authorized it, and whether the City's interests were independently protected.

You also made a misleading public statement that Leticia Lopez-Viado was sued only in her official capacity. The operative federal complaint asserts individual-capacity claims against her. If your actual point was that the City approved a defense based on an asserted course-and-scope determination, say that accurately. Do not erase the individual-capacity allegations when describing the case to the Council or public.

The governing body retains lawful authority to review outside-counsel retention, billing, conflicts, performance, and future representation. Any future Council can change especially in November and may reconsider whether Buchalter should continue representing the City and hold it accountable.

I reserve all lawful remedies concerning allegedly unauthorized or conflict-

tainted expenditures, including disqualification, billing review, disgorgement, restitution, and taxpayer relief. Code of Civil Procedure section 526a authorizes a qualifying taxpayer action to restrain an alleged illegal expenditure or waste of local-agency funds.

Please provide direct answers to the nonprivileged authorization and funding questions and confirm the status of the mediation proposal.

Brian Gutierrez
Councilmember, District 1
City of West Covina

> On Jun 22, 2026, at 7:34 PM, Scott, Roger L. <rscott@buchalter.com> wrote:

> Brian-

> I look forward to receiving your Answer no later than Thursday.

> If you are interested in stopping the City's legal spend, please stop engaging in frivolous litigation activity.

> My communications with the City or other City counsel are protected by the attorney-client privilege and/or the attorney work-product doctrine.

> Sincerely,

Roger

Buchalter

**Roger L. Scott** he/him/his

# EXHIBIT B

June 23, 2026 formal ADA communication request and demand to cease repetitive pressure tactics pending appellate stay decision.

From: **Brian Gutierrez** councildistrict1@icloud.com
Subject: **Formal ADA Communication Request and Demand to Cease Repetitive Pressure Tactics Pending Appellate Stay Decision**
Date: **Jun 23, 2026 at 6:51:50 PM**
To: **Roger L. Scott** rscott@buchalter.com, **Claire Katz** ckatz@buchalter.com, **Reem Dabbous** rdabbous@buchalter.com, **abass@buchalter.com**
Cc: **Kelly Gerner** Kelly.Gerner@calbar.ca.gov, **Lakshmi Jagannath State Bar** Lakshmi.Jagannath@calbar.ca.gov

Roger,

I am putting you and Buchalter on formal notice.

Since I filed my confidential Rule 1.100 writ petition and emergency stay request, you have repeatedly imposed compressed, unilateral deadlines and threatened default or other adverse action despite knowing that the appeal directly concerns denial of my disability accommodations, additional processing time, and meaningful access to court.

I perceive this escalation as retaliatory, harassing, and calculated to take advantage of the very disability-related limitations now before the Court of Appeal.

Filing under emergency pressure does not prove that I do not need accommodations. The ability to complete one task through extreme effort, distress, and loss of sleep does not establish an ability to complete every unrelated litigation demand immediately and without accommodation.

After the June 18 hearing, I required emergency-room care. The hearing, denial of accommodations, and continuing pressure have caused serious emotional and physical distress. You have actual notice of that harm.

I am asking you plainly: stop.

I understand that the filing of a writ petition does not itself create a stay unless the Court of Appeal enters one. Nevertheless, the City can voluntarily agree not to seek default, sanctions, waiver, accelerated discovery relief, or other procedural punishment while the emergency stay request is being considered.

Instead, you have chosen escalation.

## Notice Concerning Buchalter and the Gemelli Investigation

I also place you and Buchalter on notice that I intend to seek leave to amend my federal complaint to substitute identified parties for appropriate Doe defendants, including you and Buchalter, if the evidence confirms your personal and institutional participation in the retaliation, interference with accommodations, and related misconduct alleged in that action.

My allegations concerning Buchalter are not limited to litigation advocacy.

I allege that Buchalter participated in procuring, shaping, reviewing, approving, directing, or using the Kelly Gemelli investigation and report as a retaliatory instrument against me.

I further allege that the investigation was not genuinely independent and was used to:

- discredit my reports of misconduct;
- portray protected complaints as wrongdoing;
- manufacture a narrative against me;
- justify retaliation and selective enforcement;
- minimize or conceal misconduct by City officials;
- interfere with my disability accommodations;
- and protect officials and counsel whose conduct should have been independently investigated.

I will seek discovery concerning:

1. Who selected Kelly Gemelli;
2. Who defined and altered the scope of the investigation;
3. Every prior professional relationship between Gemelli, Buchalter, and Buchalter attorneys;
4. Every communication among Gemelli, you, Katie Fox, Thomas O'Connell, Milan Mrakich, Leticia Lopez-Viado, and other City actors;
5. Every interview recording, note, transcript, witness statement, draft, redline, edit, comment, and requested change;

6. Every item omitted from the final report;
7. Every communication concerning privilege, public release, and use of the report against me;
8. Every invoice and billing entry relating to the investigation;
9. Every use of the report in accommodation decisions, public messaging, litigation, or retaliation;
10. Every effort to conceal, withhold, delete, alter, or characterize the underlying investigative file.

If that discovery confirms that you or Buchalter personally participated in creating, manipulating, approving, deploying, or concealing a knowingly false or materially misleading investigative narrative, I will ask the federal court for leave to name the responsible persons and entities directly.

This is not speculation for purposes of harassment. It is litigation notice based on the conduct, communications, filings, and conflicts already at issue.

## ADA Interference

You have also repeatedly inserted yourself and Buchalter into matters involving my ADA accommodations, medical documentation, LCW, the ADA Coordinator, and the City's accommodation decisions.

You are adverse litigation counsel. You are not the ADA Coordinator, my doctor, or a neutral accommodation reviewer.

I allege that your involvement has delayed, narrowed, obstructed, or influenced the City's accommodation process while you simultaneously defend the City against my ADA claims.

That is a serious conflict issue and will be presented to the federal court.

Do not use my ability to prepare some documents as a pretext to disregard my

written accommodations, physician-supported processing limitations, or requests for reasonable extensions.

## Request for Immediate Standstill

I request written confirmation that, while the Court of Appeal considers my emergency stay request, the City will:

1. Refrain from seeking entry of default;
2. Refrain from seeking discovery sanctions or waiver;
3. Refrain from imposing unilateral compressed deadlines;
4. Provide reasonable written clarification of each requested action;
5. Address one principal issue per communication where reasonably possible;
6. Provide reasonable processing time unless a genuine court-imposed emergency exists;
7. Preserve the status quo until the appellate court rules.

If the City refuses, state that directly so the refusal can be presented to the Court of Appeal and federal court.

## Mediation and Taxpayer Expenditures

You must also report the mediation proposal to the City's authorized, nonconflicted decision-makers.

You do not personally own the City's litigation decisions. Buchalter does not have unilateral authority to withhold, bury, or reject an ADR proposal while continuing to generate taxpayer-funded fees.

Councilmembers have publicly complained about litigation costs. The

mediation proposal gives them an opportunity to reduce those costs.

Confirm:

1. When you received the proposal;
2. When you transmitted it to the Council or other authorized decision-maker;
3. Who received it;
4. Whether you recommended acceptance or rejection;
5. Whether it will be considered in closed session;
6. The estimated cost of continued litigation compared with mediation.

## Preservation Demand

Preserve all paper and electronic evidence concerning:

- the Gemelli investigation and complete investigative file;
- all drafts, edits, redlines, comments, and metadata;
- my ADA accommodations and physician documentation;
- communications with LCW and the ADA Coordinator;
- the pending writ and stay request;
- threatened default or sanctions;
- discovery deadlines;
- mediation;
- City billing and Buchalter invoices;
- representation of Milan Mrakich and Leticia Lopez-Viado;
- communications concerning my federal complaint and Doe defendants;
- communications concerning whether to retaliate, escalate, pressure, or publicly characterize me.

This preservation demand includes emails, texts, Teams messages, personal-

device communications concerning City business, billing narratives, calendars, call records, recordings, drafts, deleted-item folders, backups, and metadata.

Do not delete, overwrite, alter, or permit routine destruction of responsive evidence.

## Final Notice

I am no longer merely considering whether your conduct belongs in the federal action.

I presently intend to seek leave to amend and name you and Buchalter if the evidence supports the allegations described above.

Your future conduct will determine whether that request becomes necessary and what claims and remedies I ask the federal court to permit.

Stop the repetitive pressure tactics.

Respect my documented disability-related communication and processing needs.

Allow the Court of Appeal to address the emergency stay request without trying to manufacture additional defaults or procedural prejudice.

Report the mediation proposal to the client.

Preserve the evidence.

Please confirm the requested standstill and communication protocol in writing.

Brian Gutierrez

# EXHIBIT C

June 23, 2026 Buchalter meet-and-confer letter threatening protective-order motion and monetary sanctions.

# Buchalter

18400 Von Karman Avenue
Suite 800
Irvine, CA 92612
949.760.1121 Phone
949.720.0182 Fax

File Number: C0165-000011
949.224.6265 Direct
rscott@buchalter.com

June 23, 2026

**VIA E-MAIL (JOHNDOECA2025@GMAIL.COM)**

Brian Gutierrez
Respondent In Pro Per
Safe At Home Confidential Mailing Address
P.O. Box 1679, MS 5892
Sacramento, CA 95812

      Re:     Meet and Confer Regarding Motion for Protective Order

Dear Brian:

      We are in receipt of your First Set of Special Interrogatories, Requests for Admission, and Requests for Production, each of which contain 100 requests, and were served over the weekend on Saturday, June 20, 2026.  I am writing to meet and confer with you regarding the content and scope of the requests, in an effort to avoid motion practice.  It is apparent that your requests are designed to harass and burden the City with irrelevant discovery requests.  This letter, and the City's potential motion for a protective order, focuses on the most obviously improper requests without waiving the City's right to object to other requests.  Please note that, if required to seek a protective order, the City will request monetary sanctions be imposed against you.

      First, it is apparent that your declarations of necessity for additional discovery served with your special interrogatories and requests for admission are improper, and the number of discovery requests is unwarranted and for the purposes of harassment.  The City, as petitioner, bears the burden of proof in this matter, yet your combined 200 Special Interrogatories and Requests for Admission are nearly *five times* the number of Special Interrogatories and Requests for Admission served on you (41 total).

      Further, your discovery was served just two days after the Court denied your motion for a protective order, requiring you to respond to the City's discovery.  On June 18, 2026, the Court's tentative ruling was to deny your motion for a protective order and require you to respond go

**buchalter.com**

Arizona    Oregon
California  Tennessee
Colorado    Texas
Georgia     Utah
Illinois   Washington

BUCHALTER 111111627v1

# Buchalter

Brian Gutierrez
June 23, 2026
Page 2

discovery within 30 days.  You objected, claiming that you required more time.  Both the Court and I noted that you have demonstrated yourself to be more then capable of drafting complex documents in exceedingly short amounts of time, often filing opposition or reply briefs within hours or days after receiving the City's brief, even when you are under no obligation to do so.  Ultimately, the Court agreed to extend your deadline to respond to discovery to July 31, noting that this extension was being granted as a professional courtesy rather than a disability accommodation.

Despite claiming an inability to respond to discovery in a timely fashion, on Saturday, June 20, you served 300 discovery requests in this action, making the City's responses to your discovery due *before* your Court ordered responses.  I note that, in addition to the discovery, on Friday, June 19, you filed three documents in the action *Doe v. City of West Covina* pending in federal court, and on Sunday June 20, you served a Petition for Writ of Mandate related to the Court's June 18 ruling.

Second, a significant portion of your requests are not relevant to, nor reasonably likely to lead to the discovery or evidence admissible in this action.  This action arises from the whether you complied with Brian Tabatabai's CPRA request, as clarified, and your obligation to preserve records of your work for the City that may constitute public records.

Numerous requests are targeted at other CPRA requests the City may have received or responded to in the past, and/or collections of documents from other City staff or City Council members.  Such requests are not relevant to this case.  As a result, the City demands that you withdraw Special Interrogatory Nos. 25-50, Request for Admission Nos. 13-25, and Request for Production Nos. 21-45.

Nearly half of your requests are directed to the investigation conducted by Kelly Gemelli and her resulting report.  Neither the Gemelli investigation nor her report are relevant to this action.  whether you have preserved records consistent with your obligations.  Kelly Gemelli was retained to investigate allegations that you made against Mayor Lopez-Viado and Councilmember Tony Wu, and their allegations against you.  None of the allegations investigated by Ms. Gemelli have anything to do with the Tabatabai CPRA request or your compliance with it.  You have raised the propriety of the Gemelli investigation and report in your concurrent litigation against the City, *John Doe v. City of West Covina*, currently pending in federal court.  Any discovery relating to the Gemelli investigation and report may be relevant in that action, not this one.  As a result, the City demands that you withdraw Special Interrogatory Nos. 51-91, Request for Admission Nos. 46-96 and 100, and Request for Production Nos. 46-100.

**Buchalter**

Brian Gutierrez
June 23, 2026
Page 3

Please confirm no later than the close of business on Friday, June 26, 2026 that you will withdraw Special Interrogatory Nos. 25-50 and 51-91, Request for Admission Nos. 13-25, 46-96, and 100, and Request for Production Nos. 21-24 and 46-100.

Sincerely,

*/s/ Roger L. Scott*

Roger L. Scott

RLS:lc

# EXHIBIT D

June 22, 2026 Buchalter email threatening default and relying on Plaintiff's other filings as proof he did not need additional time.

**From:** **Scott, Roger L.** rscott@buchalter.com
**Subject:** **RE: City of West Covina v Gutierrez--failure to Answer [IMAN-BUCHALTER.FID6453017]**
**Date:** **Jun 22, 2026 at 4:10:20 PM**
**To:** **John Doe** johndoeca2025@gmail.com
**Cc:** **Dabbous, Reem** rdabbous@buchalter.com, **Katz, Claire** ckatz@buchalter.com

Brian-

You are well aware that you filed a Demurrer, not an Answer.  You were ordered to Answer when the Demurrer was overruled.  I am not asking you to "do a new one," nor is about what I "want."  You were required by Court order to file an Answer and have failed to do so.

There is no reason you need until next Monday to file one.  You are clearly capable of drafting and filing documents in a very short amount of time as evidenced by the three filings you made in federal court on Friday, the discovery in this matter served on Saturday, and the Writ Petition served on Sunday.

Please file an Answer no later than Wednesday, June 24, 2026.  If you fail to do so, the City will request that Default be entered against you.

Sincerely,
Roger

Buchalter

**Roger L. Scott** he/him/his
Partner
**T** (949) 224-6265
**C** (805) 708-3936
rscott@buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio

**From:** John Doe <johndoeca2025@gmail.com>
**Sent:** Monday, June 22, 2026 3:59 PM
**To:** Scott, Roger L. <rscott@buchalter.com>

**Cc:** Dabbous, Reem <rdabbous@buchalter.com>; Katz, Claire <ckatz@buchalter.com>
**Subject:** Re: City of West Covina v Gutierrez--failure to Answer

---

This message has originated from an **External Email**. Brian Gutierrez <johndoeca2025@gmail.com>:

---

Didn't I summit this already? I taught I already did when you filed. But I'll do a new one if you want. Please give me until Monday June 29,2026 as I have a Doctors appointment on Friday.

On Jun 22, 2026, at 9:19 AM, Scott, Roger L. <rscott@buchalter.com> wrote:

Brian-

On May 28, 2026, the Court overruled your demurrer to the City's petition and ordered you to file an Answer within 14 calendar days, or June 11, 2026. To date, you have failed to do so. As a result, you are in default.

Please file an Answer no later than Wednesday, June 24, 2026. If you fail to do so, the City will request that Default be entered against you.

Sincerely,
Roger

Buchalter

**Roger L. Scott** he/him/his
Partner
**T** (949) 224-6265
**C** (805) 708-3936
rscott@buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514

www.buchalter.com | Bio

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

# EXHIBIT E

June 26, 2026 Third Party Milan Mrakich opposition to disqualification, identifying Roger Scott/Buchalter as attorney for Third Party Milan Mrakich.

BUCHALTER LLP
ROGER L. SCOTT (SBN: 247165)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: rscott@buchalter.com

Attorney for Third Party
MILAN MRAKICH

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES—WHITTIER COURTHOUSE**

| | |
|---|---|
| JOHN DOE,<br><br>        Petitioner,<br><br>    vs.<br><br>JOHN SHEWMAKER,<br><br>        Respondent. | CASE NO. 25PSRO01328<br><br>**THIRD PARTY WITNESS MILAN MRAKICH'S OPPOSITION TO MOTION TO DISQUALIFY COUNSEL; DECLARATION OF ROGER L. SCOTT IN SUPPORT**<br><br>Date: July 10, 2026<br>Time: 8:30 a.m.<br>Dept: WH301 |

**THIRD PARTY MILAN MRAKICH'S OPPOSITION TO MOTION TO DISQUALIFY**
BUCHALTER 111090288v2

## I.   INTRODUCTION

This is Petitioner John Doe's third motion to disqualify Buchalter as counsel for either the City of West Covina or its City Manager.[1]  Mr. Doe filed similar motions in the matters *John Doe v. City of West Covina*, United States District Court for the Central District of California Case No. 2:26-cv-03659-MEMF-MBK, and *City of West Covina v. Brian Gutierrez*, Los Angeles Superior Court Case No. 26STCP0067 asserting nearly identical arguments.[2]  Declaration of Roger L. Scott ("Scott Decl."), ¶ 2-4, Ex. 1-3.  The Court in *Gutierrez* already heard and denied Mr. Doe's motion in that matter.  In denying the motion, the *Gutierrez* Court explained that there was no legitimate basis for the motion and that, the City of West Covina, not Mr. Doe, would be the proper party to raise any purported concern.  See Scott Decl, ¶ 5, Ex. 4 at 4:1-4 ("I'm really having trouble seeing the basis for disqualification of counsel for the City or really even from the papers what is being asserted as the basis for disqualification."); *Id*. at 6:28-7:10 ("And even if it were the case that there's a conflict…it seems that it's not Mr. [Doe's] right to raise such a conflict … That would seem a right to belong to the City….")  This Court should deny Mr. Doe's motion for the same reasons.

Mr. Doe lacks standing to bring this motion.  Mr. Doe lacks any attorney-client relationship or other protective relationship with Buchalter that would permit him to contest Buchalter's representation of third party Milan Mrakich, or any purported conflict that may exist.  The motion should be denied on that basis alone.

Equally important, Mr. Doe has presented no evidence of any material limitation in Buchalter's representation of either Mr. Mrakich or the City that would require Buchalter to obtain informed written consent, let alone disqualify it as counsel.  Mr. Doe's subpoena seeks Mr. Mrakich's testimony because he is the City Manager and seeks the production of City records.  The City's interests are completely aligned with Mr. Mrakich's in this regard.  Nor could any conflict exist as Mr. Mrakich is not a party or accused of any misconduct; his testimony (and the

---

[1] Mr. Doe has a ritual of harassing attorneys that are adverse to him.  To that end, in the past several months, he has reported at least *nine* attorneys representing the City of West Covina or its staff (or attorneys he perceives as being related to that representation) to the State Bar for myriad purported ethical violations.

[2] The Court may recall that, at the June 15, 2026 hearing in this matter, John Doe was wearing a polo shirt that read "Brian Gutierrez, City Councilmember."

Buchalter LLP
Irvine

**THIRD PARTY MILAN MRAKICH'S OPPOSITION TO MOTION TO DISQUALIFY**

City's records) are being sought related to a dispute between Mr. Doe and Respondent John Shewmaker.

Further, the advocate-witness rule does not apply here. Mr. Mrakich is a third-party. Buchalter is not serving as trial counsel for any party in this matter. Even if the rule could apply, Buchalter attorneys could not possibly be called as witnesses in this action. There is no evidence whatsoever that any Buchalter attorney has any percipient knowledge related to the dispute between Mr. Doe and Mr. Shewmaker. In sum, no legal basis for Mr. Doe's motion exists, and the Court should deny it.

## II.    ARGUMENT

A party may move to recuse (disqualify) counsel for the opposing party on grounds recognized by law, including mandatory disqualification for conflict of interest based on a prior (successive) or current representation. (See *Lynn v. George* (2017) 15 Cal.App.5th 630, 637.) A motion to disqualify may also be brought for a violation of the "advocate-witness rule," however, disqualifying a testifying lawyer despite client consent "must be based on a convincing showing of prejudice to the opposing party or the potential for palpable injury to the judicial process." (*Geringer v. Blue Rider Finance* (2023) 94 Cal.App.5th 813, 822-823.)

### A.    John Doe Lacks Standing to Challenge Buchalter's Representation

Mr. Doe's motion is based almost entirely on allegations of a purported conflict of interest between the City and Mr. Mrakich, or an alleged lack of authorization by the City to act. While the City, or Mr. Mrakich, has the right to complain of any purported conflict, limitation on Buchalter's representation, or supposed lack of authorization, Mr. Doe does not.

A party bringing a motion to disqualify counsel must have standing to do so. *Moreci v. Scaffold Sols., Inc.*, 70 Cal. App. 5th 425, 432 (2021); *Lynn v. George*, 15 Cal. App. 5th 630, 636 (2017). "Courts have found an attorney-client relationship between the complaining party and the attorney sought to be disqualified is a prerequisite to seeking disqualification." *Moreci*, 70 Cal. App. 5th at 432; *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.* (1999) 69 Cal.App.4th 1399, 1404 ("An attorney-client relationship must have existed before disqualification is proper"). In some cases, the standing requirement may be satisfied by

demonstration of a "confidential relationship" between the attorney and the moving party. *Lynn*, 15 Cal. App. 5th at 636-637.

The party seeking disqualification has the burden to establish the attorney-client or confidential relationship. *Id*. at 638. Here, Mr. Doe provides no evidence whatsoever to support any sort of relationship that would grant him standing to challenge Buchalter's representation in this action. Mr. Doe does not declare or provide evidence that he has, or ever had, an attorney-client relationship with Buchalter. Nor does Mr. Doe's role as a City Councilmember grant him standing as a client. An attorney representing an organization represents the organization, not its members. Cal. Rule Prof. Conduct 1.13; see *Responsible Citizens v. Superior Court*, 16 Cal.App.4th 1717, 1729-1730. Mr. Doe also fails to declare or provide evidence that he ever had any sort of confidential non-client relationship or other legally protected interest that would give him standing to seek to disqualify Buchalter. The Court should deny Mr. Doe's motion to disqualify on this basis alone.

### B.      No Risk of Material Limitation Exists

California Rule of Professional Conduct, Rule 1.7(b) provides:

A lawyer shall not, without informed written consent from each affected client and compliance with paragraph (d), represent a client *if there is a significant risk the lawyer's representation of the client will be materially limited* by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests.

Cal. Rule Prof. Cond., Rule 1.7(b).

Mr. Doe provides no evidence that a significant risk of material limitation exists here, because none does. Mr. Doe's subpoena, while framed as to Mr. Mrakich personally, seeks his knowledge as the City Manager of the City of West Covina, and also seeks production of City (rather than Mr. Mrakich's personal) records. Further, the testimony and records relate to Mr. Doe's restraining order proceedings against Mr. Shewmaker, not as to any claim Mr. Doe has against the City or Mr. Mrakich.

.

Even if there is a possibility of later harm (and there does not appear to be here), or Buchalter is later required to take an inconsistent position in another matter, it does not create a "significant risk" of material limitation that would require consent.  See, Rule. 1.7(b), Comments 4,[3] 6.[4]  Thus, the Court should deny Mr. Doe's motion to disqualify.

### C.      The Advocate Witness Rule Does Not Apply

California Rules of Professional Conduct, rule 3.7, with some exceptions, prohibits an attorney from acting as an advocate at trial if that attorney will also be called as a witness.  (Cal. Rule. Prof. Conduct, Rule 3.7, subd. (a).)  This rule applies where *trial counsel* has first-hand percipient knowledge of facts relevant to the litigation that cannot be obtained from other sources.  (See *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1209 [attorney "head of household" in a child custody and visitation dispute could not act as trial counsel]; *Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 581–82 [attorney not disqualified where no evidence he had knowledge of facts "necessary and unobtainable from other witnesses; *Comden v. Superior Court* (1978) 20 Cal.3d 906, 911–12 [attorney could not act as trial counsel where he had personal knowledge of defendants' purported admissions of alleged contractual violations].)

The trial or hearing in this matter is between Mr. Doe and Mr. Shewmaker.  Buchalter is not trial counsel for either party. Thus, the advocate-witness rule could not possibly apply.

Even if it did, Mr. Doe fails to provide any evidence whatsoever that Mr. Mrakich's counsel, Roger Scott, is a percipient witness to any relevant facts related to his dispute with Mr. Shewmaker.  Indeed, it appears impossible that they would have any such knowledge.  Thus, the Court should deny Mr. Doe's motion to disqualify on this basis as well.

---

[3] "The mere possibility of subsequent harm does not itself require disclosure and informed written consent.  The critical questions are the likelihood that a difference in interests exists or will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of each client."  Rule 1.7, Comment 4.

[4] "Ordinarily paragraph[] … (b) will not require informed written consent simply because a lawyer takes inconsistent legal positions in different tribunals at different times on behalf of different clients."  Rule 1.7, Comment 6.

### III.    CONCLUSION

For the foregoing reasons, Mr. Mrakich respectfully requests that the Court deny Mr. Doe's request to disqualify his counsel.

DATED:  June 26, 2026                         BUCHALTER LLP


By:    /s/ Roger L. Scott
                ROGER L. SCOTT
         Attorney for MILAN MRAKICH

BUCHALTER 111090288v2                         5

**THIRD PARTY MILAN MRAKICH'S OPPOSITION TO MOTION TO DISQUALIFY**

## **DECLARATION OF ROGER L. SCOTT**

I, Roger L. Scott, hereby declare as follows:

1. I am an attorney licensed to practice law in the State of California and before this Court, and am a Partner at Buchalter, LLP, and counsel of record for Respondent the City of West Covina ("Respondent") in this action. I am readily familiar with the facts of this case and, if called upon, could and would testify to the facts herein from my review of the case documents, or from my personal knowledge.

2. A true and correct copy of Respondent Brian Gutierrez's Motion to Disqualify Counsel filed in *City of West Covina v. Brian Gutierrez*, Los Angeles Superior Court Case No. 26STCP00678 is attached hereto as **Exhibit 1**. Exhibits to the motion have been omitted to conserve space.

3. A true and correct copy of Respondent Brian Gutierrez's Reply Brief supporting his Motion to Disqualify Counsel filed in *City of West Covina v. Brian Gutierrez*, Los Angeles Superior Court Case No. 26STCP00678 is attached hereto as **Exhibit 2**.

4. A true and correct copy of Petitioner John Doe's Motion to Disqualify Counsel filed in *John Doe v. City of West Covina, et al*, United States District Court for the Central District of California Case No. 2:26-cv-03659-MEMF-MBK is attached hereto as **Exhibit 3**.

5. A true and correct copy of relevance excerpts from the transcript of the Superior Court's June 18, 2026 hearing in *City of West Covina v. Brian Gutierrez*, Los Angeles Superior Court Case No. 26STCP00678 is attached hereto as **Exhibit 4**.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 26th day of June, 2026 at Irvine, California.

*/s/ Roger L. Scott*
Roger L. Scott

BUCHALTER LLP
IRVINE

**THIRD PARTY MILAN MRAKICH'S OPPOSITION TO MOTION TO DISQUALIFY**

## PROOF OF SERVICE

*John Doe v. John Shewmaker*
Los Angeles County Superior Court
Whittier Courthouse - Case No. 25PSR001328

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is at BUCHALTER LLP, 18400 Von Karman Avenue, Suite 800, Irvine, CA  92612-0514.

On the date set forth below, I served the foregoing document described as:

**THIRD PARTY WITNESS MILAN MRAKICH'S OPPOSITION TO MOTION TO DISQUALIFY COUNSEL; DECLARATION OF ROGER L. SCOTT IN SUPPORT**

on all other parties and/or their attorney(s) of record to this action by ☐ faxing and/or ☐ placing a true copy thereof in a sealed envelope as follows:

| | |
|---|---|
| John Doe<br>PO Box 1679, MS 5892<br>Sacramento, CA 95812<br>Email: JohnDoeCA2025@gmail.com | *Plaintiff In Pro Per* |
| John Shewmaker 1825<br>Borrego Drive<br>West Covina, CA 91791 Email:<br>John_Shewmaker@prodigy.net | *Defendant In Pro Per* |

☑    **BY EMAIL**  On **June 26, 2026**, I caused the above-referenced document(s) to be sent in electronic PDF format as an attachment to an email addressed to the person(s) on whom such document(s) is/are to be served at the email address(es) shown above, as last given by that person(s) or as obtained from an internet website(s) relating to such person(s), and I did not receive an email response upon sending such email indicating that such email was not delivered.

☑    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.  Executed on **June 26, 2026**, at Irvine, California.

☑    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  Executed on **June 26, 2026**, at Irvine, California.

Loretta Chapman – lchapman@buchalter.com          */s/Loretta Chapman*
                                                                                  (Signature)

# EXHIBIT F

June 26, 2026 Third Party Milan Mrakich supplemental brief in support of motion to quash, identifying Roger Scott/Buchalter as counsel for Third Party Milan Mrakich.

BUCHALTER LLP
ROGER L. SCOTT (SBN: 247165)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: rscott@buchalter.com

Attorney for Third Party
MILAN MRAKICH

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES—WHITTIER COURTHOUSE**

| | |
|---|---|
| JOHN DOE, <br><br> Petitioner, <br><br> vs. <br><br> JOHN SHEWMAKER, <br><br> Respondent. | CASE NO. 25PSRO01328 <br><br> **THIRD PARTY WITNESS MILAN MRAKICH'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA OR FOR PROTECTIVE ORDER; DECLARATION OF ROGER L. SCOTT IN SUPPORT** <br><br> Date: July 10, 2026 <br> Time: 8:30 a.m. <br> Dept: WH301 |

**THIRD PARTY MILAN MRAKICH'S SUPP. BRIEF RE: MOTION TO QUASH**

BUCHALTER 111063814v1

At the June 15, 2026 hearing on Third-Party Milan Mrakich's Motion to Quash, the Court, in its questioning of Petitioner John Doe, correctly identified the fatal flaw in Mr. Doe's subpoena to Mr. Mrakich:  nothing Mr. Mrakich could say, or any documents he could produce, are remotely relevant to whether Mr. Shewmaker violated the restraining order.  See Declaration of Roger L Scott, ¶ 2, Ex. 1 (June 15 Tr. at 4:25-28 ("And so what I'm interested in is how and why Mr. Mrakich would be relevant to some sort of enforcement and/or renewal request against Mr. Shewmaker"); *id*. at 8:2-5 (questioning relevance of Mrakich's potential testimony); *id*. at 8:22-23 ("But I don't know that that is relevant to me.  Why do I care about that?").  What Mr. Mrakich, as the City of West Covina's City Manager, may know has no bearing on whether Mr. Shewmaker continues to pose a threat as Mr. Doe alleges.  The Court should grant Mr. Mrakich's motion to quash on that basis alone.

At the June 15, 2026 hearing, the Court asked the parties to submit additional briefing on the issue of whether the Court may, relevance notwithstanding, exclude Mr. Mrakich's testimony as cumulative.  It can, and it should.

California Evidence Code Section 352 provides that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will [] necessitate undue consumption of time."  Ev. Code § 352(a).  "The extent to which counsel should be permitted to pursue the question of interest … is committed largely to the sound discretion of the trial judge, including the determination when further questioning becomes merely cumulative."  *Keim v. D. B. Berelson & Co*., 105 Cal. App. 2d 154, 163 (1951).

Here, it is anticipated that Mr. Doe will testify that Mr. Shewmaker received and published information regarding Mr. Doe that Mr. Doe contends is private and the publication of which he contends constitutes harassment that should be restrained.  Mr. Doe is expected to point to published social media statements by Mr. Shewmaker stating that he obtained information about Mr. Doe from the City.

Mr. Shewmaker is expected to admit that he obtained and published the information, and may even state that he obtained the information from City sources.  Mr. Shewmaker is likely to

state that, while he published the information, it is of public interest because it pertains to a sitting City Councilmember, and that it was not published for the purposes of harassment.

By Mr. Doe's own admission, the testimony he expects to elicit from Mr. Mrakich is where or how Mr. Shewmaker obtained the information. Assuming Mr. Mrakich has any knowledge or documents indicating how Mr. Shewmaker obtained the information, it would be merely cumulative. Mr. Doe is expected to say Mr. Shewmaker received it from the City, as is Mr. Shewmaker. Mr. Mrakich cannot provide any information or testimony relevant to this matter that cannot already be provided by Mr. Doe and/or Mr. Shewmaker.

At the June 15, 2026 hearing, Mr. Doe seemed to indicate that his intent in calling Mr. Mrakich or obtaining documents from him was to prove some misconduct on the part of the City in allowing Mr. Shewmaker to obtain the objected-to information. But this is a side show. Whether the City erred in disclosing the information may give rise to a claim between Mr. Doe and the City, but it has no bearing on Mr. Shewmaker's use of the information and whether that use constitutes harassment barred by the restraining order, or evidence that the restraining order should be extended.

Lastly, although outside the scope of the Court's request to address cumulative evidence, Mr. Mrakich emphasizes that whether the records are kept by the City or Mr. Mrakich personally, each of the requested document categories is irrelevant and improper. Among other things, Doe's document requests are almost entirely for a time period that ends weeks *before* Mr. Shewmaker allegedly violated the restraining order, giving them no bearing on Mr. Doe's underlying motion.

In sum, the Court should quash Mr. Doe's subpoena to Mr. Mrakich. Alternatively, the Court may exclude the testimony and evidence sought as cumulative to the testimony and evidence of Mr. Doe and Mr. Shewmaker, the parties to this dispute.

DATED:  June 26, 2026                    BUCHALTER LLP


By:  */s/ Roger L. Scott*
                              Roger L. Scott
                              Attorney for Milan Mrakich

BUCHALTER LLP
IRVINE

BUCHALTER 111063814v1                    2

**THIRD PARTY MILAN MRAKICH'S SUPP. BRIEF RE: MOTION TO QUASH**

## DECLARATION OF ROGER L. SCOTT

I, Roger L. Scott, hereby declare as follows:

1.      I am an attorney licensed to practice law in the State of California and before this Court, and am a Partner at Buchalter, LLP, and counsel of record for Third Party Milan Mrakich in this action. I am readily familiar with the facts of this case and, if called upon, could and would testify to the facts herein from my review of the case documents, or from my personal knowledge.

2.      A true and correct copy of relevance excerpts from the transcript of the Superior Court's June 15, 2026 hearing in this matter is attached hereto as **Exhibit 1**.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 26th day of June, 2026 at Irvine, California.

*/s/ Roger L. Scott*
Roger L. Scott

BUCHALTER LLP
IRVINE

BUCHALTER 111063814v1                    3

**THIRD PARTY MILAN MRAKICH'S SUPP. BRIEF RE: MOTION TO QUASH**

# EXHIBIT 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

-OOO-

IN RE THE MATTER OF                    )
                                       )
JOHN DOE,                              )
                                       )
                      PETITIONER, )
                                       )
        AND                            ) NO. 25PSRO01328
                                       )
JOHN SHEWMAKER,                        )
                                       )
                      RESPONDENT. )
_____)

**CERTIFIED TRANSCRIPT**

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TERRENCE JONES, JUDGE

JUNE 15, 2026

APPEARANCES:

FOR PETITIONER:     IN PROPRIA PERSONA

FOR RESPONDENT:     IN PROPRIA PERSONA (NOT PRESENT)

FOR MR. MRAKICH:    BUCHALTER
                    ROGER L. SCOTT
                    18400 VON KARMAN AVENUE
                    SUITE 800
                    IRVINE, CA 92612

                    MARISSA FUENTES, CSR NO. 14799
PAGES 1 - 22, INCL.   OFFICIAL REPORTER

M A S T E R    I N D E X

SESSIONS

PAGE

MONDAY, JUNE 15, 2026
    A.M. SESSION                                          3

M A S T E R    I N D E X

CASE NUMBER:                    25PSRO01328

CASE NAME:                      JOHN DOE V. JOHN SHEWMAKER

WHITTIER                        MONDAY, JUNE 15, 2026

DEPARTMENT 301                  HON. TERRENCE JONES, JUDGE

REPORTER:                       MARISSA FUENTES, CSR #14799

TIME:                           A.M. SESSION

APPEARANCES:                    (AS NOTED ON THE TITLE PAGE.)


             (THE FOLLOWING PROCEEDINGS

               WERE HELD IN OPEN COURT:)


        THE COURT:  NUMBERS -- OKAY.  THIS IS NUMBER TWO ON THE COURT'S CALENDAR, JOHN DOE AND JOHN SHEWMAKER. CASE NUMBER 25PSRO01328.  JOHN DOE, JOHN SHEWMAKER.  FOR PETITIONER?

        MR. DOE:  GOOD MORNING, HONOR.

        THE COURT:  PETITIONER?

        MR. DOE:  YES.  GOOD MORNING, HONOR.

        THE COURT:  ALL RIGHT.  JOHN DOE IS PRESENT BEFORE THE COURT VIA COURT CONNECT.  AND YOU, SIR?

        MR. SCOTT:  I AM ROGER SCOTT OF BUCHALTER.  I'M COUNSEL FOR THIRD PARTY MILAN MRAKICH ON THE MOTION TO QUASH THE SUBPOENA.

        MR. DOE:  I CAN'T HEAR.

        THE COURT:  ALL RIGHT.  MR. SCOTT, GRAB THAT MIC. LET'S PLACE -- MR. SCOTT IS PRESENT ON BEHALF OF MR. MRAKICH.  LET'S PLACE MR. DOE UNDER OATH.

(THE PETITIONER HAVING BEEN

DULY SWORN AND TESTIFIES AS

FOLLOWS:)

THE CLERK:  DO YOU SOLEMNLY STATE THE TESTIMONY YOU MAY GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHOULD BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH SO HELP YOU GOD?

MR. DOE:  YES.

THE COURT:  ALL RIGHT.  WE'RE HERE FOR A VARIETY OF REASONS.  MR. DOE, HELP ME UNDERSTAND WHY WE NEED MR. MRAKICH INVOLVED IN THE CASE AT ALL.

MR. DOE:  YES, HONOR.

THE COURT:  THIS IS JUST SO I CAN ORIENT MYSELF BECAUSE WE MAY NOT TAKE UP THAT ISSUE SUBSTANTIVELY TODAY GIVEN THE OTHER HEARING DATES THAT ARE OUT IN THE FUTURE.  BUT HELP ORIENT ME AS TO WHY WE EVEN NEED TO HAVE THIS FIGHT OVER MR. MRAKICH.

MR. DOE:  YES, HONOR.

THE COURT:  I'M GOING TO INTERRUPT YOU WITH MORE THOUGHTS BECAUSE AS I UNDERSTAND THE CURRENT UNDERTAKING, WE'VE GOT TODAY'S MOTION FOR ENFORCEMENT, MODIFICATION, HOWEVER YOU CAPTIONED IT.  BUT THEN WE GOT OUT IN THE FUTURE, AN ACTUAL HEARING SET TO RENEW THE RESTRAINING ORDER.  AND SO WHAT I'M INTERESTED IN IS HOW AND WHY MR. MRAKICH WOULD BE RELEVANT TO SOME SORT OF ENFORCEMENT AND/OR RENEWAL REQUEST AS AGAINST MR. SHEWMAKER?  IS MR. SHEWMAKER HERE?

YOURS OR MR. SHEWMAKER'S OR ANYONE ELSE'S.

IN OTHER WORDS, WHY IS MR. MRAKICH RELEVANT TO YOUR REQUEST FOR A RESTRAINING ORDER AGAINST MR. SHEWMAKER?  IN OTHER WORDS, WHY IS MR. MRAKICH RELEVANT TO YOUR ACCUSATIONS AGAINST MR. SHEWMAKER?  HOW DOES HE HELP YOU PROVE YOUR ACCUSATIONS AGAINST MR. SHEWMAKER IF THERE IS NO DISPUTE THAT MR. SHEWMAKER HAS WHATEVER DOCUMENTS, WHATEVER PRIVATE ADA PROTECTED DOCUMENTS, THAT YOU'RE ATTEMPTING TO DESCRIBE TO ME?  WHY DO I CARE ABOUT MR. MRAKICH IF IT'S UNDISPUTED THAT MR. SHEWMAKER HAD THEM AND USED THEM IN A WAY THAT YOU BELIEVE CONSTITUTES MISCONDUCT OR A VIOLATION OF THE RESTRAINING ORDER?

MR. DOE:  I THINK IT SHOWS INTENT IF MR. MRAKICH --

THE COURT:  INTENT ON THE PART OF WHO?

MR. DOE:  MR. SHEWMAKER.  BUT I CANNOT PROVE THAT UNLESS THERE IS -- I NEED TO SEE IF THERE IS EVIDENCE THAT MR. MRAKICH MAY, OR MAY NOT HAVE, THAT WILL DETAIL THE EXTENT AND HOW FAR DID MR. SHEWMAKER GO INQUIRING ABOUT CONFIDENTIAL --

THE COURT:  BUT I DON'T KNOW THAT THAT IS RELEVANT TO ME.  WHY DO I CARE ABOUT THAT?  ALL I CARE ABOUT IS THAT YOU'RE GOING TO TELL ME MR. SHEWMAKER DID SOMETHING AND HE'S GOING TO SAY WHETHER HE DID IT OR NOT.  LET'S SAY, YOU KNOW, I HAVE A RESTRAINING ORDER -- I WANT TO GET A RESTRAINING ORDER AGAINST YOU BECAUSE YOU SOMEHOW HAD A PHOTO OF ME WITH -- I'M MARRIED AND

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT 301                    HON. TERRENCE JONES, JUDGE


JOHN DOE,                                )
                                         )
                    PETITIONER,          )
                                         )  NO. 25PSRO01328
              VS.                        )  REPORTER'S
                                         )  CERTIFICATE
JOHN SHEWMAKER,                          )
                                         )
                    RESPONDENT.          )
_____)




            I, MARISSA FUENTES, OFFICIAL REPORTER OF THE

SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE COUNTY

OF LOS ANGELES, DO HEREBY CERTIFY THAT THE FOREGOING

PAGES, 1 THROUGH 21, COMPRISE A FULL, TRUE, AND CORRECT

TRANSCRIPT OF THE PROCEEDINGS HELD IN DEPARTMENT 301 ON

JUNE 15, 2026, IN THE MATTER OF THE ABOVE-ENTITLED CASE.

            DATED THIS 25TH DAY OF JUNE, 2026.

*Marissa Fuentes*

MARISSA FUENTES, CSR NO. 14799
OFFICIAL REPORTER

06-25-2026 10:24PM

## PROOF OF SERVICE

*John Doe v. John Shewmaker*
Los Angeles County Superior Court
Whittier Courthouse - Case No. 25PSR001328

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is at BUCHALTER LLP, 18400 Von Karman Avenue, Suite 800, Irvine, CA  92612-0514.

On the date set forth below, I served the foregoing document described as:

**THIRD PARTY WITNESS MILAN MRAKICH'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA OR FOR PROTECTIVE ORDER; DECLARATION OF ROGER L. SCOTT IN SUPPORT**

on all other parties and/or their attorney(s) of record to this action by ☐ faxing and/or ☐ placing a true copy thereof in a sealed envelope as follows:

| | |
|---|---|
| John Doe<br>PO Box 1679, MS 5892<br>Sacramento, CA 95812<br>Email: JohnDoeCA2025@gmail.com | *Plaintiff In Pro Per* |
| John Shewmaker 1825<br>Borrego Drive<br>West Covina, CA 91791 Email:<br>John_Shewmaker@prodigy.net | *Defendant In Pro Per* |

☑      **BY EMAIL**  On **June 26, 2026**, I caused the above-referenced document(s) to be sent in electronic PDF format as an attachment to an email addressed to the person(s) on whom such document(s) is/are to be served at the email address(es) shown above, as last given by that person(s) or as obtained from an internet website(s) relating to such person(s), and I did not receive an email response upon sending such email indicating that such email was not delivered.

☑      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.  Executed on **June 26, 2026**, at Irvine, California.

☑      I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  Executed on **June 26, 2026**, at Irvine, California.

Loretta Chapman – lchapman@buchalter.com          */s/Loretta Chapman*
                                                                            (Signature)

# EXHIBIT G

June 23, 2026 City accommodation determination signed by Milan Mrakich.

**City Manager's Office**

June 23, 2026

Dear Councilmember Gutierrez,

This letter serves as the City of West Covina's ("the City") response to Dr. Chang's June 8 letter ("Dr. Chang's June 8 letter"), which we understand to constitute an appeal of the City's decision concerning your accommodations. This letter also responds to any other accommodation requests that remain pending before the City.

### 1.    Request for 360-degree camera

In January 2026, you requested, and the City approved, a 360-degree camera during Council meetings to promote public transparency and accountability. The City purchased the 360-degree camera and related accessories, including a 128-gigabyte memory card, and it is available for your use. The City's IT team has confirmed that the memory card can record approximately seven and a half hours, which is sufficient to record Council meetings.

You have also requested to have the 360-degree camera as a personal accommodation. As previously explained, it is the City's position that the 360-degree camera is not a necessary accommodation to ensure your meaningful access under Title II because Council meetings are already recorded and available for public review and, more significantly, the 360-degree camera with sufficient storage is available for use. You have refused to use the 360-degree camera, summarily asserting that the 128-gigabyte memory card is insufficient without even attempting to use the device. The City is not obligated to provide you with accommodations that you prefer, only those that provide you with meaningful access.

Dr. Chang's June 8 letter does not alter the City's assessment. Based on the information currently available, the City believes that the 360-degree camera, with the currently provided storage capacity sufficiently allows you to access meetings and City business. Dr. Chang's letter does not establish that additional storage or a separate personal device is presently necessary to address your disability-related limitations. Nevertheless, in a continued effort to address your concerns about storage capacity, the City will acquire a 512-gigabyte memory card. By your own arguments about storage capacity, this will provide an estimated storage of eight (8) hours even at the highest bitrate and 8K settings.

### 2.    USB device to receive council materials

You have requested that the City provide you a USB or local transfer device to deliver your Council agenda and materials. It is the City's position that a USB or local transfer device for City Council agendas and materials is not necessary to provide you with meaningful access under

1

Title II. Historically, you have been able to use shared drives to send and receive materials, including transmitting materials to the City Clerk's office and using shared drive links during litigation. Additionally, the City already provides Council agendas and materials in a variety of ways, including email attachments for smaller documents, links to online versions available to the public, and hard-copy binders. In addition to these processes, as an accommodation, the City has used a USB or local transfer device to provide you with Council materials too large to attach to an email.

Dr. Chang's June 8 letter does not change the City's assessment. Based on the information available, the available means and current accommodations to provide you materials are sufficient to allow for your effective review and participation, and therefore the USB or local transfer device for all materials is not required under the ADA. The City will continue providing you a USB or local transfer device only for meetings where the materials are too voluminous to send via an email attachment.

### 3. Requests for the use written materials and prohibition on interruptions

You have requested that the City recognize your use of written materials as an accommodation and prohibit interruptions while you are relying on those materials during Council meetings. As noted in the City's previous correspondence, there is no policy prohibiting Councilmembers from using notes, outlines, prepared statements, electronic documents, or similar materials during meetings, and you are permitted to use those materials, subject to the Brown Act.

As has been previously stated, your request to not be interrupted while using written materials cannot be provided. As an initial matter, it is unclear from Dr. Chang's letter what is considered an "interruption" or when the accommodation would be necessary. Moreover, Section 2.42 of the City's Municipal Code already protects a Councilmember's right to speak without interruption, and the City continues to apply these rules in a neutral and nondiscriminatory manner. While the City seeks to maintain orderly and harmonious meetings, it cannot reasonably be expected or is it required under Title II to prevent every interruption that may occur during a meeting. Moreover, requiring the City to guarantee that no interruption will occur while you are consulting written materials would fundamentally alter the City's meeting procedures and is not necessary to provide meaningful access under Title II.

Accordingly, the City will continue to permit your use of written materials during meetings as articulated in the City's June 3, 2026 letter, but declines your request to use written materials as an accommodation, or for an accommodation to prevent all interruptions while you are using those materials.

### 4. Requests for Additional Time and Procedures Related to Voting

As an accommodation, you have requested additional time to vote during City Council meetings. As articulated in the City's previous correspondence, you have already been granted

2

13433413.1 WE020-094

accommodations for the discussion period prior to voting designed to address your disability-related limitations, including the ability to provide brief contextual explanations before asking questions and additional time for review and response to questions. Additionally, on June 3, 2026, the City agreed to provide you with an additional one minute to cast your vote when needed so you can meaningfully participate in Council meetings and City business. While you are permitted an additional one minute to vote, you are still required to comply with the City's ordinances and meeting procedures, requiring voting in a specific order and prohibiting Councilmembers from delaying, interrupting, or otherwise disrupting proceedings or the Council's ability to efficiently and harmoniously conduct City business.

Dr. Chang's June 8 letter appears to expand your original request for additional time to vote to include a request to allow you to ask questions before voting, provide a brief comment or explanation, and to resume speaking if interrupted. This request poses an undue administrative burden and fundamental alteration to the nature of Council meetings. The voting portion of Council meetings serves a distinct procedural purpose, marking the conclusion of discussion and deliberation and the point at which official action is taken. Allowing additional questions, comments, explanations, or reopening discussion during the voting process would alter the City's established meeting procedures by extending deliberations beyond the point at which the matter has been called for a vote. Likewise, requiring the City to return you to the speaking queue whenever you determine additional analysis or clarification is necessary would interfere with the orderly administration of Council meetings and the City's ability to efficiently conduct public business.

It is the City's position that these additional requests do not provide you with meaningful access, as you are able to sufficiently participate in discussion, ask questions, seek clarification, receive responses, and utilize your previously approved accommodations before a vote is called. Additionally, permitting unlimited comments, questions, explanations, or renewed participation in deliberations during the voting process would fundamentally alter the structure and operation of Council meetings and would create an undue administrative burden and fundamental alteration. Therefore, your request is denied.

## 5.   Request for Ergonomic Chairs for Council Desk and Home Office

Dr. Chang's June 8 letter appears to expand your request for an ergonomic chair to include not only a chair for your home office, but also a chair for the council dais. The City does not dispute that an ergonomic chair may be more comfortable, however, Dr. Chang's opinion that a particular item would be beneficial does not establish that the item is required as an accommodation under Title II.

For the reasons stated in prior correspondence and as detailed below, the City does not find that either the requested chamber chair or the home-office chair is necessary to enable you to access, attend, participate in, deliberate during, or vote at Council meetings. As noted in previous correspondence, the City has already approved numerous accommodations to ensure your meaningful participation in Council activities, including accommodations relating to seating and lighting, extended access to City Hall, and equipment for your home office. Likewise, last year, the City purchased new chairs for all Councilmembers.

3

13433413.1 WE020-094

Dr. Chang's letter does not explain why those accommodations are ineffective or why the chairs requested are necessary, instead focusing on how the selected chairs improve your comfort and endurance while working. Moreover, the specific chairs recommended retail for approximately $2,400 each according to the manufacturer's website. While costs alone are not dispositive, the City is not obligated to provide your preferred accommodation.

Accordingly, the City concludes that the requested ergonomic chairs are not necessary accommodations under Title II. They are not required for you to meaningfully access or participate in Council meetings or other City activities. Because the City has already provided accommodations that enable your effective participation, and the request is denied.

### 6.      Request for Remote Participation in Council Meetings

You have also requested to participate in Council meetings remotely as an accommodation. Currently, however, the City does not believe this accommodation is necessary because you are able to attend Council meetings in-person.

The Attorney General's June 2022 guidance indicating telephonic or virtual participation may be required when someone's disability prevents them from attending public meetings in-person, citing as examples individuals with compromised immune systems or mobility disabilities that prevent travel to meeting locations.[1] The guidance specifically contemplates remote participation when a disability impairs or prevents in-person attendance, not merely when remote participation is preferred or may be more convenient.

Based on the information provided, the City has not received sufficient documentation demonstrating that remote participation is necessary to afford you meaningful access to City Council meetings. Dr. Chang's June 8 letter does not establish that your disabilities prevent or substantially limit your ability to attend meetings in person, nor does it adequately explain the frequency, severity, duration, or predictability of any limitations that would necessitate remote participation. Because you are able to attend Council meetings in person and therefore have meaningful access to the meetings through the City's existing procedures, the City concludes that remote participation is not a necessary accommodation under Title II. Accordingly, the request for remote participation is denied.

### 7.      Request for Additional Processing Time During Meetings

In a May 19, 2026 email, you reiterated your January 27 and February 27, 2026 request for additional processing time during Council meetings. As explained in the City's February 23, 2026 response, the City has already provided an accommodation addressing cognitive processing needs, such as permitting you to make clarifying statements prior to asking questions during Council meetings.

In addition, Section 2-30(b) of the West Covina Municipal Code provides that the Mayor, as the presiding officer, votes after the other Councilmembers have voted.[2] As a result, the City

---

[1] Letter from Rob Bonta, Cal. Att'y Gen., to All Cities and Counties in California, Ensuring Access for People with Disabilities to Public Meetings of Local Agencies 4 (June 14, 2022).

[2] West Covina Municipal Code § 2-30(b): "[. . .] the presiding officer shall be entitled to vote last on all questions."

4

understands that you already receive additional time to consider matters before casting your vote during Council meetings. Accordingly, the City does not presently find that any further accommodation relating to voting order is required under Title II.

If you believe the existing accommodation and voting procedures are insufficient to address your disability-related limitations, please explain why and identify the specific barriers. Please also explain how the requested accommodation would improve your ability to meaningfully participate in Council meetings.

## 8.    Request for One-Question-at-a-Time and Clarification/Repetition for Complex, Compound, or Ambiguous Questions

Pursuant to Dr. Chang's June 8 letter, you request that questions during Council meetings be presented one at a time and that clarification or repetition be provided when needed for complex, compound, or ambiguous questions. Although Dr. Chang indicates that these measures may facilitate information processing and reduce cognitive burden, the letter does not sufficiently explain why they are necessary to provide meaningful access to Council meetings, as opposed to improving convenience or communication preferences.  Further, the request would require a fundamental alteration to the nature of Council meetings, which inherently involve the discussions of complex issues by multiple participants.

Nevertheless, in an effort to support effective communication and engage in the interactive process, the City is willing to implement the following measures during Council meetings: when City officials, Councilmembers, or staff direct questions to you, upon a good-faith request, they will make reasonable efforts to repeat, rephrase, or clarify a question when it is reasonably apparent that the question is complex, compound, or ambiguous.

These measures will be administered consistent with the City's neutral meeting procedures and time-management rules and will not be implemented in a manner that disrupts meetings, prevents completion of the agenda, or fundamentally alters Council proceedings.  Further, please note that, in order to administer this accommodation, the City is required to inform all meeting participants, including the other Councilmembers of your accommodation, so that they may respond appropriately if and when you request that a question be repeated, rephrased, or clarified.

## 9.    Request to Modify Speaker Bell

You have requested that the City cease or reduce the sound of the timer bell used during the public comment portion of Council meetings. Specifically, you state that the bell sound is causing migraines and that the timer alarm may disrupt your thought processes.

The City understands that you are requesting a modification to the volume, tone, or operation of the timer bell as an accommodation. The City notes that the current bell sound is the default setting of the timer system and has been in use since approximately April 2024. The City has

5

confirmed with its IT staff that modifications to the bell's sound settings are possible. Effective as of the June 16, 2026 City Council meeting, the tone of the bell was modified to issue a single tone instead of multiple tones.

The City remains committed to ensuring your meaningful access to City programs, services, and activities under Title II of the ADA. If you have questions regarding any of the determinations set forth above or believe that additional information may be relevant to the City's assessment, please contact Ms. Roxanne Lerma.


Milan Mrakich
City Manager

6

13433413.1 WE020-094

# EXHIBIT H

Selective-enforcement / comparative ADA-process emails regarding Vivian Meleka accommodation request.

# Re: West Covina - street sweeping

From: Vivian Meleka vivianmeleka@yahoo.com

To: Milan Mrakich MMrakich@westcovina.org, Brian Gutierrez Brian.Gutierrez@westcovina.org, Roxanne E. Lerma RLerma@westcovina.org

Cc: Olegario D. Cantos VII ollie.cantos@westcovina.org, Matthew Araiza MAraiza@westcovina.org, Brian Cervantes BCervantes@westcovina.org, Milan Mrakich MMrakich@westcovina.org, Roberto Ortega Jr ROrtega@westcovina.org, PlanningDivision planningdivision@westcovina.org, Permits Permits@westcovina.org, Building building@westcovina.org, letty_lopez_viado@westcovina.org

Date: Wed, May 20, 2026, 3:00 AM

**CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.**

Dear City Council and City Staff,

Thank you for your response. However, your reply fails to address the core issue raised in my original correspondence: the City's obligation under federal disability law to provide reasonable accommodations to residents who are disproportionately burdened by the this NEW street sweeping enforcement scheme you like to start. Further, my email correspondence was NOT feedback, my email is a demand for a resolution.

Your response repeatedly discusses operational efficiency, consistency, cost minimization, and implementation logistics. None of those considerations override the requirements of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

The issue is not whether the City has authority to conduct street sweeping or post parking restrictions under the California Vehicle Code. The issue is whether the City is implementing those restrictions in a manner that unlawfully burdens disabled residents without providing reasonable accommodation.

Your citation to California Vehicle Code sections regarding street sweeping authority and disabled placards is misplaced and does not resolve the ADA issue. I never

claimed disabled placards exempt residents from street sweeping laws. Rather, I asserted that the City has an independent legal duty under federal law to reasonably accommodate disabled residents where a government policy or enforcement scheme creates a disproportionate burden.

The City's response also confirms that the sweeping routes were intentionally designed for operational efficiency and cost reduction. However, administrative convenience and cost savings do not excuse noncompliance with federal disability protections. The fact remains that residents located centrally within these sweeping zones are required to traverse excessive distances—often crossing six or more streets—to locate legal parking. For residents with mobility impairments, chronic pain, physical disabilities, elderly residents, or households with multiple vehicles and limited parking access, this creates an unreasonable and discriminatory burden.

Additionally, your own response acknowledges that the City is actively reviewing signage placement, relocations, removals, and modifications due to widespread community complaints and neighborhood-specific hardships. This directly undermines any assertion that the current system is reasonable, finalized, or fully functional. Most importantly, your response still fails to answer the central question:

> **What reasonable accommodation will the City provide to disabled residents who physically cannot comply with the current parking relocation requirements?**

Directing disabled residents to "use driveways, garages, or other approved parking areas" is not a legally sufficient answer where many residents do not have available driveway capacity, garage access, or alternative nearby parking, as I mentioned they would have to walk 6 streets away to find this "legal parking areas you speak about".

Likewise, directing residents to an online map identifying unrestricted streets does not eliminate the physical burden imposed by the City's current zone design. (**I have attached a photo for a visual representation**).

At this point, the City has been placed on formal notice that the current implementation may violate federal disability law. Continued enforcement without addressing these

**2 / 17**

concerns will expose the City to liability under the ADA and related civil rights statutes. Accordingly, I again request the following:

1. Clarification regarding what reasonable accommodations will be provided to disabled residents affected by the current sweeping zones;
2. Whether the City intends to modify sweeping schedules or stagger signage to reduce excessive walking distances;
3. Whether the City intends to suspend enforcement in affected areas pending ADA review;
4. Confirmation that this matter has been referred to the City Attorney and ADA Coordinator for review.

I highly recommend you contact your legal team for a consultation as soon as possible before you start "implementing and handing out tickets," and please be prepared to directly address these questions publicly and substantively. General statements regarding "ongoing review" are no longer sufficient given that enforcement is proceeding despite the unresolved ADA concerns previously raised.

I have lived in this home for 21 years, and during that time there has never been a significant street sweeping, trash, or sanitation issue warranting such extreme enforcement measures. Residents have long relied on the limited street parking available on these narrow residential streets, and the City's sudden aggressive enforcement effort appears less related to legitimate public necessity and more focused on generating revenue through citations.

If the City intends to justify these burdensome policies, particularly those disproportionately affecting disabled residents and individuals with limited mobility, then it should be prepared to demonstrate in court that such measures are truly necessary and legally compliant.

I want to formally inform you that I have collected substantial evidence, including before-and-after photographs and documentation thru the years of street conditions, which clearly show that there has been no significant improvement to justify the current enforcement.

Lastly, No one is preventing the City from conducting street sweeping; however, by rigidly enforcing these restrictions and denying residents the flexibility to park across

the street or alternate schedules, the City has escalated what was once a manageable situation into a major burden. I am prepared to present this evidence in court to demonstrate that the City's approach is arbitrary and discriminatory. The moment I receive a citation, I will have "standing" to bring this matter before a judge, and the City should expect formal legal action and service of process as a result.

Please forward this email to the City's Attorney - Thomas P Duarte (626-939-8401), and Deputy city attorney- Brittany E. Roberto.

Thank you
Vivian Meleka

Sent from Yahoo Mail for iPhone

---

**From:** **Olegario D. Cantos VII** ollie.cantos@westcovina.org
**To:** **Vivian Meleka** vivianmeleka@yahoo.com, **Milan Mrakich** MMrakich@westcovina.org
**Cc:** **Brian Gutierrez** Brian.Gutierrez@westcovina.org, **Roxanne E. Lerma** RLerma@westcovina.org, **Matthew Araiza** MAraiza@westcovina.org, **Brian Cervantes** BCervantes@westcovina.org, **Roberto Ortega Jr** ROrtega@westcovina.org, **PlanningDivision** planningdivision@westcovina.org, **Permits** Permits@westcovina.org, **Building** building@westcovina.org, **letty_lopez_viado@westcovina.org** , **Thomas P. Duarte** tpd@jones-mayer.com
**Date:** **Wed, May 20, 2026, 10:45 AM**

**Vivian, good morning, and thank you for the CC. You may note for your records that I am in full agreement. In fact, in advancement of support for residents with disabilities, I brought up this issue at last night's City Council meeting. This is in addition to an attempt on my part in the past to secure Council support not to burden people with disabilities, an effort that the majority soundly rejected.**

**Milan, I recognize and genuinely appreciate that you are working to address individual concerns as you outlined last night. It is that openness to flexibility that underscores precisely why implementation of our street-sweeping program must be undertaken with precision so as to**

balance the commitment to cleanliness with the needs of residents with disabilities who, through the point of the inauguration of this new effort IN JANUARY 2025, were not adversely impacted due to the prior program having already been administered effectively and without issue. It must be noted, though, that there are overarching federal and state legal considerations here that are strongly at play. If the concerns of residents with disabilities are not meaningfully addressed and their ends up being placed on them a series of discriminatory barriers (however unintentionally) that adversely impact disabled members of our community, we as a city would be placing ourselves in legal peril unnecessarily. That would entail increasing litigation risk to us as a city, which would also have an negative impact on the high premiums that we already have to pay  the California Joint Powers Insurance Authority (JPIA) as the result of previous lawsuits that have literally cost our treasury millions upon millions of taxpayer dollars. In the instant case, if a court of law finds that we as a city have discriminated against individuals with disabilities, besides injunctive relief that would be required of us, we would yet again be placing ourselves at heightened risk for our premiums being increased even further, especially if litigation results in findings against us, findings that in this case would be justified. We must stave off these possibilities by taking appropriate actions now through formulating a policy at the staff level that reflects ADA compliance through making reasonable modifications to existing policies, practices, and procedures, efforts that are fully in line with what federal and state law both allow. Before this situation escalates, including through the possibility of adversely-impacted residents with disabilities banding together to file a class action lawsuit against us because of a common harm that they are all facing, we must de-escalate this immediately. It is frankly not the Wright of this Council to refuse to follow what the law requires even if that refusal occurs as the result of a majority vote.

Vivian, I myself am taking the liberty of looping in our City Attorney, Tom Duarte, so that he may become involved with this matter directly and may address the broader policy and programmatic implementation issues that you have outlined. In doing so, at this juncture, rather than placing the city in an adversarial position against one of its residents within a litigation context, my purpose in doing this here is actually to de-escalate this entire situation, which I believe will escalate out of control if we do not fix these issues now. Because Tom's obligation as our City Attorney is to safeguard the legal interests of this City, collaborating with him to ensure literal compliance with state and federal law is actually in advancement of that very obligation that he has to us. That commitment must necessarily override any internal disagreements among Council with regard to appropriate implementation. Whatever the Council majority feels is an appropriate response here does not negate his obligation to advise

5 / 17

the entire Council on how to comply with the law. Stated another way, if any governmental body either takes action or refrains from taking action that facilitates our city's legal compliance, it would be his responsibility to advise us accordingly. This appears to be a clear-cut situation in which his involvement should result in remedying this entire matter before things spiral out of control. It is a matter of litigation risk mitigation, meeting the justified needs of residents, and --most importantly of all-- doing the right thing.

--Ollie

**Olegario "Ollie" D. Cantos VII, Esq.**
Mayor Pro Tem
City of West Covina
1444 W. Garvey Avenue South
West Covina, CA   91790
Mobile:  (626) 926-9627
Email: Ollie.Cantos@westcovina.org

On May 20, 2026, at 3:00 AM, Vivian Meleka <vivianmeleka@yahoo.com> wrote:

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Dear City Council and City Staff,

Thank you for your response. However, your reply fails to address the core issue raised in my original correspondence: the City's obligation under federal disability law to provide reasonable accommodations to residents who are disproportionately burdened by the this NEW street sweeping enforcement scheme you like to start. Further, my email correspondence was NOT feedback, my email is a demand for a resolution.

Your response repeatedly discusses operational efficiency, consistency, cost minimization, and implementation logistics. None of those considerations override the requirements of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101

et seq.

The issue is not whether the City has authority to conduct street sweeping or post parking restrictions under the California Vehicle Code. The issue is whether the City is implementing those restrictions in a manner that unlawfully burdens disabled residents without providing reasonable accommodation.

Your citation to California Vehicle Code sections regarding street sweeping authority and disabled placards is misplaced and does not resolve the ADA issue. I never claimed disabled placards exempt residents from street sweeping laws. Rather, I asserted that the City has an independent legal duty under federal law to reasonably accommodate disabled residents where a government policy or enforcement scheme creates a disproportionate burden.

The City's response also confirms that the sweeping routes were intentionally designed for operational efficiency and cost reduction. However, administrative convenience and cost savings do not excuse noncompliance with federal disability protections. The fact remains that residents located centrally within these sweeping zones are required to traverse excessive distances—often crossing six or more streets—to locate legal parking. For residents with mobility impairments, chronic pain, physical disabilities, elderly residents, or households with multiple vehicles and limited parking access, this creates an unreasonable and discriminatory burden.

Additionally, your own response acknowledges that the City is actively reviewing signage placement, relocations, removals, and modifications due to widespread community complaints and neighborhood-specific hardships. This directly undermines any assertion that the current system is reasonable, finalized, or fully functional. Most importantly, your response still fails to answer the central question:

**What reasonable accommodation will the City provide to disabled residents who physically cannot comply with the current parking relocation requirements?**

Directing disabled residents to "use driveways, garages, or other approved parking areas" is not a legally sufficient answer where many residents do not have available

driveway capacity, garage access, or alternative nearby parking, as I mentioned they would have to walk 6 streets away to find this "legal parking areas you speak about".

Likewise, directing residents to an online map identifying unrestricted streets does not eliminate the physical burden imposed by the City's current zone design. (**I have attached a photo for a visual representation**).

At this point, the City has been placed on formal notice that the current implementation may violate federal disability law. Continued enforcement without addressing these concerns will expose the City to liability under the ADA and related civil rights statutes. Accordingly, I again request the following:

1. Clarification regarding what reasonable accommodations will be provided to disabled residents affected by the current sweeping zones;
2. Whether the City intends to modify sweeping schedules or stagger signage to reduce excessive walking distances;
3. Whether the City intends to suspend enforcement in affected areas pending ADA review;
4. Confirmation that this matter has been referred to the City Attorney and ADA Coordinator for review.

I highly recommend you contact your legal team for a consultation as soon as possible before you start "implementing and handing out tickets," and please be prepared to directly address these questions publicly and substantively. General statements regarding "ongoing review" are no longer sufficient given that enforcement is proceeding despite the unresolved ADA concerns previously raised.

I have lived in this home for 21 years, and during that time there has never been a significant street sweeping, trash, or sanitation issue warranting such extreme enforcement measures. Residents have long relied on the limited street parking available on these narrow residential streets, and the City's sudden aggressive enforcement effort appears less related to legitimate public necessity and more focused on generating revenue through citations.

If the City intends to justify these burdensome policies, particularly those

disproportionately affecting disabled residents and individuals with limited mobility, then it should be prepared to demonstrate in court that such measures are truly necessary and legally compliant.

I want to formally inform you that I have collected substantial evidence, including before-and-after photographs and documentation thru the years of street conditions, which clearly show that there has been no significant improvement to justify the current enforcement.

Lastly, No one is preventing the City from conducting street sweeping; however, by rigidly enforcing these restrictions and denying residents the flexibility to park across the street or alternate schedules, the City has escalated what was once a manageable situation into a major burden. I am prepared to present this evidence in court to demonstrate that the City's approach is arbitrary and discriminatory. The moment I receive a citation, I will have "standing" to bring this matter before a judge, and the City should expect formal legal action and service of process as a result.

Please forward this email to the City's Attorney - Thomas P Duarte (626-939-8401), and Deputy city attorney- Brittany E. Roberto.

Thank you
Vivian Meleka

Sent from Yahoo Mail for iPhone

From: **Brian Gutierrez** Brian.Gutierrez@westcovina.org
To: **Olegario D. Cantos VII** ollie.cantos@westcovina.org, **Vivian Meleka** vivianmeleka@yahoo.com, **Milan Mrakich** MMrakich@westcovina.org
Cc: **Roxanne E. Lerma** RLerma@westcovina.org, **Matthew Araiza** MAraiza@westcovina.org, **Brian Cervantes** BCervantes@westcovina.org, **Roberto Ortega Jr** ROrtega@westcovina.org, **PlanningDivision** planningdivision@westcovina.org, **Permits** Permits@westcovina.org, **Building** building@westcovina.org, **Thomas P. Duarte** tpd@jones-mayer.com

**9 / 17**

**Date:** Wed, May 20, 2026, 11:01AM

I absolutely agree with Mayor Pro Tem Cantos, and 2nd this is an official ADA request for a reasonable accommodation by a resident, this is now the 2nd request you get Milan. Tell the ADA Coordinator to do her job in accordance with federal law. Engage in an interactive process, responding generic to a email does not satisfy the ADA.


Sincerely,

*__Brian Gutierrez__*

Councilmember, 1st District

City of West Covina



---

**From:** Milan Mrakich MMrakich@westcovina.org
**To:** Brian Gutierrez Brian.Gutierrez@westcovina.org, Olegario D. Cantos VII ollie.cantos@westcovina.org, Vivian Meleka vivianmeleka@yahoo.com
**Cc:** Roxanne E. Lerma RLerma@westcovina.org, Matthew Araiza MAraiza@westcovina.org, Brian Cervantes BCervantes@westcovina.org, Roberto Ortega Jr ROrtega@westcovina.org, PlanningDivision planningdivision@westcovina.org, Permits Permits@westcovina.org, Building building@westcovina.org, Thomas P. Duarte tpd@jones-mayer.com, Milan Mrakich MMrakich@westcovina.org
**Date:** Wed, May 20, 2026, 1:51PM

Good afternoon, Mayor Pro Tem Cantos, Councilmember Gutierrez, and Ms. Meleka:

Thank you for your follow-up emails, concerns, and information. It is clear through your writings that you all have vast knowledge in your field of expertise, and that is not being taken lightly by my staff or me. As I stated last night, we are working hard to respond to all requests and concerns as we implement a program approved by the majority of the council. As I also stated last night, I have addressed this type of request in other cities and through the court multiple times, but I remain committed to revisiting the issue, as rulings from years past may no longer be applicable.

Accordingly, I will assign this matter to a member of my staff, who will be assisted by legal counsel to

review and provide a substantive reply.

Ms. Meleka, please feel free to reach out to me anytime you have a question or concern. I, along with my staff, are committed to serving our residents with the highest level of professionalism and responsiveness.

**Milan M. Mrakich | Acting City Manager**

City Manager's Office **|** City of West Covina

1444 W. Garvey Avenue South | West Covina, CA 91790

Office (626) 939-8401 | Direct (626) 939-8402

Email: mmrakich@westcovina.org

City Website: www.westcovina.org



@WestCovinaCity

**Confidentiality Notice**

*This e-mail, including all attachments, may contain CONFIDENTIAL information and is meant solely for the intended recipient. It may contain controlled, privileged, or proprietary information that is protected under applicable law and shall not be disclosed to any unauthorized third party. If you are not the intended recipient, you are hereby notified that any unauthorized review, action, disclosure, distribution, or reproduction of any information contained in this e-mail and any attachments is strictly PROHIBITED. If you received this e-mail in error, please reply to the sender immediately stating that this transmission was misdirected, and delete all electronic and paper copies of this e-mail and attachments without disclosing the contents.*

---

From:   **Olegario D. Cantos VII** ollie.cantos@westcovina.org
To:   **Milan Mrakich** MMrakich@westcovina.org
Cc:   **Brian Gutierrez** Brian.Gutierrez@westcovina.org, **Vivian Meleka** vivianmeleka@yahoo.com, **Roxanne E. Lerma** RLerma@westcovina.org, **Matthew Araiza** MAraiza@westcovina.org, **Brian Cervantes** BCervantes@westcovina.org, **Roberto Ortega Jr** ROrtega@westcovina.org, **PlanningDivision** planningdivision@westcovina.org, **Permits** Permits@westcovina.org, **Building** building@westcovina.org, **Thomas P. Duarte** tpd@jones-mayer.com, **Milan Mrakich** MMrakich@westcovina.org

**11 / 17**

Date:  Wed, May 20, 2026, 2:09 PM

Thanks so much, Milan, for responding so quickly. With whomever you designate on staff, I look forward to their providing an update to this thread as this process continues to be worked through. Beyond this individual situation, efforts must commence to address the needs of others who are either similarly situated or whose disabilities warrant appropriate modifications. Putting a system into place that also entails a tailored interactive approach, based on individual circumstances, would be most ideal.

--Ollie

**Olegario "Ollie" D. Cantos VII, Esq.**
Mayor Pro Tem
City of West Covina
1444 W. Garvey Avenue South
West Covina, CA   91790
Mobile:  (626) 926-9627
Email: Ollie.Cantos@westcovina.org

On May 20, 2026, at 1:51 PM, Milan Mrakich <MMrakich@westcovina.org> wrote:

Good afternoon, Mayor Pro Tem Cantos, Councilmember Gutierrez, and Ms. Meleka:

Thank you for your follow-up emails, concerns, and information. It is clear through your writings that you all have vast knowledge in your field of expertise, and that is not being taken lightly by my staff or me. As I stated last night, we are working hard to respond to all requests and concerns as we implement a program approved by the majority of the council. As I also stated last night, I have addressed this type of request in other cities and through the court multiple times, but I remain committed to revisiting the issue, as rulings from years past may no longer be applicable.

Accordingly, I will assign this matter to a member of my staff, who will be assisted by legal counsel to review and provide a substantive reply.

Ms. Meleka, please feel free to reach out to me anytime you have a question or concern. I, along with my staff, are committed to serving our residents with the highest level of professionalism and

12 / 17

responsiveness.

**Milan M. Mrakich | Acting City Manager**

City Manager's Office **|** City of West Covina

1444 W. Garvey Avenue South | West Covina, CA 91790

Office (626) 939-8401 | Direct (626) 939-8402

Email: mmrakich@westcovina.org

City Website: www.westcovina.org

**<image001.png>**

@WestCovinaCity

**Confidentiality Notice**

*This e-mail, including all attachments, may contain CONFIDENTIAL information and is meant solely for the intended recipient. It may contain controlled, privileged, or proprietary information that is protected under applicable law and shall not be disclosed to any unauthorized third party. If you are not the intended recipient, you are hereby notified that any unauthorized review, action, disclosure, distribution, or reproduction of any information contained in this e-mail and any attachments is strictly PROHIBITED. If you received this e-mail in error, please reply to the sender immediately stating that this transmission was misdirected, and delete all electronic and paper copies of this e-mail and attachments without disclosing the contents.*

From:    **Brian Gutierrez** Brian.Gutierrez@westcovina.org

To:    **Vivian Meleka** vivianmeleka@yahoo.com

Date:    **Fri, Jun 12, 2026, 1:12 AM**

Hi Ms.Melaka, did the city ever do an interactive ADA accommodation meeting with you? Did they ever get back to you regarding your accommodation?

Sincerely,

*Brian Gutierrez*

Councilmember, 1st District

City of West Covina



**From:** Vivian Meleka vivianmeleka@yahoo.com
**To:** Milan Mrakich MMrakich@westcovina.org, Brian Gutierrez Brian.Gutierrez@westcovina.org, Olegario D. Cantos VII ollie.cantos@westcovina.org
**Cc:** Roxanne E. Lerma RLerma@westcovina.org, Matthew Araiza MAraiza@westcovina.org, Brian Cervantes BCervantes@westcovina.org, Roberto Ortega Jr ROrtega@westcovina.org, PlanningDivision planningdivision@westcovina.org, Permits Permits@westcovina.org, Building building@westcovina.org, Thomas P. Duarte tpd@jones-mayer.com, Milan Mrakich MMrakich@westcovina.org
**Date:** Tue, Jun 23, 2026, 11:52 AM

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Good morning Milan and Letty, I am concerned that I have not received any response regarding this matter, particularly from Councilmember Letty, who represents District 2. As my elected representative, I would expect communication and engagement on issues that directly affect residents within the district. I have left several voicemail messages over the past several weeks and have yet to receive a response. I have already spoken with the Engineering Department, and I was informed that they would be discussing these concerns with your office. To date, I have not received any information regarding a resolution. Specifically, I am seeking clarification on how the City intends to address the impact of the new street sweeping ordinance scheduled to take effect on July 6. What accommodations or alternatives will be available for residents who do not have access to a driveway or garage? Additionally, how will the City accommodate residents with disabilities who may be unable to park several streets away from their homes? It is concerning that the City appears prepared to implement a policy that may disproportionately affect certain residents without providing clear accommodations, exceptions, or guidance. Before enforcement begins, residents deserve to know how these issues will be addressed. I would appreciate a prompt response outlining the City's plan and any accommodations that will be available. Thank you ! Vivian Meleka 626-347-3122

14 / 17

Sent from Yahoo Mail for iPhone

---

**From:** **Milan Mrakich** MMrakich@westcovina.org

**To:** **Vivian Meleka** vivianmeleka@yahoo.com, **Brian Gutierrez** Brian.Gutierrez@westcovina.org, **Olegario D. Cantos VII** ollie.cantos@westcovina.org

**Cc:** **Roxanne E. Lerma** RLerma@westcovina.org, **Matthew Araiza** MAraiza@westcovina.org, **Brian Cervantes** BCervantes@westcovina.org, **Roberto Ortega Jr** ROrtega@westcovina.org, **PlanningDivision** planningdivision@westcovina.org, **Permits** Permits@westcovina.org, **Building** building@westcovina.org, **Thomas P. Duarte** tpd@jones-mayer.com, **Carmelita Underwood** CUnderwood@westcovina.org, **Milan Mrakich** MMrakich@westcovina.org

**Date:** Tue, Jun 23, 2026, 12:07 PM

---

Good afternoon Ms. Meleka,

Thank you for your patience and I apologize for our late reply.

Human Resources and Risk Management Director Carmelita Underwood will be contacting you this week to discuss the procedure and processing of your request.

On my end, I can assure you that enforcement will not commence until your request has been investigated.

Thank you again,

**MILAN M. MRAKICH | CITY MANAGER**

City Manager's Office | City of West Covina

1444 W. Garvey Avenue South | West Covina, CA 91790

Office (626) 939-8401 | Direct (626) 939-8402

Email: mmrakich@westcovina.org

City Website: www.westcovina.org



@WestCovinaCity

15 / 17

**Confidentiality Notice**

*This e-mail, including all attachments, may contain CONFIDENTIAL information and is meant solely for the intended recipient. It may contain controlled, privileged, or proprietary information that is protected under applicable law and shall not be disclosed to any unauthorized third party. If you are not the intended recipient, you are hereby notified that any unauthorized review, action, disclosure, distribution, or reproduction of any information contained in this e-mail and any attachments is strictly PROHIBITED. If you received this e-mail in error, please reply to the sender immediately stating that this transmission was misdirected, and delete all electronic and paper copies of this e-mail and attachments without disclosing the contents.*

---

**From:** **Carmelita Underwood** CUnderwood@westcovina.org

**To:** **Milan Mrakich** MMrakich@westcovina.org, **Brian Gutierrez** Brian.Gutierrez@westcovina.org, **Olegario D. Cantos VII** ollie.cantos@westcovina.org

**Cc:** **Roxanne E. Lerma** RLerma@westcovina.org, **Matthew Araiza** MAraiza@westcovina.org, **Brian Cervantes** BCervantes@westcovina.org, **Roberto Ortega Jr** ROrtega@westcovina.org, **PlanningDivision** planningdivision@westcovina.org, **Permits** Permits@westcovina.org, **Building** building@westcovina.org, **Thomas P. Duarte** tpd@jones-mayer.com

**Date:** **Tue, Jun 23, 2026, 1:51PM**

Hell all,

I have spoken with Ms. Meleka,

Her and I scheduled a meeting for her Interactive process meeting tomorrow at 11:30 am.

**Carmelita Underwood**

Director Human Resources/Risk Management

City of West Covina | Human Resources/Risk Management Department

1444 W. Garvey Avenue South | West Covina, CA 91790

Cunderwood@westcovina.org (Email)

626.939.8450 (Main)

626.939.8476 (Direct)

626.510.4854 (Cell)

626.939.8606 (Fax)

**16 / 17**



**9 Emails**