John Doe, In Pro Per

Safe at Home confidential address on file

Email: JohnDoeCA2025@gmail.com


Petitioner in Pro Per

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, an individual, | CASE NO. 2:26-cv-03659-MEMF-MBK |
| Petitioner, | Assigned to District Judge |
| | Hon. Maame Ewusi-Mensah Frimpong |
| v. | Magistrate Judge Michael B. Kim |
| CITY OF WEST COVINA, | **PETITIONER JOHN DOE'S REPLY IN** |
| | **SUPPORT OF APPLICATIONS TO** |
| Respondent. | **FILE EXHIBIT BB AND EXHIBITS** |
| | **II-JJ UNDER SEAL [DKTS. 63, 64]** |

**PETITIONER JOHN DOE'S REPLY IN SUPPORT OF APPLICATIONS TO FILE EXHIBIT BB AND EXHIBITS II-JJ UNDER SEAL [DKTS. 63, 64]**

## I. INTRODUCTION

Respondent's oppositions prove why sealing is necessary. Respondent is not merely invoking the public-access doctrine. It is asking this Court to publicly expose a treating-physician disability letter, medical-functional limitations, ADA accommodation analysis, Safe at Home materials, and safety-related records in a case where Petitioner alleges ADA retaliation, ADA interference, and weaponization of accommodation information. That is not transparency. It is litigation-driven disclosure of the same type of protected disability and safety information that Petitioner alleges was already misused outside court.

The City's opposition to sealing Exhibit BB states that the 17-page physician letter is "not merely a medical record," labels it an "advocacy document," and argues that much of it should be public because it discusses requested accommodations, Council procedures, recording devices, storage media, and voting procedures. (Dkt. 84 at 2:7-28.) That argument is legally and factually wrong. A physician's explanation of why specific accommodations are medically and functionally necessary does not cease being medical/disability information merely because it describes how the disability manifests in a public-meeting environment.

The City's opposition to sealing Exhibits II and JJ likewise minimizes Safe at Home and safety-related confidentiality, arguing that those documents should not be sealed because Safe at Home does not protect "all other information," and because Defendant claims a version of Exhibit JJ exists elsewhere. (Dkt. 85 at 2:6-16, 4:1-18.) That framing ignores context, aggregation risk, Doe-status risk, and the fact that this case already involves allegations that City actors disclosed, circulated, or exploited Petitioner's confidential ADA and safety information.

The Court should reject Respondent's invitation to convert ADA proof into public exposure. Petitioner is not asking to litigate in secret. He is asking the Court to prevent unnecessary public disclosure of the precise medical, ADA, Safe at Home, and safety materials whose disclosure would chill his exercise of federal rights, increase safety risk, and compound the alleged retaliation.

**II. RESPONDENT'S OPPOSITION MISSTATES THE NATURE OF EXHIBIT BB**

Exhibit BB is a treating-physician letter. It contains detailed medical, disability, functional-limitation, cognitive-processing, sensory, communication, stress-response, and accommodation information. Respondent attempts to strip the document of protection by calling it "advocacy." But doctors routinely explain functional limitations by applying medical knowledge to the environment in which access is required. That is the entire purpose of accommodation documentation.

Respondent's position would create an impermissible Hobson's choice for disabled litigants: either submit medical evidence and surrender medical privacy, or preserve privacy and lose meaningful judicial review. The ADA does not permit public entities to force that choice. A disabled litigant may rely on medical-functional evidence without turning his entire physician letter into a public exhibit.

The City cannot dispute medical necessity and then demand public exposure of the treating-physician letter as the price of judicial review. Respondent repeatedly challenges the medical basis, necessity, and reasonableness of Petitioner's requested accommodations. Having placed the functional medical basis in dispute, Respondent cannot then insist that the only way Petitioner may answer that dispute is through public disclosure of the physician's detailed analysis.

**III. FEDERAL DISABILITY LAW RECOGNIZES CONFIDENTIALITY, PRIVACY, AND NONINTERFERENCE**

Respondent's argument is inconsistent with the confidentiality and anti-interference principles that govern disability rights. Title II requires public entities to provide effective communication in a manner that protects the "privacy and independence" of the individual with a disability. 28 C.F.R. § 35.160(b)(2). Respondent's request would do the opposite by forcing public disclosure of the physician analysis and safety/access materials that explain Petitioner's disability-related needs.

The ADA also prohibits retaliation, coercion, intimidation, threats, and interference with the exercise or enjoyment of ADA rights. 42 U.S.C. § 12203; 28 C.F.R. § 35.134. Publicly exposing medical-accommodation information in an ADA retaliation case can itself deter a reasonable person from seeking accommodations. A court should be especially cautious where the requested disclosure is sought by the very public entity accused of retaliating against and interfering with accommodation rights.

Federal disability law also treats medical information obtained in the disability/accommodation context as confidential. See 42 U.S.C. § 12112(d)(3)(B), (d)(4)(C); 29 C.F.R. § 1630.14(b)(1), (c)(1). Petitioner recognizes that Respondent may dispute the precise employment classification applicable to an elected official. But those provisions demonstrate a broader and controlling disability-law principle: medical information obtained because a person seeks disability access is not ordinary political material, not ordinary public-relations material, and not a litigation weapon.

## IV. CALIFORNIA LAW REINFORCES THE MEDICAL-CONFIDENTIALITY AND PRIVACY HARM

California law independently reinforces the seriousness of the confidentiality harm. The Confidentiality of Medical Information Act ("CMIA") defines medical information to include individually identifiable information derived from a provider of health care regarding a patient's medical history, mental or physical condition, or treatment. Cal. Civ. Code § 56.05(j). Civil Code section 56.20(a) requires an employer receiving medical information to establish appropriate procedures to ensure confidentiality and protection from unauthorized use and disclosure, and section 56.20(c) restricts use or disclosure of medical information possessed by an employer absent authorization or a statutory exception.

The California Constitution also protects privacy. Cal. Const., art. I, § 1; Hill v. National Collegiate Athletic Assn. (1994) 7 Cal.4th 1. Petitioner has a legally protected privacy interest and a reasonable expectation that treating-physician letters and disability-accommodation documentation submitted to prove ADA harm will not be publicly weaponized against him. Respondent's request for public disclosure is a serious invasion because it would expose detailed medical-functional information and connect it to a public controversy involving elected officials, safety issues, and alleged retaliation.

California Rule of Court 1.100 further confirms the judiciary's recognition that disability-accommodation information is confidential. Rule 1.100(c)(4) treats information submitted in connection with a court accommodation request, including medical information, as confidential. This federal Court is not bound by that state procedural rule, but the policy is directly relevant: disability-access information is uniquely sensitive and should not be publicly disclosed merely because a disabled person seeks equal access to judicial or governmental proceedings.

## V. THE PUBLIC-ACCESS DOCTRINE DOES NOT REQUIRE PUBLIC EXPOSURE OF MEDICAL AND SAFETY INFORMATION

Respondent invokes the public-access doctrine as though it overrides all disability, privacy, and safety interests. It does not. The Ninth Circuit recognizes a strong presumption of access, but it also recognizes compelling reasons to seal records when disclosure could be used to gratify private spite, promote public scandal, circulate harmful information, or cause improper use of sensitive records. Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1178-79 (9th Cir. 2006); Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978).

Respondent relies on cases requiring narrow tailoring. Petitioner does not dispute the narrow-tailoring requirement. But narrow tailoring does not always mean line-by-line disclosure of a document whose entire function is to convey medical-functional disability analysis. The proper question is whether disclosure of the document, in context, is necessary for public understanding and whether narrower alternatives can adequately protect the confidentiality interest. For Exhibit BB, the document is permeated with medical and accommodation analysis; a line-by-line redaction would either reveal the substance or black out the majority of the document.

Civil Beat Law Center for Public Interest, Inc. v. Maile, 117 F.4th 1200, 1211 (9th Cir. 2024), does not help Respondent. Civil Beat rejects automatic blanket rules and requires case-by-case analysis. Petitioner is asking for exactly that: a case-specific determination based on a treating physician letter, ADA retaliation claims, alleged prior disclosure of accommodation information, Safe at Home/safety issues, and the risk of chilling future accommodation requests.

## VI. ROGER SCOTT'S POSITION IS MATERIAL TO SEALING BECAUSE PETITIONER ALLEGES COUNSEL PARTICIPATED IN THE DISCLOSURE AND WEAPONIZATION OF ADA INFORMATION

Respondent's opposition cannot be evaluated in a vacuum. Petitioner alleges that the City and its agents disclosed, minimized, and weaponized ADA accommodation information. Petitioner is informed by Acting City Manager Milan Mrakich that Roger Scott played a role in ensuring Petitioner's ADA accommodation information was disclosed to Councilmembers Leticia Lopez-Viado and Rosario Diaz. Petitioner intends to seek leave to amend if discovery confirms that Mr. Scott, Buchalter, or any other actor participated in unlawful disclosure, retaliation, or interference.

That allegation is directly relevant to sealing. A lawyer and law firm alleged to have participated in the disclosure path of accommodation information should not be permitted to demand public disclosure of a treating physician letter while insisting that the public-access doctrine compels it. At minimum, the Court should recognize the conflict between Respondent's asserted transparency rationale and Petitioner's claim that the same actors have used disclosure as a retaliatory tool.

Respondent's request is not neutral. It would give the City and its counsel a public litigation benefit from the very confidentiality breach alleged in the case: once the medical letter is public, the harm is irreversible. Money damages and later sealing orders cannot unpublish a physician's disability analysis.

## VII. EXHIBITS II AND JJ SHOULD REMAIN SEALED OR, AT MINIMUM, TEMPORARILY SEALED PENDING COURT-GUIDED REDACTIONS

Respondent's opposition to sealing Exhibits II and JJ improperly reduces Safe at Home and safety protection to a single question: whether the document shows Petitioner's actual street address. That is too narrow. Petitioner litigates under Doe status, participates in Safe at Home, and alleges safety-related retaliation and disclosure. In that context, public filing can create a "mosaic" risk by linking pseudonymous identity, safety program participation, restraining-order issues, address-protection status, and disability-access claims in one public docket.

Respondent also argues that Exhibit JJ should be public because it located a filed version in another criminal case. Even assuming a version exists elsewhere, republication and aggregation here create a different harm. A record that may exist in another docket is not automatically appropriate for repackaging in a pseudonymous ADA retaliation case involving Safe at Home, restraining-order safety issues, and alleged disclosure of protected information. Context matters. Aggregation matters. Linkage matters.

## VIII. THE COURT SHOULD NOT REWARD A DISCLOSURE STRATEGY IN AN ADA RETALIATION CASE

Respondent's litigation position would create a dangerous precedent. If accepted, any public entity accused of denying accommodations could oppose sealing by arguing that the disabled person's medical limitations are "central" to the lawsuit and therefore should be publicly exposed. That would chill ADA enforcement. It would make privacy loss the price of asserting civil rights. It would encourage defendants to contest medical necessity precisely so plaintiffs must disclose more medical detail to survive judicial review.

This Court can protect public access without creating that rule. The public can understand that Petitioner relies on a treating physician letter and accommodation evidence without seeing every page of the letter. The Court can describe the legal standards, categories of requested accommodations, and non-sensitive facts in any order without publicly filing the medical-functional details.

## IX. REQUESTED RELIEF

Petitioner respectfully requests that the Court:

1. grant the applications to file Exhibit BB and Exhibits II-JJ under seal;

2. reject Respondent's request for public disclosure of Petitioner's treating-physician disability letter and safety-related materials;

3. alternatively, maintain the exhibits temporarily under seal and permit Petitioner to submit revised public redacted versions after the Court identifies what, if any, portions must appear publicly;

4. order that no party may publicly file, quote, summarize in unnecessary detail, republish, or disseminate sealed medical, ADA-accommodation, Safe at Home, Doe-status, or safety materials without further Court order; and

5. grant such further protective relief as necessary to prevent retaliation, intimidation, interference, or irreversible disclosure of protected disability and safety information.

## X. CONCLUSION

Respondent's oppositions should be denied. The public has an interest in the judicial process; it does not have a right to force a disabled litigant to publicly surrender treating-physician disability analysis, Safe at Home materials, and safety-related records as the price of enforcing federal civil-rights law.

The applications should be granted. At minimum, the Court should maintain the materials under seal while permitting a revised, Court-approved redaction process.

Dated: June 27, 2026

Respectfully submitted,

/s/ John Doe
John Doe
Petitioner in Pro Per