**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| JOHN DOE, | Case No. 2:26-cv-03659-MEMF-MBK |
| Plaintiff, | District Judge: Hon. Maame Ewusi-Mensah Frimpong |
| v. | Magistrate Judge: Hon. Michael B. Kim |
| CITY OF WEST COVINA; MILAN M. MRAKICH; LETICIA SALAZAR LOPEZ-VIADO; and DOES 1-50, | **PLAINTIFF'S EMERGENCY SUPPLEMENTAL NOTICE AND EX PARTE REQUEST FOR RULING ON PENDING DOCKET 27; SUPPLEMENTAL EVIDENCE OF ONGOING TITLE II ACCESS DENIAL, ADA RETALIATION/INTERFERENCE, AND IRREPARABLE HARM; ALTERNATIVE RENEWED REQUEST FOR TEMPORARY RESTRAINING ORDER** |
| Defendants. | |

Plaintiff John Doe respectfully submits this emergency supplemental notice and ex parte request because Docket 27 remains pending. Docket 27 sought clarification or limited reconsideration of the Court's Order at Docket 26 denying Plaintiff's earlier emergency TRO request. The present filing does not attempt to relitigate the prior record. It identifies new and clarifying evidence showing that the access injury the Court found insufficiently developed in Docket 26 is ongoing, concrete, and worsening.

The emergency is direct. Plaintiff remains an elected Councilmember. He must review agenda materials, communicate about public business, sit through meetings, deliberate, ask questions, process motions, and vote. Those duties occur on a recurring schedule. When the City denies effective ADA access, the harm is not abstract. A vote once taken cannot be meaningfully reconstructed. A missed question before a vote cannot be asked after the action becomes final. A Councilmember who is threatened with police removal, limited to one minute, denied ergonomic seating while in pain, forced through a hostile gatekeeper, and denied a neutral ADA process cannot perform his elected duties with equal access.

This filing is public and is not submitted under seal. The exhibit volume redacts only personal identifiers where necessary for public filing. Plaintiff does not ask the Court to seal any attachment submitted with this emergency notice.

**I. DOCKET 27 REMAINS OUTSTANDING AND DIRECTLY ADDRESSES THE COURT'S DOCKET 26 CONCERNS**

On May 4, 2026, the Court denied Plaintiff's emergency TRO application at Docket 26. The Court explained that the emergency record did not adequately show how each accommodation denial prevented participation in specific City services, programs, activities, or Council

1

Emergency Supplemental Notice re Dkt. 27

functions, and also found that the record did not establish ongoing irreparable harm. Dkt. 26 at 7-14. The following day, Plaintiff filed Docket 27, asking for clarification or limited reconsideration and supplying a corrected access-nexus record.

Docket 27 specifically identified the Council functions affected by each denied accommodation: 360-degree camera access for multi-speaker meeting comprehension; USB/flash-drive agenda materials for pre-vote agenda review; ergonomic seating for sustained review of thousands of pages; live-meeting processing time for real-time questioning and voting; seating/lighting for remaining at the dais; and limits on the Communication Protocol as applied because the Protocol blocked staff communication, records access, City Hall access, and accommodation implementation. Dkt. 27 at 4-8.

Plaintiff respectfully requests a ruling on Docket 27. If the Court concludes Docket 27 should be treated as incomplete, Plaintiff asks the Court to accept this filing as an emergency supplemental submission, or alternatively as a renewed limited TRO request based on new post-Docket 27 facts.

## II. NEW EVIDENCE SHOWS THE CITY SINGLED PLAINTIFF OUT AND CREATED A SEPARATE ADA BARRIER

On April 7, 2026, Milan Mrakich signed a City Manager's Office letter stating that, effective immediately, Assistant City Manager Roxanne Lerma would be designated as the ADA/Section 504 Coordinator for Plaintiff, and that the City's prior ADA/Section 504 Coordinator, Carmelita Underwood, would "no longer be responsible for receiving, responding to, or evaluating" any of Plaintiff's requests. Ex. C. The letter did not say Carmelita was no longer the City's Title II/Section 504 compliance official generally. It singled out Plaintiff.

Today's evidence confirms the point. On July 1, 2026, Carmelita Underwood, the City's Human Resources/Risk Management Director, emailed a member of the public to confirm an interactive-process meeting for an ADA accommodation request involving safe wheelchair/mobility access through the public right-of-way. Ex. D. Carmelita thanked the requester for speaking with her, confirmed the meeting, gave her direct contact information, and handled the interaction as a normal ADA interactive process. Ex. D.

This contrast is powerful evidence of selective administration. Members of the public still receive Carmelita's direct Title II interactive-process handling. Plaintiff, an elected Councilmember who is also a qualified individual with a disability, was removed from that channel and placed under a City Manager/Assistant City Manager path controlled by officials whose own conduct is disputed in this litigation.

Title II does not contain an exception that permits a city to give members of the public a normal ADA process while routing a disabled elected official into a separate, adversarial, conflict-ridden process because he filed complaints, requested accommodations, reported corruption, or sued the City. A public entity employing 50 or more persons must designate at

least one responsible employee to coordinate ADA compliance and must adopt and publish grievance procedures providing for prompt and equitable resolution of complaints. 28 C.F.R. § 35.107. What the City did here was the opposite of prompt and equitable: it created a Plaintiff-only ADA pathway controlled by the same City Manager whose conduct is challenged.

## III. THE CITY MANAGER PROTOCOL MAKES THE ACCESS INJURY MORE DANGEROUS AND MORE DISABLING

On April 15, 2026, Milan Mrakich issued a Communication Protocol requiring Councilmembers to direct all inquiries and all other communications with City staff through the City Manager's Office and requiring Councilmembers to contact the City Manager's Office before coming to City Hall for any reason. Ex. E. The Protocol also reserves to the City Manager's Office the right to determine whether an in-person visit is necessary or can be handled by another method. Ex. E.

The Court's Docket 26 order treated the Protocol as comparable to a neutral council-manager line-of-authority rule. Plaintiff respectfully submits that the new evidence proves why the as-applied challenge is different. Plaintiff is not challenging a neutral rule preventing Councilmembers from giving orders to staff. Plaintiff challenges the use of the Protocol as a disability-access barrier and retaliatory checkpoint controlled by the very official accused of threats, retaliation, accommodation interference, and records obstruction.

The police report attached as Exhibit F documents Plaintiff's report that, during a February 17, 2026 office meeting, the acting City Manager stated, "If anything happens to my father, I will shoot you," and then allegedly added, "You know I do not give a shit, I'll shoot you." Ex. F. Plaintiff later clarified by email that he felt alarmed and genuinely scared, interpreted the statement as a direct threat to his life, and left because he did not feel comfortable remaining there. Ex. F.

Forcing Plaintiff to route City Hall access, staff communications, ADA implementation, and oversight inquiries through an official Plaintiff reported for a shooting threat is not neutral administration. It is a barrier. It chills protected speech. It impairs access to City services and functions. It also aggravates Plaintiff's disability-related processing, anxiety, pain, and physiological stress during public meetings and pre-meeting preparation.

## IV. THE JUNE 23 ADA DETERMINATION SHOWS ACTIVE, ONGOING DENIAL OF ACCESS

On June 23, 2026, Milan Mrakich signed a letter denying or narrowing multiple accommodations that directly affect Plaintiff's ability to perform Council duties. Ex. G. The City denied or limited the 360-degree camera configuration, the USB/local-transfer agenda-materials accommodation, use of written materials as an accommodation, additional time and procedures before voting, ergonomic chairs for the Council desk and home office, remote participation,

additional processing time, and speaker-bell modifications. Ex. G.

The June 23 letter is not neutral ADA coordination. It was issued by the City Manager whose conduct is disputed. It reads like an adversarial litigation position. It substitutes the City's judgment for medical-functional evidence, treats Plaintiff's disability requests as preferences, and repeatedly minimizes the access function of the requested accommodations. Ex. G.

Plaintiff is in physical pain. Prolonged sitting during Council meetings and long agenda review aggravates back pain, concentration problems, and fatigue. Denying ergonomic seating does not merely deny comfort. It denies endurance, cognitive focus, and the ability to stay present through agenda items. Plaintiff has to review lengthy packets, contracts, staff reports, legal materials, public comments, and motions before voting. Pain reduces concentration and makes complex processing harder. That is a Title II access problem.

Plaintiff also requires processing time and stable communication during live meetings. A one-minute timer, abrupt bell, or threat of removal does not merely manage time. For Plaintiff, it interrupts sequencing, working memory, auditory processing, and the ability to complete a question or vote. If he cannot process a motion, ask a clarifying question, or explain a vote, he cannot vote accurately. That harms Plaintiff and the District 1 residents he represents.

## V. LEGAL STANDARD AND WHY EMERGENCY RELIEF IS WARRANTED NOW

The Court may revise an interlocutory order before final judgment under Federal Rule of Civil Procedure 54(b). Local Rule 7-18 permits reconsideration based on material differences in fact or law, new material facts, or a manifest showing that the Court failed to consider material facts. Local Rule 7-19 permits ex parte relief where immediate action is required and the application provides the reasons for ex parte relief and points and authorities.

The preliminary-injunction standard is governed by Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008): likelihood of success, likelihood of irreparable harm, balance of equities, and public interest. Under the Ninth Circuit's sliding-scale formulation, serious questions going to the merits and a sharply favorable balance of hardships may support relief if irreparable harm and public interest are shown. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011).

Title II requires public entities to provide meaningful access, reasonable modifications when necessary to avoid disability discrimination, and effective communication. 42 U.S.C. § 12132; 28 C.F.R. §§ 35.130(b)(7), 35.160. Public entities must administer services, programs, and activities so that individuals with disabilities are not denied equal participation. 28 C.F.R. § 35.130. ADA retaliation and interference are independently unlawful. 42 U.S.C. § 12203(a)-(b).

The record now shows serious questions and a likelihood of success. Plaintiff is a qualified individual with disabilities. The City admits he is an elected Councilmember. The City's services and activities include Council meetings, voting, agenda review, staff communications, public meeting administration, records review, City Hall access, and ADA grievance procedures. The

City removed Plaintiff from the standard Carmelita Underwood ADA process while allowing Carmelita to continue performing Title II interactive-process work for a member of the public. Exs. C-D. The City then placed Plaintiff under a protocol and accommodation path controlled by Milan Mrakich. Exs. C, E, G.

Irreparable harm is clear. Plaintiff is not asking the Court to repair a past insult. He is asking the Court to stop ongoing denial of access before additional Council votes and meetings occur. Without relief, Plaintiff must continue to participate while in back pain, under sensory and processing stress, under threat of one-minute interruption or removal, without stable USB agenda access, without neutral ADA review, and through a City Manager gatekeeping protocol that chills staff communication and oversight. Courts have long recognized that constitutional speech injuries and exclusion from public programs can constitute irreparable harm. See Elrod v. Burns, 427 U.S. 347, 373 (1976); Chalk v. U.S. Dist. Court, 840 F.2d 701, 709-10 (9th Cir. 1988).

The balance of equities and public interest favor relief. The City faces only the burden of obeying federal disability law, providing a neutral interactive process, pausing enforcement of a contested gatekeeping protocol as applied to ADA/official access, and implementing interim accommodations needed for voting and participation. Plaintiff and his constituents face impaired representation, inaccurate voting, physical pain, disability-related distress, and chilled oversight.

### VI. REQUESTED EMERGENCY RELIEF

Plaintiff respectfully requests that the Court:

- Rule on Docket 27 or set it for immediate consideration;
- Clarify that Docket 26 was based on the incomplete record then before the Court and does not preclude emergency relief based on new evidence;
- Order the City to conduct an immediate ADA interactive process for Plaintiff through a neutral ADA decisionmaker, Carmelita Underwood, or an independent qualified ADA professional, and not through Milan Mrakich or any person whose conduct is disputed in this action;
- Order the City not to enforce the Communication Protocol to block Plaintiff from ADA implementation, Council agenda access, City Hall access, records review, staff communications necessary for accommodations, or urgent official duties;
- Order interim meeting accommodations pending further hearing, including USB/local agenda materials, ergonomic/lumbar seating, functional 360-degree recording storage and equipment, reasonable processing time, one-question-at-a-time procedures, non-audible time cues, and no police threat or removal based on disability-related processing or protected speech absent actual disruption and lawful process;
- Order the City to provide written reasons and identify the decisionmaker for any denied accommodation; and
- Set an expedited hearing on a narrowly tailored preliminary injunction.

Plaintiff respectfully asks the Court to act on an emergency basis. Plaintiff is suffering. Plaintiff is in pain. Plaintiff is being forced to vote and deliberate under conditions that impair disability access. The City has created a separate ADA path for him, while allowing its HR Director to continue providing normal interactive-process handling for the public. That is precisely the sort of concrete Title II access injury Docket 26 asked Plaintiff to identify.

Dated: July 2, 2026

/s/ John Doe

John Doe, Plaintiff in Pro Per

Emergency Supplemental Notice re Dkt. 27