**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| JOHN DOE, an individual, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF WEST COVINA; MILAN M. MRAKICH; LETICIA SALAZAR LOPEZ-VIADO; and DOES 1-50, <br><br> Defendants. | Case No. 2:26-cv-03659-MEMF-MBK <br><br> District Judge: Hon. Maame Ewusi-Mensah Frimpong <br><br> Magistrate Judge: Hon. Michael B. Kim |

**PLAINTIFF JOHN DOE'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; EMERGENCY SUPPLEMENTAL NOTICE OF JULY 7, 2026 ADA ACCOMMODATION INTERFERENCE; REQUEST FOR PRESERVATION ORDER AND ORDER TO SHOW CAUSE RE SANCTIONS**

This emergency application is based on newly occurring events on July 7, 2026 and is filed publicly. Plaintiff reserves the right to submit native video evidence or secure video links if directed by the Court.

**I. EX PARTE APPLICATION AND RELIEF REQUESTED**

Plaintiff John Doe respectfully applies under Federal Rule of Civil Procedure 65 and Local Rule 7-19 for immediate, narrow, status-preserving relief arising from a newly occurring July 7, 2026 incident in which Defendants and City actors allegedly converted Plaintiff's medically supported 360-degree GoPro recording accommodation into a police-enforced threat of confiscation, removal, and arrest.

This application does not ask the Court to manage ordinary meeting decorum. It asks the Court to stop Defendants from using police power, counsel-driven instructions, and control of a disability-accommodation device to deny Plaintiff meaningful access to public Council proceedings and to punish him for using an accommodation his treating physician states is medically necessary.

Plaintiff requests an order that, pending further hearing: (1) Defendants, their officers, employees, agents, attorneys, and persons acting with them shall not confiscate, disable, remove, obstruct, or threaten Plaintiff with arrest or removal for using the GoPro/360-degree recording device from his Council seat during open/public portions of City Council meetings as an ADA/Section 504 accommodation; (2) Defendants shall treat the GoPro, sufficient memory, battery/power, mounting, and transfer/storage as disability-accommodation equipment, not as discretionary political spending or a device subject to ad hoc confiscation; (3) Defendants shall not direct West Covina Police Department personnel to remove Plaintiff from his chair, remove the GoPro from Plaintiff, or threaten criminal enforcement based on his non-disruptive use of the device during public portions of meetings; (4) Defendants shall preserve all video, audio, body-worn camera, GoPro, text, email, Teams, call-log, staff, police, and counsel communications concerning the July 7 incident and the GoPro; and (5) Defendants and their counsel shall show cause why sanctions or other corrective relief should not issue for material misrepresentations or litigation conduct concerning the availability and use of the GoPro accommodation.

Plaintiff also requests that the Court set an expedited Order to Show Cause re preliminary injunction before the next Council meeting on July 17, 2026, or as soon as the Court's calendar permits.

## II. WHY THIS IS A TRUE EMERGENCY UNDER LOCAL RULE 7-19 AND MISSION POWER

Ex parte relief is extraordinary. Plaintiff understands that Local Rule 7-19 requires a memorandum identifying the opposing party/counsel information, the reasons for ex parte relief, and points and authorities, and Local Rule 7-19.1 requires reasonable good-faith oral notice or an explanation under oath of notice efforts. Mission Power Engineering Co. v. Continental Casualty Co., 883 F. Supp. 488 (C.D. Cal. 1995), further requires procedural urgency, lack of self-created emergency, and reasonable notice.

Those requirements are satisfied here. First, the emergency is immediate: on July 7, 2026, Plaintiff was allegedly threatened with police confiscation, forced removal, and/or arrest for using the very 360-degree camera Defendants had recently represented was available for his use. West Covina Police personnel allegedly told Plaintiff that, absent a court order, they would be forced to do the same thing at the next meeting on July 17, 2026. A regularly noticed motion cannot protect Plaintiff before the next meeting cycle.

Second, the emergency was not created by Plaintiff's delay. Plaintiff had been requesting and documenting the GoPro/360-degree accommodation for months. His treating physician issued a June 8, 2026 medical necessity opinion. The City issued a June 23, 2026 response claiming the device was available and criticizing Plaintiff for allegedly refusing to use it. On July 7, the City finally provided the device and accessories in a materially more functional configuration. When Plaintiff attempted to use it that evening, Defendants allegedly threatened police enforcement. Plaintiff is moving immediately.

Third, Plaintiff will provide reasonable notice to counsel under Local Rule 7-19.1 using the accompanying notice email template and will state those efforts in the certificate/declaration. Plaintiff requests waiver of further notice only if necessary to prevent irreparable harm.

## III. NEW FACTS SHOWING IMMEDIATE AND IRREPARABLE HARM

On July 7, 2026, at approximately 12:26 p.m., City Manager Milan Mrakich texted Plaintiff: 'Hey Brian, give me a call when you're free.' Plaintiff called Mrakich. Mrakich told Plaintiff that the GoPro device was ready to pick up at City Hall at approximately 3:00 p.m. Exhibit A.

At approximately 3:00 p.m., Plaintiff met with Mrakich and Assistant City Manager / ADA Coordinator Roxanne Lerma. Plaintiff was provided the GoPro/360-degree recording device and related accessories. The City's later email confirms that staff received a 512GB memory card and adapter, dual battery charger, two Enduro rechargeable batteries, and a protective case. Exhibit C. This matters because the City previously disputed the need for sufficient storage and functional accessory support. The City had finally moved closer to a working configuration.

During the pickup conversation, Plaintiff objected that if the City controlled where the camera would be placed, that would defeat the medical purpose of the accommodation. Plaintiff's treating physician specifically explained that the accommodation must provide whole-room visual-spatial replay from Plaintiff's actual Council desk perspective, not a generic public recording or City-controlled substitute. Exhibit D. Plaintiff alleges Lerma stated she did not want to get in trouble with the Council majority and that she had to listen to counsel and City management. Plaintiff further alleges that Lerma and Mrakich stated Roger Scott was involved in instructions to LCW labor counsel concerning denial or limitation of Plaintiff's accommodations. Plaintiff submits those statements as his sworn recollection and asks the Court to require identification and preservation of all related communications.

At approximately 7:15 p.m., before the meeting had started, Mayor Leticia Salazar Lopez-Viado and City Manager Mrakich approached Plaintiff at the dais. Plaintiff alleges that they threatened him with police removal and/or arrest if he did not stop recording and turn the GoPro over to IT. Plaintiff told them and West Covina Police personnel that the GoPro was medically recommended and had been provided as part of the ADA accommodation process. Plaintiff warned officers that they were being asked to enforce an unconstitutional and discriminatory instruction.

Plaintiff alleges Mayor Lopez-Viado caused members of the public to leave the room so she and City officials could confront him over the GoPro. Plaintiff further alleges that Mrakich and Lopez-Viado asked West Covina Police Department personnel to remove or confiscate the GoPro and, if necessary, forcefully remove Plaintiff from his Council chair. Plaintiff was forced to put away or stop using the GoPro from his Council desk. Exhibits B and F.

The harm was not merely emotional disagreement. Plaintiff lost access to the precise device and perspective his physician identified as medically necessary for post-meeting visual-spatial reconstruction. Plaintiff was also subjected to police-backed intimidation for attempting to use the accommodation during a public meeting. Plaintiff states that he was crying while preparing this application, experienced severe emotional distress, fear, sleep disruption, and worsening pain, and reasonably fears the same conduct will recur on July 17 absent a Court order.

## IV. THE JULY 7 INCIDENT DIRECTLY ANSWERS THE COURT'S PRIOR ACCESS-NEXUS CONCERN

The Court previously denied emergency relief on an incomplete record and explained that Plaintiff had not sufficiently shown a concrete access nexus and irreparable harm. Plaintiff respectfully submits that July 7 supplies the concrete, non-speculative access denial: the City finally handed Plaintiff the GoPro/360-degree device and accessory package, then immediately prevented him from using it at the Council desk through threats of police enforcement.

This is the access nexus. Plaintiff does not request the GoPro as a luxury, political prop, or discretionary recording device. Dr. Henry Chang's June 8, 2026 medical opinion states that the GoPro MAX 2 or equivalent 360-degree recording device remains medically necessary because Plaintiff needs whole-room visual-spatial replay from his actual Council desk perspective to compensate for autism-related auditory-processing, working-memory, sequencing, sensory-integration, and executive-functioning limitations. Dr. Chang also states that the City's YouTube/chamber recording is not medically equivalent and that a 360-degree camera that cannot reliably capture the full open meeting is not a functional accommodation. Exhibit D.

The City's June 23 response asserted that the 360-degree camera was available for Plaintiff's use and criticized Plaintiff as having refused to use it. Exhibit E. The July 7 incident shows the statement was materially incomplete. Plaintiff did not receive meaningful, non-retaliatory access to the accommodation. When he attempted to use the device, City officials allegedly threatened arrest, confiscation, police removal, and forced removal from his Council chair.

## V. PLAINTIFF IS LIKELY TO SUCCEED ON TITLE II, SECTION 504, RETALIATION, AND INTERFERENCE

Title II provides that no qualified individual with a disability shall, by reason of disability, be excluded from participation in, denied the benefits of, or subjected to discrimination by a public entity in its services, programs, or activities. 42 U.S.C. section 12132. City Council meetings, Council participation, voting, deliberation, records review, and public-meeting participation are City services, programs, or activities.

A public entity must make reasonable modifications in policies, practices, or procedures when necessary to avoid disability discrimination unless the entity demonstrates fundamental alteration. 28 C.F.R. section 35.130(b)(7)(i). A public entity also must ensure effective communication and furnish appropriate auxiliary aids and services in a timely manner and in a way that protects the privacy and independence of the individual with a disability. 28 C.F.R. section 35.160. The ADA also prohibits retaliation and interference with the exercise or enjoyment of ADA rights. 42 U.S.C. section 12203; 28 C.F.R. section 35.134.

Plaintiff is a qualified individual with a disability, as the Court previously recognized was not materially disputed for purposes of Title II. Plaintiff requested a specific modification/effective communication aid: a

functional GoPro/360-degree recording accommodation from his Council desk, with sufficient memory, power, mounting, and transfer capacity. Plaintiff's physician directly tied that accommodation to his disability-related processing needs. Defendants denied meaningful implementation by controlling, restricting, and then threatening police enforcement against Plaintiff's use of the device.

The Ninth Circuit recognizes that failure to provide meaningful access and reasonable accommodations can violate Title II and Section 504, and that deliberate indifference exists where the entity has knowledge that harm to a federally protected right is substantially likely and fails to act. Duvall v. County of Kitsap, 260 F.3d 1124, 1138-39 (9th Cir. 2001). The City had repeated medical documentation, repeated notice, and still threatened police-backed interference the moment Plaintiff used the accommodation.

The July 7 incident also supports ADA retaliation and interference. Plaintiff engaged in protected ADA activity by requesting accommodations, providing medical documentation, filing ADA complaints, and seeking federal court relief. The adverse/interfering act was police-backed threatened confiscation and removal when Plaintiff attempted to use the accommodation. That is precisely the kind of conduct that chills the exercise of ADA rights. See Brown v. City of Tucson, 336 F.3d 1181, 1191-93 (9th Cir. 2003).

## VI. IRREPARABLE HARM, BALANCE OF EQUITIES, AND PUBLIC INTEREST FAVOR RELIEF

The harm is irreparable because it is occurring in real time during public meetings and cannot be cured later by money damages. Plaintiff cannot re-create lost access to the meeting from his desk perspective after being forced to shut down or surrender the device. He cannot vote, deliberate, and communicate on equal terms if he must choose between using a medically supported accommodation and risking police enforcement.

The emotional and physiological harm is also concrete. Dr. Chang warned that repeated denial, delay, interruption, public medical questioning, or inconsistent implementation of the accommodations creates foreseeable medical harm including severe emotional distress, sleep disruption, autistic burnout, sensory dysregulation, anxiety symptoms, cognitive fatigue, impaired concentration, and worsening musculoskeletal pain. Exhibit D. Plaintiff is experiencing that harm now.

The balance of equities favors a narrow order. Plaintiff seeks only noninterference with use of the GoPro during open/public portions of Council meetings as an ADA accommodation. He does not ask to record closed session, privileged communications, or confidential matters. He does not ask to disrupt the meeting. The City suffers no cognizable harm from permitting a disabled Councilmember to use the camera configuration the City itself finally provided, so long as the use is limited to open/public proceedings and does not cause actual disruption.

The public interest strongly favors enforcement of federal disability law, nondiscriminatory public meetings, non-retaliation, and avoiding police enforcement of unlawful disability-access denials. The public interest also favors accurate judicial proceedings; if Defendants represented the GoPro was available while simultaneously preventing Plaintiff from using it, the Court must have the complete record.

## VII. COUNSEL MISCONDUCT AND REQUEST FOR OSC RE SANCTIONS

Plaintiff respectfully asks the Court to issue an order to show cause why sanctions, corrective declarations, evidentiary hearing, or other relief should not issue concerning Roger Scott, Buchalter, Thomas O'Connell, and/or related counsel conduct. Plaintiff alleges, based on statements by City officials and the July 7 events, that counsel advised City officials that the City could control or confiscate the GoPro and that Plaintiff had no right to use it as his ADA accommodation because the City purchased it using City/IT funds rather than his Council allocation.

If that advice was given, it is directly relevant to the Court's evaluation of Defendants' prior representations that the camera was available for Plaintiff's use and that Plaintiff was the party refusing to use it. A public entity may own or purchase an auxiliary aid, but it cannot use ownership as a pretext to deny the

disability-access function of the aid. Nor may counsel use technical funding labels to convert a medically supported accommodation into a police-enforced instrument of control.

Plaintiff does not ask the Court to impose immediate Rule 11 sanctions without the required process. Plaintiff asks for an OSC, evidentiary hearing, or leave to bring a noticed sanctions motion if the Court believes the record warrants it. Plaintiff also requests that Defendants and counsel be ordered to preserve and identify all communications among Roger Scott, Thomas O'Connell, Buchalter, Jones & Mayer, LCW, Milan Mrakich, Roxanne Lerma, Leticia Lopez-Viado, West Covina Police Department personnel, IT personnel, and City staff concerning the GoPro, Plaintiff's ADA accommodations, and the July 7 enforcement threat.

## VIII. CONCLUSION

Plaintiff has fought for disability rights throughout his public life. He now asks this Court to protect his own disability access from being converted into a police-enforced punishment. The City finally gave him the device, then stopped him from using it. That is not accommodation. That is an access trap.

Plaintiff respectfully requests that the Court grant the temporary restraining order, set an expedited order to show cause, require preservation of all evidence, and require Defendants and counsel to show cause why sanctions or corrective relief should not issue.


Dated: July 8, 2026

Respectfully submitted,


/s/ John Doe
John Doe
Plaintiff in Pro Per