# EXHIBIT A

July 7, 2026 text message from Milan Mrakich asking Plaintiff to call him at approximately 12:26 p.m.

**Exhibit A - Milan Mrakich text message at approximately 12:26 p.m. on July 7, 2026**



# EXHIBIT B

July 7, 2026 images/screenshots showing GoPro accommodation dispute, police presence, Mayor Lopez-Viado, City Manager Mrakich, and the GoPro device.

**Exhibit B-1 - City Manager Mrakich and GoPro dispute screenshot**



**Exhibit B-2 - West Covina Police at dais during GoPro dispute**



I WAS FEARING MY LIFE, FOUR POLICE OFFICERS TELLING ME TO GIVE THEM A GOPRO CAMERA, WELL ADA COORDINATOR LERMA AND MILAN MRAKICH AND MAYOR LETICIA LOPEZ VIADO THREATEN TO FORCEFULLY REMOVE ME IF I DID NOT STOP RECORDING

**Exhibit B-3 - Mayor Lopez-Viado/Mrakich at dais during GoPro dispute**



**Exhibit B-4 - Mayor Lopez-Viado and Mrakich approaching Plaintiff**



**Exhibit B-5 - GoPro device, battery, and 512GB memory card**



# EXHIBIT C

GoPro Accessories Update email from Roxanne Lerma confirming receipt of 512GB memory card, dual charger, batteries, and case.

From: **Roxanne E. Lerma** RLerma@westcovina.org
Subject: **GoPro Accessories Update**
Date: **Jul 6, 2026 at 10:34:20 PM**
To: **Brian Gutierrez** Brian.Gutierrez@westcovina.org
Cc: **Milan Mrakich** MMrakich@westcovina.org

**Good Evening Councilmember Gutierrez:**

**This email confirms that the following items were received  this evening:**

1. **512 GB Memory Card + adapter**
2. **Dual Battery Charger + 2 Enduro Rechargeable Batteries**
3. **GoPro Protective Case**

**The GoPro Grip + Tripod -official mount has a delivery date of Friday**
**The  Casey (case for camera + mounts + accessories case) has not shipped.**

**Staff will check Best Buy and Target tomorrow for the remaining two accessories and will purchase if they are located. If not located,  we will wait for shipment of the remaining two to arrive.**

**Take care,**

Roxanne E. Lerma, MPA | Assistant City Manager
City of West Covina | City Manager's Office
1444 W. Garvey Avenue South | West Covina, CA 91790
Office: (626) 939-8475
Cell: (626) 905-8425
rlerma@westcovina.org|www.westcovina.org

# EXHIBIT D

Dr. Henry Chang June 8, 2026 supplemental medical necessity letter regarding
GoPro/360-degree recording accommodation and foreseeable harm.

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

June 8, 2026

City of West Covina
Human Resources / Risk Management
ADA Coordinator
1444 West Garvey Avenue South
West Covina, California 91790

**Re: Supplemental Medical Rebuttal and Medical Necessity Opinion Regarding ADA/FEHA Accommodations for Brian Gutierrez**

To the Accommodation Team, ADA Coordinator, Human Resources/Risk Management:

I am the treating physician for Mr. Brian Gutierrez. I previously issued medical accommodation correspondence dated January 26, 2026 and May 18, 2026 regarding accommodations medically necessary for Mr. Gutierrez to perform official public duties while mitigating disability-related functional limitations.

This second supplemental medical rebuttal is provided because I have reviewed, or have been provided for review, City correspondence dated April 23, 2026 and June 3, 2026. Those letters appear to deny, limit, reclassify, or narrowly substitute several accommodations previously recommended from a medical standpoint, including the 360-degree recording accommodation, functional storage/accessory support, physical storage/ USB or equivalent transfer method, processing-time accommodation, use of written materials, ability to make comments or clarifying questions before a vote, return-to-speaker/return-to-vote sequencing, and protection from public disability minimization or questioning.

I am providing medical opinions within a reasonable degree of medical probability based on my treatment of Mr. Gutierrez, my prior medical correspondence, his documented disability-related limitations, his reported functional impairments, and the medical nexus between those impairments and the accommodations requested. I understand the accommodations are being requested in the context of disability-access laws, including the Americans with Disabilities Act Title II, Section 504, California disability-access principles, and related state protections. My role is to explain medical necessity, functional limitation, and foreseeable medical harm.

The City's letters repeatedly treat the requested accommodations as preferences, conveniences, political requests, public-records issues, or administrative burdens. From a medical standpoint, that framing is incorrect. The requested accommodations address neurological, sensory, executive-functioning, auditory-processing, working-memory, sleep, pain, and stress-related functional limitations that can materially impair Mr. Gutierrez's ability to participate in complex public meetings without appropriate supports.

My medical opinion is that the City should stop treating these medically supported accommodations as optional discretionary technology, ordinary Council spending, or mere procedural preferences. Continued denial, delay, public minimization, or partial implementation creates foreseeable medical harm and impairs functional access. The accommodations discussed below should be implemented promptly, consistently, and without public ridicule, interruption, or penalty.

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

### I. Summary of Medical Opinion

1. The GoPro MAX 2 or equivalent 360-degree recording device remains medically necessary because Mr. Gutierrez needs whole-room visual-spatial replay from his actual Council desk perspective to compensate for autism-related auditory-processing, working-memory, sequencing, sensory-integration, and executive-functioning limitations.

2. The City's YouTube/chamber recording is not medically equivalent. A public broadcast record captures a selected public view; it does not provide the patient-specific visual-spatial reconstruction, whole-room context, or medically adequate visual clarity required by Mr. Gutierrez's disability. If the available public YouTube/chamber recording is limited to approximately 720p or another low-resolution format, it is clinically inferior to a 4K-or-better 360-degree source and cannot serve the same medical function.

3. A 360-degree camera that cannot reliably capture the full open meeting is not a functional accommodation. The accommodation must include sufficient memory, power, mounting, transfer, and review capacity to permit complete post-meeting visual-spatial review.

4. A 128GB memory card may or may not be sufficient depending on resolution, frame rate, camera mode, meeting duration, file segmentation, battery/power state, and actual operating conditions. Medical adequacy cannot be determined by a generalized storage estimate alone. If the meeting is not fully captured, the accommodation fails.

5. A USB, SD/microSD, encrypted portable storage device, external storage drive, or equivalent simple physical storage/transfer method remains medically necessary. Cloud-only platforms such as OneDrive or SharePoint are not medically equivalent when they impose multi-step executive-functioning and working-memory demands before the patient can access the materials.

6. Permission merely to possess notes is not a complete accommodation. Mr. Gutierrez must be permitted to rely on notes, outlines, prepared statements, electronic reference materials, and structured scripts as assistive communication tools without being penalized, publicly ridiculed, or treated as disruptive for using them.

7. The City's proposed one-minute voting accommodation is medically insufficient if Mr. Gutierrez is prohibited from asking clarifying questions, making a brief comment, or returning to the discussion before a final vote. Processing time without the ability to clarify and communicate before the vote is an accommodation in name only, not a medically effective accommodation.

8. Mr. Gutierrez should be allowed, when medically necessary, to comment before voting, to request brief clarification before voting, and to return to his speaking turn before a final vote if additional processing reveals a need for clarification or a response.

9. Repeated denial, delay, interruption, public medical questioning, or inconsistent implementation of these accommodations creates foreseeable medical harm, including severe emotional distress, sleep disruption, exacerbation of sleep-related symptoms, autistic burnout, sensory dysregulation, anxiety symptoms, cognitive fatigue, impaired concentration, and worsening musculoskeletal pain.

### II. Relevant Diagnoses and Functional Limitations

The following diagnostic and functional categories are medically relevant to the accommodations addressed in this letter. The exact billing or diagnostic codes should be verified against the treating chart before final signature, but the functional nexus described below is clinically accurate for purposes of accommodation analysis.

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

| Condition / Functional Category | Diagnostic Code / Chart Reference | Relevant Functional Limitation |
|---|---|---|
| Autism Spectrum Disorder / Asperger's profile | F84.0 | Auditory-processing delay, sensory integration differences, nonverbal-cue dependence, executive-functioning burden, need for structure, difficulty with rapid multi-speaker exchange. |
| Attention/concentration and cognitive-processing limitations | R41.840 / R41.89 | Reduced efficiency in real-time encoding, sequencing, working memory, and organization under public-meeting pressure. |
| Sleep disturbance / insomnia and sleep-related symptom exacerbation | G47.00 / G47.33 if documented / corresponding chart diagnosis | Stress and sensory overload worsen sleep quality, fatigue, cognition, concentration, emotional regulation, and next-day functioning. |
| Anxiety features / stress-related physiological response | F41.9 / F43.9 or corresponding chart diagnosis | Hostile or unpredictable public-meeting conditions increase autonomic arousal, emotional distress, somatic symptoms, and post-event recovery burden. |
| Photophobia / light sensitivity / sensory sensitivity | H53.149 or corresponding chart diagnosis | Bright or poorly controlled lighting increases sensory overload, fatigue, pain, and reduced attention. |
| Chronic low back pain / postural intolerance | M54.50 / corresponding musculoskeletal diagnosis | Prolonged sitting without adequate ergonomic support worsens pain, fatigue, irritability, and cognitive bandwidth. |
| Cognitive fatigue / reduced endurance | R53.83 or corresponding chart diagnosis | Extended meetings without breaks, processing time, and external memory aids increase exhaustion and reduce effective participation. |

High functioning does not eliminate disability. Mr. Gutierrez can perform complex public duties, but he requires external supports and predictable procedures to mitigate neurological and physiological limitations in high-demand environments. The fact that he is capable of advocacy, public service, or elected duties does not mean he can process complex public-meeting information under hostile, rapid, interruptive, and sensory-demanding conditions without accommodation.

## III. Medical Framework: The Functional Question the City Must Answer

The medically relevant question is not whether the City has a general meeting recording, whether other Councilmembers may use notes, whether a storage device can sometimes be used, or whether a one-minute voting window exists. The medically relevant question is whether the accommodation offered by the City provides the same disability-related function required by Mr. Gutierrez's impairments.

For Mr. Gutierrez, the impairments at issue involve real-time auditory encoding, working memory, sensory integration, executive functioning, delayed formulation of responses, pain, light sensitivity, sleep disruption,

Page 3 of 17

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

and stress-related physiological activation. The accommodations must therefore reduce cognitive load, preserve visual-spatial context, permit delayed processing, provide reliable access to materials, and prevent public interruption or humiliation that causes dysregulation.

A public entity may have administrative concerns. I do not dispute that. However, administrative concerns do not medically convert an ineffective substitute into an effective accommodation. If the City wishes to address record retention, cybersecurity, custody, or meeting-procedure issues, it can do so through structured procedures that preserve the medical function of the accommodation. Eliminating or hollowing out the accommodation is not medically appropriate.

The City's April 23 and June 3 letters appear to repeatedly equate administrative availability with medical equivalency. From a physician's standpoint, those are different questions. An item can be administratively available but medically ineffective. An alternative can be generally reasonable for a non-disabled person but not equally effective for this patient's neurological processing needs.

## IV. Direct Rebuttal to the City's Position on Written Notes, Outlines, Prepared Statements, and Electronic Reference Materials

The City's June 3 letter appears to state that any Councilmember may use notes, outlines, or electronic documents, and therefore no accommodation is necessary. That response misunderstands the medical function of the requested accommodation.

The accommodation is not simply permission to physically possess notes. The medical accommodation is the ability to rely on notes, outlines, prepared statements, written scripts, electronic references, and structured materials as assistive communication tools to compensate for disability-related processing and executive-functioning limitations.

Mr. Gutierrez's disability affects his ability to formulate, sequence, and retrieve complex responses in real time, especially under interruption, hostility, procedural pressure, rapid speaker changes, public scrutiny, and sensory overload. Written notes and structured outlines provide external memory, sequencing, language organization, and emotional-regulation support. They reduce the risk of cognitive shutdown, disorganized speech, missed points, and inaccurate responses.

If a presiding officer, staff member, attorney, or other participant interrupts, penalizes, ridicules, or treats Mr. Gutierrez's reliance on written materials as improper, the accommodation is undermined. From a medical standpoint, the use of written materials should be recognized as an accommodation and should be protected from unnecessary disruption, public challenge, or selective enforcement.

This does not require the City to suspend all meeting procedures. It requires the City to avoid turning the patient's assistive communication method into a source of penalty or interruption. A medically workable approach would allow Mr. Gutierrez to consult notes and structured materials, ask for clarification when a question is unclear, and complete a brief structured response without being cut off merely because he is relying on assistive materials.

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

The City may maintain records procedures for written materials actually relied upon in public meetings. My medical opinion does not address the legal scope of public-records retention. My medical opinion is that any **retention or submission process must not be administered in a way that defeats the accommodation by creating excessive post-meeting cognitive burden, humiliation, or fear that the accommodation will be weaponized against him.**

**V. Direct Rebuttal to the City's Statement That It Cannot Prevent Interruptions While Mr. Gutierrez Uses Materials**

The City's June 3 letter appears to state that meetings are dynamic and that the City cannot accommodate a request not to be interrupted while using written materials because such a change would fundamentally alter the meeting process. That response overstates the accommodation request and fails to address the medical need.

The medical need is not a demand that no person ever speak during a public meeting. The medical need is for structured, disability-aware communication practices when Mr. Gutierrez is using assistive materials or responding to inquiries. Sudden interruptions, compound questions, sarcasm, hostile procedural objections, and rapid shifts in speaker control can cause working-memory collapse, sensory escalation, and executive-functioning impairment.

A medically reasonable accommodation would include, when feasible: one question at a time; an opportunity to complete a short structured response; the ability to request clarification or repetition; a brief pause before responding; avoidance of public ridicule of assistive materials; and the ability to return to Mr. Gutierrez after an interruption so he can complete his point.

These are not requests to control political debate. They are requests to preserve functional access. Abrupt interruption affects Mr. Gutierrez differently because his disability requires additional time and structure to encode, organize, and retrieve information. What may be ordinary political friction for another person can become a disability-related access barrier for him.

If the City believes a meeting rule requires interruption, then the medically appropriate response is to return to Mr. Gutierrez after the interruption and allow him to complete the thought or question. Simply allowing interruption without return-to-speaker protection defeats the medical purpose of using notes and structured outlines.

**VI. Direct Rebuttal to the City's YouTube / Chamber-Recording Equivalency Argument**

The City's April 23 and June 3 letters appear to take the position that the GoPro MAX 2 or equivalent 360-degree camera is not necessary because City Council meetings are already recorded and available for public review on YouTube or through the City's chamber recording system. From a medical standpoint, that conclusion is incorrect.

**STAR HEALTH**

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

The question is not whether a public recording exists. The question is whether the public recording provides the same disability-specific compensatory function as a patient-specific 360-degree recording from Mr. Gutierrez's Council desk. It does not.

The City's YouTube/chamber recording is designed to create a public broadcast or public archive. It is controlled by camera location, microphone activation, operator or automated switching, selected speaker framing, presentation slides, podium focus, dais focus, or broadcast production choices. It does not continuously preserve the entire sensory and visual field experienced by Mr. Gutierrez from his actual seated position.

For Mr. Gutierrez, the missing information is often not the words alone. The medically relevant information includes the visual and spatial context in which words occur: who spoke, who reacted, where the speaker was located, what nonverbal cues occurred simultaneously, whether someone moved, whether staff reacted, whether the City Attorney reacted, whether another Councilmember reacted while not on camera, and whether off-camera conduct changed the meaning or significance of the exchange.

Autism Spectrum Disorder can involve difficulty integrating rapidly changing auditory and nonverbal information in real time. Mr. Gutierrez benefits from post-event visual-spatial reconstruction. A 360-degree recording from his desk allows him to replay the meeting from the perspective medically relevant to his processing needs. A public YouTube feed does not.

A fixed or operator-controlled public recording may be adequate for a member of the public who wants to know what was said. It is not medically equivalent for a patient who needs to reconstruct the entire interaction to compensate for auditory-processing, working-memory, sequencing, and sensory-integration limitations.

**VI-A. Direct Rebuttal to Low-Resolution YouTube Video and the 4K Visual-Access Requirement**

There is an additional medical problem with relying on the City's public YouTube/chamber recording as a substitute for the GoPro / 360-degree accommodation: visual resolution and visual-detail loss. I understand that Mr. Gutierrez has reported the public YouTube/chamber recording available to him is limited to approximately 720p or otherwise does not provide 4K-level visual clarity. From a medical standpoint, if that is the available recording quality, it is not clinically equivalent to the requested 360-degree accommodation.

This point is medically important because I have previously supported high-resolution 4K visual-display access as an accommodation for Mr. Gutierrez's official work. In prior accommodation documentation for his federal SBA/FEMA-related duties, I identified a high-resolution 4K laptop/monitor as medically useful because it reduces eye strain and sensory fatigue associated with Autism Spectrum Disorder. I also understand that the City later approved and completed a City-issued high-resolution 4K laptop and monitor accommodation for his Council work. That accommodation history is clinically consistent with the opinion in this letter: Mr. Gutierrez's disability requires clear, high-resolution visual access to reduce sensory fatigue and support accurate visual processing.

A 720p public video enlarged on a 4K monitor does not become a 4K accommodation. It merely enlarges a lower-resolution source. The missing visual detail cannot be restored after the fact. Low-resolution video

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

---

makes it harder to identify facial expressions, eye gaze, body posture, hand movements, simultaneous reactions, staff-table conduct, audience movement, police/security positioning, and spatial relationships within the room. Those are precisely the visual-spatial cues Mr. Gutierrez uses to compensate for auditory-processing and working-memory limitations.

The medically necessary accommodation is not the highest resolution for its own sake. Mr. Gutierrez does not medically require maximum 8K capture merely because the device may be capable of that setting. He requires clinically adequate high-resolution 360-degree capture and review, with 4K-or-better visual clarity where available, so that the video contains enough detail to support post-event visual-spatial reconstruction without causing avoidable eye strain, sensory fatigue, and cognitive overload.

Therefore, the City's public YouTube/chamber recording is medically unacceptable as a substitute when it provides only selected camera angles and low-resolution visual detail. It fails for two independent reasons: first, it does not capture Mr. Gutierrez's whole-room vantage point; second, it does not provide the medically adequate visual clarity needed for disability-related review. A 4K display accommodation supports medical access only when the source material itself preserves sufficient visual detail.

This also affects the storage analysis. Storage sufficiency must be evaluated using the medically necessary 360-degree settings and medically adequate resolution, not by assuming low-resolution public-broadcast quality. If 4K-or-better 360-degree capture requires additional memory cards, backup storage, power, or transfer capacity to record a full Council meeting, those components are part of the accommodation. A storage estimate based on lower visual quality does not answer the medical question.

## VII. Medical Function of the GoPro / 360-Degree Recording Accommodation

The GoPro MAX 2 or equivalent 360-degree recording accommodation remains medically necessary because it directly addresses the functional limitation created by Mr. Gutierrez's disability. It provides a patient-specific visual-spatial reconstruction tool, not a public-recording duplicate.

The device assists with:

1.  Auditory-verbal reconstruction after the real-time auditory-processing burden has decreased.
2.  Visual-spatial anchoring of statements to speaker location, body position, movement, and timing.
3.  Nonverbal-cue integration, including facial expression, body language, gestures, staff reactions, Councilmember reactions, audience reaction, and simultaneous activity.
4.  Sequence reconstruction, including who spoke, who interrupted, who responded, and what occurred outside the active microphone or broadcast frame.
5.  Working-memory compensation by allowing later review of information that could not be retained during the meeting.
6.  Reduction of neurological overload by permitting review at a slower and medically tolerable pace.
7.  Improved accuracy of later participation, written responses, questions, oversight, and voting preparation.

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

This accommodation is clinically matched to the impairment. It is not excessive, recreational, political, or duplicative from a medical perspective. It is a compensatory tool for disability-related processing. Denying it because a public broadcast exists is medically unsound.

## VIII. Direct Rebuttal to the City's Argument That the Camera Is Public Equipment and Therefore Not an Individual Accommodation

The City's June 3 letter appears to state that the City has purchased a 360-degree camera, that the camera is available for use by the public, and that it therefore need not be provided to Mr. Gutierrez as an individual accommodation. From a medical standpoint, public availability does not eliminate individual medical necessity.

An accommodation may be City-owned, inventoried, and governed by records procedures. I do not medically require that Mr. Gutierrez personally own the device. My medical opinion is that he must have reliable functional access to the device at open public meetings and for post-meeting review in a manner that preserves the disability-related function.

If the camera is placed somewhere other than Mr. Gutierrez's Council desk or actual vantage point, if he cannot reliably access the recorded material afterward, if the device lacks sufficient storage or power, if the device is controlled in a way that prevents review from his perspective, or if administrative barriers prevent use, then the accommodation is not medically implemented.

The medical requirement is functional access, not ownership. Calling the camera public equipment does not answer the medical question. The medical question is whether Mr. Gutierrez can use the device as a reliable assistive tool to reconstruct meetings from his visual-spatial vantage point.

## IX. Direct Rebuttal to the City's 128GB Storage Position

The City's June 3 letter appears to state that the 128GB memory card should be sufficient, that the City's IT department believes it can record six or more hours of video, and that concerns about insufficient storage are speculative unless and until the current storage is proven inadequate by actual operation.

From a medical standpoint, the accommodation is not the purchase of a camera alone. The accommodation is the reliable capture and review of the full open public meeting. If the device cannot reliably capture the entire meeting, the accommodation fails.

Storage sufficiency depends on variables including resolution, frame rate, 360-degree mode, codec, bit rate, camera settings, file segmentation, battery/power status, meeting duration, recording start/stop procedures, and actual scene complexity. Manufacturer guidance for the GoPro MAX 2 indicates that SD-card recording time varies substantially based on resolution, frame rate, bit rate, and scene complexity; therefore a general statement that a 128GB card is adequate is not a medical implementation plan. The City must test and provide storage based on medically useful 360-degree settings, including 4K-or-better visual clarity when needed, rather than relying on low-resolution assumptions.

Page 8 of 17

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

Mr. Gutierrez reports that some Council meetings may last four to six hours or longer. He also reports that the camera settings necessary to obtain clinically useful 360-degree review may consume storage more quickly than lower-quality or non-equivalent settings. If the recording ends before the meeting ends, or if the medically useful recording mode is not used because of storage limitations, he loses the very information needed for later processing.

I am not opining that only one specific storage capacity can ever be medically adequate. I am opining that the City must provide enough storage and power to reliably capture the full meeting in a format that preserves the accommodation's function. If a 128GB card proves adequate under actual medically useful settings and full meeting duration, then it may be sufficient. If it does not, supplemental storage is medically necessary.

A reasonable medical implementation would include testing the device under actual meeting conditions, using the medically necessary 360-degree settings, and providing backup storage or sufficient capacity before the patient is forced to rely on the device in a high-stakes public meeting. The patient should not be placed in the position of using an unreliable accommodation in a live public proceeding and discovering after the fact that the needed footage was not captured.

## X. Necessary Accessories Are Part of the Accommodation

The 360-degree recording accommodation must be functional. It should include the camera plus the accessories necessary for actual use. A partial accommodation that lacks required parts is not medically adequate.

The medically necessary implementation includes, as appropriate:

1. GoPro MAX 2 or equivalent 360-degree device;
2. stable, non-obstructive desk mount, tripod, or clamp positioned to capture Mr. Gutierrez's vantage point;
3. sufficient memory cards or approved storage media for full-meeting recording under medically useful settings;
4. battery, power adapter, external power, or charging solution adequate for long meetings;
5. card reader, encrypted USB, external storage, or City-approved transfer method;
6. software or application access necessary for 360-degree review;
7. secure preservation and review procedure that does not defeat access;
8. training or written instructions sufficient to permit reliable use without added cognitive burden.

The City may maintain chain-of-custody, records-retention, and cybersecurity procedures. However, those procedures should be designed around the accommodation's medical purpose, not used to make the accommodation unusable.

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

## XI. Direct Rebuttal to the City's USB / Physical Storage Position

The City's letters appear to treat physical storage or USB access as necessary only when documents are too large to email, and they suggest that shared drive links, email attachments, online versions, or hard-copy binders provide equal access. From a medical standpoint, this response misses the functional barrier.

The medical purpose of a USB, SD card, encrypted portable storage device, external drive, or equivalent physical storage method is not simply file size. The medical purpose is predictable, simple, low-step, organized access to materials and recordings without requiring multiple online navigation tasks before review can begin.

Mr. Gutierrez's disability affects executive functioning, working memory, sequencing, visual scanning, cognitive fatigue, and tolerance for unexpected digital barriers. Cloud-only or link-based access may require logins, multi-factor authentication, password recall, folder navigation, permissions, sync status, link expiration, error messages, downloads, uploads, file path memory, and platform changes. Those steps add cognitive load before the patient can begin the substantive review required for participation.

For a non-disabled person, cloud access may be adequate. For Mr. Gutierrez, a cloud-only system can defeat the accommodation by increasing executive burden and fatigue. A simple physical storage method reduces cognitive load, improves predictability, and permits post-meeting review at a medically tolerable pace.

If the City has cybersecurity concerns about a standard USB device, the medically appropriate response is not denial. The medically appropriate response is a City-approved encrypted USB device, SD/microSD card system, external drive, card reader, local transfer station, or other secure physical equivalent that preserves the same functional benefit.

## XII. Direct Rebuttal to the City's Ergonomic Chair / Home Office Position

The City's April 23 and June 3 letters appear to deny an ergonomic chair for home office use on the ground that it is not necessary for meaningful access to City Council meetings. From a medical standpoint, this conclusion is too narrow if Mr. Gutierrez is required or expected to conduct official duties outside the Council chamber.

Official participation does not occur only during the moment of a Council vote. Agenda review, staff-report review, constituent communications, preparation of questions, review of legal materials, post-meeting review, accommodation-related review, and records oversight are part of the functional work necessary to participate meaningfully in Council meetings.

Mr. Gutierrez has chronic musculoskeletal pain and postural intolerance. Prolonged sitting in an inadequate chair increases pain, fatigue, irritability, sleep disruption, and cognitive load. Pain consumes attention and reduces executive-functioning capacity. A medically appropriate ergonomic chair preserves concentration and endurance during official work.

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

If the City does not wish to provide a home chair, it should provide an equally effective, medically accessible alternative location and schedule for official work that does not create safety, sensory, lighting, fatigue, or pain barriers. Denying the accommodation without an equally effective alternative can foreseeably worsen pain and reduce meaningful participation. Mr.Gutierrez is also requesting a new chair for Council chambers as he has complain of back pain.

I am recommending for his council chamber chair the same chair the federal government issued him:

Aeron Chair
**Frame / Base**: Black / Onyx Ultra Matte
**Size**: Size C - Large
**Back Support**: Adjustable Posturefit SL
**Tilt**: Tilt Limiter and Seat Angle
**Arms**: Fully Adjustable Arms
**Armpad**: Leather
**Caster**: Multi-Surface Caster with Quiet Roll
**Item#:** 100249179

And for his council home office:
Aeron Steel
**Height**: Counter Height
**Frame / Base**: Graphite / Graphite
**Material**: Pellicle
**Back Support**: Adjustable Posturefit SL
**Tilt**: Tilt Limiter and Seat Angle
**Arms**: Fully Adjustable Arms
**Armpad**: Leather
**Caster**: 2.5-inch Hard floors or Carpet Roll-Away Resistant Casters with Quiet Roll Technology
**Item#:** 100098388

## XIII. Direct Rebuttal to the City's One-Minute Voting Limitation

The City's June 3 letter appears to offer up to one minute to cast a vote, while stating that Mr. Gutierrez may not ask additional comments or ask additional questions during the voting process. From a medical standpoint, that is not an effective accommodation for the impairment described.

The functional limitation is not merely how many seconds it takes to say 'aye' or 'no.' The impairment involves processing, comprehension, integration of verbal and written information, sequencing, executive-functioning, and the need to clarify before making an official decision. A one-minute silent window may allow time to sit, but it does not necessarily allow meaningful processing or accurate decision-making if clarification is prohibited.

Processing time without the ability to clarify information before voting is medically incomplete. If Mr. Gutierrez realizes during processing that he misunderstood a point, needs a brief factual clarification, needs to state a disability-related explanation, or needs to place a short reason on the record before voting, prohibiting all questions or comments defeats the purpose of the accommodation.

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

The medically necessary accommodation is more specific: before a final vote, Mr. Gutierrez should be allowed a reasonable opportunity to process the discussion, ask brief clarifying questions when necessary, make a brief comment or explanation before voting, and return to his speaking turn if new information or an interruption prevented him from completing his analysis.

This accommodation does not require indefinite delay or disruption. It requires a structured process that allows comprehension before voting. For example, if other Councilmembers speak after Mr. Gutierrez, or if a point of order interrupts him, he should be returned to the queue before the final vote so he can complete a concise question or comment necessary for decision-making.

## XIV. Comment-Before-Voting and Return-To-Speaker Accommodation

I specifically recommend that Mr. Gutierrez be permitted, when medically necessary, to make a brief comment before voting and to be returned to his turn before the final vote if he has not completed his point or if further discussion raises a need for clarification.

This recommendation is medically grounded. Individuals with Autism Spectrum Disorder may require additional time to integrate new verbal information, compare it with written materials, organize a response, and determine whether a clarifying question is needed. The need often becomes apparent after listening to others. If the meeting moves immediately to a vote without returning to him, the disability-related processing window is functionally meaningless.

A return-to-speaker accommodation reduces cognitive pressure and prevents forced premature decision-making. It also reduces emotional distress because the patient knows he will not be permanently cut off if he needs a short clarification after processing.

Medically, the accommodation can be implemented in a structured way: Mr. Gutierrez may request a brief return before final vote; the presiding officer may allow a limited, concise question or comment; and the City may enforce neutral time-management rules so long as they do not eliminate the accommodation.

## XV. Direct Rebuttal to the City's Reliance on Prior May 13, 2025 Accommodations

The City's letters appear to rely on the May 13, 2025 accommodation agreement and the fact that earlier accommodations included brief contextual explanations, written documentation of concerns, additional time to respond to questions, structured communication, healthy meals, and seating. Prior accommodations do not medically resolve later specific accommodation needs.

A patient's functional needs may evolve as meeting demands, hostility, litigation, public scrutiny, disclosure, procedural conflict, and symptom burden change. The existence of a prior accommodation does not mean every later requested accommodation is duplicative or unnecessary.

In particular, the May 13, 2025 communication accommodations do not medically replace the need for a 360-degree recording device, functional storage, post-meeting visual-spatial replay, return-to-speaker sequencing,

Page 12 of 17

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

---

comment-before-voting protection, or protection from public disability minimization. Those are distinct medical functions.

The City's conclusion that a prior accommodation makes later processing-time or voting-sequence requests duplicative is medically incorrect. Asking a question after discussion, processing before voting, using written materials, and reconstructing the meeting afterward are related but distinct functions. Each mitigates a different part of the impairment chain.

## XVI. Response to Public Disability Comparisons and Public Medical Questioning

The City's April 23 letter appears to characterize Mr. Gutierrez's request to prohibit disability comparisons as outside the scope of Title II. I am not providing a legal opinion on the scope of Title II. I am providing a medical opinion that public disability comparisons, public questioning of medical need, and public minimization of Autism Spectrum Disorder are clinically harmful and should stop.

Autism Spectrum Disorder is a neurodevelopmental condition involving central nervous system processing differences. It is not medically appropriate to compare Autism Spectrum Disorder to unrelated disabilities in a public meeting as a way to challenge whether the patient 'really' needs a particular accommodation.

Public medical questioning, ridicule, or comparison can worsen anxiety, insomnia, sensory overload, autistic burnout, physiological stress, sleep disruption, and avoidance of accommodation use. It also undermines the patient's willingness to request help, disclose needs, or participate fully.

From a medical standpoint, disability accommodations should be discussed confidentially by personnel with a need to know. Public debate over whether a patient's disability is legitimate or whether the patient deserves an accommodation is medically harmful and can worsen the impairments the accommodation is intended to mitigate.

## XVII. Cumulative Medical Harm From Continued Denial, Delay, and Partial Implementation

The City's letters analyze accommodations separately. Medically, these accommodations operate together. Denying one increases reliance on the others. Denying several at once creates cumulative harm.

The 360-degree recording device helps with post-event processing. Physical storage reduces executive-functioning burden. Notes and outlines support real-time communication. Processing time reduces working-memory overload. Comment-before-voting and return-to-speaker protection prevent forced premature decisions. Ergonomic seating reduces pain and preserves cognitive bandwidth. Confidentiality and respectful implementation reduce stress and avoidance.

When these supports are denied, delayed, questioned, or publicly minimized, the cumulative effect is foreseeable medical deterioration. Mr. Gutierrez reports severe emotional distress, sleep disruption, increased anxiety symptoms, cognitive exhaustion, autistic burnout, musculoskeletal pain exacerbation, reduced concentration, rumination after meetings, and decreased ability to recover after hostile or overstimulating proceedings.

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

Sleep disruption is medically important. Poor sleep worsens executive functioning, attention, emotional regulation, pain tolerance, and sensory sensitivity. Where sleep-disordered breathing or sleep-apnea-related symptoms are present, stress and insomnia can further destabilize daytime functioning. Repeated public-meeting stress without accommodation is therefore not medically neutral.

Autistic burnout is also medically significant. It can present as exhaustion, reduced tolerance for sensory input, decreased executive functioning, impaired communication, irritability, cognitive slowing, sleep disturbance, and reduced ability to sustain ordinary demands. Continued denial of disability supports in a hostile public environment increases the risk of burnout and decompensation.

## XVIII. Delay Itself Is Harmful

Delay should not be treated as medically harmless. Each meeting without the medically necessary accommodations exposes Mr. Gutierrez to the same disability-related barriers the accommodations are designed to reduce.

Repeated exposure to high-demand meetings without adequate accommodations predictably increases neurological fatigue, sensory dysregulation, pain, anxiety, insomnia, stress response, and cognitive overload. The longer implementation is delayed, the more likely the patient is to experience cumulative symptoms and reduced public-functioning capacity.

From a medical standpoint, the City should not require Mr. Gutierrez to repeatedly re-prove the same functional limitations at each stage. He has a documented disability, prior physician letters, and consistent functional explanations. Continued demands for repetitive justification increase stress and may constitute a medical barrier in themselves.

## XIX. Medical Response to the City's Accommodation Process and Grievance Language

The City's June 3 letter describes a process for submitting accommodation requests, written summaries, review by City counsel, written responses, grievances, and appeals. I do not opine on the legal sufficiency of that process. I do opine that extended uncertainty, repeated procedural cycling, and counsel-centered delay has worsen Mr. Gutierrez's symptoms and impair functional access.

For a patient with Autism Spectrum Disorder and executive-functioning limitations, a clear written process can be helpful only if it is prompt, structured, predictable, and not retaliatory. This new process repeatedly delays implementation, reclassifies accommodations as ordinary expenses, substitutes ineffective alternatives, or requires the patient to litigate each functional need, it has increases cognitive and emotional burden on my patient.

Medically, the accommodation process should be clear, direct, confidential, and function-focused. The patient should receive specific written responses identifying what is approved, what is denied, what substitute is offered, and how the substitute preserves the medical function. General statements that the City has engaged in

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

good faith do not answer the medical question of whether the accommodation is effective. You must have a interactive process with the decision maker of the accommodation.

## XX. Medical Necessity Recommendations

It remains my medical opinion, within reasonable medical probability, that the following accommodations are medically necessary and should be approved and implemented promptly:

1. GoPro MAX 2 or equivalent 360-degree recording device at or near Mr. Gutierrez's Council desk during open public meetings, positioned to capture his actual visual-spatial vantage point.

2. Necessary accessories for the 360-degree device, including stable mount, sufficient memory, sufficient battery/power, transfer device, review software/application access, and secure storage method.

3. Sufficient storage and power to reliably capture the full duration of open public Council meetings in medically useful 360-degree settings, including 4K-or-better visual clarity where available, with backup storage if needed.

4. Simple City-approved physical storage or transfer method, such as encrypted USB, SD/microSD card and reader, external drive, or local transfer device, rather than cloud-only access.

5. Permission to use notes, outlines, prepared statements, written scripts, electronic reference materials, and structured questions as assistive communication supports without penalty or ridicule.

6. One-question-at-a-time and clarification/repetition when needed for complex, compound, or ambiguous questions.

7. Reasonable processing time before responding to complex questions, procedural issues, or voting matters.

8. Ability to make a brief comment before voting when needed to ensure accurate communication and meaningful participation.

9. Return-to-speaker or return-to-vote opportunity before final vote when additional discussion or interruption prevents full processing or completion of a concise question/comment.

10. No requirement that Mr. Gutierrez vote first or before he has had a medically reasonable opportunity to process the discussion.

11. Ergonomic seating appropriate for prolonged official work and Council-related preparation, with an equally effective alternative if the City declines a home-chair solution.

12. Advance access to agenda materials and attachments in a predictable, accessible format.

13. Confidential and respectful handling of disability-related information, without public disability comparisons, public medical questioning, or public minimization of Autism Spectrum Disorder.

14. Remote participation or teleconference/video participation when medically necessary due to symptom flare, sensory overload, pain, sleep disruption, or related disability limitations.

## XXI. Final Medical Opinion

The City's April 23 and June 3 responses do not medically rebut the necessity of the accommodations identified in my prior letters. Instead, they appear to substitute administrative conclusions for medical analysis. From a medical standpoint, the City's conclusions regarding YouTube equivalency, storage sufficiency, one-

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

minute voting limits, note usage, physical storage, and processing time do not adequately address Mr. Gutierrez's actual functional impairments.

The City's YouTube/chamber recording is not medically equivalent to a patient-specific 360-degree recording from Mr. Gutierrez's desk. If the public YouTube/chamber recording available to him is limited to approximately 720p or another low-resolution format, it is also not visually adequate for the 4K-level visual access previously medically supported for his disability-related needs. A 128GB card is not medically sufficient unless it reliably captures the full meeting at the medically necessary resolution, field of view, and settings.

The City's conduct, including delay, denial, partial implementation, public disability minimization, and repeated non-medical override of medical accommodations, is causing foreseeable medical harm. Mr. Gutierrez reports severe emotional distress, sleep disruption, increased stress response, autistic burnout, cognitive fatigue, sensory dysregulation, musculoskeletal pain, and reduced recovery after meetings. These symptoms are medically consistent with the functional barriers described in this letter.

It is medically unacceptable to continue exposing Mr. Gutierrez to high-demand public proceedings without implementing the accommodations necessary to mitigate known disability-related limitations. The City should stop denying, delaying, reclassifying, or publicly questioning these accommodations and should implement them in a confidential, respectful, and functionally effective manner.

No non-medical reviewer is clinically qualified to override these medical determinations without an individualized medical basis addressing the functional impairments described above. If the City believes an accommodation must be modified for administrative reasons, it should identify an equally effective alternative that preserves the same medical function.

## XXII. Specific Point-by-Point Medical Answers to the City's April 23 and June 3 Positions

For clarity, my medical answers to the specific positions in the City's correspondence are as follows:

1. If the City asks whether written notes are already permitted, the medical answer is that mere permission to possess notes is not the accommodation. The accommodation is the protected ability to rely on notes, outlines, prepared statements, and electronic reference materials as assistive communication supports without interruption, penalty, ridicule, or selective enforcement.
2. If the City asks whether a public YouTube or chamber recording is enough, the medical answer is no. A public broadcast record is not medically equivalent to a patient-specific 360-degree recording. If the available public recording is approximately 720p, it is also not medically equivalent to a 4K-or-better visual-access accommodation because it lacks both whole-room perspective and sufficient visual detail.
3. If the City asks whether the camera being public equipment eliminates individual medical necessity, the medical answer is no. Ownership is not the issue. Functional access is the issue. City ownership is acceptable only if Mr. Gutierrez can reliably use the device from his vantage point and review the resulting material afterward.

# STAR HEALTH

2707 E. Valley Blvd., Suite 208

West Covina, CA 91792-3197

Phone: (626) 581-0486

**Henry Chang, D.O. | Osteopathic Physician & Surgeon | License No. 20A10516**

4. If the City asks whether 128GB is enough, the medical answer is that storage is adequate only if it reliably captures the entire meeting in the medically useful 360-degree mode and medically adequate resolution. A storage estimate is not an accommodation. A complete, reviewable, high-resolution recording is the accommodation.

5. If the City asks whether cloud access, email links, or public online versions are equal to USB or physical storage, the medical answer is no when those methods require complex logins, folders, links, permissions, synchronization, downloads, or other executive-functioning burdens before review can begin.

6. If the City asks whether one minute to vote is enough, the medical answer is no if Mr. Gutierrez is barred from asking a clarifying question, making a brief comment, or returning to the discussion before the final vote. The impairment affects comprehension and integration, not only the motor act of saying a vote aloud.

7. If the City asks whether allowing him to return before a final vote would disrupt the meeting, the medical answer is that a structured return-to-speaker or return-before-vote accommodation is a limited, medically necessary sequencing support. It can be implemented with reasonable time limits and does not require indefinite debate.

8. If the City asks whether prior accommodations from May 2025 make later requests duplicative, the medical answer is no. The GoPro/360-degree device, physical storage, return-to-speaker sequencing, and vote-processing accommodations address distinct functional barriers not solved by the prior general communication accommodations.

9. If the City asks whether continued delay is medically harmless, the medical answer is no. Delay causes repeated exposure to the same known barriers, increasing sensory overload, sleep disruption, anxiety, cognitive fatigue, pain, and autistic burnout.

10. If the City asks whether a non-medical reviewer may decide these accommodations are unnecessary, the medical answer is that administrative personnel may manage logistics but are not clinically qualified to override the medical nexus without an individualized medical basis addressing the functional impairments described in this letter.

Medical accommodation information, diagnostic information, treatment information, and disability-related functional limitations discussed in this report are confidential and should be maintained separately from ordinary personnel, political, public-records, and public-disclosure files to the maximum extent permitted by law.

Sincerely,

Henry Chang, D.O.
Osteopathic Physician & Surgeon
License No. 20A10516
Star Health Medical

**Star Health Medical**
Henry Chang, DO, MS, FACOI
2707 E Valley Blvd, Suite 208
West Covina, CA 97192
Office: 626.581.0486 Fax: 626.581.0161

CONFIDENTIAL MEDICAL INFORMATION NOTICE: [illegible]

# EXHIBIT E

City of West Covina June 23, 2026 accommodation response regarding 360-degree
camera, USB, and related accommodations.

**City Manager's Office**

June 23, 2026

Dear Councilmember Gutierrez,

This letter serves as the City of West Covina's ("the City") response to Dr. Chang's June 8 letter ("Dr. Chang's June 8 letter"), which we understand to constitute an appeal of the City's decision concerning your accommodations. This letter also responds to any other accommodation requests that remain pending before the City.

### 1.    Request for 360-degree camera

In January 2026, you requested, and the City approved, a 360-degree camera during Council meetings to promote public transparency and accountability. The City purchased the 360-degree camera and related accessories, including a 128-gigabyte memory card, and it is available for your use. The City's IT team has confirmed that the memory card can record approximately seven and a half hours, which is sufficient to record Council meetings.

You have also requested to have the 360-degree camera as a personal accommodation. As previously explained, it is the City's position that the 360-degree camera is not a necessary accommodation to ensure your meaningful access under Title II because Council meetings are already recorded and available for public review and, more significantly, the 360-degree camera with sufficient storage is available for use. You have refused to use the 360-degree camera, summarily asserting that the 128-gigabyte memory card is insufficient without even attempting to use the device. The City is not obligated to provide you with accommodations that you prefer, only those that provide you with meaningful access.

Dr. Chang's June 8 letter does not alter the City's assessment. Based on the information currently available, the City believes that the 360-degree camera, with the currently provided storage capacity sufficiently allows you to access meetings and City business. Dr. Chang's letter does not establish that additional storage or a separate personal device is presently necessary to address your disability-related limitations. Nevertheless, in a continued effort to address your concerns about storage capacity, the City will acquire a 512-gigabyte memory card. By your own arguments about storage capacity, this will provide an estimated storage of eight (8) hours even at the highest bitrate and 8K settings.

### 2.    USB device to receive council materials

You have requested that the City provide you a USB or local transfer device to deliver your Council agenda and materials. It is the City's position that a USB or local transfer device for City Council agendas and materials is not necessary to provide you with meaningful access under

1

Title II. Historically, you have been able to use shared drives to send and receive materials, including transmitting materials to the City Clerk's office and using shared drive links during litigation. Additionally, the City already provides Council agendas and materials in a variety of ways, including email attachments for smaller documents, links to online versions available to the public, and hard-copy binders. In addition to these processes, as an accommodation, the City has used a USB or local transfer device to provide you with Council materials too large to attach to an email.

Dr. Chang's June 8 letter does not change the City's assessment. Based on the information available, the available means and current accommodations to provide you materials are sufficient to allow for your effective review and participation, and therefore the USB or local transfer device for all materials is not required under the ADA. The City will continue providing you a USB or local transfer device only for meetings where the materials are too voluminous to send via an email attachment.

### 3.     Requests for the use written materials and prohibition on

### interruptions

You have requested that the City recognize your use of written materials as an accommodation and prohibit interruptions while you are relying on those materials during Council meetings. As noted in the City's previous correspondence, there is no policy prohibiting Councilmembers from using notes, outlines, prepared statements, electronic documents, or similar materials during meetings, and you are permitted to use those materials, subject to the Brown Act.

As has been previously stated, your request to not be interrupted while using written materials cannot be provided. As an initial matter, it is unclear from Dr. Chang's letter what is considered an "interruption" or when the accommodation would be necessary. Moreover, Section 2.42 of the City's Municipal Code already protects a Councilmember's right to speak without interruption, and the City continues to apply these rules in a neutral and nondiscriminatory manner. While the City seeks to maintain orderly and harmonious meetings, it cannot reasonably be expected or is it required under Title II to prevent every interruption that may occur during a meeting. Moreover, requiring the City to guarantee that no interruption will occur while you are consulting written materials would fundamentally alter the City's meeting procedures and is not necessary to provide meaningful access under Title II.

Accordingly, the City will continue to permit your use of written materials during meetings as articulated in the City's June 3, 2026 letter, but declines your request to use written materials as an accommodation, or for an accommodation to prevent all interruptions while you are using those materials.

### 4.     Requests for Additional Time and Procedures Related to Voting

As an accommodation, you have requested additional time to vote during City Council meetings. As articulated in the City's previous correspondence, you have already been granted

2

accommodations for the discussion period prior to voting designed to address your disability-related limitations, including the ability to provide brief contextual explanations before asking questions and additional time for review and response to questions. Additionally, on June 3, 2026, the City agreed to provide you with an additional one minute to cast your vote when needed so you can meaningfully participate in Council meetings and City business. While you are permitted an additional one minute to vote, you are still required to comply with the City's ordinances and meeting procedures, requiring voting in a specific order and prohibiting Councilmembers from delaying, interrupting, or otherwise disrupting proceedings or the Council's ability to efficiently and harmoniously conduct City business.

Dr. Chang's June 8 letter appears to expand your original request for additional time to vote to include a request to allow you to ask questions before voting, provide a brief comment or explanation, and to resume speaking if interrupted. This request poses an undue administrative burden and fundamental alteration to the nature of Council meetings. The voting portion of Council meetings serves a distinct procedural purpose, marking the conclusion of discussion and deliberation and the point at which official action is taken. Allowing additional questions, comments, explanations, or reopening discussion during the voting process would alter the City's established meeting procedures by extending deliberations beyond the point at which the matter has been called for a vote. Likewise, requiring the City to return you to the speaking queue whenever you determine additional analysis or clarification is necessary would interfere with the orderly administration of Council meetings and the City's ability to efficiently conduct public business.

It is the City's position that these additional requests do not provide you with meaningful access, as you are able to sufficiently participate in discussion, ask questions, seek clarification, receive responses, and utilize your previously approved accommodations before a vote is called. Additionally, permitting unlimited comments, questions, explanations, or renewed participation in deliberations during the voting process would fundamentally alter the structure and operation of Council meetings and would create an undue administrative burden and fundamental alteration. Therefore, your request is denied.

### 5.   Request for Ergonomic Chairs for Council Desk and Home Office

Dr. Chang's June 8 letter appears to expand your request for an ergonomic chair to include not only a chair for your home office, but also a chair for the council dais. The City does not dispute that an ergonomic chair may be more comfortable, however, Dr. Chang's opinion that a particular item would be beneficial does not establish that the item is required as an accommodation under Title II.

For the reasons stated in prior correspondence and as detailed below, the City does not find that either the requested chamber chair or the home-office chair is necessary to enable you to access, attend, participate in, deliberate during, or vote at Council meetings. As noted in previous correspondence, the City has already approved numerous accommodations to ensure your meaningful participation in Council activities, including accommodations relating to seating and lighting, extended access to City Hall, and equipment for your home office. Likewise, last year, the City purchased new chairs for all Councilmembers.

3

Dr. Chang's letter does not explain why those accommodations are ineffective or why the chairs requested are necessary, instead focusing on how the selected chairs improve your comfort and endurance while working. Moreover, the specific chairs recommended retail for approximately $2,400 each according to the manufacturer's website. While costs alone are not dispositive, the City is not obligated to provide your preferred accommodation.

Accordingly, the City concludes that the requested ergonomic chairs are not necessary accommodations under Title II. They are not required for you to meaningfully access or participate in Council meetings or other City activities. Because the City has already provided accommodations that enable your effective participation, and the request is denied.

### 6.    Request for Remote Participation in Council Meetings

You have also requested to participate in Council meetings remotely as an accommodation. Currently, however, the City does not believe this accommodation is necessary because you are able to attend Council meetings in-person.

The Attorney General's June 2022 guidance indicating telephonic or virtual participation may be required when someone's disability prevents them from attending public meetings in-person, citing as examples individuals with compromised immune systems or mobility disabilities that prevent travel to meeting locations.[1] The guidance specifically contemplates remote participation when a disability impairs or prevents in-person attendance, not merely when remote participation is preferred or may be more convenient.

Based on the information provided, the City has not received sufficient documentation demonstrating that remote participation is necessary to afford you meaningful access to City Council meetings. Dr. Chang's June 8 letter does not establish that your disabilities prevent or substantially limit your ability to attend meetings in person, nor does it adequately explain the frequency, severity, duration, or predictability of any limitations that would necessitate remote participation. Because you are able to attend Council meetings in person and therefore have meaningful access to the meetings through the City's existing procedures, the City concludes that remote participation is not a necessary accommodation under Title II. Accordingly, the request for remote participation is denied.

### 7.    Request for Additional Processing Time During Meetings

In a May 19, 2026 email, you reiterated your January 27 and February 27, 2026 request for additional processing time during Council meetings. As explained in the City's February 23, 2026 response, the City has already provided an accommodation addressing cognitive processing needs, such as permitting you to make clarifying statements prior to asking questions during Council meetings.

In addition, Section 2-30(b) of the West Covina Municipal Code provides that the Mayor, as the presiding officer, votes after the other Councilmembers have voted.[2] As a result, the City

---

[1] Letter from Rob Bonta, Cal. Att'y Gen., to All Cities and Counties in California, Ensuring Access for People with Disabilities to Public Meetings of Local Agencies 4 (June 14, 2022).

[2] West Covina Municipal Code § 2-30(b): "[. . .] the presiding officer shall be entitled to vote last on all questions."

4

understands that you already receive additional time to consider matters before casting your vote during Council meetings. Accordingly, the City does not presently find that any further accommodation relating to voting order is required under Title II.

If you believe the existing accommodation and voting procedures are insufficient to address your disability-related limitations, please explain why and identify the specific barriers. Please also explain how the requested accommodation would improve your ability to meaningfully participate in Council meetings.

### 8.    Request for One-Question-at-a-Time and Clarification/Repetition for Complex, Compound, or Ambiguous Questions

Pursuant to Dr. Chang's June 8 letter, you request that questions during Council meetings be presented one at a time and that clarification or repetition be provided when needed for complex, compound, or ambiguous questions. Although Dr. Chang indicates that these measures may facilitate information processing and reduce cognitive burden, the letter does not sufficiently explain why they are necessary to provide meaningful access to Council meetings, as opposed to improving convenience or communication preferences. Further, the request would require a fundamental alteration to the nature of Council meetings, which inherently involve the discussions of complex issues by multiple participants.

Nevertheless, in an effort to support effective communication and engage in the interactive process, the City is willing to implement the following measures during Council meetings: when City officials, Councilmembers, or staff direct questions to you, upon a good-faith request, they will make reasonable efforts to repeat, rephrase, or clarify a question when it is reasonably apparent that the question is complex, compound, or ambiguous.

These measures will be administered consistent with the City's neutral meeting procedures and time-management rules and will not be implemented in a manner that disrupts meetings, prevents completion of the agenda, or fundamentally alters Council proceedings. Further, please note that, in order to administer this accommodation, the City is required to inform all meeting participants, including the other Councilmembers of your accommodation, so that they may respond appropriately if and when you request that a question be repeated, rephrased, or clarified.

### 9.    Request to Modify Speaker Bell

You have requested that the City cease or reduce the sound of the timer bell used during the public comment portion of Council meetings. Specifically, you state that the bell sound is causing migraines and that the timer alarm may disrupt your thought processes.

The City understands that you are requesting a modification to the volume, tone, or operation of the timer bell as an accommodation. The City notes that the current bell sound is the default setting of the timer system and has been in use since approximately April 2024. The City has

5

confirmed with its IT staff that modifications to the bell's sound settings are possible. Effective as of the June 16, 2026 City Council meeting, the tone of the bell was modified to issue a single tone instead of multiple tones.

The City remains committed to ensuring your meaningful access to City programs, services, and activities under Title II of the ADA. If you have questions regarding any of the determinations set forth above or believe that additional information may be relevant to the City's assessment, please contact Ms. Roxanne Lerma.

Milan Mrakich
City Manager

6

13433413.1 WE020-094

# EXHIBIT F

Video evidence notice identifying July 7 GoPro recording and YouTube link
supplied by Plaintiff.

**Exhibit F - Video Evidence Notice**

Plaintiff identifies the July 7, 2026 GoPro recording and related video evidence as available for the Court.
Plaintiff supplied the following public YouTube link for review:
https://youtu.be/A7HYUA38vQg?feature=shared

Plaintiff states that the native GoPro video file can be submitted in another format if directed by the Court,
including by USB drive, electronic upload, or other method ordered by the Court.

Plaintiff states that the video includes portions of West Covina Police Department personnel, including Captain
Keith Freeman and Lieutenant Enrique, discussing the instruction to confiscate the GoPro or stop recording.

# EXHIBIT G

May 13, 2025 City accommodation response approving written/structured communication and additional time accommodations (scanned).



*Human Resources /*
*Risk Management*

**Date:** May 13, 2025
**To:** Councilmember Brian Gutierrez
**From:** Carmelita Underwood, Human Resources/Risk Manager
**Subject:** Response to Reasonable Accommodation Request (Submitted May 5, 2025)

Dear Councilmember Gutierrez

Thank you for your continued communication and your May 5, 2025 request for reasonable accommodations under the Americans with Disabilities Act (ADA) and California's Fair Employment and Housing Act (FEHA). The City acknowledges receipt of your initial request and the follow-up sent to City Attorney Thomas Durate and City Manager Paulina Morales.

We understand and respect the importance of ensuring all elected officials, including those with disabilities, are able to fully participate in public duties. Based on your request and the principles established under 42 U.S.C. § 12132, 28 C.F.R. § 35.130(b)(7), and related case law (including *Nelson v. City of New York*), we confirm the following accommodations:

---

## Approved Accommodations:

1. **Context Before Questions During Council Meetings**
   You may briefly provide context or an explanatory statement before asking questions during council meetings. This communication method is recognized as a supportive accommodation for cognitive processing differences associated with Autism Spectrum Disorder (ASD).

2. ~~**Written Documentation of Concerns**~~
   If any concerns or allegations arise related to your conduct, the City will provide clear, ~~written~~ *Verbal* documentation, including specific dates, context, and behaviors cited. This measure ensures clarity and equitable understanding.

3. **Extended Time for Review and Response**
   You will be given reasonable additional time to review and respond to any formal findings, communications, or meeting requests in recognition of cognitive processing needs related to ASD.

4. **Right to Have an Advocate or Legal Representative Present**
   You may have a designated advocate or legal representative present during any interviews, meetings, or proceedings involving formal concerns or disciplinary matters.

5. **Structured and Clear Communication**
   City staff will make efforts to communicate in a direct and structured manner and will provide opportunities for clarifying questions to support effective understanding.

1444 West Garvey Avenue South  •  Room #311  •  West Covina CA  91790  •  Phone (626) 939-8450  Fax (626) 939-8606

This accommodation is being implemented in good faith to support your ability to serve effectively and are in accordance with the City's legal obligations under the ADA and FEHA. This letter will be maintained in a confidential file, and disclosures will be strictly limited to individuals responsible for processing or implementing accommodation, per 29 C.F.R. § 1630.14(c).

Please confirm your acceptance of these accommodations by signing the attached **Accommodation Agreement Summary** from our recent interactive process discussion. If you have additional needs or wish to amend your request in the future, we are available to reassess and respond accordingly.

Thank you for your service and for engaging with us collaboratively to ensure an inclusive and supportive work environment.

Sincerely,
**Carmelita Underwood**
**Human Resources/Risk manager**
City of West Covina
Cunderwood@westcovina.org
626-939-8450

## Reasonable Accommodation Agreement – Interactive Process Summary
Date: May 13, 2025

This document summarizes the interactive process meeting held regarding a formal request for reasonable accommodations submitted on May 5, 2025, by Councilmember Brian Gutierrez pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and applicable regulations at 28 C.F.R. Part 35.

## Meeting Participants:
• Councilmember Brian Gutierrez

• Thomas Durate, City Attorney

• Carmelita Underwood, Human resources/Risk Manager

## Summary of Approved Accommodations:
1.   1. \*\*Written Documentation of Allegations or Concerns\*\*

The City agrees to provide clear, written documentation of any allegations or concerns directed to the Councilmember, including specific dates, context, and cited behaviors, to ensure transparency and allow for informed response.

2.   2. \*\*Additional Time to Review and Respond\*\*

The Councilmember will be afforded reasonable additional time to review and respond to any formal communications, findings, or meeting requests, taking into consideration cognitive processing needs associated with Autism Spectrum Disorder (ASD).

3.   3. \*\*Right to an Advocate or Legal Representative\*\*

The Councilmember may have an advocate or legal representative present during any interviews, meetings, or proceedings related to this matter, as part of ensuring equitable access and understanding.

4.   4. \*\*Structured, Direct Communication\*\*

All communications will be delivered in a direct, structured manner with opportunities provided for the Councilmember to ask clarifying questions to support comprehension and reduce misinterpretation.

## Acknowledgment and Agreement:
By signing below, all parties confirm their participation in the interactive process and acknowledge agreement with the accommodations listed above. These accommodations will be implemented as part of the City's ongoing commitment to ADA compliance and equitable governance.

Councilmember Signature: _____    Date: _5/13/25_

Councilmember Brian Gutiérrez

City Attorney Signature: _____    Date: _05/13/25_

Thomas Durate

HR/Risk Manager Signature: _____    Date: _5/13/25_

Carmelita Underwood

5/13/25



City of West Covina

# CITY COUNCIL MEMBER

**CLASS CODE**    CCM

**SALARY**    $150.00 Monthly

**REVISION DATE**    November 26, 2018

---

## Description

### Duties and Responsibilities

The City of West Covina operates under a Council-Manager form of government. In this system the City Council is the legislative and policy-making body of city government. It sets city policy by passing ordinances and resolutions. The Council determines the city budget, appoints and removes certain appointive officials, and oversees city functions.  They are the citizens' representatives in local government. The City Council appoints residents to serve on several commissions.

### Election and Terms of Office:

The City Council is composed of four (4) Councilmembers and a Mayor. They are elected at large by city voters and are directly responsible to the people. Beginning in November 2018, the City moved to By-District City Council elections. To learn more visit westcovina.org/districts.

The term of office for a Councilmember is four years and a Councilmember may serve a maximum of two consecutive terms. If a Councilmember does not finish his/her term, the Council can either appoint a registered qualified voter to fill the vacancy until the next general municipal election or call a special election. If a special election is called, the person selected will serve the remainder of the unexpired term.

### The Mayor:

Each year, the Council elects one of its members to serve as Mayor for a one-year term. The Mayor presides at all Council Meetings and is recognized as the head of the city government for all ceremonial purposes.

## Typical Qualifications