UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, an individual,<br><br>Plaintiff/Petitioner,<br><br>v.<br><br>CITY OF WEST COVINA,<br><br>Defendant/Respondent. | Case No.: 2:26-cv-03659-MEMF-MBK<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION [DKT. NO. 98]** |

Before the Court is Plaintiff's Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction. Dkt. No. 98 ("Application"). For the reasons stated herein, the Application is DENIED.

/ / /

/ / /

/ / /

/ / /

1

### <u>SUMMARY OF ORDER FOR PRO SE PLAINTIFF</u>

You filed an Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, Dkt. No. 98, arguing that you are likely to succeed on your claims of disability discrimination and retaliation, and face irreparable harm without immediate interim injunctive relief. This Order explains why this Court finds that you have not shown a likelihood of success on the merits of any of your claims, so the Court declines the Ex Parte Application for a Temporary Restraining Order.

Although you are a *pro se* litigant (meaning you do not have an attorney), you still have to follow Court orders, the Local Rules, and the Federal Rules of Civil Procedure. *See* C.D. Cal. L.R. 83-2.2.3. The Local Rules are available on the Court's website, http://www.cacd.uscourts.gov/court-procedures/local-rules.

The Court cannot provide legal advice to any party, including you. There is a free "*Pro Se* Clinic" that can provide information and guidance about bringing a lawsuit in this Court.

- Public Counsel runs a free Federal *Pro Se* Clinic where *pro se* litigants can get information and guidance. The Clinic is located at the Roybal Federal Building and Courthouse, 255 East Temple Street, Los Angeles, CA 90012. *Pro se* litigants must call or submit an on-line application to request services as follows: on-line applications can be submitted at http://prose.cacd.uscourts.gov/los-angeles, or call (213) 385-2977, ext. 270.

- Public Counsel also has extensive resources for *pro se* litigants at its website located at https://publiccounsel.org/services/federal-court/.

- The Court is also informed that the LA Law Library, located across the street from the First Street Courthouse at 301 W. First Street, Los Angeles, CA 90012, also has extensive resources for *pro se* litigants—including those in federal court. The LA Law Library offers legal research classes, assistance from reference librarians, and free public computers with Internet access. The LA Law Library can be reached via email at reference@lalawlibrary.org, or via telephone at (213) 785-2513.

/ / /

/ / /

## I. **Background**

### A. Factual Background

Unless otherwise indicated, the following factual background is derived from Doe's Declaration in Support of his Ex Parte Application for a Temporary Restraining Order, *see* Declaration of John Doe ("Doe Decl."), Dkt. No. 98-1, and Doe's supporting exhibits, *see* Dkt. No. 98-3. ***This Court is not, at this time, making a determination as to the veracity of the facts stated therein.***

Plaintiff John Doe is an elected Councilmember of the City of West Covina. Doe Decl. ¶ 2, Dkt. No. 98-1. Doe is autistic. *Id.* On June 8, 2026, Doe's physician, Dr. Henry Chang, issued a supplemental medical necessity letter stating that a GoPro MAX 2 or a 360-degree recording device was medically necessary because Doe needed "whole-room visual-spatial replay from [his] actual Council desk perspective to compensate for autism-related auditory-processing, working-memory, sequencing, sensory-integration, and executive-functioning limitations." *Id.* ¶ 3; *see also* Ex. D at 2-3, 7-9, Dkt. No. 98-3.

On June 23, 2026, the City of West Covina ("the City") issued a response to Dr. Chang's June 8 letter, where it stated that the 360-degree camera was not a "necessary accommodation to ensure [Doe] meaningful access under Title II because Council meetings are already recorded and available for public review," and Doe could use the 360-degree camera that the City had, because the City approved Doe's request and purchased a 360-degree camera to promote public transparency. Ex. E at 1, Dkt. No. 98-3; *see also* Doe. Decl. ¶ 5, Dkt. No. 98-1. On July 7, 2026, the City provided Doe with a GoPro and necessary accessories for use. Doe Decl. ¶¶ 6-7, Dkt. No. 98-1; Ex. C, Dkt. No. 98-3. During the pickup of the GoPro, the Assistant City Manager and ADA Coordinator, Roxanne Lerma, stated "that the City would manage or control the GoPro and decide where it would be placed." Doe Decl. ¶¶ 7-8, Dkt. No. 98-1. Later that evening before the July 7 City Council meeting, Mayor Leticia Salazar Lopez-Viado and City Manager Milan Mrakich approached Doe, where Doe contends that they demanded Doe stop recording and give the GoPro to IT. *Id.* ¶ 10. Doe was threatened with removal from the City Council meeting and/or arrest for non-compliance by the West Covina Police Department if he did not stop recording and turn over the GoPro. *Id.* ¶¶ 10-12.

**B. Procedural History**

On March 10, 2026, Plaintiff John Doe, individually and in his official capacity as Councilmember of the City of West Covina, filed a Petition for Writ of Mandate and Complaint against Defendant City of West Covina in Los Angeles County Superior Court. *See* Dkt. No. 1. On March 24, 2026, Doe filed an Amended Petition for Writ of Mandate and Complaint in Los Angeles County Superior Court, alleging claims of: (1) Petition for Writ of Mandate, Cal. Code Civ. Proc. § 1085; (2) Declaratory Relief; (3) Violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and (4) Injunctive Relief. *See generally* Dkt. No. 1-1 ("1AC"). On April 6, 2026, the City removed this action to federal court. Dkt. No. 1.

On May 4, 2026, the Court denied Doe's first Ex Parte Application for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction. Dkt. No. 26 ("TRO").

On June 1, 2026, Doe filed a Second Amended Complaint in this Court, against Defendants City of West Covina, Milan M. Mrakich, Leticia Salazar Lopez-Viado, and Does 1-50 (collectively referred to as "Defendants"), alleging (1) Denial of Meaningful Access and Reasonable Modifications under Title II of the ADA; (2) Violation of Title II's effective communication mandate; (3) Violation of Section 504 of the Rehabilitation Act ("Section 504"); (4) Title II Retaliation and Interference under 42 U.S.C. § 12203; (5) First Amendment Viewpoint Discrimination; (6) Violation of Equal Protection and Due Process under Section 1983; (7) *Monell* Municipal Liability under Section 1983; (8) Violation of the Bane Act, Cal. Civil Code Section 52.1; (9) Violation of California's Confidentiality of Medical Information Act; and (10) Declaratory and Injunctive Relief. *See* Dkt. No. 45 ("2AC").

On July 8, 2026, Doe filed this instant Application. *See* Application. On July 9, 2026, the Court issued an Order setting a briefing schedule. Dkt. No. 99. On July 13, 2026, Defendants filed an Opposition to the Application. Dkt. No. 111 ("Opposition"). On July 15, 2026, Doe filed a Reply to the Opposition, Dkt. No. 112 ("Reply"), and supporting declarations and exhibits, *see* Dkt. Nos. 113-17. The Court found this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

**II.    Applicable Law**

4

### A. Preliminary Injunctions

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

### B. Title II of the ADA and Section 504

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prove that a public entity violated Title II of the ADA, a plaintiff must show:

> (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (quoting *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)). "[T]he ADA imposes an obligation to investigate whether a requested accommodation is reasonable." *Id.* at 1136. The public entity "must consider the particular individual's need when conducting its investigation into what accommodations are reasonable." *Id.* at 1139.

"A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). And a public entity must "furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity." *Id.* § 35.160(b)(1).

Title II of the ADA and Section 504 are "interpreted coextensively because 'there is no significant difference in the analysis of rights and obligations created by the two Acts.'" *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021) (quoting *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1098 (9th Cir. 2013)).

Moreover, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 12203(a). And it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, . . . any right granted or protected by this chapter." *Id.* § 12203(b). "Courts that have had occasion to apply [Section 12203(a)] of the ADA have almost uniformly adopted the burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green.*" *Brown v. City of Tucson*, 336 F.3d 1181, 1186 (9th Cir. 2003).

### III.   <u>Discussion</u>

**A. Doe has not demonstrated that he is entitled to a temporary restraining order pursuant to the *Winter* factors.**

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Doe is entitled to a temporary restraining order.

Doe argues two grounds upon which a temporary restraining order should be granted. First, he argues that he has been unlawfully denied a reasonable modification and effective communication aid in the form of a 360-degree camera for his use at his Council desk, so he has been meaningfully denied access to the City's programs, services, and activities under Title II of the ADA and Section 504. *See* Application at 3-4. And second, he argues he was unlawfully interfered with and retaliated against under the ADA for requesting and using the 360-degree camera at his Council desk. *Id.* The Court applies the *Winter* factors to Doe's claims below.

> i.   The first *Winter* factor, likelihood of success on the merits, is not met.

> 1.  Doe is unlikely to succeed on his Title II and Section 504
>     discrimination claims.

Doe contends that he requested a specific modification/effective communication aid in a "functional GoPro/360-degree recording accommodation from his Council desk," and Defendants "denied meaningful implementation by controlling, restricting, and then threatening police enforcement against [Doe's] use of the device." *Id.* at 4. The parties do not dispute that Doe is a qualified individual with a disability under the ADA. *See id.* at 3-4; Opposition at 10. The issue is whether Doe was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities," and whether such "exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall*, 260 F.3d at 1135 (quoting *Weinreich*, 114 F.3d at 978).

For the reasons discussed below, the Court finds that Doe has not shown there is a likelihood of success on the merits of his Title II and Section 504 discrimination claims, because Doe cannot show he was denied meaningful participation to the City's services, programs, or activities *due to his disability*.[1]

---

[1] In Opposition, Defendants contend that the 360-degree camera is a public benefit and was never approved as a reasonable accommodation, so Doe cannot show a likelihood of success on his claims. *See* Opposition at 3-5, 8-9. But Defendants do not explain why having an accommodation request be formally granted or not is

Doe contends he "cannot vote, deliberate, and communicate on equal terms" without use of the 360-degree camera from his Council desk. *See* Application at 4. And in Reply, Doe contends that a 360-degree camera "allows him to direct attention toward the live discussion rather than compensatory monitoring," "to reconstruct exchanges that his disability prevented him from fully encoding in real time," and to have "same-evening, low-stimulation review," which all impact Doe's ability to deliberate, ask questions, and vote accurately. *See* Reply at 10-11; Doe Decl. ¶ 25, Dkt. No. 116. Doe cites to the medical documentation letter by Dr. Henry Chang to support these contentions, *see* Reply at 10-11, but the Chang documentation letter does not explain how not being able to "replay [a] meeting from [Doe's] perspective" and "reconstruct meetings from [Doe's] visual-spatial vantage point" would deny Doe meaningful access to the City's meetings and specific Council functions, *see* Ex. D at 6-9, Dkt. No. 98-3. Put another way, to the extent that Doe needs recordings of the meetings, he has not demonstrated that he is likely to succeed in establishing that a recording taken from the vantage point selected by the City is insufficient and denies him from meaningful participation. And Doe does not provide evidence that his explanation in the Reply for why he needed the 360-degree camera at his Council desk was ever conveyed to Defendants before or during the July 7 meeting. *See* Reply at 10-11; *see also* Doe Decl. ¶¶ 5-6, 10, Dkt. No. 116; Dkt. No. 117. Accordingly, it cannot be said that any denial of meaningful participation in the City's services from a lack of the 360-degree camera at his Council desk was "by reason of his disability." *Duvall*, 260 F.3d at 1135; *see also* Opposition at 13; Reply at 12-13.

Because Doe cannot show that he is likely to succeed in showing that he was denied meaningful participation in the City's services due to his disability, the Court finds that Doe has not shown that he is likely to satisfy the requirements of a Title II discrimination claim. Thus, Doe has failed to show that he is likely to succeed on the merits of his Title II and Section 504 discrimination claims.

       2.  *Doe is unlikely to succeed on his Title II retaliation and interference claims.*

---

necessary for a Title II discrimination claim. Thus, the Court examines whether Doe has satisfied the three prongs of a Title II discrimination claim.

Doe contends that he is likely to succeed on his Title II retaliation and interference claims under Sections 12203(a) and (b), because Doe "engaged in protected ADA activity by requesting accommodations, providing medical documentation, filing ADA complaints, and seeking federal court relief," and was met with "police-backed threatened confiscation and removal when [Doe] attempted to use the [360-degree camera] accommodation." Application at 4.

A prima facie "case of [disability] retaliation requires a plaintiff to show: (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Coons v. Sec'y of U.S. Dep't. of Treasury,* 383 F.3d 879, 887 (9th Cir. 2004)). Moreover, as to an interference claim, Doe must show interference as well as a causal link between the interference and his exercise of his rights. *See Brown*, 336 F.3d at 1193. Here, the Court finds that Doe is unlikely to succeed on his retaliation and interference claims.

First, Doe has not shown on this record that he was engaged in protected activity before or during the July 7 meeting, so he cannot at this stage satisfy the first prong of a retaliation and interference claim and is therefore unlikely to succeed. He has not shown that he was requesting an accommodation or engaging in the interactive process or any grievance process before or during the July 7 meeting. *See* Doe Decl. ¶¶ 6-11, Dkt. No. 98-1; *see also* Reply at 5-6; Opposition at 13-14.

In fact, the record reflects that the City denied Doe the 360-degree camera as an accommodation, and certainly never granted use of the 360-degree camera from his Council desk as an accommodation.[2] Doe requested to use the 360-degree camera as an accommodation, and to "use Council discretionary funds to purchase a 360-degree camera . . . to 'document public meetings, preserve the public record, and enhance transparency.'" *See* Ex. 18 at 2-3, Dkt. No. 15-1. But on April 23, 2026, the City wrote to Doe and explicitly stated that "the City *does not* agree that providing a 360-degree camera for use in public meetings would serve to improve [Doe] meaningful access to [the City's] meetings," but because it had previously approved the expenditure, it ordered

---

[2] Doe quotes a prior order of this Court in support of his view that this Court previously determined that the City had provided him with a 360-degree camera. *See* Reply at 3; TRO at 7. The question is whether the City previously provided Doe with use of the camera at his Council desk as a reasonable accommodation. As discussed above, Doe is not likely to succeed in showing that it did.

the 360-degree camera "for use in public meetings." *Id.* (emphasis added). Then, on June 3, 2026, the City again denied use of the 360-degree camera at Doe's Council desk as a reasonable accommodation because it was "not necessary to provide [Doe] with meaningful access to City Council meetings." Ex. 1 at 2, Dkt. No. 111-3. The "360-degree camera [was] available for use by the public; therefore, it [did] not need to be provided to [Doe] as an individual accommodation." *Id.* at 3. And after Doe provided additional medical documentation to appeal the denial of the 360-degree camera as a reasonable accommodation, *see* Ex. D at 6-9, Dkt. No. 98-3, the City still denied the 360-degree camera because it found that it would not provide meaningful access and the camera was available for public use as a public benefit, *see* Ex. E at 1, Dkt. No. 98-3; *see also* Declaration of Roxanne Lerma ("Lerma Decl.") ¶¶ 4-11, Dkt. No. 111-1. Thus, it cannot be said that Doe had an approved 360-degree camera accommodation before or during the July 7 meeting for the City to retaliate against or interfere with.

In Reply, Doe contends that "the [360-degree camera] accommodation had not been delivered as a complete, functional, patient-perspective system" until the afternoon of July 7, but Doe has not provided evidence to establish that Doe was engaging in a protected activity before or during the July 7 meeting by either requesting the 360-degree camera accommodation or engaging in the interactive process for a 360-degree camera. *See* Reply at 5-6. Doe also did not file a post-meeting complaint. *Id.* To that end, Doe was not "[p]ursuing one's rights under the ADA" before or during the July 7 meeting to constitute protected activity. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004). Accordingly, Doe has not satisfied the first prong of his retaliation and interference claims.

Moreover, even if Doe could be said to have pursued his ADA rights before or during the July 7 meeting, the Court finds that Doe is unlikely to show an adverse employment action or causal link to satisfy the second and third prongs of his retaliation and interference claims. "[A]n adverse employment action is any action 'reasonably likely to deter employees from engaging in protected activity.'" *Pardi*, 389 F.3d at 850 (quoting *Ray v. Henderson,* 217 F.3d 1234, 1243 (9th Cir. 2000)). Doe contends that he was retaliated against and had his ADA rights interfered with because he faced threats by the police of confiscation and removal from the meeting for attempting to use his 360-

degreee camera accommodation. *See* Application at 3-4; *see also* Doe Decl. ¶¶ 10-12, Dkt. No. 98-1. But in the video Doe provided, the police stated that "[Doe] can record," "[Doe is] obviously allowed to record the meeting," and "[w]e're not taking the camera away from you." *See* Ex. F at 0:21-0:25, 1:32-1:36, 2:21:2-28, Dkt. No. 98-3. And the Mayor said that the 360-degree camera is "the City's," and "IT needs that camera to set it up because they're the ones who operate it." *Id.* at 4:00-05. To that end, Doe cannot show any threatened arrest, confiscation, or removal by the police related to any approved accommodation to satisfy the requirements for a retaliation or interference claim under Section 12203(a) and (b).[3] Accordingly, the Court finds there is not a likelihood of success on Doe's retaliation and interference claims under Sections 12203(a) and (b). *See* Reply at 12.

"[W]hen a plaintiff has failed to show the likelihood of success on the merits, [the Court] need not consider the remaining" *Winter* factors. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal quotation marks omitted) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)). Because the Court finds Doe cannot satisfy the first *Winter* factor, the Court need not address the other three *Winter* factors.[4]

### IV.    **Conclusion**

---

[3] The Court finds that Doe's video exhibits attached in Reply, *see* Exs. M-Q, Dkt. No. 113, do not show any current or future "police-enforced threat of confiscation, removal, and arrest" to support Doe's retaliation and interference claims, *see* Application at 1, 3. And Doe's contention that "without a court order, officers may be placed in the same position at the next Council meeting" does not support any claim of disability retaliation or interference because as discussed above, Doe did not establish how there was disability retaliation or interference with his rights under the ADA before or during the July 7 meeting. *See* Doe Decl. ¶¶ 22-23, Dkt. No. 116.

[4] In his Application, Doe "asks the Court to issue an order to show cause why sanctions, corrective declarations, evidentiary hearing, or other relief should not issue concerning Roger Scott, Buchalter, Thomas O'Connell, and/or related counsel conduct." Application at 4. But in Reply, Doe states that he does not request Rule 11 sanctions. *See* Reply at 17-18. Thus, the Court does not address the sanctions issue. If Doe seeks to bring a Rule 11 motion for sanctions, he must file a properly noticed motion that complies with the Court's Civil Standing Order. Moreover, in his supplemental declaration attached to his Reply, Doe contends that Mrakich was "pressured by Roger Scott to sign declarations that were not true because the Council majority could fire him." *See* Doe Decl. ¶ 20, Dkt. No. 116. Because the Court does not rely on any declaration by Mrakich to support its analysis, it need not address this contention. All sanctions requests are therefore DENIED WITHOUT PREJUDICE.

For the foregoing reasons, the Application (Dkt. No. 98) is DENIED.[5]

IT IS SO ORDERED.

Dated: July 20, 2026

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[5] In its Opposition, the City requests that the Court order Doe to return the 360-degree camera to the City. The City has not filed a proper motion making this request or even identified the legal basis for it. *See* Opposition at 19. The request is therefore DENIED WITHOUT PREJUDICE.