**JOHN DOE**
JohnDoeCA2025@gmail.com
Plaintiff in propria persona
P.O. Box 1679, MS 5892
Sacramento, CA 95812
Telephone: [CURRENT NUMBER]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF WEST COVINA, et al.,<br><br>Defendants. | **Case No. 2:26-cv-03659-MEMF-MBK**<br><br>**PLAINTIFF'S NOTICE OF ALLEGED RETALIATORY DENIAL OF APPROVED ADA ACCESS AND REQUEST FOR JUDICIAL NOTICE**<br><br>October 1, 2026 incident<br>Supporting memorandum included<br><br>Hon. Maame Ewusi-Mensah Frimpong<br>Courtroom 8B |

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Plaintiff John Doe submits notice that, at approximately 11:33 p.m. on October 1, 2026, his City access card failed to admit him to City Hall to retrieve his binder, following City Manager Milan M. Mrakich's alleged threat to revoke access if Plaintiff pursued his performance review. Plaintiff submits his declaration and Exhibits A–J and requests judicial notice of the official acts and public records specified below. This submission concerns the alleged interference with an approved disability accommodation and retaliation for Plaintiff's oversight activity. It does not seek leave to supplement the complaint.

**TABLE OF CONTENTS**


I. Introduction.....4
II. Accommodation and retaliation chronology.....4
A. Written approval.....4
B. Performance review and HR concerns.....5
C. Alleged threat.....6
D. October 1 denial of entry.....6
III. Federal protections implicated.....7
A. Title II access and modifications.....7
B. ADA interference.....8
C. ADA retaliation.....9
D. First Amendment retaliation.....9
IV. Causation and access-system evidence.....10
V. La Habra litigation and municipal settlement.....11
VI. Specific request for judicial notice.....12
VII. Procedural posture and requested disposition.....14

**TABLE OF AUTHORITIES**

**Cases**

*Boquist v. Courtney*, 32 F.4th 764 (9th Cir. 2022)....................9, 10
*Brown v. City of Tucson*, 336 F.3d 1181 (9th Cir. 2003)....................8
*Cohen v. City of Culver City*, 754 F.3d 690 (9th Cir. 2014)....................7
*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)....................13

**Statutes and regulations**

Cal. Gov. Code § 54957(b)(1)....................5, 13
42 U.S.C. § 1983....................10
42 U.S.C. §§ 12131–12132....................7
42 U.S.C. § 12203(a)–(b)....................8, 9
28 C.F.R. § 35.130(b)(7)(i)....................7
28 C.F.R. § 35.134....................8, 9

**Rules and prior orders**

Fed. R. Evid. 201....................12, 13, 14
Fed. R. Evid. 401–404, 408....................12
C.D. Cal. L.R. 7-3....................14
Dkt. 26 at 7–11....................14
Dkt. 128 at 6....................14

## I. INTRODUCTION

The City approved Plaintiff's after-hours and flexible access to City Hall through its disability-accommodation process on January 6, 2026. The written approval identifies Mrakich as the approving official. Plaintiff now declares that Mrakich personally threatened to revoke that access if Plaintiff placed him under review. After Plaintiff reaffirmed his performance-review request on September 29, his access card failed at City Hall on October 1. The scheduled review appears on the October 6 closed-session agenda. This sequence supplies the factual basis for Plaintiff's allegation that Mrakich used control over an approved accommodation to punish the elected official seeking review of his conduct. Doe Decl. ¶¶ 3–10, 17–25; Exs. A–D.

An accommodation approved through the City's ADA process cannot lawfully be used as an instrument of retaliation. Plaintiff's allegation is specific: the official identified in the approval threatened the precise deprivation Plaintiff later experienced, expressly connected that threat to a performance review, and received notice that the review request remained pending. Those facts warrant examination of the decision affecting access, the identity of the person responsible, and the contemporaneous reason for the action.

Plaintiff presents the October 1 event through sworn testimony and the documents that bear directly on it. He also identifies the official La Habra litigation and settlement records involving Mrakich, including the City's recorded settlement action and the later stipulated judgment against him. The requested judicial notice is confined to identifiable official acts and record contents. The substantive retaliation allegation rests on the evidence concerning Plaintiff's own accommodation and oversight activity.

## II. THE ACCOMMODATION AND THE RETALIATION CHRONOLOGY

### A. The January 6 memorandum records an approved accommodation

Exhibit A is the January 6, 2026 ADA/FEHA Interactive Process Meeting Memo. It identifies the requesting person as an elected Councilmember and the department as City

Council; describes the request as after-hours and flexible City Hall access; names Mrakich, then Acting City Manager, as the official who approved the request; and records that the accommodation was completed and accepted as of January 6. Plaintiff participated in the process and signed the memorandum. Carmelita Underwood signed as Human Resources Director. Doe Decl. ¶¶ 3–5; Ex. A, A-001.

That document establishes the starting point for the present dispute. Plaintiff had already sought and obtained the access modification through the City's designated process. The October 1 event therefore concerns implementation of a documented approval. Mrakich's identification in that approval is also material to knowledge: Plaintiff is not attributing awareness of the accommodation to Mrakich merely because he later occupied the City Manager's office.

**B. Plaintiff pursued review of Mrakich's performance and HR decisions**

Plaintiff sought a closed-session performance review of Mrakich. On September 29, 2026, at 2:43 p.m., Plaintiff sent the email reproduced in Exhibit C stating that his earlier evaluation request remained pending and had not been withdrawn. Mrakich received the communication and replied at 3:19 p.m. about the risk-management conference and his attendance at the Council meeting. The reply demonstrates his receipt of the concern and his participation in the exchange. Doe Decl. ¶¶ 7–9; Ex. C, C-001–C-007.

The October 6 closed-session agenda lists a public employee performance evaluation under California Government Code § 54957(b)(1), with the title "City Manager." Ex. D, D-002. The agenda corroborates that a review was scheduled when Plaintiff reports the loss of access. Plaintiff relies on the September 29 exchange and the published agenda to establish this chronology; the October 6 meeting had not occurred when this submission was prepared. Doe Decl. ¶ 10.

Plaintiff's concerns included the treatment of Human Resources personnel and the administration of disability accommodations. Underwood had participated in his accommodation process. Plaintiff understood that her ADA Coordinator responsibilities were later removed, and

he was concerned that the change was connected to her assistance with his ADA rights. He also recalls Mrakich telling him, in substance, that Lisa Sherrick had issued an ultimatum to place Underwood on administrative leave after accusing her of disclosing Sherrick's medical-leave information. Doe Decl. ¶¶ 11–12.

Plaintiff separately received reports of an African American HR employee's termination, another resignation described as forced, hostility toward African American HR employees, and Underwood's paid administrative leave while undergoing serious medical treatment. He was concerned that Underwood had not been asked to respond to the disclosure accusation before being placed on leave. These reports explain the subject and purpose of Plaintiff's oversight: alleged discrimination, retaliation, and the treatment of personnel involved in protecting ADA rights. They are identified as reports and concerns, rather than firsthand proof of each personnel decision. Doe Decl. ¶¶ 13–16.

**C. Mrakich allegedly tied continued access to the review request**

Before the October 1 incident, Mrakich told Plaintiff, in substance, that if Plaintiff placed him under review, he would retaliate by revoking Plaintiff's access. Plaintiff's declaration attributes that statement to a conversation he personally heard. His declaration recounts the substance of the statement from personal recollection. Doe Decl. ¶¶ 17–18.

The alleged statement is critical to causation. It identifies both the activity Mrakich allegedly opposed and the particular measure he allegedly threatened to take. Plaintiff's theory consequently rests on more than the fact that two events occurred close together. His sworn account describes an express connection made by Mrakich himself between managerial review and withdrawal of access.

**D. The October 1 attempt resulted in an actual denial of entry**

At approximately 11:33 p.m. on October 1, 2026, Plaintiff attempted to enter City Hall with his City access card to retrieve his binder. The card did not admit him during that attempt.

Exhibit B contains contemporaneous screenshots, including a card-reader video thumbnail and Plaintiff's messages directed to Mrakich. Plaintiff wrote: "Milan you retaliating against me again, revoking my ADA Accommodation?" He also wrote: "I can not access city hall to pick up my binder!" Doe Decl. ¶¶ 19–24; Ex. B, B-001–B-002.

Plaintiff supplies the firsthand account of presenting the credential and being unable to enter. The screenshots corroborate his contemporaneous report and objection. The resulting deprivation was concrete: on that attempted entry, Plaintiff could not obtain the access addressed in the written accommodation and could not retrieve the binder for which he had come. Doe Decl. ¶¶ 19–20, 26.

## III. THE ALLEGED CONDUCT IMPLICATES DISTINCT FEDERAL PROTECTIONS

### A. Title II requires meaningful access through necessary modifications

Title II prohibits a public entity from excluding a qualified individual with a disability from its services, programs, or activities by reason of disability. 42 U.S.C. §§ 12131–12132. Public entities must make reasonable modifications when necessary to avoid disability discrimination unless the entity establishes a fundamental alteration. 28 C.F.R. § 35.130(b)(7)(i). The Ninth Circuit explains that the inquiry concerns meaningful program access and the connection between the exclusion and disability. *Cohen v. City of Culver City*, 754 F.3d 690, 694-95 (9th Cir. 2014).

Plaintiff identifies his disability, his status as an elected Councilmember, the City's written approval for after-hours and flexible access, and the failed use of his City credential. His asserted connection to City activity is the accommodation approved for him as a member of the City Council and the attempt to enter City Hall to obtain his binder. Ex. A, A-001; Doe Decl. ¶¶ 1, 3–6, 19–20. The approval is substantial evidence of notice and of the modification the City had agreed to implement.

The legal significance of the approval is practical. A City decision concerning an accommodated person's credential must be evaluated in light of the access modification already

granted. If the evidence establishes that the approved modification was deliberately disabled as punishment for protected activity, calling the decision an exercise of administrative control would not resolve the ADA issue. The inquiry must address what access was approved, what changed, why it changed, and how the change affected Plaintiff's participation in the relevant City activity.

Plaintiff recognizes that the City's approval does not, standing alone, decide every statutory element or guarantee unrestricted access to every room at every time. The record must establish the scope of the modification and its disability-related necessity. That evidentiary question does not erase the January 6 approval or the alleged use of its withdrawal as a threatened consequence.

**B. Threatening an approved accommodation can constitute ADA interference**

The ADA separately prohibits coercion, intimidation, threats, or interference concerning the exercise or enjoyment of protected rights, including assistance to another person exercising those rights. 42 U.S.C. § 12203(b); 28 C.F.R. § 35.134(b). The interference provision addresses conduct that pressures a person to surrender or refrain from exercising an ADA right; it is analytically distinct from a conventional retaliation claim.

In *Brown v. City of Tucson*, the Ninth Circuit held that threats requiring an individual to forgo a protected accommodation could support an interference claim where the person suffered a distinct injury. The court emphasized that the accommodation had already been granted and rejected treating a threat to relinquish it as a reasonable effort to determine an accommodation. 336 F.3d 1181, 1191–93 (9th Cir. 2003). Although *Brown* arose in employment, its interpretation of § 12203(b) is relevant to the alleged use of an established accommodation as a means of coercion here.

Plaintiff alleges that Mrakich made continued access depend on whether Plaintiff pursued a review of Mrakich's conduct. The threatened consequence targeted an accommodation Mrakich had approved. Plaintiff then experienced the very access failure the alleged threat

contemplated. On Plaintiff's account, the interference has an identified object, an identified speaker, a stated condition, and an actual access injury. Doe Decl. ¶¶ 4, 17–26. If that account is established, it presents a substantial ADA interference issue independent of whether every aspect of the performance review qualifies as protected ADA opposition.

**C. Disability-rights advocacy supplies the asserted ADA retaliation nexus**

Section 12203(a) protects opposition to conduct made unlawful by the ADA and participation in an ADA investigation, proceeding, or hearing. See also 28 C.F.R. § 35.134(a). Plaintiff identifies his efforts to obtain and preserve his own accommodation and his concerns about the treatment of personnel who assisted with his ADA rights. Underwood's role is documented in Exhibit A. The relationship between that assistance, the reported removal of her ADA duties, and Plaintiff's oversight request supplies the disability-rights context of the alleged retaliation. Doe Decl. ¶¶ 3–5, 11–16.

Plaintiff does not rely on elected status or disability alone to transform every dispute with management into ADA-protected activity. His position is that Mrakich targeted access granted through the ADA process while Plaintiff was challenging conduct that included interference with disability rights. Evidence of the substance of Plaintiff's advocacy, Mrakich's knowledge, and the actual reason for any credential change will determine the reach of that theory. The alleged express threat is especially probative because it links the disputed managerial conduct to the accommodation selected for withdrawal.

**D. First Amendment protection extends to an elected official's oversight speech**

In *Boquist v. Courtney*, the Ninth Circuit recognized an elected legislator's First Amendment retaliation claim arising from restrictions on entry to a government building. The relevant elements are protected activity, materially adverse action capable of chilling a person of ordinary firmness, and a substantial causal relationship. The court distinguished an access

restriction from ordinary political criticism and recognized that defendants may establish a legitimate independent basis for their action. 32 F.4th 764, 774–78, 781–84 (9th Cir. 2022).

Plaintiff's review request concerned the conduct of the City's chief administrative officer and alleged mistreatment of City personnel. His speech and petitioning sought governmental accountability. The asserted adverse measure affected physical access conferred through a disability accommodation. Plaintiff submits that loss of this access, threatened expressly as a consequence of seeking review, could deter an elected official of ordinary firmness from continuing that oversight. The September 29 email, the review agenda, the alleged statement, and the October 1 incident supply the specific sequence to which the constitutional standard applies. Doe Decl. ¶¶ 7–26; Exs. A–D.

Administrative authority over a building does not itself answer a retaliation claim under 42 U.S.C. § 1983. The actual purpose of the challenged action remains material. A restriction supported by a genuine independent operational reason presents a different case from a restriction imposed to punish protected expression. Plaintiff alleges the latter and identifies the contemporaneous evidence needed to test it. *Boquist*, 32 F.4th at 783–84.

## IV. THE ALLEGED THREAT AND THE SYSTEM RECORDS BEAR DIRECTLY ON CAUSATION

The evidence should be evaluated as a sequence. The January memorandum identifies the accommodation and Mrakich's role in approving it. Plaintiff's recollection identifies a prior threat directed at that same access. The September 29 exchange establishes that Mrakich received the renewed review request. The October 6 agenda corroborates the scheduled evaluation. The October 1 account identifies the resulting failure to enter. Together, these materials explain why Plaintiff attributes the incident to retaliation rather than simply reporting an unexplained malfunction. Doe Decl. ¶¶ 3–10, 17–25.

The present record does not include the City's access-control audit trail. It therefore does not independently identify the operator, time, or technical cause of a permission change.

Plaintiff's inference of deliberate revocation is grounded in the alleged threat and chronology; the City's system records can corroborate or rebut it. Keeping that distinction clear permits a focused adjudication of the allegation.

The relevant evidence is identifiable. The credential's assignment and permission history would show the access schedule and groups applicable before and during the incident. Administrative audit entries would identify any change, its timestamp and time zone, the user account responsible, and prior and revised settings. The October 1 reader transaction and denial code, together with outage or maintenance records, would distinguish a permission restriction from a technical failure.

Related communications may establish who requested, approved, implemented, or learned of a change. The pertinent subjects are Plaintiff's after-hours accommodation, the pending performance review, and the October 1 denial; the relevant custodians include Mrakich and personnel responsible for the ADA process, Human Resources, security, information technology, and the access-system vendor. Security recordings and original message and video files may further document the event. These are focused evidentiary issues for preservation and properly served discovery, rather than a request to infer liability from Mrakich's job title.

## V. THE LA HABRA RECORDS CONNECT MRAKICH TO MUNICIPAL SETTLEMENT ACTION

The public-record history concerns a single identified case: *Chanel Chivas v. City of La Habra, et al.*, Orange County Superior Court No. 30-2014-00753505-CU-OE-CJC. Exhibit E reproduces the complaint's first page, filed October 29, 2014. It names both La Habra and Mrakich and identifies sexual-harassment, hostile-work-environment, and failure-to-take-corrective-action claims. Ex. E, E-001. Plaintiff identifies the case and claims as part of the litigation history, rather than representing the allegations as findings after trial.

The municipal record independently links City action to that same lawsuit. The official June 6, 2016 La Habra minutes record the City Attorney's announcement concerning a

settlement payment on the warrant list for the Chivas case. The minutes also record approval of the pertinent consent-calendar warrant item. The matching case number connects that municipal settlement action to the litigation naming Mrakich. Ex. H, H-002–H-004. The requested history therefore includes the City's official action, as well as the later judgment against Mrakich personally.

The June 7, 2016 *Orange County Register* article reports a $1.9 million overall settlement, a $200,000 City contribution from reserves, insurance funding most of the settlement, and a contribution by the former supervisor. Ex. I, I-001. The July 7 law-firm statement distributed through PR Newswire also describes a $1.9 million settlement. Ex. J. Plaintiff identifies those figures as attributed reporting. The official minutes do not itemize the entire allocation, and their aggregate warrant total is not the amount of the Chivas settlement.

The subsequent court records concern the same case. The stipulation filed January 17, 2017 bears Mrakich's January 9 signature and states $10,000 principal, $425 in attorney fees, and $191 in costs. Ex. F, F-001–F-002. On January 26, 2017, the court entered the stipulated civil judgment for the $10,616 total against Mrakich. Ex. G, G-001. The records establish that judicial disposition; they do not establish collection of the judgment or whether its amount was included in the reported overall settlement.

Plaintiff submits this linked history as context for his managerial-oversight and public-liability concerns. Its proper use is to identify the official proceedings, municipal action, and disposition. Plaintiff's October 1 claim must stand on the evidence of the accommodation, threat, protected activity, and access decision. The historical allegations or existence of a compromise do not supply an inference that Mrakich necessarily committed the presently alleged retaliation. See Fed. R. Evid. 401–404, 408.

## VI. THE SPECIFIC REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201(b)(2) permits notice of a fact accurately and readily determined from sources whose accuracy cannot reasonably be questioned. A party requesting

notice must supply the necessary information, and an opposing party retains the opportunity to be heard. Fed. R. Evid. 201(c)(2), (d)–(e). Public records may establish their existence and official contents without establishing the truth of disputed assertions within them. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999–1000 (9th Cir. 2018). Plaintiff requests notice of the following particular matters:

1. **The scheduled City Manager evaluation.** The October 6, 2026 West Covina closed-session agenda lists a City Manager performance evaluation under Government Code § 54957(b)(1). Ex. D, D-002. The noticed matter is the published agenda listing, which bears on the oversight chronology; it is not a finding about the future meeting's occurrence or outcome.

2. **The Chivas action and its named parties.** The October 29, 2014 complaint was filed in Orange County Superior Court under No. 30-2014-00753505-CU-OE-CJC, names the City of La Habra and Milan Mrakich, and identifies the claims stated on its first page. Ex. E, E-001. Notice concerns the filing and claims asserted.

3. **The filed stipulation and entered judgment.** The January 17, 2017 filing contains a stipulation for a $10,616 judgment, and the January 26, 2017 court record enters that amount against Mrakich in the same action. Exs. F–G. Notice concerns the filed terms and judicial disposition, without resolving satisfaction of the judgment.

4. **La Habra's recorded settlement action.** The official June 6, 2016 minutes, approved July 18, 2016, record the Chivas settlement-related announcement and approval of the warrant-list item. Ex. H, H-001–H-004. The City publishes the minutes at https://www.lahabraca.gov/AgendaCenter/ViewFile/Minutes/06062016-527. Notice concerns the recorded official action, rather than treating all warrants approved that day as payment in the Chivas matter.

5. **The related publications.** To the extent relevant, Exhibits I and J establish that the identified article and law-firm statement were published and reported the described settlement. Plaintiff requests notice of publication and the attributed statements only. Any contested

payment allocation or total public expenditure must be established through competent financial records rather than deemed indisputable because it appeared in a publication.

The evidence about Plaintiff's own experience is presented differently: the January approval, the alleged threat, the September communications, and the October attempt are supported by his declaration and Exhibits A–C. Plaintiff does not seek to convert those disputed merits facts into conclusive findings through Rule 201. This defined scope permits notice of the official record while preserving the parties' opportunity to contest causation, liability, relevance, and admissibility.

## VII. PROCEDURAL POSTURE AND REQUESTED DISPOSITION

The October 1 event postdates the Court's earlier rulings. The May 4 order addressed the record then presented concerning accommodations, meaningful access, and the Communication Protocol. Dkt. 26 at 7–11. Plaintiff now identifies a particular subsequent access incident, the written approval it implicated, and an alleged direct threat tied to managerial review. He is not asking the Court to reconsider the earlier injunction decision or treat that decision as an adjudication of events that had not yet occurred.

Consistent with Plaintiff's present election, this submission does not propose a supplemental complaint. It seeks no immediate injunction, damages award, sanctions, discovery order, or extension of a pleading deadline. The request is limited to presenting the identified event and obtaining judicial notice within the scope set out in Section VI. Dkt. 128 at 6 directs the case to proceed in its normal course; this submission remains subject to the Court's requirements governing the permissible presentation of evidence and requests.

Local Rule 7-3 and standing-order compliance: [INSERT THE ACTUAL CONFERENCE DATE, PARTICIPANTS, AND POSITIONS, OR THE SPECIFIC ORDER EXCUSING THE REQUIREMENT BEFORE FILING].

Plaintiff respectfully requests that the Court take judicial notice of the specified official acts and record contents and consider the supporting declaration and exhibits in an authorized

proceeding to which they are relevant. If the present procedural posture does not permit consideration of any portion, Plaintiff requests that portion be deferred or declined without prejudice to proper presentation.

The alleged conduct warrants a precise evidentiary inquiry. Plaintiff says Mrakich approved the accommodation, threatened to revoke access if subjected to review, learned that the review request remained pending, and then Plaintiff encountered the threatened loss of access. Plaintiff places that account before the Court under oath and identifies the records capable of testing it. Governmental control over a disability accommodation cannot lawfully become a means of insulating an official from protected oversight.

Dated: October 2, 2026

/s/ John Doe

John Doe

Plaintiff in propria persona